| | |
|---|---|
| **KAPLAN FOX & KILSHEIMER LLP** | **CENTER FOR SCIENCE IN THE PUBLIC INTEREST** |
| Laurence D. King (SBN 206423) | Maia Kats (*pro vice* to be filed) |
| lking@kaplanfox.com | MKats@cspinet.org |
| Linda M. Fong (SBN 124232) | Amanda Howell (admitted *pro hac vice*) |
| lfong@kaplanfox.com | ahowell@cspinet.org |
| 350 Sansome Street, Suite 400 | 1220 L Street, NW, Suite 300 |
| San Francisco, California 94104 | Washington, DC  20005 |
| Telephone: (415) 772-4700 | Telephone: (202) 777-8385 |
| Facsimile:   (415) 772-4707 | Facsimile: (214) 827-2787 |
| | |
| Robert N. Kaplan (admitted *pro hac vice*) | **STANLEY LAW GROUP** |
| rkaplan@kaplanfox.com | Marc R. Stanley (*pro hac vice* to be filed) |
| Lauren I. Dubick (admitted *pro hac vice*) | marcstanley@mac.com |
| ldubick@kaplanfox.com | Martin Woodward (*pro hac vice* to be filed) |
| 850 Third Avenue, 14th Floor | mwoodward@stanleylawgroup.com |
| New York, New York 10022 | Stephen Gardner (admitted *pro hac vice*) |
| Telephone: (212) 687-1980 | steve@consumerhelper.com |
| Facsimile:   (212) 687-7714 | 3100 Monticello Avenue, Suite 770 |
| | Dallas, Texas 75205 |
| *Counsel for Plaintiffs* | Telephone: (214) 443-4300 |
| | Facsimile: (214) 443-0358 |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLLEEN GALLAGHER, ILANA FARAR, ANDREA LOPEZ, JOANN CORDARO, AND ROSANNE COSGROVE, on behalf of themselves and all others similarly situated, | CASE NO.  3:14-cv-04601-WHO |
| | **SECOND AMENDED CLASS ACTION COMPLAINT** |
| Plaintiffs, | 1. Unlawful, Unfair, and Fraudulent Business Acts and Practices (Cal. Bus. & Prof. Code. §§ 17200 *et seq.*) |
| v. | 2. Consumer Legal Remedies Act (Cal. Civ. Code §§ 1750 *et seq.*) |
| BAYER AG, BAYER CORPORATION, and BAYER HEALTHCARE LLC, | 3. Untrue or Misleading Advertising (Cal. Bus. & Prof. Code. §§ 17500 *et seq.*) |
| Defendants. | 4. Unfair or Deceptive Practices (Fla. Stat. §§ 501.201 *et seq.*) |
| | 5. Misleading Advertising (Fla. Stat. § 817.41) |
| | 6. Deceptive Acts and Practices (N.Y. Gen. Bus. Law § 349) |
| | 7. False Advertising (N.Y. Gen. Bus. Law § 350) |
| | 8. Restitution Based On Unjust Enrichment/Quasi-Contract |
| | **Demand for Jury Trial** |

Plaintiffs Colleen Gallagher, Ilana Farar, Andrea Lopez, JoAnn Cordaro, and Rosanne Cosgrove ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this action against Bayer AG, Bayer Corporation, and Bayer HealthCare, LLC (collectively, "Bayer" or "Defendants"), demanding a trial by jury, and allege as follows:

## NATURE OF THE CASE

1.      This is a proposed class action on behalf of a nationwide class and California, Florida, and New York subclasses seeking redress for Bayer's deceptive[1] practices in misrepresenting the health benefits of varieties of its One A Day multivitamin/multimineral supplements ("Supplement(s)")[2] in violation of various state consumer protection laws and common law.

2.      Consumers are increasingly health-conscious. In an effort to improve their health, many consumers take dietary supplements such as multivitamin/multimineral supplements. Some consumers believe they can prevent or treat specific illnesses and disease by taking these supplements.

3.      State and federal dietary guidelines and nutrition science experts all agree that (a) nutrient needs should be met primarily by consuming foods,[3] (b) most

---

[1] The terms "deceptive," "deceptively," and "deception" encompass other descriptive terms, including various forms of the words: mislead, misrepresent, untrue, unfair, false, disparage, and unlawful. All of these terms are referenced in California's Civil Code and California's Health and Safety Code.

[2] Including without limitation Bayer One A Day Women's Formula, One A Day Men's Health Formula, Women's One A Day 50+ Healthy Advantage, Men's One A Day 50+ Healthy Advantage, Men's One A Day Pro Edge Multivitamin, Women's One A Day Pro Edge, Women's One A Day Active Metabolism, Women's One A Day Menopause Formula, Women's One A Day Active Mind & Body, Women's One A Day Plus Healthy Skin Support, One A Day Women's Petites, One A Day Teen Advantage for Her, One A Day Teen Advantage for Him, One A Day Essential, One A Day Energy, One A Day Women's VitaCraves Gummies, One A Day Men's VitaCraves Gummies, One A Day VitaCraves Gummies Plus Immunity Support, One A Day VitaCraves Gummies Regular, and One A Day VitaCraves Sour Gummies.

[3] *E.g.*, CALIFORNIA FOOD GUIDE, CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES AND CALIFORNIA DEPARTMENT OF PUBLIC HEALTH (2008) *available at* http://www.cafoodguide.ca.gov ("Pills, powders, or supplements cannot replicate the combined effects of the vitamins, minerals, fiber, and phytochemicals found in fruit and vegetables . . ."); U.S. DEP'T OF AGRICULTURE, U.S. DEP'T OF HEALTH & HUMAN SERVS,

1  Americans are not vitamin or mineral deficient and consume adequate amounts of

2  vitamins and minerals,[4] and (c) for the most part, only those suffering from vitamin or

3  mineral deficiencies (usually due to diet or health issues) benefit from vitamin or

4  mineral supplements.[5]

5      4.    These authorities also agree that multivitamin/multimineral supplements

6  are not effective for preventing or treating diseases.

7      5.    Consumers' health concerns motivate the purchase and consumption of

8  One A Day Supplements, from which Bayer significantly profits. Bayer persuades

9  consumers to buy its One A Day Supplements by promoting falsely claimed health

10  benefits and by selling many varieties of Supplements targeted at different segments of

11  the population based on age, gender, and even health concerns. Despite these many

12  varieties, all of Bayer's One A Day Supplements are essentially the same product.

13      6.    Bayer markets[6] its Supplements with a variety of claims—including that

14  they support (a) "heart health," (b) "immunity," and (c) "physical energy" (collectively,

15  "Claims").

16  ───────────────

    DIETARY GUIDELINES FOR AMERICANS 2010 at ix, 5, *available at* www.dietaryguidelines.gov.
17  Nat'l Inst. of Health, Office of Dietary Supplements, Health Professional Factsheet:
    Vitamin C ("Fruits and vegetables are the best sources of vitamin C."); Manuela Blasa *et
18  al.*, *Fruit and Vegetable Antioxidants in Health, in* Bioactive Foods Promoting Health: Fruits
    and Vegetables 37, 37-58 (Ronald Ross & Victor R. Preedy eds., 2010) ("The synergy
19  among phytochemicals is one of the reasons that nutritional guidelines insist on varying
    the foods in one's diet, particularly fruits and vegetables.").

20  [4] *See, e.g.*, Nat'l Inst. of Health, Office of Dietary Supplements, Health Professional
    Factsheet: Vitamin B12 ("Most children and adults in the United States consume
21  recommended amounts of vitamin B12"); Nat'l Inst. of Health, Office of Dietary
    Supplements, Health Professional Factsheet: Vitamin B6 ("Most children, adolescents,
22  and adults in the United States consume the recommended amounts of vitamin B6");
    Nat'l Inst. of Health, Office of Dietary Supplements, Health Professional Factsheet:
23  Calcium ("frank calcium deficiency is uncommon"); Nat'l Inst. of Health, Office of
    Dietary Supplements, Health Professional Factsheet: Vitamin C ("vitamin C deficiency
24  and scurvy are rare in developed countries.") Nat'l Inst. of Health, Office of Dietary
    Supplements, Health Professional Factsheet: Vitamin E ("mean intakes of vitamin E
25  among healthy adults are probably higher than the RDA").

26  [5] *See, e.g.*, Nat'l Inst. of Health, Office of Dietary Supplements, Health Professional
    Factsheet: Vitamin B6; Nat'l Inst. of Health, Office of Dietary Supplements, Health
27  Professional Factsheet: Vitamin C; Nat'l Inst. of Health, Office of Dietary Supplements,
    Health Professional Factsheet: Vitamin E.

28  [6] The terms "markets" and "marketing" include all forms of advertising in all forms of

7.      Bayer makes these Claims in the same manner on each Supplement, and all of these Claims are based on one or more of the same 11 vitamins and minerals found in every One A Day variety.[7] Supplementation with these vitamins and minerals does not affect the heart health, immunity, or energy levels of the majority of Americans to whom Bayer markets its Supplements.

8.      Bayer does not market these Supplements specifically to consumers suffering from a vitamin or mineral deficiency or otherwise make it clear to prospective purchasers that the Claims only apply to consumers suffering from a vitamin or mineral deficiency. Instead, Bayer markets to the general population of consumers, the great majority of whom will experience no health benefits from taking the Supplements.

9.      Even though typical Americans are not vitamin deficient and will not benefit from vitamin and mineral supplementation,[8] Bayer markets its Supplements to all American consumers and falsely states that "up to 90% [of Americans] fall short in getting key nutrients from food alone."[9] This blatantly contradicts the findings of scientific authorities.[10]

_____

media, including without limitation print advertisements, television and radio commercials, packaging and product labels, viral marketing, incentives, and websites.

[7] Bayer's Claims are based on vitamin A, vitamin B6, vitamin B12, vitamin C, vitamin D, vitamin E, folic acid (vitamin B9), thiamin, riboflavin, niacin (vitamin B3), and (with the exception of One A Day Essential) selenium.

[8] *See, e.g.*, Nat'l Inst. of Health, Office of Dietary Supplements, Health Professional Factsheet: Vitamin B12 ("Most children and adults in the United States consume recommended amounts of vitamin B12"); Nat'l Inst. of Health, Office of Dietary Supplements, Health Professional Factsheet: Vitamin B6 ("Most children, adolescents, and adults in the United States consume the recommended amounts of vitamin B6"); Nat'l Inst. of Health, Office of Dietary Supplements, Health Professional Factsheet: Calcium ("frank calcium deficiency is uncommon"); Nat'l Inst. of Health, Office of Dietary Supplements, Health Professional Factsheet: Vitamin C ("vitamin C deficiency and scurvy are rare in developed countries.") Nat'l Inst. of Health, Office of Dietary Supplements, Health Professional Factsheet: Vitamin E ("mean intakes of vitamin E among healthy adults are probably higher than the RDA").

[9] *See* Exhibit 1, attached. Bayer makes similar representations in its television advertisements, http://www.ispot.tv/ad/7GOz/one-a-day-mens-jim ("like up to 90% of Americans, Jim falls short in getting important nutrients from food alone."); http://www.ispot.tv/ad/7Hl3/one-a-day-healthy-americans (same); http://www.ispot.tv/ad/7Jid/one-a-day-vitacraves-gummies-lets-do-more (same).

[10] *See, e.g.*, Nat'l Inst. of Health, Office of Dietary Supplements, Health Professional Factsheet: Vitamin B12 ("Most children and adults in the United States consume

1    10.    In its marketing campaign, Bayer deceptively claims that various One A

2  Day Supplements possess certain characteristics, uses, or benefits that they do not have.

3    11.    All supplements are what economists call "credence goods."[11] A credence

4  good is a good whose qualities consumers are not perfectly able to judge, even after they

5  consume it, due to both the nature of the product as well as unequal access to

6  information.[12] In other words, consumers are unable to fully evaluate credence attributes

7  or credence goods—"includ[ing] the therapeutic value of a medicine"—*even after*

8  *purchase*.[13] This means that consumers are not able to determine the efficacy of Bayer One

9  A Day Supplements even after purchase and use.

10    12.    Bayer deceives consumers about One A Day Supplements—bombarding

11  consumers with messages of purported health benefits and even using scare tactics to

12  convince consumers that they need Bayer's Supplements.[14]

13    13.    Bayer's marketing and labeling also draws consumer attention away from

14  the fact that very little difference exists among varieties of Bayer One A Day

15  Supplements.

16

17  _____

18  recommended amounts of vitamin B12"); Nat'l Inst. of Health, Office of Dietary
   Supplements, Health Professional Factsheet: Vitamin B6 ("Most children, adolescents,
   and adults in the United States consume the recommended amounts of vitamin B6");

19  Nat'l Inst. of Health, Office of Dietary Supplements, Health Professional Factsheet:
   Calcium ("frank calcium deficiency is uncommon"); Nat'l Inst. of Health, Office of

20  Dietary Supplements, Health Professional Factsheet: Vitamin C ("vitamin C deficiency
   and scurvy are rare in developed countries.") Nat'l Inst. of Health, Office of Dietary

21  Supplements, Health Professional Factsheet: Vitamin E ("mean intakes of vitamin E
   among healthy adults are probably higher than the RDA").

22  [11] Matthew G. Nagler *et al.*, *How Do Consumers Value a Credence Good?*, *available at*

23  www.cide.info/conf/2009/iceee2009_submission_39.pdf ("Medications conform well to
   the credence good model.").

24  [12] *See* Phillip Nelson, *Information and Consumer Behavior*, 78 J. POLITICAL ECON. 311(1970).

25  [13] *See, e.g.*, Richard Craswell, *Interpreting Deceptive Advertising*, 65 B.U. L. REV. 657 (July
   1985) (citing Darby & Karni, *Free Competition and the Optimal Amount of Fraud*, 16 J.L. &
   ECON. 67, 72-77 (1973)).

26  [14] *See* Exhibit 1, attached. Bayer makes similar representations in its television

27  advertisements, http://www.ispot.tv/ad/7GOz/one-a-day-mens-jim ("like up to 90% of
   Americans, Jim falls short in getting important nutrients from food alone.");
   http://www.ispot.tv/ad/7Hl3/one-a-day-healthy-americans (same);

28  http://www.ispot.tv/ad/7Jid/one-a-day-vitacraves-gummies-lets-do-more (same).

1  14.     Even though Plaintiffs and other reasonable consumers should not be

2  forced to look beyond the deceptive representations on Bayer One A Day Supplements'

3  labeling and marketing materials to discover the truth about these Supplements, due to

4  the nature of all supplements, the majority of consumers could not even discover the

5  truth without a nutrition science degree.

6  15.     Thus, even if consumers review Bayer One A Day Supplements' nutrition

7  panels and ingredients lists, they will not be able to determine whether they will actually

8  experience Bayer's promised health benefits. Thus, Plaintiffs and other reasonable

9  consumers are misled into believing Bayer's deceptive claims about its One A Day

10  Supplements.

11  **JURISDICTION AND VENUE**

12  16.     This court has jurisdiction over all causes of action asserted herein,

13  pursuant to 28 U.S.C. § 1332(a) and (d) because the aggregate claims of the Class exceed

14  the sum or value of $5,000,000 and there is diversity of citizenship between proposed

15  class members and Bayer.

16  17.     Venue is appropriate in the Northern District of California pursuant to

17  28 U.S.C. § 1391(b)(2) because substantial acts in furtherance of the alleged improper

18  conduct, including the dissemination of deceptive information regarding the benefits of

19  Bayer One A Day Supplements, occurred within this District, and Plaintiff Colleen

20  Gallagher resides in the District.

21  18.     Bayer has sufficient minimum contacts with California and has

22  intentionally availed itself of the markets in California through the marketing and sale of

23  One A Day Supplements in California, rendering the exercise of jurisdiction by this

24  Court permissible under traditional notions of fair play and substantial justice.

25  / / /

26  / / /

27  / / /

28

SECOND AMENDED CLASS ACTION COMPLAINT

**THE PARTIES**

**Plaintiffs**

19.     Plaintiff Colleen Gallagher ("Gallagher") is a resident of California. During the Class Period (as defined below), in California, she purchased Bayer One A Day Women's Supplement from one or more retailers, including Walgreens, for personal, family, or household purposes. The label on the Supplement stated that it was formulated to support heart health, immunity, and physical energy. Gallagher read these representations and has seen similar representations made by Bayer relating to the Supplement in online, print, or television advertising. Gallagher relied upon Bayer's representations when she purchased Bayer One A Day Women's Supplement.

20.     Plaintiff Ilana Farar ("Farar") is a resident of California. During the Class Period (as defined below), in California, she purchased Bayer One A Day Women's Supplement from one or more retailers, including CVS, for personal, family, or household purposes. The label on the Supplement stated that it was formulated to support heart health, immunity, and physical energy. Farar read these representations and has seen similar representations made by Bayer relating to the Supplement in online, print, or television advertising. Farar relied upon Bayer's representations when she purchased Bayer One A Day Women's Supplement.

21.     Plaintiff Andrea Lopez ("Lopez") is a resident of Florida. During the Class Period (as defined below), in Florida, she purchased Bayer One A Day Women's Supplement from one or more retailers, including Costco, for personal, family, or household purposes. The label on the Supplement stated that it was formulated to support heart health, immunity, and physical energy. Lopez read these representations and has seen similar representations made by Bayer relating to the Supplement in online, print, or television advertising. Lopez relied upon Bayer's representations when she purchased Bayer One A Day Women's Supplement.

SECOND AMENDED CLASS ACTION COMPLAINT

cv-04601-WHO Document 58 Filed 03/30/15 Page 8 of 39

22.     Plaintiff JoAnn Cordaro ("Cordaro") is a resident of New York. During the Class Period (as defined below), in New York, she purchased Bayer One A Day Women's Supplement from one or more retailers, including Wal-Mart, for personal, family, or household purposes. The label on the Supplement stated that it was formulated to support heart health, immunity, and physical energy. Cordaro read these representations and has seen similar representations made by Bayer relating to the Supplement in online, print, or television advertising. Cordaro relied upon Bayer's representations when she purchased Bayer One A Day Women's Supplement.

23.     Plaintiff Rosanne Cosgrove ("Cosgrove") is a resident of New York. During the Class Period (as defined below), in New York, she purchased Bayer One A Day Women's Supplement from one or more retailers, including Costco, for personal, family, or household purposes. The label on the Supplement stated that it was formulated to support heart health, immunity, and physical energy. Cosgrove read these representations and has seen similar representations made by Bayer relating to the Supplement in online, print, or television advertising. Cosgrove relied upon Bayer's representations when she purchased Bayer One A Day Women's Supplement.

**Defendants**

24.     Defendant Bayer AG is a German multinational chemical and pharmaceutical company.

25.     Defendant Bayer Corporation is an Indiana corporation and is wholly owned by Bayer AG.

26.     Bayer HealthCare LLC is a Delaware limited liability company and wholly owned by Bayer Corporation. Bayer HealthCare LLC is responsible for the marketing, distribution, and sale of Bayer One A Day Supplements to millions of consumers throughout the United States.

27.     All three Defendants have appeared in this case.

SECOND AMENDED CLASS ACTION COMPLAINT

28.     This Second Amended Class Action Complaint ("Complaint") jointly refers to all three defendants as "Bayer," in the singular, unless the context demands otherwise. In 2013, Bayer reported 176 million Euros (roughly 225 million dollars) in sales attributable to its One A Day Supplements.[15]

### GENERAL ALLEGATIONS

29.     Throughout the Class Period (as defined below), Bayer engaged in a widespread marketing campaign to mislead consumers about the nature, composition, and nutritional and health benefits of its One A Day Supplements in order to make these Supplements more desirable to consumers, increase sales, and gain market share.

30.     Each of the Claims (heart health, immunity, and energy) appear prominently in Bayer's marketing for its One A Day Supplements.

31.     All three of these Claims are false, misleading, and deceptive. They violate the federal Food, Drug, and Cosmetic Act ("FDCA"), California's Sherman Law, and consumer protection laws in California, Florida, and New York.

32.     Each variety of Bayer One A Day Supplement is substantially similar to the Supplements purchased by Plaintiffs because each Supplement prominently bears the One A Day logo, makes one or more of the same unlawful Claims, and provides an essentially identical combination of relevant vitamins and minerals.[16]

33.     Each of Bayer's Claims has been proven false by numerous scientific studies. It is not uncommon for such studies to contain a discussion section where the authors discuss the results of previous studies by other scientists, some of which may have yielded differing results based upon different subjects or methodology. Ultimately, however, the authors will state a conclusion based upon the totality of data presented. A Claim is false if it contradicts these conclusions.

---

[15] Bayer AG, 2013 Annual Report 110 (2014).

[16] As noted above, Bayer's Claims are based on vitamin A, vitamin B6, vitamin B12, vitamin C, vitamin D, vitamin E, folic acid (vitamin B9), thiamin, riboflavin, niacin (vitamin B3), and (with the exception of One A Day Essential) selenium.

**Heart Health**

34.     Bayer claims that many of its One A Day Supplements "support heart health," including One A Day Women's Formula (the product purchased by each Plaintiff), One A Day Men's 50+, One A Day Men's Health Formula, One A Day Women's 50+, One A Day Menopause Formula, One A Day Essential, One A Day VitaCraves, One A Day Men's VitaCraves, One A Day VitaCraves Sour Gummies, and One A Day Energy.

35.     Bayer makes a heart health Claim for these Supplements on its One A Day website, on product packaging, and in print and television advertisements. See Illustration 1 below for a representative graphic of One A Day Women's Formula (the product bought by Plaintiffs).

**Illustration 1**
**One A Day Women's Formula**



36.     Bayer also uses television advertisements to link its One A Day heart health Claims with cardiovascular disease. For example, television advertisements for One A Day Men's 50+ state that the product is "a complete multivitamin designed for

men's health concerns as we age." During the commercial, the claim "[s]upports heart and eye health"[17] appears prominently on the screen while a voice-over mentions that the Supplement is "designed for men's health concerns as we age." As most Americans know, "[a]s you get older, your risk for CHD and heart attack rises."[18] The juxtaposition of the heart health Claim and the voice-over leads a consumer to believe that taking Bayer One A Day Men's 50+ will support heart health.

**Illustration 2**
**One A Day Men's 50+ television commercial**



37.     Bayer makes its heart health Claim based on its Supplements having vitamins B6, B12, C, E, and folic acid.[19]

38.     Scientists have examined whether supplements with these vitamins support heart health, and studies have shown that they do not. For instance, the

---

[17] *Available at* http://www.ispot.tv/ad/7VFd/one-a-day-mens-50-; http://www.ispot.tv/ad/7qTs/one-a-day-mens-50-hiking

[18] Nat'l Heart, Lung and Blood Institute, Health Topics, Coronary Heart Disease Risk Factors, http://www.nhlbi.nih.gov/health/health-topics/topics/hd/atrisk (last visited March 13, 2015).

[19] Folic acid is vitamin B9 but is often described (including by Bayer) as "folic acid."

National Institutes of Health ("NIH") and the American Heart Association confirm that supplementation with vitamin B6, B12, C, E, and folic acid does not support heart health.[20] In fact, the authorities compiled by the NIH do not even link deficiency of these vitamins with heart health.

39.     Bayer markets Supplements bearing the heart health Claim to all American consumers. Because most American consumers get enough vitamins and minerals from food, these consumers will not reap the alleged benefit.

40.     Nor will the minority of American consumers suffering from a vitamin deficiency experience the heart health support Bayer promises because studies examining supplementation with these vitamins do not show that they support heart health in any way. In fact, NIH's comprehensive compilation of studies indicates that Bayer's Supplements will provide no heart health "support" at all.[21]

41.     Because scientific evidence confirms that supplementation with vitamins B6, B12, C, E, and folic acid does not support heart health, Bayer's heart health Claim is false and misleading.

42.     Because Bayer's heart health Claim is false and misleading, it constitutes illegal marketing and advertising.

43.     A structure/function claim is any claim that a product is intended to affect the structure or any function of the body. Supplements may make structure/function

---

[20] *See, e.g.*, Nat'l Inst. of Health, Office of Dietary Supplements, Health Professional Factsheet: Vitamin B6; American Heart Association Nutrition Committee, A.H. Lichtenstein *et al.*, *Diet and lifestyle recommendations revision 2006: a scientific statement from the American Heart Association Nutrition Committee*, 114 CIRCULATION 82-96 (2006); Nat'l Inst. of Health, Office of Dietary Supplements, Health Professional Factsheet: Vitamin E; Nat'l Inst. of Health, Office of Dietary Supplements, Health Professional Factsheet: Vitamin C.

[21] *See, e.g.*, Nat'l Inst. of Health, Office of Dietary Supplements, Health Professional Factsheet: Vitamin B6; American Heart Association Nutrition Committee, A.H. Lichtenstein *et al.*, *Diet and lifestyle recommendations revision 2006: a scientific statement from the American Heart Association Nutrition Committee*, 114 CIRCULATION 82-96 (2006); Nat'l Inst. of Health, Office of Dietary Supplements, Health Professional Factsheet: Vitamin E; Nat'l Inst. of Health, Office of Dietary Supplements, Health Professional Factsheet: Vitamin C.

1    claims but may not—expressly or by implication—claim to diagnose, mitigate, treat,

2    cure, or prevent a specific disease or class of diseases.

3        44.    Structure/function claims violate both state and federal law if they are false

4    or misleading in any respect. Because Bayer's heart health Claim is false and misleading,

5    it is an illegal structure/function claim.

6        45.    A disease-prevention claim is any claim that a product is intended for use

7    in the diagnosis, cure, mitigation, treatment, or prevention of disease. Absent FDA

8    approval, a Supplement making a disease-prevention claim is illegal under both state

9    and federal food and drug law, and selling such a product is implicitly misleading and

10   deceptive.[22]

11       46.    A consumer perception survey[23] shows that many of Bayer's consumers

12   will interpret "supports heart health" as a disease-prevention claim. After viewing a

13   label for the product purchased by Plaintiffs (Women's Formula[24]), 42% of respondents

14   believed the product may help prevent heart disease, and 32% believed it may help

15   prevent cardiovascular disease.

16       47.    In the same survey, after viewing Bayer's Men's Health Formula, 54% of

17   respondents believed the product may help prevent heart disease, and 40% believed it

18   may help prevent cardiovascular disease. See Illustration 3 below.

19   / / /

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   _____

[22] Cal. Health & Safety Code §§ 109875, *et seq.* California's Sherman Law expressly
26   adopts the federal labeling requirements of the Federal Food, Drug, and Cosmetic Act
     and the Nutrition Labeling and Education Act.

27   [23] Consumer Perception Study on Bayer Supplements (March 2015) (unpublished survey
     results commissioned by Plaintiffs).

28   [24] See Illustration 1 for product packaging.

**Illustration 3**
**One A Day Men's Health Formula**



48.     Because Bayer represents throughout its marketing campaign that its One A Day Supplements can be used in the cure, mitigation, treatment, or prevention of heart disease, and because Plaintiffs and other reasonable consumers interpret Bayer's heart health Claim to mean that that taking One A Day Supplements can help prevent heart disease or cardiovascular disease, the heart health Claim is also an illegal disease-prevention claim.

49.     For all the reasons set forth above—and regardless of whether it is considered a marketing or advertising claim, a structure/function claim, or a disease-prevention claim—Bayer's heart health Claim is illegal under state and federal laws.

/ / /

/ / /

/ / /

/ / /

**Immunity**

50.     Bayer claims that its One A Day Supplements help "support immunity," on the One A Day website, on product packaging, and in print and television advertisements.

51.     Bayer makes this Claim for many of its One A Day Supplements, including One A Day Women's Formula (the product purchased by each Plaintiff), One A Day Women's 50+, One A Day Men's Health Formula, One A Day Men's 50+, One A Day Women's Petites, One A Day Women's Plus Healthy Skin Support, One A Day Teen Advantage for Her, One A Day Teen Advantage for Him, One A Day Essential, One A Day VitaCraves, One A Day VitaCraves Gummies Plus Immunity Support, One A Day Women's VitaCraves, One A Day Men's VitaCraves, One A Day VitaCraves Sour Gummies, and One A Day Energy.

52.     The marketing and context in which Bayer makes its immunity Claim link this Claim to the concept of getting sick less often or otherwise having some support for consumers' immune systems.

53.     For example, Bayer makes its immunity Claim in full-page magazine advertisements. See Illustration 4 below.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1

**Illustration 4**

2
**One A Day VitaCraves plus Immunity Support magazine advertisement**

3

4

5

6

7

8

9

10



11

12

13

14

15

16

17

18

19

20
**AD CODE: ONEAPM-0222    SOURCE: Sports Illustrated-DEC 27 10**

21      54.      Bayer also prominently makes this Claim on the label of the One A Day

22   Essential Supplement, pictured below with the immunity claim highlighted with a red

23   box. See Illustration 5 below.

24   / / /

25   / / /

26   / / /

27   / / /

28

1

**Illustration 5**

2

**One A Day Essential
Front Panel**



10

**Top Panel**



18        55.      Bayer makes its immunity Claim based on its Supplements having vitamin

19   A, C, and E, selenium, iron, beta-carotene, and zinc.

20        56.      Bayer's immunity Claim is false because scientific studies confirm that

21   supplementation with these vitamins and minerals has no effect on the immunity of the

22   majority of adults in developed countries like the United States.[25]

23   _____
[25] *E.g.*, Nat'l Inst. of Health, Office of Dietary Supplements, Health Professional
Factsheet: Vitamin C ("... regular intakes of vitamin C at doses of at least 200 mg/day do
24   not reduce the incidence of the common cold in the general population") ("vitamin C
supplementation, usually in combination with other micronutrients, does not affect
25   cancer risk."); J.M. Graat et al., *Effect of Daily Vitamin E and Multivitamin-mineral
Supplementation on Acute Respiratory Tract Infections in Elderly Persons: A Randomized
26   Controlled Trial*, 288 JAMA 715-21 (Aug. 2002); B.A. Liu et al., *Effect of Multivitamin and
Mineral Supplementation on Episodes of Infection in Nursing Home Residents*, 55 J. AM.
27   GERIATR. SOC. 35-42 (Jan. 2007); Salah Gariballa, *Vitamin and Mineral Supplements for
Preventing Infections in Older People*, 331 B.M.J. 304-05 (Aug. 2005); Donald V. Veverka et

28

57.    Bayer's immunity Claim is refuted by randomized controlled trials[26]—the gold standard of clinical research—which show that, as measured by the number, severity, or length of illnesses, taking multivitamin/multimineral supplements does not affect immunity.[27]

58.    Bayer markets Supplements bearing the immunity Claim to all American consumers. Because most American consumers get enough vitamins and minerals from food, these consumers will not reap the alleged benefit.

59.    NIH's comprehensive compilation of studies further indicates that, unless an individual suffers from rare vitamin or mineral deficiencies, Bayer's Supplements will provide no immunity support at all.[28]

---

al., *Use of Zinc Supplements to Reduce Upper Respiratory Infections in United States Air Force Academy Cadets*, 15 COMPLIMENTARY THERAPIES IN CLINICAL PRACTICE 91-95 (May 2009); Nat'l Inst. of Health, Office of Dietary Supplements, Health Professional Factsheet: Selenium; R.M. Douglas *et al.*, *Vitamin C for Preventing and Treating the Common Cold*, 3 COCHRANE DATABASE SYST. REV. CD000980 (2007); Madeline Simasek et al., *Treatment of the Common Cold*, 75 AM. FAMILY PHYSICIAN 515 (2007). E. Villamor *et al.*, *Effects of Vitamin A Supplementation on Immune Responses and Correlation with Clinical Outcomes*, 3 CLIN. MICROBIOLOGY REV. 446-64 (July 2005). Iron supplementation may even increase the risk of infection. *See* Stephen J. Oppenheimer, *Iron and Its Relation to Immunity and Infectious Disease*, 131 J. NUTRITION 616S (Feb. 2001).

[26] A randomized controlled trial is a study in which people are allocated at random (by chance alone) to receive one of several clinical interventions, and one of these interventions is the standard of comparison or control.

[27] Audrey I. Stephen *et al.*, *A Systematic Review of Multivitamin and Multimineral Supplementation for Infection*, 19(3) J. HUMAN NUTRITION & DIETETICS 179 (June 2006) (a meta-analysis of 17 randomized controlled trials found no evidence for "a reduction in episodes of infection, the number of days of infection, or antibiotic use" in participants supplemented with multivitamins).

[28] Nat'l Inst. of Health, Office of Dietary Supplements, Health Professional Factsheet: Vitamin C (". . . regular intakes of vitamin C at doses of at least 200 mg/day do not reduce the incidence of the common cold in the general population") ("vitamin C supplementation, usually in combination with other micronutrients, does not affect cancer risk."); J.M. Graat et al., *Effect of Daily Vitamin E and Multivitamin-mineral Supplementation on Acute Respiratory Tract Infections in Elderly Persons: A Randomized Controlled Trial*, 288 JAMA 715-21 (Aug. 2002); B.A. Liu et al., *Effect of Multivitamin and Mineral Supplementation on Episodes of Infection in Nursing Home Residents*, 55 J. AM. GERIATR. SOC. 35-42 (Jan. 2007); Salah Gariballa, *Vitamin and Mineral Supplements for Preventing Infections in Older People*, 331 B.M.J. 304-05 (Aug. 2005); Donald V. Veverka et al., *Use of Zinc Supplements to Reduce Upper Respiratory Infections in United States Air Force Academy Cadets*, 15 COMPLIMENTARY THERAPIES IN CLINICAL PRACTICE 91-95 (May 2009); Nat'l Inst. of Health, Office of Dietary Supplements, Health Professional Factsheet: Selenium;

60.     Because scientific evidence confirms that supplementation with vitamins A, C, and E, selenium, iron, beta-carotene, and zinc does not support immunity, Bayer's immunity Claim is false and misleading.

61.     Because Bayer's immunity Claim is false and misleading, it constitutes illegal marketing and advertising.

62.     A structure/function claim is any claim that a product is intended to affect the structure or any function of the body. Supplements may make structure/function claims but may not—expressly or by implication—claim to diagnose, mitigate, treat, cure, or prevent a specific disease or class of diseases.

63.     Structure/function claims violate both state and federal law if they are false or misleading in any respect. Because Bayer's immunity Claim is false and misleading, it is an illegal structure/function claim.

64.     A disease-prevention claim is any claim that a product is intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease. Absent FDA approval, a Supplement making a disease-prevention claim is illegal under both state and federal food and drug law, and selling such a product is implicitly misleading and deceptive.[29]

65.     The consumer perception survey discussed above[30] shows that many of Bayer's consumers will interpret "supports immunity" as a disease-prevention claim. After viewing a label for the product purchased by Plaintiffs (Women's Formula[31]), 31% of respondents believed the product may help people get sick less often, 30% of respondents believed the product may help the body's ability to resist infection, and 26% of respondents believed the product may help prevent disease generally.

---

[29] Cal. Health & Safety Code §§ 109875, *et seq.* California's Sherman Law expressly adopts the federal labeling requirements of the Federal Food, Drug, and Cosmetic Act and the Nutrition Labeling and Education Act.

[30] Consumer Perception Study on Bayer Supplements (March 2015) (unpublished survey results commissioned by Plaintiffs).

[31] See Illustration 1 for product packaging.

1

66.     In the same survey, after viewing Bayer's Women's 50+ Healthy

2

Advantage, 30% of respondents believed the product may help people get sick less

3

often, 31% of respondents believed the product may help the body's ability to resist

4

infection, and 28% of respondents believed the product may help prevent disease

5

generally. *See* Illustration 6 below.

6

**Illustration 6**

7

**One A Day Women's 50+ Healthy Advantage**

8



19

67.     Because Bayer represents throughout its marketing campaign that its One

20

A Day Supplements can be used in the cure, mitigation, treatment, or prevention of

21

disease, and because Plaintiffs and other reasonable consumers interpret Bayer's

22

immunity Claim to mean that that taking One A Day Supplements can help them get

23

sick less often, *i.e.*, that these products will help prevent disease,[32] the immunity Claim is

24

also an illegal disease-prevention claim.

25

26

27

[32] The FTC has found that "reasonable consumers may interpret an advertisement to mean that the product will reduce the likelihood of getting [the disease], even if respondent includes language indicating that the science supporting the effect is limited in some way." *In re The Dannon Company, Inc.*, FTC File No. 0823158, Analysis of Proposed Consent Order to Aid Public Comment 80053 (Dec. 15, 2010),

28

1    68.    For all the reasons set forth above—and regardless of whether it is

2  considered a marketing or advertising claim, a structure/function claim, or a disease-

3  prevention claim—Bayer's immunity Claim is illegal under state and federal laws.

4  **Physical Energy**

5    69.    Bayer claims that its One A Day Supplements "support physical energy."

6  Plaintiffs and other reasonable consumers interpret energy claims to mean that they will

7  feel more energetic simply due to taking these Supplements. Bayer's energy claim is

8  false and deceives consumers.

9    70.    Bayer makes deceptive energy claims for several of its One A Day

10  Supplements, including One A Day Women's Formula (the product purchased by each

11  Plaintiff), One A Day Women's 50+, One A Day Men's Health Formula, One A Day

12  Men's 50+, One A Day Women's Petites, One A Day Menopause Formula, One A Day

13  Women's Active Mind & Body, One A Day Women's Plus Healthy Skin Support, One A

14  Day Teen Advantage for Her, One A Day Teen Advantage for Him, One A Day

15  Essential, One A Day VitaCraves, One A Day Women's VitaCraves, One A Day Men's

16  VitaCraves, One A Day VitaCraves Sour Gummies, and One A Day Energy.

17    71.    Bayer makes energy claims for these products on the One A Day website,

18  on product packaging, and in print and television advertisements.

19    72.    For example, one television advertisement for Bayer One A Day

20  VitaCraves with Energy Support shows a man performing gymnastics on a tight rope

21  while the voice-over says, "[f]or those who want to enjoy their days, not just get through

22  them: New One A Day VitaCraves with Energy Support. The only complete gummy

23  multivitamin that supports energy and mental alertness.  New—from One A Day."[33]

24  After the man dismounts the tightrope, the following graphic is displayed:

25

26  _____

www.ftc.gov/os/fedreg/

27  2010/december/101221dannonfrn.pdf (last visited Aug. 14, 2014).

[33] http://www.ispot.tv/ad/7yV2/one-a-day-adult-vitacraves-gummies-with-energy-

28  support-tightrope (last visited Aug. 14, 2014).

1

2

**Illustration 7**
**One A Day VitaCraves with Energy Support television commercial**



3

4

5

6

7

8

9

10

11

12

13

14      73.     Bayer's website for its One A Day Energy Supplement, promising to "help

15   convert food to energy" is pictured below with the energy claims highlighted.[34]

16

17

**Illustration 8**
**One A Day product website**

18

19

20

21

22

23

24

25

26

27

28

[34] One A Day website, One A Day Energy, http://oneaday.com/energy.html (last visited Aug. 14, 2014) (emphasis added).

74. Bayer makes its energy claims based on its products' vitamin B6, B12, pantothenic acid (vitamin B5), chromium, thiamin (vitamin B1), riboflavin (vitamin B2), niacin (vitamin B3), and folic acid (vitamin B9) content.

75. However, NIH and scientific studies confirm that no amount of supplementation with these vitamins or this mineral has any effect on the energy levels of typical Americans (i.e., individuals who are not vitamin or mineral deficient).[35]

76. Bayer's claims are false because scientific evidence confirms that supplementation with vitamin B6, B12, pantothenic acid (vitamin B5), chromium, thiamin (vitamin B1), riboflavin (vitamin B2), niacin (vitamin B3), or folic acid (vitamin B9) does not affect the energy levels of typical Americans.

77. Plaintiffs and other reasonable consumers interpret Bayer's deceptive energy claims to mean that by taking Bayer's Supplements, they will experience increased energy. However, because Bayer's products will not in fact increase consumers' energy, Bayer's energy claims are illegal and deceptive, and reasonable consumers are likely to be deceived.

## CLASS ACTION ALLEGATIONS

78. Plaintiffs bring this action as a class action pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure for the time period beginning when Bayer first made one or more of its Claims through the time this Court rules on class certification, inclusive ("Class Period").

---

[35] *See* Mayo Clinic, Drugs and Supplements, Vitamin B6 (Pyridoxine), http://www.mayoclinic.org/drugs-supplements/vitamin-b6/background/hrb-20058788 (last visited Aug. 14, 2014); Nat'l Inst. of Health, Office of Dietary Supplements, Health Professional Factsheet: Vitamin B12 ("vitamin B12 supplementation appears to have no beneficial effect on performance in the absence of a nutritional deficit."); Mayo Clinic, Drugs and Supplements, Pantothenic Acid, http://www.mayoclinic.org/drugs-supplements/pantothenic-acid-oral-route/description/drg-20065349 (last visited Aug. 14, 2014) ("Vitamins alone will not take the place of a good diet and will not provide energy."); Anthony Komaroff, *Do "Energy Boosters" Work?*, Harvard Health Blog (Nov. 15, 2013) http://www.health.harvard.edu/blog/do-energy-boosters-work-201311156878 (last visited Aug. 14, 2014); Nat'l Inst. of Health, Medline Plus, Folic Acid, http://www.nlm.nih.gov/medlineplus/druginfo/natural/1017.html (last visited Aug. 14, 2014). *See also* Carrie Dennett, *Vitamin B for Energy? Not So Fast*, Seattle Times (Oct. 8, 2012), *available at* http://seattletimes.com/html/health/2019330308_healthdennett07.html.

79.     Plaintiffs seek to represent the following classes:

**National**:  All persons in the United States who purchased Bayer One A Day Supplements in the United States that contained one or more Claims during the Class Period. Excluded from the Class are Defendants' officers and directors and the immediate families of Defendants' officers and directors.  Also excluded from the Class are the Defendants and their subsidiaries, parents, affiliates, joint venturers, and any entity in which Defendants have or have had a controlling interest.

**California**:  All persons in California who purchased Bayer One A Day Supplements in California that contained one or more Claims during the Class Period. Excluded from the Class are Defendants' officers and directors and the immediate families of Defendants' officers and directors. Also excluded from the Class are the Defendants and their subsidiaries, parents, affiliates, joint venturers, and any entity in which Defendants have or have had a controlling interest.

**Florida**:  All persons in Florida who purchased Bayer One A Day Supplements in Florida that contained one or more Claims during the Class Period. Excluded from the Class are Defendants' officers and directors and the immediate families of Defendants' officers and directors. Also excluded from the Class are the Defendants and their subsidiaries, parents, affiliates, joint venturers, and any entity in which Defendants have or have had a controlling interest.

**New York**:  All persons in New York who purchased Bayer One A Day Supplements in New York that contained one or more Claims during the Class Period. Excluded from the Class are Defendants' officers and directors and the immediate families of Defendants' officers and directors. Also excluded from the Class are the Defendants and their subsidiaries, parents, affiliates, joint venturers, and any entity in which Defendants have or have had a controlling interest.

80.     For purposes of the Complaint, the term "Class" refers collectively to the National, California, Florida, and New York Classes, and the phrase "Class Members" refers to all members of the Class, including the named Plaintiffs.

81.     This action has been brought and may properly be maintained as a class action against Bayer pursuant to the provisions of Federal Rule of Civil Procedure 23 because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

82.     Numerosity: Plaintiffs do not know the exact size of the Class, but given the nature of the claims and Bayer's sales of One A Day Supplements nationally,

Plaintiffs believe that Class Members are so numerous that joinder of all members of the Class is impracticable.

83.   Common Questions Predominate: This action involves common questions of law and fact because each Class Member's claim derives from the same deceptive practices. The common questions of law and fact involved predominate over questions that affect only Plaintiffs or individual Class Members. Thus, proof of a common or single set of facts will establish the right of each member of the Class to recover. Among the questions of law and fact common to the Class are:

- Whether Bayer marketed and sold One A Day Supplements to Plaintiffs, and those similarly situated, using deceptive statements or representations;

- Whether Bayer omitted or misrepresented material facts in connection with the marketing and sale of One A Day Supplements;

- Whether Bayer engaged in a common course of conduct as described in this Complaint;

- Whether Bayer's marketing and sales of One A Day Supplements constitutes a deceptive practice; and

- Whether, and to what extent, injunctive relief should be imposed on Bayer to prevent such conduct in the future.

84.   Typicality: Plaintiffs' claims are typical of the Class because all Class Members bought products bearing one or more of Bayer's deceptive claims. Bayer's deceptive actions concern the same business practices described in this Complaint, irrespective of where they occurred or were received. The injuries and damages of each Class Member were caused directly by Bayer's illegal conduct as alleged in this Complaint.

85.   Adequacy: Plaintiffs will fairly and adequately protect the interests of all Class Members because it is in their best interests to prosecute the claims alleged in this Complaint to obtain full compensation they are due for Bayer's illegal conduct. Plaintiffs also have no interests that conflict with or are antagonistic to the interests of Class Members. Plaintiffs have retained highly competent and experienced class action

attorneys to represent their interests and that of the Class. No conflict of interest exists between Plaintiffs and Class Members because all questions of law and fact regarding liability of Bayer are common to Class Members and predominate over the individual issues that may exist, such that by prevailing on their own claims, Plaintiffs necessarily will establish Bayer's liability to all Class Members. Plaintiffs and their counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the Class Members and are determined to diligently discharge those duties seeking the maximum possible recovery for the Class Members.

86.     Superiority: There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the Class will tend to establish inconsistent standards of conduct for Bayer and result in the impairment of Class Members' rights and disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, as the damages suffered by each individual member of the Class may be relatively small, the expenses and the burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

87.     The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Bayer has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

88.     Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

1

2

**FIRST CAUSE OF ACTION**
**(California Business and Professions Code §§ 17200, *et seq.* –**
**Unlawful, Unfair, and Fraudulent Business Acts and Practices)**

3      89.      Plaintiffs Gallagher and Farar incorporate and reallege the unlawful,

4   unfair, and fraudulent business acts and practices of Bayer as set forth above on behalf

5   of the California Class.

6      90.      In this regard, Bayer's manufacturing, marketing, distributing, and selling

7   of One A Day Supplements violates California's Sherman Food, Drug, and Cosmetics

8   Law, Cal. Health & Safety Code § 109875, *et seq.* ("Sherman Law").

9      91.      The relevant part of the Sherman Law declares that food is misbranded if

10   its labeling is false or misleading in any particular way and further provides that it is

11   unlawful for any person to misbrand any food. Cal. Health & Safety Code §§ 110660,

12   110765.

13      92.      The Sherman Law defines a "person" as "any individual, firm,

14   partnership, trust, corporation, limited liability company, company, estate, public or

15   private institution, association, organization, group, city, county, city and county,

16   political subdivision of this state, or other governmental agency within the state and any

17   representative, agent, or agency of any of the foregoing." Cal. Health & Safety Code §§

18   109995. Bayer is a corporation and, therefore, a "person" within the meaning of the

19   Sherman Act.

20      93.      The business practices alleged above are unlawful under the Consumers

21   Legal Remedy Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA"), which forbids deceptive

22   advertising.

23      94.      The business practices alleged above are unlawful under § 17200, *et seq.* by

24   virtue of violating Cal. Bus. & Prof. Code. §§ 17500, *et seq.*, which forbids untrue

25   advertising and misleading advertising.

26

27

28

95.     There is no benefit to consumers or competition by deceptively marketing dietary supplements like One A Day Supplements. Indeed, the harm to consumers and competition is substantial.

96.     Plaintiffs Gallagher and Farar and other member of the California Class who purchased Bayer's One A Day Supplements had no way of knowing that the product they bought was not actually as marketed. Thus, they could not have reasonably avoided the injury each of them suffered.

97.     The gravity of the consequences of Bayer's conduct as described above outweighs any justification, motive or reason therefore, particularly considering the available legal alternatives which exist in the marketplace, and it is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiffs Gallagher and Farar and other members of the California Class.

98.     Bayer's deceptive marketing of One A Day Supplements is likely to deceive reasonable California consumers. Indeed, Plaintiffs Gallagher and Farar and other members of the California Class were unquestionably deceived regarding the characteristics of Bayer's One A Day Supplements, as Bayer's marketing of the product omits the true results of taking these Supplements. Said acts are deceptive business acts and practices.

99.     This deception caused Plaintiffs Gallagher and Farar and other members of the California Class to purchase One A Day Supplements, or pay more than they would have for One A Day Supplements, had they known and understood the true nature and quality of the product.

100.    As a result of the business practices described above, Business and Professions Code § 17203 entitles Plaintiffs Gallagher and Farar and other members of the California Class, to an order enjoining such future conduct on the part of Bayer and such other orders and judgments which may be necessary to disgorge Bayer's ill-gotten

gains and to restore to any person in interest any money paid for One A Day Supplements as a result of the wrongful conduct of Bayer.

101. The above-described unlawful business acts and practices of Bayer, and each of them, present a threat and reasonable likelihood of deception to Plaintiffs Gallagher and Farar and other members of the California Class in that Bayer has systematically perpetrated and continues to perpetrate such acts or practices on members of the California Class by means of its deceptive manufacturing, marketing, distributing, and selling of One A Day Supplements.

### SECOND CAUSE OF ACTION
### (California Consumer Legal Remedies Act – Cal. Civ. Code § 1750, *et seq.*)

102. Plaintiffs Gallagher and Farar incorporate and reallege the unlawful and deceptive business acts and practices of Bayer as set forth above on behalf of the California Class.

103. This cause of action is brought pursuant to the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"). Plaintiff Farar provided Bayer with notice pursuant to Cal. Civ. Code § 1782.

104. Bayer's actions, representations, and conduct, as described above, and each of them, have violated and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale or lease of goods or services to consumers.

105. Plaintiffs Gallagher and Farar and other members of the California Class are "consumers" as that term is defined by the CLRA in Cal. Civ. Code § 1761(d).

106. The One A Day Supplement varieties that Plaintiffs Gallagher and Farar and other members of the California Class purchased from Bayer were "goods" within the meaning of Cal. Civ. Code § 1761(a).

107. By engaging in the actions, misrepresentations, and misconduct set forth above, Bayer has violated, and continues to violate, section 1770(a)(5) of the CLRA.

Specifically, in violation of Cal. Civ. Code § 1770(a)(5), Bayer's acts and practices constitute deceptive methods of competition, in that it misrepresents that its products have characteristics, uses, or benefits that they do not have.

108.     By engaging in the actions, misrepresentations, and misconduct set forth above, Bayer has violated, and continues to violate, section 1770(a)(7) of the CLRA. Specifically, in violation of Cal. Civ. Code § 1770(a)(7), Bayer's acts and practices constitute deceptive methods of competition, in that Bayer misrepresents the particular standard, quality, or grade of the goods.

109.     By engaging in the actions, misrepresentations, and misconduct set forth above, Bayer has violated, and continues to violate, § 1770(a)(16) of the CLRA. Specifically, in violation of Cal. Civ. Code § 1770(a)(16), Bayer's acts and practices constitute deceptive methods of competition, in that it represents that a subject of a transaction has been supplied in accordance with a previous representation when it has not.

110.     Plaintiffs Gallagher and Farar request that this Court enjoin Bayer from continuing to employ the unlawful methods, acts, and practices alleged herein, award damages, attorneys' fees, and any other relief the Court deems proper pursuant to Cal. Civ. Code §§ 1780 and 1781. If Bayer is not restrained from engaging in these types of practices on the future, Plaintiffs Gallagher and Farar and other members of the California Class will continue to suffer harm.

### THIRD CAUSE OF ACTION
**(California Business & Professions Code §§ 17500, *et seq.* - Untrue or Misleading Advertising)**

111.     Plaintiffs Gallagher and Farar incorporate and reallege the untrue or misleading advertising practices of Bayer as set forth above on behalf of the California Class, each of which constitutes untrue or misleading advertising under California Business and Professions Code §§ 17500, *et seq.*

112.    At all material times, Bayer engaged in a scheme of offering its One A Day Supplement varieties for sale to Plaintiffs Gallagher and Farar and other members of the California Class by way of, *inter alia*, commercial marketing. These marketing materials misrepresented or omitted the true results of taking these Supplements. Said advertisements and inducements were made within the State of California and come within the definition of advertising as contained in Business and Professions Code §§ 17500, *et seq.* in that such marketing materials were intended as inducements to purchase One A Day Supplements and are statements disseminated by Bayer to Plaintiffs Gallagher and Farar and the California Class and were intended to reach members of the California Class. Bayer knew, or in the exercise of reasonable care should have known, that these statements were untrue or misleading.

113.    In furtherance of this plan and scheme, Bayer has prepared and distributed within the State of California via commercial marketing, statements that deceptively represent benefits of the ingredients contained in, and the nature and quality of, One A Day Supplements. Consumers, including Plaintiffs Gallagher and Farar and members of the California Class, necessarily and reasonably relied on these materials concerning One A Day Supplements. Consumers, including Plaintiffs Gallagher and Farar and members of the California Class, were among the intended targets of such representations and would reasonably be deceived by such materials.

114.    The above acts of Bayer, in disseminating said deceptive and untrue statements throughout the State of California to consumers, including Plaintiffs Gallagher and Farar and members of the California Class, were and are likely to deceive reasonable consumers, including Plaintiffs Gallagher and Farar and other members of the California Class, by obfuscating the true nature of One A Day Supplements, all in violation of California Business and Professions Code § 17500.

115.    As a result of the above violations of California Business and Professions Code §§ 17500, *et seq.*, Bayer has been unjustly enriched at the expense of Plaintiffs

Gallagher and Farar and the other members of the California Class. Plaintiffs Gallagher and Farar and the California Class, pursuant to Business and Professions Code § 17535, are entitled to an order of this Court enjoining such future conduct on the part of Bayer, and such other orders and judgments which may be necessary to disgorge Bayer's ill-gotten gains and restore to any person in interest any money paid for One A Day Supplements as a result of the wrongful conduct of Bayer.

**FOURTH CAUSE OF ACTION**
**(Fla. Stat. §§ 501.201 *et seq.* - Unfair or Deceptive Practices)**

116.    Plaintiff Lopez incorporates and realleges the unfair and deceptive practices of Bayer as set forth above on behalf of the Florida Class, each of which constitutes an unfair or deceptive practice under Fla. Stat. § 501.204.

117.    The Florida Deceptive and Unfair Trade Practices Act makes unlawful "unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204.

118.    Bayer made representations regarding its One A Day Supplements via online, print, and television advertising as well as on the labeling of such products; these representations were false and misleading, constituting unfair or deceptive acts and practices.

119.    Bayer's representations were likely to deceive a consumer acting reasonably under the circumstances, and these representations did deceive consumers acting reasonably under the circumstances.

120.    Plaintiff Lopez and members of the Florida Class would not have purchased Bayer One A Day Supplements absent Bayer's representations.

121.    Plaintiff Lopez and members of the Florida Class were directly and proximately injured by Bayer's deceptive representations in that they each purchased Bayer One A Day Supplements that did not conform to what Bayer represented in the product's marketing and labeling.

122. As a result of Bayer's misleading and deceptive representations with respect to its One A Day Supplements, Plaintiff Lopez and members of the Florida Class suffered actual damages in an amount to be determined at trial.

123. Pursuant to Fla. Stat. § 501.211, Plaintiff Lopez seeks, on behalf of herself and the Florida Class, actual damages, punitive damages, attorneys' fees, and costs.

**FIFTH CAUSE OF ACTION**
**(Fla. Stat. § 817.41 - Misleading Advertising)**

124. Plaintiff Lopez incorporates and realleges the misleading advertising practices of Bayer as set forth above on behalf of the Florida Class, each of which constitutes misleading advertising under Fla. Stat. § 817.41.

125. Bayer made representations regarding its One A Day Supplements via online, print, and television advertising as well as on the labeling of such products; these representations constitute advertising.

126. Bayer's representations were false and constituted misrepresentations of material fact.

127. Bayer knew, or through the exercise of reasonable care could have known, that these representations were false.

128. Bayer made these representations for the purpose of selling its One A Day Supplements and intended that consumers would rely upon such representations in purchasing Bayer One A Day Supplements.

129. Plaintiff Lopez and members of the Florida Class justifiably relied upon Bayer's representations regarding its One A Day Supplements.

130. Bayer's representations constitute false advertising.

131. Plaintiff Lopez and members of the Florida Class were directly and proximately injured by Bayer's false advertising in that they purchased Bayer One A Day Supplements that did not conform to what was promised in Bayer's advertising.

132.     As a result of Bayer's false advertising, Plaintiff Lopez and members of the Florida Class suffered actual damages in an amount to be determined at trial and are entitled to such damages in addition to injunctive relief.

### SIXTH CAUSE OF ACTION
**(N.Y. Gen. Bus. Law § 349 - Deceptive Acts and Practices)**

133.     Plaintiffs Cordaro and Cosgrove incorporate and reallege the unlawful practices of Bayer as set forth above on behalf of the New York Class, each of which constitutes a deceptive act and practice under N.Y. Gen. Bus. Law § 349.

134.     N.Y. Gen. Bus. Law § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

135.     Bayer made representations regarding its One A Day Supplements via online, print, and television advertising as well as on the labeling of such products; these representations targeted consumers and were thus consumer-oriented.

136.     Bayer's representations regarding its One A Day Supplements are materially misleading and deceptive, and Plaintiffs Cordaro and Cosgrove and members of the New York Class would not have purchased Bayer One A Day Supplements absent Bayer's representations.

137.     Plaintiffs Cordaro and Cosgrove and members of the New York Class were directly and proximately injured by Bayer's deceptive marketing and labeling practices in that they purchased Bayer One A Day Supplements that did not conform to what was promised in Bayer's marketing and labeling.

138.     As a result of Bayer's misleading and deceptive marketing and labeling practices with respect to its One A Day Supplements, Plaintiffs and Class Members suffered actual damages in an amount to be determined at trial.

139.     N.Y. Gen. Bus. Law § 349 (h) provides a private right of action to recover the greater of each class member's actual damages or $50.

140.    Bayer willfully or knowingly violated N.Y. Gen. Bus. Law § 349, and N.Y. Gen. Bus. Law § 349(h) authorizes the Court to increase the award of damages to an amount not to exceed three times actual damages, up to $1,000 per class member, if the Court finds that Defendant willfully or knowingly violated this section.

141.    Section 349(h) also authorizes the Court to award attorneys' fees to a prevailing plaintiff in addition to damages.

### SEVENTH CAUSE OF ACTION
### (N.Y. Gen. Bus. Law § 350 - False Advertising)

142.    Plaintiffs Cordaro and Cosgrove incorporate and reallege the unlawful practices of Bayer as set forth above on behalf of the New York Class, each of which constitutes false advertising under N.Y. Gen. Bus. Law § 350.

143.    N.Y. Gen. Bus. Law § 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

144.    N.Y. Gen. Bus. Law § 350-a defines "false advertising" to mean "advertising, including labeling, of a commodity . . .  if such advertising is misleading in a material respect." N.Y. Gen. Bus. Law § 350-a(1).

145.    Bayer made representations regarding its One A Day Supplements via online, print, and television advertising as well as on the labeling of such products; these representations constitute advertising.

146.    Bayer's advertising regarding its One A Day Supplements targets consumers and is consumer-oriented.

147.    Bayer's representations regarding its One A Day Supplements are materially false, misleading, and deceptive, and Plaintiffs Cordaro and Cosgrove and members of the New York Class would not have purchased Bayer One A Day Supplements absent Bayer's representations.

148.    Plaintiffs Cordaro and Cosgrove and members of the New York Class were directly and proximately injured by Bayer's deceptive marketing and labeling practices

in that they purchased Bayer One A Day Supplements that did not conform to what was promised in Bayer's marketing and labeling.

149.    As a result of Bayer's misleading and deceptive marketing and labeling practices with respect to its One A Day Supplements, Plaintiffs and Class Members suffered actual damages in an amount to be determined at trial.

150.    Plaintiffs Cordaro and Cosgrove and members of the New York Class relied upon Bayer's advertising regarding its One A Day Supplement.

151.    N.Y. Gen. Bus. Law § 350-e(3) provides a private right of action to recover the greater of each class member's actual damages or $500.

152.    Bayer willfully or knowingly violated N.Y. Gen. Bus. Law § 350, and N.Y. Gen. Bus. Law § 350-e(3) authorizes the Court to increase the award of damages to an amount not to exceed three times actual damages, up to $10,000 per class member, if the Court finds that Defendants willfully or knowingly violated that section.

153.    Section 350-e(3) also authorizes the Court to award attorneys' fees to a prevailing Plaintiff in addition to damages.

### EIGHTH CAUSE OF ACTION
**(Restitution Based On Unjust Enrichment/Quasi-Contract)**

154.    Plaintiffs incorporate and reallege Bayer's unlawful practices as set forth above on behalf of the National Class.

155.    Bayer sold One A Day Supplements to Plaintiffs and the National Class that did not have the benefits that Bayer represented the products to have. Plaintiffs and other Class members would not have bought these Supplements if they had known that the promises Bayer made were false.

156.    As a result of Bayer's deceptive marketing and labeling of its One A Day Supplements, Bayer received a benefit at the expense of Plaintiffs and the National Class, and it is unjust for Bayer to retain that benefit.

157.    Under the circumstances, it is against equity and good conscience to permit Bayer to retain the ill-gotten benefits that it received from Plaintiffs and the National Class, in light of the fact that the One A Day Supplements they purchased were not what Bayer represented them to be. Thus, it is unjust or inequitable for Bayer to retain the benefit without restitution to Plaintiffs and the National Class.

158.    As a direct and proximate result of Bayer's actions, Bayer has been unjustly enriched, and Plaintiffs and the National Class have a right to restitution in an amount to be proven at trial.

## PRAYER FOR RELIEF

THEREFORE, Plaintiffs ask the Court to enter the following judgment:

1.    Approving of the Class, certifying Plaintiffs as representatives of the Class, and designating their counsel as counsel for the Class;

2.    Declaring that Bayer has committed the violations alleged herein;

3.    Granting damages, restitution, or disgorgement to Plaintiffs and the Class;

4.    Granting declaratory and injunctive relief to enjoin Defendants from engaging in the unlawful practices described in this Complaint;

5.    Granting compensatory damages, the amount of which is to be determined at trial;

6.    Granting punitive damages;

7.    Granting pre- and post-judgment interest;

8.    Granting attorneys' fees and costs; and

9.    Granting further relief as this Court may deem proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

Dated:  March 30, 2015        **KAPLAN FOX & KILSHEIMER LLP**

By:    ____/s/ *Laurence D. King*_____
                        Laurence D. King

Laurence D. King (SBN 206423)
lking@kaplanfox.com
Linda M. Fong (SBN 124232)
lfong@kaplanfox.com
350 Sansome Street, Suite 400
San Francisco, California 94104
Telephone: (415) 772-4700
Facsimile:   (415) 772-4707

**KAPLAN FOX & KILSHEIMER LLP**
Robert N. Kaplan (admitted *pro hac vice*)
rkaplan@kaplanfox.com
Lauren I. Dubick (admitted *pro hac vice*)
ldubick@kaplanfox.com
850 Third Avenue, 14th Floor
New York, New York 10022
Telephone: (212) 687-1980
Facsimile:   (212) 687-7714

**CENTER FOR SCIENCE IN THE PUBLIC INTEREST**
Maia Kats (*pro hac vice* to be filed)
MKats@cspinet.org
Amanda Howell (admitted *pro hac vice*)
ahowell@cspinet.org
1220 L Street, NW, Suite 300
Washington, DC  20005
Telephone: (202) 777-8385
Facsimile: (214) 827-2787

**STANLEY LAW GROUP**
Marc R. Stanley (pending *pro hac vice*)
marcstanley@mac.com
Martin Woodward (pending *pro hac vice*)
mwoodward@stanleylawgroup.com
Stephen Gardner (admitted *pro hac vice*)
steve@consumerhelper.com
3100 Monticello Avenue, Suite 770
Dallas, Texas 75205
Telephone: (214) 443-4300
Facsimile: (214) 443-0358

*Counsel for Plaintiffs*

SECOND AMENDED CLASS ACTION COMPLAINT

**EXHIBIT 1**

**BAYER ONE A DAY WEBSITE HOMEPAGE:**
http://www.oneaday.com/

