1  KAPLAN FOX & KILSHEIMER LLP
2  Laurence D. King (SBN 206423)
   *lking@kaplanfox.com*
   Linda M. Fong (SBN 124232)
3  *lfong@kaplanfox.com*
   350 Sansome Street, Suite 400
4  San Francisco, California 94104
   Telephone: (415) 772-4700
5  Facsimile:  (415) 772-4707

6  KAPLAN FOX & KILSHEIMER LLP          STANLEY LAW GROUP
   Robert N. Kaplan (admitted *pro hac vice*)   Stephen Gardner (admitted *pro hac vice*)
7  *rkaplan@kaplanfox.com*                *steve@consumerhelper.com*
   850 Third Avenue, 14th Floor          Amanda Howell (admitted *pro hac vice*)
8  New York, New York 10022              *ahowell@stanleylawgroup.com*
   Telephone: (212) 687-1980             6116 N. Central Expressway, Suite 1500
9  Facsimile:  (212) 687-7714            Dallas, Texas 75206
                                         Tel: (214) 443-4300
10 *Interim Lead Counsel*                Fax: (214) 443-0358

11

12                    UNITED STATES DISTRICT COURT

13                  NORTHERN DISTRICT OF CALIFORNIA

14

15 COLLEEN GALLAGHER, ILANA FARAR,       CASE NO.  3:14-cv-04601-WHO
   ANDREA LOPEZ, JOANN CORDARO, and
16 ROSANNE COSGROVE, on behalf of        **PLAINTIFFS' NOTICE OF MOTION,**
   themselves and all others similarly situated,   **MOTION, AND MEMORANDUM OF**
17                                        **POINTS AND AUTHORITIES IN**
                Plaintiffs,              **SUPPORT OF CLASS**
18                                        **CERTIFICATION**
        v.
19                                        Hearing Date:  May 17, 2017
                                         Time:          2:00 pm
20 BAYER AG, BAYER CORPORATION, and      Judge:         Hon. William H. Orrick
   BAYER HEALTHCARE LLC,                 Courtroom:     2, 17th Floor
21
                Defendants.
22

23

24            __REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED__

25

26

27

28

1

## NOTICE OF MOTION AND MOTION

2   PLEASE TAKE NOTICE that as soon as the matter may be heard, in Courtroom 2, 17th

3   Floor of the United States District Courthouse, 450 Golden Gate Avenue, San Francisco,

4   California, 94102,  before the Honorable William H. Orrick, Plaintiffs will present to the Court

5   this motion for an order: (1) certifying this case to proceed on behalf of a nationwide class and

6   California, Florida, and New York subclasses; (2) appointing Plaintiffs as the Class

7   Representatives; and (3) appointing Plaintiffs' counsel as Class Counsel. This Motion is made

8   pursuant to Federal Rule of Civil Procedure Rule 23 on the grounds that this matter meets all the

9   requirements of Rule 23.

10   This Motion is based upon this Notice, the accompanying Memorandum of Points and

11   Authorities and Declarations, the pleadings and files in this action, and any such other matters as

12   may be presented at or before the hearing.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

I.     INTRODUCTION ................................................................................... 1

II.     THE COMMON FACTS UNDERLYING PLAINTIFFS' CLAIMS .............................. 1

III.     THE PROPOSED CLASSES ....................................................................... 7

IV.     ARGUMENT ......................................................................................... 8

     A.     Legal Standards Governing Class Certification ..................................... 8

     B.     The Proposed Classes Satisfy The Requirements Of Rule 23(a) ........................... 9

         1.     The Proposed Classes are Sufficiently Numerous ..................................... 9

         2.     This Case Involves Common Questions of Law and Fact ...................... 10

         3.     Plaintiffs' Claims are Typical of the Claims of the Class ........................ 11

         4.     The Proposed Class Representative and Their Counsel will Fairly and Adequately Protect Class Interests .................................................... 11

     C.     The Requirements For Certification Under Rule 23(b)(2) Are Satisfied.............. 13

     D.     The Requirements for Certification Under Rule 23(b)(3) Are Satisfied.............. 13

         1.     Common Issues Predominate .................................................... 13

                 a.     Common Questions Predominate on Plaintiffs' California UCL and FAL Claims .................................................... 14

                 b.     Common Questions Predominate on Plaintiffs' California CLRA Claims .................................................... 16

                 c.     Common Issues Predominate on the New York GBL Claims ...... 17

                 d.     Common Issues Predominate on the Florida DUTPA Claims ...... 19

                 e.     Common Issues Predominate on the Unjust Enrichment Claims under California, Florida, and New York Law ................ 20

         2.     A Class Action is Superior to Any Other Means of Resolving Plaintiffs' Claims .................................................... 21

V.     CONCLUSION ......................................................................................... 24

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ackerman v. Coca-Cola Co.*,
No. CV-09-0395, 2010 WL 2925955(E.D.N.Y. July 21, 2010) .................................................. 18

*Allen v. Hyland's Inc.*,
300 F.R.D. 643 (C.D. Cal. 2014) ............................................................................................. 16

*Am. Home Prods. Corp. v. FTC*,
695 F.2d 681 (3d Cir. 1983) ..................................................................................................... 3

*Amchem Prods, Inc. v. Windsor*,
521 U.S. 591 (1997) ................................................................................................................. 8

*Arvida/JMB Partners v. Council of Villages, Inc.*,
733 So.2d 1026 (Fla. 4th DCA 1999) ..................................................................................... 21

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975) ................................................................................................... 14

*Broder v. MBNA Corp.*,
281 A.D.2d 369, 722 N.Y.S.2d 524 (1st Dep't 2001) ............................................................. 18

*Brown v. Kelly*,
609 F.3d 467 (2d Cir. 2010) ..................................................................................................... 8

*Chabner v. United of Omaha Life Ins. Co.*,
225 F.3d 1042 (9th Cir. 2000) ................................................................................................. 15

*Chavez v. Blue Sky Natural Beverage Co.*,
268 F.R.D. 365 (N.D. Cal. 2010) ...................................................................................... 15, 16

*Cortez v. Purolator Air Filtration Prods. Co.*,
23 Cal. 4th 163 (2000) ............................................................................................................ 15

*Cortigiano v. Oceanview Manor Home For Adults*,
227 F.R.D. 194 (E.D.N.Y. 2005) .............................................................................................. 9

*Cromer Finance Ltd. v. Berger*,
205 F.R.D. 113 (S.D.N.Y. 2001) ............................................................................................. 22

*Dukes v. Wal-Mart Stores, Inc.*,
222 F.R.D. 137 (N.D. Cal. 2004) ............................................................................................. 12

*Dupler v. Costco Wholesale Corp.*,
249 F.R.D. 29 (E.D.N.Y. 2008) ............................................................................................... 21

*Dura-Bilt Corp. v. Chase Manhattan Corp.*,
89 F.R.D. 87 (S.D.N.Y. 1981) ................................................................................................. 22

**TABLE OF AUTHORITIES**
(continued)

Page

*Eisen v. Carlisle & Jacqueline*,
417 U.S. 156 (1974) ........................................................................................................ 9

*Fitzpatrick v. Gen. Mills, Inc.*,
635 F.3d 1279 (11th Cir. 2011) ...................................................................................... 20

*Fitzpatrick v. General Mills*,
263 F.R.D. 687 (S.D. Fla. 2010), *vacated on other grounds*,
635 F.3d 1279 (11th Cir. 2011) ...................................................................................... 19

*Guido v. L'Oreal, USA, Inc.*,
Nos. CV 11-1067 CAS (JCx), CV 11-5465 CAS (JCx),
2012 WL 1616912 (C.D. Cal. May 7, 2012) .................................................................. 18

*Gulf Oil Co. v. Barnard*,
452 U.S. 89 (1981) ........................................................................................................... 8

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. June 9, 1998) ................................................................. 10, 14, 23

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992).......................................................................................... 11

*In re HiEnergy Techs., Inc. Sec. Litig.*,
No. 8:04CV01226 DOCJTLX, 2006 WL 2780058 (C.D. Cal. Sept. 26, 2006) ......................... 9

*In re Initial Public Offerings Secs. Litig.*,
471 F.3d 24 (2d Cir. 2006)............................................................................................... 9

*In re Nassau County Strip Search Cases*,
461 F.3d 219 (2d Cir. 2006)............................................................................................. 8

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
962 F. Supp. 450 (D.N.J. 1997) ..................................................................................... 23

*In re Scotts EZ Seed Litig.*,
304 F.R.D. 397 (S.D.N.Y. 2015) ................................................................................... 19

*In re THQ, Inc. Sec. Litig.*,
No. CV 00-1783AHM(EX), 2002 WL 1832145 (C.D. Cal. Mar. 22, 2002) ........................ 10

*In re Tobacco II Cases*,
46 Cal. 4th 298 (2009) .................................................................................. 14, 15, 16, 17

*In re Visa Check/MasterMoney Antitrust Litig.*,
280 F.3d 124 (2d Cir. 2001)........................................................................................... 19

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*,
571 F.3d 953 (9th Cir. 2009).......................................................................................... 14

*James D. Hinson Elec. Contracting Co. v. BellSouth Telecommunications, Inc.*,
275 F.R.D. 638 (M.D. Fla. 2011)................................................................................... 21

**TABLE OF AUTHORITIES**
(continued)

Page

*Jermyn v. Best Buy Stores, L.P.*,
   256 F.R.D. 418 (S.D.N.Y. 2009) ...................................................................... 19, 21

*Johnson v. Gen. Mills, Inc.*,
   275 F.R.D. 282 (C.D. Cal. 2011) .............................................................................. 17

*Jordan v. Cty. of Los Angeles*,
   669 F.2d 1311 (9th Cir.), *vacated on other grounds*, *Cty. of Los Angeles v. Jordan*, 459 U.S.
   810 (1982) ........................................................................................................... 9, 11

*Kennedy v. Jackson Nat'l Life Ins. Co.*,
   No. C07-0371, 2010 WL 4123994 (N.D. Cal. Oct. 6, 2010) .................................... 15

*Klay v. Humana, Inc.*,
   382 F.3d 1241 (11th Cir. 2004) .......................................................................... 21, 22

*Lerwill v. Inflight Motion Pictures, Inc.*,
   582 F.2d 507 (9th Cir. 1978) ..................................................................................... 12

*Mass. Mut. Life Ins. Co. v. Superior Ct.*,
   97 Cal. App. 4th 1282 (2002) ....................................................................... 15, 16, 17

*Menagerie Prods. v. Citysearch*,
   No. CV 08-4263 CAS (FMO), 2009 WL 3770668 (C.D. Cal. Nov. 9, 2009) ........... 15

*Moeller v. Taco Bell Corp.*,
   220 F.R.D. 604 (N.D. Cal. 2004) ............................................................................. 12

*Morrissey v. Nextel Partners, Inc.*,
   72 A.D.3d 209, 895 N.Y.S. 2d 580 (3d Dep't 2010) ................................................ 18

*Myers v. Hertz Corp.*,
   624 F.3d. 537 (2d Cir. 2010) ....................................................................................... 9

*Nelson v. Mead Johnson Nutrition Co.*,
   270 F.R.D. 689 (S.D. Fla. 2010) ............................................................................... 19

*Orkin Exterminating Co. v. Petsch*,
   872 So. 2d 259 (Fla. Dist. Ct. App. 2004) ................................................................ 20

*Rannis v. Recchia*,
   380 F. App'x 646 (9th Cir. 2010) ................................................................................ 9

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993) ...................................................................................... 10

*Rodriguez v. Hayes*,
   591 F.3d 1105 (9th Cir. 2009) ................................................................................... 13

*Rushing v. Williams-Sonoma, Inc.*,
   Case No. 16-cv-01421-WHO, 2016 WL 4269787 (Aug. 15, 2016) ................. 4, 13, 20

**TABLE OF AUTHORITIES**
(continued)

Page

*Samuels v. King Motor Co.*,
  782 So. 2d 489 (Fla. 4th DCA 2001) ....................................................................... 19

*Shum v. Intel Corp.*,
  630 F. Supp. 2d 1063 (N.D. Cal. 2009) .................................................................... 20

*Slaven v. BP America, Inc.*,
  190 F.R.D. 649 (C.D. Cal. 2000) .............................................................................. 10

*Smith v. Univ. of Wash., Law Sch.*,
  233 F.3d 1188 (9th Cir. 2000) .................................................................................. 13

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) .................................................................................... 12

*Steroid Hormone Prod. Cases*,
  181 Cal. App. 4th 145 (2010) ................................................................................... 14

*Taylor v. American Bankers Ins. Group, Inc.*,
  267 A.D.2d 178, 700 N.Y.S.2d 458 (1st Dep't 1999) ............................................. 18

Tuckish v. Pompano Motor Co.,
  337 F. Supp. 2d 1313 (S.D. Fla. 2004) .................................................................... 19

*United States v. City of New York*,
  276 F.R.D. 22 (E.D.N.Y 2011) ................................................................................. 22

*Urquhart v. Manatee Mem'l Hosp.*,
  No. 8:06-cv-1418, 2007 U.S. Dist. LEXIS 17531 (M.D. Fla. Mar. 13, 2007) ......... 19

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) ................................................................................... 9, 10, 11

*Weinstat v. Dentsply Int'l, Inc.*,
  180 Cal. App. 4th 1213 (2010) ................................................................................. 15

*Zeisel v. Diamond Foods, Inc.*,
  No. C 10–01192 JSW, 2011 WL 2221113 (N.D. Cal. June 7, 2011) ....................... 15

**STATUTES**

Cal. Bus. & Prof. Code
  § 17200, *et seq.* (Unfair Competition Law ("UCL")) ............................... 14, 15, 16, 20
  § 17500, *et seq.* (False Advertising Law ("FAL")) ............................................. 14, 15

California Civil Code
  § 1750 *et seq.* (the "CLRA Act") ................................................................. 15, 16, 17
  § 1770(a)(7) .............................................................................................................. 17
  § 1770(a)(16) ............................................................................................................ 17

# TABLE OF AUTHORITIES
## (continued)

Page

California Health & Safety Code
§ 109875, *et seq.* (the "Sherman Law") ...................................................................... 15

Florida Statutes
§ 501.201, *et seq.* (Florida's Deceptive and Unfair Trade Practices Act "FDUTPA") .............. 19
§ 501.202 ...................................................................................................................... 19

New York General Business Law
§ 349 ....................................................................................................................... 17, 18, 19
§ 350 ....................................................................................................................... 17, 18, 19

# RULES

Federal Rules of Civil Procedure
Rule 23 ................................................................................................................... passim

# TREATISE

Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, 7A *Fed. Prac. & Proc.*
§ 1763 ...................................................................................................................... 10

Herbert B. Newberg, *Newberg on Class Actions: A Manual for Group Litigation
at Federal and State Levels*
§ 3.12 (5th ed. 2012) ............................................................................................... 9

Richard Craswell, *Interpreting Deceptive Advertising,*
65 B.U. L. Rev. 657 (July 1985) ............................................................................. 3

# OTHER AUTHORITIES

Matthew G. Nagler et al., *How Do Consumers Value a Credence Good?*
*available at* www.cide.info/conf/2009/iceee2009_submission_39.pdf ........................................ 3

Victor L. Fulgoni et al., *Foods, Fortificants, and Supplements: Where Do Americans
Get Their Nutrients?*
J. Nutrition 1847 (2011) ........................................................................................... 6

PLAINTIFFS' NO OF MO, MO AND MPA ISO CLASS CERTIFICATION

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION**

3          Plaintiffs Ilana Farar, Andrea Lopez, and Rosanne Cosgrove seek certification of a

4    nationwide class and three statewide subclasses of consumers who have been damaged by

5    Defendants' Bayer AG, Bayer Corporation, and Bayer Healthcare LLC (collectively,

6    "Defendants" or "Bayer") deceptive labeling and marketing of One A Day supplements

7    ("Products"), in violation of California, Florida, and New York consumer protection laws and

8    common law.

9          Federal courts recognize that claims such as those asserted by Plaintiffs, which challenge

10   deceptive business practices and deceptive advertising, are appropriate for class action treatment

11   under Rule 23 of the Federal Rules of Civil Procedure. The central issue in this case is whether

12   Bayer's uniform marketing and labeling of its One A Day Products—including Bayer's use of

13   heart health, immunity, and energy claims, and representations that most Americans need to take

14   the Products in order to be healthy—is deceptive to reasonable consumers. The answer to this

15   question is the same for all class members. And because deception is determined by an objective,

16   reasonable consumer standard, common evidence will establish this fact. All the requirements of

17   Rule 23 of the Federal Rules of Civil Procedure are easily satisfied in this case.

18   **II.    THE COMMON FACTS UNDERLYING PLAINTIFFS' CLAIMS**

19         Bayer deceptively promotes its Products as possessing certain characteristics, uses, or

20   benefits that they do not have. Bayer represents that each One A Day Product is specially

21   formulated[1] for certain populations based on gender, age, and health areas (*e.g.*, menopausal

22   women or pregnant women, or health concerns consumers are seeking support for—like heart

23   health, immune health, physical energy).[2] Regardless of which group consumers may fall into,

_____

[1] *See, e.g.*, Declaration of Laurence D. King in Support of Plaintiffs' Motion for Class
Certification ("King Dec."): Exhibit ("Ex.") 1 at DEF-0005237, Ex. 2 at DEF-0004947, Ex. 3 at
DEF-0004922, Ex. 4 at DEF-0004018 ████████████████, and Ex. 5 at DEF-0056373 ████
████

[2] *E.g.*, Bayer One A Day website, https://www.oneaday.com/products-women (Bayer directs
consumers to specific products depending on a consumer's age and "health area," which ranges
from bone health to heart health to mental alertness); King Dec. Ex. 6 at DEF-0004507. *See also*
King Dec. Ex. 7, Deposition Transcript ("Depo. Tr.") of Dara Siva ("Silva") at 152:9-10
*(footnote continues on following page)*

1    Bayer misleads them all about the health benefits and necessity of taking its One A Day Products.

2    All consumers in the United States are led to believe that One A Day Products provide some heart

3    health, energy, and immunity benefits, and are necessary to maintain healthy dietary practices.[3]

4         Plaintiffs, like other reasonable consumers, relied on Bayer's deceptive marketing and

5    labeling and believed the Products would provide specific heart health, immunity, and energy

6    benefits—and were necessary and beneficial for their health.[4] The testimony of Plaintiffs is

7    illustrative in this regard. Plaintiff Ilana Farar understood that the Products would give her more

8    energy and improve her cardiovascular health.[5] Plaintiff Andrea Lopez, who relied on the

9    Products' heart and immunity claims, believed that if she took the Products, they would prevent

10   her from getting sick.[6] Ms. Farar also pointed out that the Products' appearance, television

11   commercials for the Products, and Bayer's reputation as a reputable company, made her believe

12   that the Products would provide her significant heart health, immunity claims, and physical

13   energy benefits.[7] Bayer's representations clearly led Plaintiffs and other reasonable consumers to

14   believe that the Products provide significant health benefits. And Bayer's marketing and labeling

15   even convinces consumers that the Products are *necessary* for their health.[8]

16   _____

17   *(footnote continued from previous page)*
     ("connect cellular health to a concrete personally relevant health issue"); *see also* King Dec. Ex. 7

18   at 147:24-148:5. (Q: "Would you read what you wanted the focus group participants to be very,
     or somewhat, concerned of . . . ? A: "Arthritis, joint pain, heart attack, heart disease, decline in
     mental sharpness, memory loss, high blood pressure, high cholesterol.").

19   [3] *E.g.*, King Dec. Ex. 8 (Deposition Transcript of Rosanne Cosgrove ("Cosgrove Depo. Tr.") at

20   313:5-15; 325:14-326:1; 326:10-21); King Dec. Ex. 9 (Deposition Transcript of Ilana Farar
     ("Farar Depo. Tr.") at 93:8-94:10).

21   [4] King Dec. Ex. 10 (Declaration of Plaintiff Ilana Farar in Support of Plaintiffs' Motion for Class
     Certification ("Farar Dec."); King Dec. Ex. 11 (Declaration of Plaintiff Andrea Lopez in Support

22   of Plaintiffs' Motion for Class Certification ("Lopez Dec.")); King Dec. Ex. 12 (Declaration of
     Plaintiff Rosanne Cosgrove in Support of Plaintiffs' Motion for Class Certification ("Cosgrove

23   Dec.").

24   [5] King Dec. Ex. 9 (Farar Depo. Tr. at 101:5-102:22; 208:1-209:10).

25   [6] King Dec. Ex. 13 (Lopez Depo Tr. at 59:18-21 ("So that's the reason why me and everybody
     would buy it. When I get older I am not going to have heart problems. I'm not going to get sick,
     because it helps my immune system.")).

26   [7] King Dec. Ex. 9 (Farar Depo. Tr. at 85:14-23; 93:8-94:10; 94:16-19).

27   [8] Bayer's marketing director for One A Day products acknowledged: "[T]he reason people are
     taking multivitamins is because they're looking for overall good health, right? . . . And that's the

28   basis for all of this, and for what we communicate in our advertising." King Dec. Ex. 14 (Depo.
     *(footnote continues on following page)*

Importantly, the Products at issue here are credence goods—meaning that Plaintiffs and other consumers cannot tell whether claims are true even if they buy and use the Products.[9] This means that ensuring consumers' ability to trust Bayer's marketing and labeling is critical,[10] especially so here because consumers have no way of knowing if they have been deceived.

The testimony of Bayer's corporate representatives shows that Bayer deceptively markets and labels its One A Day Products in an effort to attract health-conscious consumers. Bayer does this in several uniform ways.

Bayer targets the marketing and labeling of its Products according to consumers' health concerns.[11] Bayer makes consumers believe each Product is specially formulated for them based on their gender, age, or health condition.[12] But, as Plaintiffs' expert details, each of the One A Day products are essentially the same—they contain selections of the same vitamins and minerals with minor changes in the amounts.[13] There is no evidence that the differing levels of nutrients in

_____

*(footnote continued from previous page)*

Tr. of Amy Cappello at 88:25-89:5); *see, e.g.*, King Dec. Ex. 15 at DEF-0005400 ████████████████████████████████████████████; King Dec. Ex. 16 at DEF-0004974-4975).

[9] *See* Matthew G. Nagler et al., *How Do Consumers Value a Credence Good?*, *available at* www.cide.info/conf/2009/iceee2009_submission_39.pdf ("Medications conform well to the credence good model.").

[10] *Am. Home Prods. Corp. v. FTC*, 695 F.2d 681, 698 (3d Cir. 1983) ("Because consumers cannot accurately rate the products for themselves, advertising, and the expectations [that] it engenders, becomes a significantly more influential source of consumer beliefs than it would otherwise."). Marketing experts have pointed out that "deception about these [credence] attributes would not necessarily cause consumers to take their business elsewhere . . ." (Richard Craswell, *Interpreting Deceptive Advertising*, 65 B.U. L. Rev. 657 (July 1985)). This is because, in the case of credence goods, "effectiveness [is] not fully observable even after purchase and use . . . [so] consumers will continue to rely upon the same observable sources of information to make decisions about repeat purchasing . . .." (Nagler, fn. 9, *supra*).

[11] King Dec. Ex. 7 (Depo Tr. of Siva at 147:24-148:5 (listing arthritis, joint pain, heart attack, heart disease, decline in mental sharpness, memory loss, high blood pressure, and high cholesterol as health concerns in multivitamin focus group study)); King Dec. Ex. 7 at 152:8-25; One A Day website, fn. 2, *supra*.

[12] *See, e.g.*, fn. 2, *supra*.

[13] *See* Expert Report of Ed Blonz ("Blonz Report") at I.A. (citing Attachment B). Ed Blonz holds a Ph.D in nutrition and has been an expert witness specializing in nutritional, biochemical, and physiological issues for foods and dietary supplements for the Federal Trade Commission, U.S. Dep't of Justice, and 27 Attorneys General.

1   the Products provide any significantly different effect on the body.[14]

2        And despite making heart health, energy, and immunity claims on different "specially

3   formulated" One A Day varieties, Bayer has not tested any formulation of its Products—

4   regardless of what claims it makes or the population it's marketed to. Bayer's head of Medical

5   Affairs is of the opinion that "[t]here's no scientific reason to do so."[15]

6        Whether or not there was a "scientific reason" to make sure the Products would perform

7   as advertised, there was a *legal* reason to do so. On January 3, 2007, the Federal Trade

8   Commission obtained a Consent Order against Bayer that broadly enjoined Bayer "from making

9   any representation, including through endorsements or trade name, expressly or by

10  implication . . . [a]bout the benefits, performance, efficacy, safety or side effects, of [any dietary

11  supplement] or any of its ingredients; *unless* at the time the representation is made, defendant

12  Bayer Corporation possesses and relies upon competent and reliable scientific evidence that

13  substantiates the representation."[16] Moreover, this Court has recently noted that there are some

14  products where "the nature of the product [requires] the necessity of scientific testing to confirm

15  the product is not as advertised."[17] Here, no testing or substantiation exists—the claims are

16

17

18  _____

[14] *See* Blonz Report at 7-8; 15-16; 21.

[15] King Dec. Ex. 17 (Depo. Tr. of Debra DeMuth ("DeMuth") at 55:3-21). Instead, Bayer relies
19  on published guidance for Recommended Dietary Allowance ("RDA") for different populations,
(*e.g.*, King Dec. Ex. 17 at 11:12-13; 13:6-15), and ████████████████ (*e.g.*, King Dec.,
20  Exs. 17-1 and 17-2). This is because, "*in order to see a response [of nutrient supplementation*
*on health], you can't tell the difference in a normal healthy response in some nutrients no*
21  *matter how much you give. The difference will occur if there is an insufficiency*." (King Dec.
Ex. 17 at 23:8-12 (emphasis added).)
22
There's also no scientific way to measure a healthy heart or a healthy immune system without
23  examining disease. (*See* Blonz Report at pp. 15-16, 22; *see also* King Dec. Exs. 17-1 and 17-2.)
Bayer's Director of Medical Affairs admitted the way to determine whether nutrient
24  supplementation "supported a healthy heart" would be to examine "biological indicators" like
"cholesterol, lipoprotein levels of cholesterol" (King Dec. Ex. 17 at 16:9-20; 23:21-22)—all
25  factors of cardiovascular disease ("CVD"). Bayer's substantiation for its immune health claims
relies on ████████████████████ (*E.g.*, King Dec. Ex. 17-1.)

26  [16] *United States of America v. Bayer Corporation*, No. 07-01 (D.N.J. Jan. 3, 2007). King Dec.
Ex. 18 (Consent decree).
27
[17] *Rushing v. Williams-Sonoma, Inc.*, Case No. 16-cv-01421-WHO, 2016 WL 4269787 (Aug. 15,
28  2016).

untrue, and unless consumers are biochemically deficient, they will experience no benefit.[18] For

Plaintiffs and the vast majority of Americans, this means the Products are worthless.

Bayer also increases its profits by deceptively marketing its Products to *all* Americans,

implying that almost all Americans need a multivitamin/multimineral supplement in order to be

healthy.[19] Bayer has based an entire marketing strategy on the representation that ████████

████████████████████████████████████████████████████████████[20] This strategy

of scaring consumers into taking vitamins—which Bayer justified using a single two-day survey

of food intake[21]—was in response to negative media surrounding the uselessness of

multivitamin/multimineral supplements.[22]

Bayer decided to make this claim ████████████████████████████████

██████████████████████████████████████████[23] In fact,

████████████████████████████████████████[24]        was an

---

[18] *See* Blonz Report Attachment I (showing that the scientific literature fails to support any efficacy of multivitamin/mineral supplements); Blonz Report at p. 7 ("[T]here is no competent and reliable evidence on which to base any direct or implied claim that any one of the Products, when taken as directed, will cause measurable . . . effects on bodily events or processes for average Americans"), pp. 10–11; p. 16 ("The weight of peer-reviewed science . . . reveals a lack of any basis to claim efficacy from multivitamin/mineral supplements in otherwise-healthy, well-nourished individuals.").

[19] Fn. 8, *supra*. *See* King Dec. Ex. 19 at DEF-0026883-26884 ████████████████████████ ██████████████████████████████████████

[20] King Dec. Ex. 15 at DEF-0005400 ████████████████ King Dec. Ex. 16 at DEF-0004974-4975.

[21] Blonz Report at 8-9 ("Bayer statements . . . implying that 90% of Americans . . . are nutrient deficient are baseless. . . . CDC provides no support for any contention that 90 percent of the U.S. population are nutrient deficient.").

[22] *See* King Dec. Ex. 7 (Siva Depo Tr. at 69:10).

[23] *See, e.g.*, King Dec. Ex. 20 at DEF-0056712 ██████████████████████████ ████████████████████████████████████████████████

[24] King Dec. Ex. 21 at DEF-0056707.

PLAINTIFFS' NO OF MO, MO AND MPA ISO CLASS CERTIFICATION

1   understatement—even *if* Americans periodically don't meet the recommended levels of intake,

2   they certainly have enough of these vitamins to avoid deficiencies and maintain good health.[25]

3       Thus, even though Bayer markets to all Americans, the majority of Americans will

4   experience no benefit at all by taking Bayer's Products.[26] In fact, as the Court noted, and as Bayer

5   ████████████████████████████████████[27] taking One A Day Products may even

6   be harmful to consumers' health.[28]

7       Bayer's Director for Medical Affairs admits that the majority of Americans don't benefit

8   from multivitamin/multimineral supplementation—maintaining (contrary to Bayer's own

9   marketing efforts described herein) that Bayer doesn't "claim that there's any additional

10  benefits. . . . We don't claim more [nutrients] is better."[29] In fact, Bayer's Products provide no

11  benefits at all for the consumers Bayer targets.[30] This makes the Products *worthless* to Plaintiffs

12  and every member of the Classes.[31]

13      This is true regardless of which One A Day Product a consumer takes. This is true even if

14  a consumer falls within the 90% of Americans who sometimes fail to consume the recommended

15  daily value of some vitamins each day.[32] And again, because the Products are supplements—a

---

[25] *See* Blonz Report at pp. 8-11 ("'typically consumed' diet does indeed provide sufficient amounts of vitamins and essential minerals for normal health in most Americans.").

[26] *See* Blonz Report, *supra,* fn. 18; s*ee* Blonz Report at pp. 15–16.

[27] King Dec. Ex. 22 at DEF-0034459-34470.

[28] Order Denying Motion to Dismiss (Dkt. 78) (Aug. 18, 2015), at 7–9 (Each of the National Institutes of Health, Office of Dietary Supplements' Fact Sheets includes sections that "discuss the health claims typically made about each vitamin . . . also . . . a section that discusses health risks from excessive intake of such vitamins. Importantly, they include some indications that vitamin supplements actually harm heart health.").

[29] King Decl. Ex. 17 (DeMuth Depo. Tr. at 86:20-25).

[30] *E.g.*, Blonz Report at pp.  7-11, 21 ("lack of measurable benefits . . . after multivitamin/mineral use ranging from 4 months to over 11 years."). This is true if consumers take the recommended dosage. However, Bayer's records indicate many consumers are misled by the "One A Day" name, and only take half, or a quarter of the daily recommended dosage.

[31] This would not be the case if Bayer changed and tested its One A Day formulas to make these claims true, or if Plaintiffs suffered from biochemical deficiency and needed to supplement their diets with vitamins or minerals. *See* King Decl. Ex. 10 (Farar Dec. at ¶14); Ex. 11 (Lopez Dec. at ¶16); Ex. 12 (Cosgrove Dec. at ¶15).

[32] Blonz Report at pp.  8-9, 10-11.  *See* Victor L. Fulgoni et al., *Foods, Fortificants, and Supplements: Where Do Americans Get Their Nutrients?*, J. Nutrition 1847 (2011).

type of credence good—consumers can never tell whether they received any benefit from taking the Products.

Bayer's use of heart health, energy, and immunity claims, paired with representing to Americans that everyone needs to be taking their Products in order to maintain their health, is deceptive and misleading. Bayer's own consumer research confirms that reasonable consumers are misled by the claims at issue here. For example, one study acknowledged that, after seeing immunity claims, some consumers focus more on cold and flu issues."[33] And Bayer's director of U.S. Medical Affairs confirmed that the average person, without scientific training in biology and biochemistry, would not understand Bayer's energy claims.[34] Bayer knows that many consumers believe its energy claims ███████████████████████████████████████
███████████████████████████████████████████[35]

Here, common legal and factual questions arise from two central issues that do not vary among Plaintiffs or members of the class. The Court need only determine: (1) Whether Bayer committed the common course of conduct alleged by Plaintiffs in manufacturing, marketing, and labeling its One A Day Products; and (2) whether it must cease its misleading conduct.

## III.   THE PROPOSED CLASSES

As set forth in the Complaint, Plaintiffs seek certification of the following Classes:[36]

> **National:** All persons in the United States who purchased Bayer One A Day Supplements in the United States that contained one or more Claims from October 15, 2010 until the date of certification ("Class Period").

---

[33] King Dec. Ex. 7 (Siva Depo. Tr. at 153:24-25) referencing King Dec. Ex. 7-1 (Siva Depo. Ex. 20).

[34] King Dec. Ex. 17 (DeMuth Depo. Tr. at 16:24-45, 17:11-15 ("Any individual who has had scientific training in biology, biochemistry, would probably know about chemical energy, but I don't know how well versed the average person would be.")).

[35] *See supra* fn. 27; King Dec. Ex. 23 at DEF-0017799 ███████████████████████████
████████████ King Dec. Ex. 24 at DEF-0069749; King Dec. Ex. 25 at DEF-0069738; King Dec. Ex. 26.

[36] The class definitions do not include Defendants and their subsidiaries, parents, affiliates, joint venturers, any entity in which Defendants have or have had a controlling interest, Defendants' officers and directors, or the immediate families of Defendants' officers and directors.

**California**: All persons in California who purchased Bayer One A Day Supplements in California that contained one or more Claims during the Class Period.

**Florida:** All persons in Florida who purchased Bayer One A Day Supplements in Florida that contained one or more Claims during the Class Period.

**New York:** All persons in New York who purchased Bayer One A Day Supplements in New York that contained one or more Claims during the Class Period.

## IV.    ARGUMENT

### A.    Legal Standards Governing Class Certification

The Supreme Court has recognized that "[c]lass actions serve an important function in our system of civil justice."[37] To maintain a suit as a class action under Rule 23, Plaintiffs must allege facts establishing each of the following four threshold requirements of subsection (a):

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.[38]

In addition to satisfying the prerequisites of Fed. R. Civ. P. 23(a), Plaintiffs seeking certification of claims for injunctive relief pursuant to Fed. R. Civ. P. 23(b)(2) must also demonstrate that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."[39] Plaintiffs seeking monetary relief, on the other hand, must satisfy the prerequisites of both subsection (a) and (b)(3) of Rule 23 by demonstrating that questions of law or fact common to the members of the proposed class "predominate over any questions affecting only individual members," and that a class resolution is "superior to other available methods for the fair and efficient adjudication of the controversy."[40]

---

[37] *Gulf Oil Co. v. Barnard*, 452 U.S. 89, 99 (1981).

[38] Fed. R. Civ. P. 23(a)(1)-(4).

[39] Fed. R. Civ. P. 23(b)(2).

[40] Fed. R. Civ. P. 23(b)(3); *see e.g.*, *Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 615 (1997); *Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010); *In re Nassau County Strip Search Cases*, 461 F.3d 219 (2d Cir. 2006).

Whether seeking certification under Rule 23(b)(2) or 23(b)(3), a plaintiff bears the initial burden of advancing reasons why a putative class action meets Rule 23 requirements.[41] Once a plaintiff has made a preliminary legal showing that the requirements of Rule 23 have been met, the burden of proof is upon the defendant to demonstrate otherwise.[42]

In determining whether to maintain an action as a class action, courts do not conduct an exploration of the merits regarding aspects of the claims unrelated to a Rule 23 requirement.[43] Moreover, because a court decides whether certification of a class is appropriate at the pleading stage of the action, the court accepts substantive allegations in the complaint as true for purposes of the class motion.[44]

## B.    The Proposed Classes Satisfy The Requirements Of Rule 23(a)

### 1.    The Proposed Classes are Sufficiently Numerous

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is "impracticable."[45] "Impracticable" does not mean "impossible," only that it would be difficult or inconvenient to join all members of the class.[46] The numerosity requirement is satisfied where the exact size of the proposed class is unknown but "general knowledge and common sense indicate it is large."[47] Other indicia of impracticability include a relatively small size of each member's claim.[48]

---

[41] Fed. R. Civ. P. 23.

[42] *See Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010) (citing *Amchem*, 521 U.S. at 614; *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202-03 (2d Cir. 2008).

[43] *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011); *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 177-78 (1974); *In re Initial Public Offerings Secs. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006).

[44] *See Eisen*, 417 U.S. at 177; *Cortigiano v. Oceanview Manor Home For Adults*, 227 F.R.D. 194 (E.D.N.Y. 2005).

[45] Fed. R. Civ. P. 23(a).

[46] *See Rannis v. Recchia*, 380 F. App'x 646, 650-51 (9th Cir. 2010) (citing *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964)).

[47] *In re HiEnergy Techs., Inc. Sec. Litig.*, No. 8:04CV01226 DOCJTLX, 2006 WL 2780058, at *3 (C.D. Cal. Sept. 26, 2006) (quotation omitted); *see also* Herbert B. Newberg, *Newberg on Class Actions: A Manual for Group Litigation at Federal and State Levels* § 3.12, at n. 8 (5th ed. 2012).

[48] *Jordan v. Cty. of Los Angeles*, 669 F.2d 1311, 1319-20 (9th Cir.), *vacated on other grounds*, *Cty. of Los Angeles v. Jordan*, 459 U.S. 810 (1982) (finding the numerosity requirement to be *(footnote continues on following page)*

1    Plaintiffs need not show evidence of exact class size or identity of class members in order

2    to satisfy Rule 23's numerosity requirement.[49] Numerosity is indisputable here. The proposed

3    Classes consist of hundreds of thousands of individuals who were subjected to Bayer's deceptive

4    labeling and marketing of its One A Day Products.[50] Thus, the numerosity requirement is clearly

5    satisfied.

6                    **2.      This Case Involves Common Questions of Law and Fact**

7    Rule 23(a)(2) requires that the proposed Classes share a common question of law or fact.

8    This commonality requirement has been construed permissively.[51] "All questions of fact and law

9    need not be common to satisfy the rule. The existence of shared legal issues with divergent

10   factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal

11   remedies within the class."[52]

12   Indeed, for the commonality requirement to be met, there must only be a single issue

13   common to the proposed class.[53]

14   Here, Plaintiffs' allegations present not one, but a number of common questions including,

15   but not limited to:

16   - Whether Bayer marketed, advertised, labeled and sold One A Day
         Products using false, misleading or deceptive representations;

18   - Whether Bayer omitted or misrepresented material facts in connection
         with the marketing, advertising, labeling and sale of One A Day Products;

19

20   *(footnote continued from previous page)*
     satisfied due to these factors and reversing the district court's order denying class certification.

21   [49] *Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993);

22   [50] *See* King Dec. Ex. 27 at DEF-0007049; King Dec. Ex. 28 at DEF-0007050; King Dec. Ex. 29
     at DEF-0007051-7082; King Dec. Ex. 30 at DEF-0012654. The Court has ruled that Bayer need
23   not respond further to requests for sales data pre-certification. Civil Minutes, Dkt. 115 (June 7,
     2016).

24   [51] *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. June 9, 1998).

25   [52] *Id.* at 1019-20.  Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, 7A *Fed. Prac. &
     Proc.* § 1763 ("It is important to note that this provision does not require that all the questions of
26   law and fact raised by the dispute be common.'" (quotation omitted).

27   [53] *Dukes*, 131 S. Ct. at 2550; *Slaven v. BP America, Inc.*, 190 F.R.D. 649, 655 (C.D. Cal. 2000);
     *In re THQ, Inc. Sec. Litig.*, No. CV 00-1783AHM(EX), 2002 WL 1832145, at *3 (C.D. Cal.
28   Mar. 22, 2002) (same).

- Whether Bayer's marketing, advertising, labeling and sale of One A Day Products constitutes an unfair, unlawful or fraudulent business practice;

- Whether Bayer's marketing, advertising, labeling and selling of One A Day Products constitutes a deceptive business practice; and

- Whether Bayer's marketing, advertising and labeling of One A Day Products constitutes false advertising.

Accordingly, Plaintiffs have satisfied the commonality requirement.

### 3. Plaintiffs' Claims are Typical of the Claims of the Class

Rule 23(a)(3) requires that the claims of the class representatives be "typical of the claims . . . of the class."[54] The purpose of the "typicality" requirement of Rule 23(a)(3) is to ensure that the named representative's interests "align" with those of the class.[55] The class representative "must be part of the class and possess the same interest and suffer the same injury as the class members."[56] Thus, typicality is satisfied as long as the named plaintiff's claims stem from the "same event, practice, or course of conduct that forms the basis of the class claims and is based upon the same legal or remedial theory."[57]

In this case, Plaintiffs allege a common pattern of wrongdoing—Bayer's deceptive labeling and marketing of its One A Day Products—and will present the same evidence (based on the same legal theories) to support both their claims and the claims of the members of the Classes. Similarly, each Plaintiff and Class member seek the same relief—an injunction putting an end to Bayer's deception of consumers—and the monetary relief as provided under the various states' laws. Accordingly, Rule 23(a)(3) is satisfied.

### 4. The Proposed Class Representative and Their Counsel will Fairly and Adequately Protect Class Interests

Rule 23(a)(4) requires that the class representative "fairly and adequately protect the interests of the class."[58] The Court of Appeals for the Ninth Circuit has established a two-prong

---

[54] Fed. R. Civ. P. 23(a)(3).

[55] *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

[56] *Dukes*, 131 S. Ct. at 2550 (quotations and citation omitted).

[57] *Jordan*, 669 F.2d at 1321 (citations omitted).

[58] Fed. R. Civ. P. 23(a)(4).

1  test for this requirement: "(1) Do the representative plaintiffs and their counsel have any conflicts

2  of interest with other class members, and (2) will the representative plaintiffs and their counsel

3  prosecute the action vigorously on behalf of the class?"[59] This standard requires "*similarity*, not

4  identity, of interests," and "it only precludes adverse interests."[60]

5        First, Plaintiffs have retained counsel highly experienced in class action litigation to

6  prosecute their claims and those of the Class.[61] Second, there is nothing to suggest that any of the

7  Plaintiffs have any interest antagonistic to the vigorous pursuit of the Classes' claims against

8  Bayer. To the contrary, each class member's claims arise under the same legal theories, each class

9  member was harmed in the same way, and each class member seeks the same recovery as the

10  representative Plaintiff for her class,[62] so the Plaintiffs' interests align perfectly with the interests

11  of absent class members.

12        The proposed class representatives have also demonstrated their desire and ability to

13  monitor class counsel and assure vigorous prosecution of the case.[63] All Plaintiffs reviewed the

14  complaints, communicated with counsel throughout this litigation, appeared for deposition, and

15  are prepared to go to trial on this matter. Accordingly, the proposed class representatives are more

16  than adequate.[64]

17        Accordingly, Plaintiffs adequately represent the interests of the Class.

18

19

20  [59] *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (citations omitted).

21  [60] *Dukes v. Wal-Mart Stores, Inc.*, 222 F.R.D. 137, 168 (N.D. Cal. 2004) (emphasis added); *see also Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978) ("representatives

22  must not have antagonistic or conflicting interests with the unnamed members of the class").

23  [61] *See generally* King Dec.; Declaration of Stephen Gardner in Support of Plaintiffs' for Class Certification ("Gardner Dec.").

24  [62] King Dec. Ex. 10 (Farar Dec. at ¶15); King Dec. Ex. 11 (Lopez Dec. at ¶17); King Dec. Ex. 12 (Cosgrove Dec. at ¶16).

25  [63] *See, e.g.*, King Dec. Ex. 10 (Farar Dec. at ¶¶4-5, 15); King Dec. Ex. 11 (Lopez Dec. at ¶¶4–5, 17); King Dec. Ex. 12 (Cosgrove Dec. at ¶¶4-5, 16).

26  [64] *See, e.g., Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 611 (N.D. Cal. 2004) ("It is not

27  necessary that a representative be intimately familiar with every factual and legal issue in the case; rather, it is enough that the representative understand the gravamen of the claim." (quotations and citation omitted)).

28

### C.     The Requirements For Certification Under Rule 23(b)(2) Are Satisfied

This action should be certified under Rule 23(b)(2) because Bayer's deceptive marketing of its Products is an action of general applicability to all members of the Classes "so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class[e]s as a whole."[65] In the Ninth Circuit, a class may be certified under both 23(b)(2) and 23(b)(3).[66] It is sufficient to meet the requirements of Rule 23(b)(2) that "class members complain of a pattern or practice that is generally applicable to the class as a whole."[67] Plaintiffs have done so here.

As noted above, the Products are credence goods, where it is impossible for consumers to know whether the claims are true. The Court has recognized that future injunctive relief is proper "where because of the nature of the product and the necessity of scientific testing to confirm the product is not as advertised, a consumer cannot easily assess the veracity of a defendant's representation when considering a future purchase."[68]

Here, Plaintiffs' claims for equitable restitution of the monies paid for Bayer's One A Day Products flow directly from their request for injunctive relief in the form of stopping Bayer's deceptive marketing and labeling. Accordingly, Plaintiffs seek certification of a class under 23(b)(2) that includes all incidental monetary relief.

### D.     The Requirements for Certification Under Rule 23(b)(3) Are Satisfied

This case also should be certified for damages under Rule 23(b)(3) because common questions of law or fact predominate over any purported individual questions, and a class action is the superior method for the fair and efficient adjudication of this controversy.

#### 1.     Common Issues Predominate

Rule 23(b) "encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."[69] "The

---

[65] Fed. R. Civ. P. 23(b)(2).

[66] *Smith v. Univ. of Wash., Law Sch.*, 233 F.3d 1188, 1196 (9th Cir. 2000).

[67] *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2009) (quotations omitted).

[68] *Rushing*, 2016 WL 4269787, at *10.

[69] Fed. R. Civ. P. 23(b) advisory committee's notes (citing Zechariah Chafee, *Some problems of (footnote continues on following page)*

1  Rule 23(b)(3) predominance inquiry tests whether the proposed classes are sufficiently cohesive

2  to warrant adjudication by representation."[70] This criterion is satisfied when "'common questions

3  present a significant aspect of the case and they can be resolved for all members of the class in a

4  single adjudication.'"[71] Accordingly, questions that are common to the class predominate over

5  individual questions where a plaintiff alleges a common course of conduct of misrepresentations,

6  omissions, or other wrongdoing that affected all the class members in the same or similar

7  manner.[72]

8              **a.    Common Questions Predominate on Plaintiffs' California UCL**
9              **and FAL Claims**

10         With respect to claims for the violations of the Unfair Competition Law, Cal. Bus. & Prof.

11  Code § 17200, *et seq.* ("UCL" claims), and the False Advertising Law, Cal. Bus. & Prof. Code

12  § 17500, *et seq.* ("FAL" claims), individualized issues will not outweigh common issues because

13  Class members do not need to individually show they have lost money or property as a result of

14  deception.[73] Plaintiffs simply must show that the material facts at issue were "an immediate cause

15  of the injury-producing conduct"—and only the named Plaintiffs must make this showing.[74]

16  Moreover, a "plaintiff is not required to allege that those misrepresentations were the sole or even

17  decisive cause of the injury-producing conduct."[75]

18         Consistent with their allegations, Plaintiffs testified that they relied on Bayer's

19  representations that were on the label.[76] Where, as here, the named plaintiffs have alleged

---

*(footnote continued from previous page)*
*equity* 201 (1950)).

[70] *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 957 (9th Cir. 2009).

[71] *Hanlon*, 150 F.3d at 1022 (quoting Wright, Miller, & Kane, 7A *Fed. Prac. & Proc.* § 1778 (2d ed. 1986)).

[72] *See Blackie v. Barrack*, 524 F.2d 891, 905-908 (9th Cir. 1975).

[73] *See In re Tobacco II Cases*, 46 Cal. 4th 298, 320 (2009); *Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 154 (2010) ("[O]nce the named plaintiff meets [the standing] burden, no further individualized proof of injury or causation is required to impose restitution liability against the defendant in favor of absent class members.").

[74] *Tobacco II*, 46 Cal. 4th at 326.

[75] *Id.*

[76] *See, e.g.*, King Dec. Ex. 9 (Farar Depo. Tr. at 85:14-23; 93:8-94:10; 102:23-103:2); King Dec. *(footnote continues on following page)*

economic injury traceable to the alleged violation of the UCL sufficient to raise an inference of causation, common issues of fact and law predominate plaintiffs' UCL and FAL claims.[77] Courts have consistently certified similar types of claims based on *Tobacco II's* holding that classwide relief is available without an individual showing of reliance for the absent class members.[78]

Additionally, the UCL's "unlawful" prong borrows violations of other statutes and makes them independently actionable and a *per se* violation of the statute.[79] Here, Plaintiffs assert claims based on Bayer's violation of California's Sherman Food, Drug, and Cosmetic Law (the "Sherman Law"),[80] which broadly prohibits the misbranding of food,[81] the Consumer Legal Remedies Act,[82] and the FAL.[83] Thus, if these claims are established, there is also a *per se* unlawful business practice that results in strict liability under the UCL.[84]  Even where the amount

---

*(footnote continued from previous page)*
Ex. 8 (Cosgrove Depo. Tr. at 320:11-15; 320:23-321:11); King Dec. Ex. 13 (Lopez Depo Tr. at 59:10-24; 60:3-5; 61:22-62:11).

[77] *See Tobacco II*, 46 Cal. 4th at 326; *see also Zeisel v. Diamond Foods, Inc.*, No. C 10–01192 JSW, 2011 WL 2221113, at *9 (N.D. Cal. June 7, 2011) (granting class certification motion regarding allegations under UCL and FAL that defendants' walnut product did not provide the benefits represented on product packaging); *Mass. Mut. Life Ins. Co. v. Superior Ct.*, 97 Cal. App. 4th 1282, 1289-95 (2002) (certifying UCL and CLRA claims arising out of deceptive sales practices based on omissions of material facts).

[78] *See, e.g.*, *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 378-79 (N.D. Cal. 2010) (certifying a class action alleging claims under the UCL and CLRA); *Kennedy v. Jackson Nat'l Life Ins. Co.*, No. C07-0371, 2010 WL 4123994, at *10-11 (N.D. Cal. Oct. 6, 2010) (certifying a class action alleging claims under the UCL and FAL); *Menagerie Prods. v. Citysearch*, No. CV 08-4263 CAS (FMO), 2009 WL 3770668, at *12-13 (C.D. Cal. Nov. 9, 2009) (holding that common questions predominated with respect to alleged violations of the "fraudulent" prong of the UCL where claim was predicated on a common course of conduct by the defendant); *see also Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1224 (2010) (reversing trial court's order denying class certification of plaintiffs' UCL claim).

[79] *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000) (citing *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999)).

[80] California Health & Safety Code § 109875, *et seq.*

[81] *Id.* at § 110660. The Sherman Law provides that food is misbranded "if its labeling is false or misleading in any particular." *Id.*

[82] Cal. Civ. Code § 1750, *et seq.*

[83] Cal. Bus. & Prof. Code, § 17500 *et seq.*

[84] *See Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 181 (2000) ("The UCL imposes strict liability when property or monetary losses are occasioned by conduct that constitutes an unfair business practice." (citation omitted)).

of damages is an individual question, this does not defeat class certification.[85] Plaintiffs must only present "a likely method for determining class damages."[86] As in *Chavez*, Plaintiffs propose a measure of damages determinable by objective criteria—the price paid for Bayer's Products. Because the Products are ineffective and provide no benefit, Plaintiffs and members of the class are entitled to full restitution. This is sufficient for class certification purposes.[87] Damages can be determined by reference to Bayer's own sales records and an average retail price.[88] Thus, determining the amount of restitution to which Plaintiffs and the other Class members may be entitled does not threaten to raise individual issues that would outweigh common questions.

Analysis of Class members' rights to restitution, as well as the quantum of such relief, does not involve individual issues that could threaten the predominance of common questions. Each Product at issue here was labeled with the same deceptive and misleading claims; all Class members were exposed to identical misleading representations. The materiality of these representations is, therefore, a predominant issue.

### b.   Common Questions Predominate on Plaintiffs' California CLRA Claims

As with UCL claims, the predominance inquiry for a claim under the Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA") does not require individualized assessment of absent Class members' subjective beliefs.[89] Rather, an inference of common reliance is permitted to support the certification of a class when the plaintiffs show that the

---

[85] *Chavez*, 268 F.R.D. at 379 (citing *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975)).

[86] *Id.* (citation and quotations omitted).

[87] *Id. See Allen v. Hyland's Inc.*, 300 F.R.D. 643 (C.D. Cal. 2014). *See Tobacco II*, 46 Cal. 4th at 320 (The language of Section 17203, "construed in light of the concern that wrongdoers not retain the benefits of their misconduct[,] has led courts repeatedly and consistently to hold that relief under the UCL is available without individualized proof of deception, reliance and injury." (citations omitted)).

[88] *See Allen*, *supra*.  In the Civil Minutes of the June 7, 2016 discovery conference with the Court, the Court denied Plaintiffs' request for responses to some of its third set of Document Requests 1i, 1j, 2i and 3 (which sought information on cost, pricing, sales, revenues, and profits), because "they do not appear to be necessary for class certification and do not need to be responded to at this time. If a class is certified, the documents should be produced promptly." Dkt. 115.

[89] *Chavez*, 268 F.R.D. at 376; *Mass. Mut. Life Ins. Co.*, 97 Cal. App. 4th at 1292.

1    representations at issue were material.[90] As stated by the California Supreme Court in *Tobacco II*:

2              A misrepresentation is judged to be material if a reasonable man
               would attach importance to its existence or nonexistence in
3              determining his choice of action in the transaction in question, and
               as such[,] materiality is generally a question of fact unless the fact
4              misrepresented is so obviously unimportant that the jury could not
               reasonably find that a reasonable man would have been influenced
5              by it.[91]

6         Here, the Products' claims are clearly material. Plaintiffs have alleged (and the discovery

7    conducted confirms) that these claims mislead consumers into believing that the Products will

8    provide specific health benefits and are necessary to be healthy.[92] Indeed, as Plaintiffs have

9    testified, they decided to purchase the Products based on these claims.[93]

10        The alleged misrepresentations, if established, would be common to all Class members,

11   and would violate Cal. Civ. Code § 1770(a)(7) (by misrepresenting that the products are of a

12   particular standard, quality, or grade) and (a)(16) (by misrepresenting that the products were

13   supplied in accordance with a previous representation). Accordingly, the record provides

14   sufficient support for class certification with regard to the CLRA based on an inference of

15   common reliance. Courts routinely find that representations similar to the ones at issue here are

16   material for purposes of class certification.[94]

17              c.       **Common Issues Predominate on the New York GBL Claims**

18        A plaintiff is entitled to relief under New York General Business Law ("GBL") Section

19   349, relating to deceptive business practices, or Section 350, relating to false advertising, if the

20   _____

[90] *Chavez*, 268 F.R.D. at 376 (citing *Steroid Hormone Prod. Cases*, 181 Cal. App. 4th at 157
21   (2010)); *Mass. Mut. Life Ins. Co.*, 97 Cal. App. 4th at 1292-93.

22   [91] *Tobacco II*, 46 Cal. 4th at 327 (quotations and internal citations omitted).

     [92] *See, e.g.*, *supra*, fn. 8.
23
     [93] *See, e.g.*, King Dec. Ex. 9 (Farar Depo. Tr. at 85:14-23; 93:8-94:10; 102:23-103); King Dec.
24   Ex. 8 (Cosgrove Depo Tr. at 320:11-15 320:23-321:11); King Dec. Ex. 13 (Lopez Depo. Tr. at
     59:10-24; 60:3-5; 61:22-62:11).

25   [94] *See, e.g.*, *Johnson v. Gen. Mills, Inc.*, 275 F.R.D. 282 (C.D. Cal. 2011) (granting plaintiff's
     motion for class certification based on allegations that defendant had misrepresented its yogurt
26   product to promote digestive health in a way that ordinary yogurt does not); *Mass Mut. Life Ins.
     Co.*, 97 Cal. App. 4th at 1292-95 (upholding certification of CLRA claim based on allegedly
27   deceptive representations that a financial product had certain benefits that it did not) (citing
     *Vasquez v. Superior Ct.*, 4 Cal. 3d 800, 814 (1971); *Occidental Land, Inc. v. Superior Ct.*, 18 Cal.
28   3d 355, 363 (1976)).

plaintiff can show that: (1) the act, practice, or advertisement was consumer-oriented, (2) the act, practice, or advertisement was misleading in a material respect, and (3) the plaintiff was thereby injured.[95] "The standard for whether an act or practice is misleading is an objective one, requiring a showing that a reasonable consumer would have been misled by the defendant's conduct."[96] "To prevail on a claim under GBL § 350, a plaintiff must demonstrate reliance on defendants' false advertising."[97] Reliance is not an element of a claim under GBL Section 349.[98] Injury is proven by demonstrating that a plaintiff paid a premium for a product.[99]

Here, there can be no dispute that the first element of Plaintiffs' GBL claims is a common question susceptible to common proof. Likewise, no individual inquiry is required to determine whether Bayer's marketing and labeling was misleading in a material respect since this is judged by an objective standard.[100] Further, all Class members were exposed to the same representations because Plaintiffs' claims are based on the content of the label seen by each Class member when they purchased the Product.[101] Finally, individualized issues with respect to injury and damages do not predominate over common issues. The Products have no value to Plaintiffs and members of the class—they are entitled to a full refund. At this point, Plaintiffs are not required to prove

---

[95] *Ackerman v. Coca-Cola Co.*, No. CV-09-0395, 2010 WL 2925955, at *22 (E.D.N.Y. July 21, 2010).

[96] *Id.*

[97] *Id.*

[98] *Id.*

[99] *Id.* at 23.

[100] *Guido v. L'Oreal, USA, Inc.*, Nos. CV 11-1067 CAS (JCx), CV 11-5465 CAS (JCx), 2012 WL 1616912, at *13 (C.D. Cal. May 7, 2012) (granting class certification with respect to claims under GBL §§ 349 and 350).

[101] *See Morrissey v. Nextel Partners, Inc.*, 72 A.D.3d 209, 216, 895 N.Y.S. 2d 580, 587 (3d Dep't 2010) (certifying GBL § 349 claim and holding that the predominant common issue presented was whether the location and typeface of spending limit fee increase disclosure received by all class members was deceptive); *Broder v. MBNA Corp.*, 281 A.D.2d 369, 371, 722 N.Y.S.2d 524, 526 (1st Dep't 2001) (granting motion for class certification with respect to GBL § 349 claims based on identical written solicitations); *Taylor v. American Bankers Ins. Group, Inc.*, 267 A.D.2d 178, 700 N.Y.S.2d 458 (1st Dep't 1999) (certifying claims under GBL §§ 349 and 350 "since the predominant focus of this litigation is defendants' general practice of offering, in prominent print, ostensibly easily available credit insurance coverage, while, at the same time, relegating to small, inconspicuous print the precise terms of the coverage being extended, and then, rejecting insurance claims on the ground that the customer had not been paying for the appropriate type of insurance.").

that the Products are worthless—that is a matter for trial.[102] Moreover, the central issue presented is whether Bayer's labeling and marketing of the Products violated the GBL—an issue common to members of the class.[103]

Moreover, as the Second Circuit has instructed:

> There are a number of management tools available to a district court to address any individualized damages issues that might arise in a class action, including: (1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class.[104]

In view of the foregoing, Plaintiffs' motion for class certification with respect to the GBL §§ 349 and 350 claims should be granted.

### d.      Common Issues Predominate on the Florida DUTPA Claims

Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et seq*.) is "a consumer protection law intended to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the course of any trade or commerce,"[105] and should be "liberally construed."[106] Whether a defendant has violated the FDUTPA turns on whether the defendant's practice "was likely to deceive a consumer acting reasonably in the same circumstance."[107] This standard "*does not require subjective evidence of reliance.*"[108] Once

---

[102] "If plaintiffs prove EZ Seed suffered from a defect that rendered the product completely ineffective, plaintiffs would be entitled to all of their money back. The full compensatory damages model satisfies Comcast because it measures damages properly if EZ Seed is valueless." *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 412 (S.D.N.Y. 2015).

[103] *Jermyn v. Best Buy Stores, L.P.*, 256 F.R.D. 418, 435-36 (S.D.N.Y. 2009); *see also Fitzpatrick v. General Mills*, 263 F.R.D. 687, 701 (S.D. Fla. 2010), *vacated on other grounds*, 635 F.3d 1279 (11th Cir. 2011).

[104] *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 141 (2d Cir. 2001) (internal citations omitted), *superseded by statute on other grounds*.

[105] *Tuckish v. Pompano Motor Co.*, 337 F. Supp. 2d 1313, 1319 (S.D. Fla. 2004); Fla. Stat. § 501.202.

[106] *Samuels v. King Motor Co.*, 782 So. 2d 489, 499 (Fla. 4th DCA 2001).

[107] *Urquhart v. Manatee Mem'l Hosp.*, No. 8:06-cv-1418, 2007 U.S. Dist. LEXIS 17531 (M.D. Fla. Mar. 13, 2007).

[108] *Nelson v. Mead Johnson Nutrition Co.*, 270 F.R.D. 689, 692 (S.D. Fla. 2010) (citing—*Davis v. Powertel, Inc.*, 776 So. 2d 971, 973-74 (Fla. 1st DCA 2000)) ("A party asserting a deceptive trade *(footnote continues on following page)*

plaintiffs meet this standard, they need only show that consumers "paid a price premium for [the Products] to be entitled to damages under the FDUTPA."[109] At the outer limit, however, this difference in market value measure is the same as restitution of the purchase price.[110] Florida's standard is similar to that of the UCL in California.

Thus, as in California and New York, Plaintiffs will be able to show that Bayer's unfair and deceptive practices are likely to mislead Plaintiff and members of the class. Plaintiff and members of the class purchased the Products based on their misleading marketing and labeling. Because the Products do not provide any of the benefits promised, Plaintiffs and other members of the class paid more for the Products than they otherwise would have had they known the truth.

> **e.    Common Issues Predominate on the Unjust Enrichment Claims under California, Florida, and New York Law**

Common issues also predominate with respect to the unjust enrichment claims. The elements of an unjust enrichment claim under California law are "(1) receipt of a benefit; and (2) the unjust retention of the benefit at the expense of another."[111]

As was the case with respect to Plaintiffs' claims for violation of California statutory law, the predominant issue for Plaintiffs' unjust enrichment claims under California law is whether Bayer was enriched at the expense of the Classes by the deceptive labeling and marketing of its Products.

As the Court has noted, "The Ninth Circuit recently clarified the law regarding unjust enrichment in California, holding that "w]hen a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution."[112]

---

*(footnote continued from previous page)*
practice claim need not show actual reliance on the representation or omission at issue").

[109] *Fitzpatrick v. Gen. Mills, Inc.*, 635 F.3d 1279, 1283 (11th Cir. 2011).

[110] *See, e.g.*, *Orkin Exterminating Co. v. Petsch*, 872 So. 2d 259, 261 (Fla. Dist. Ct. App. 2004).

[111] *Shum v. Intel Corp.*, 630 F. Supp. 2d 1063, 1073 (N.D. Cal. 2009).

[112] *Rushing*, 2016 WL 4269787, at *9 (quoting *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) internal quotations omitted).

In Florida, common questions can predominate in unjust enrichment claims where "the defendant's conduct is the same as to all members of the putative class."[113] The same holds true in New York.[114]

Here, the same common issues predominate with respect to unjust enrichment; a class should be certified as Plaintiffs' unjust enrichment claim as well.

**2.    A Class Action is Superior to Any Other Means of Resolving Plaintiffs' Claims**

In addition to predominance, Rule 23(b)(3) requires that "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy."[115] Significantly, "the predominance analysis . . . has a tremendous impact on the superiority analysis . . . for the simple reason that, the more common questions predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims."[116] Thus, "where a court has already made a finding that common issues predominate over individualized issues, [a court is] hard pressed to conclude that a class action is less manageable than individual actions."[117] And, as is demonstrated above, common issues overwhelmingly predominate on the claims of the Classes. With Classes consisting of hundreds of thousands of consumers across the country,[118] the notion of having each consumer separately prove the

---

[113] *James D. Hinson Elec. Contracting Co. v. BellSouth Telecommunications, Inc*., 275 F.R.D. 638, 647 (M.D. Fla. 2011) (citing *In County of Monroe, Florida v. Priceline.com, Inc*., 265 F.R.D. 659, 671 (S.D.Fla.2010)); *Arvida/JMB Partners v. Council of Villages, Inc*., 733 So.2d 1026, 1031 (Fla. 4th DCA 1999).

[114] *Jermyn v. Best Buy Stores, L.P*., 256 F.R.D. 418, 436 (S.D.N.Y. 2009) ("The predominant issue for the unjust enrichment claim is whether Best Buy was enriched at the class' expense by using an undisclosed policy of aggressively discouraging and denying customers' valid price match requests."); *Dupler v. Costco Wholesale Corp*., 249 F.R.D. 29, 47 (E.D.N.Y. 2008) ("the Court believes that common questions of law and fact will continue to predominate because it does not appear that any such issues would be unique to each plaintiff.").

[115] Fed. R. Civ. P. 23(b)(3).

[116] *Klay v. Humana, Inc.*, 382 F.3d 1241, 1269 (11th Cir. 2004).

[117] *Id.* at 1273.

[118] *See supra*, fn. 50.

existence of Bayer's deceptive conduct is absurd and weighs heavily in favor of a finding of superiority.[119]

Rule 23(b)(3) provides four factors pertinent to a finding of superiority: (A) the interests of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.[120]

First, a class action is superior here because "[t]he interests of the class as a whole in litigating the many common questions substantially outweighs any interest by individual members in bringing and prosecuting separate actions."[121] "A Rule 23(b)(3) action clearly is superior where large numbers of persons, who may be unaware of the existence of a cause of action, are involved and where most of their claims are too small to warrant individual suits."[122] Here, each Class member's claim amounts to only a few hundred dollars or less. If this action is not allowed to proceed as a class action, no Class member's claim would be large enough to proceed on an individual basis. Moreover, given that this action involves a serious threat to public health and an attempt to eliminate that threat, the interests of the Class as a whole outweigh any individual damages.

Second, Plaintiffs are aware of no other pending actions on behalf of similarly situated persons that assert the same claims as asserted here.

Third, it is clearly desirable to concentrate litigation on behalf of all Class members in one forum, since this will prevent inconsistent adjudications and will promote fair and efficient use of the judicial system.[123]

---

[119] *Klay*, 382 F.3d at 1260 (requiring hundreds of thousands of plaintiffs to repeatedly prove the deceptive scheme "is ridiculous").

[120] *United States v. City of New York*, 276 F.R.D. 22, 29-30 (E.D.N.Y 2011) (citing *Amchem*, 521 U.S. at 615-16); Fed. R. Civ. P. 23(b)(3).

[121] *Cromer Finance Ltd. v. Berger*, 205 F.R.D. 113, 133 (S.D.N.Y. 2001).

[122] *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 103 (S.D.N.Y. 1981).

[123] *See Cromer*, 205 F.R.D. at 133.

1         The fourth and final factor that may be considered by this Court (which should be

2    weighed as part of a consideration of the other three factors, not considered in isolation) is "the

3    difficulties likely to be encountered in the management of a class action."[124] The existence of

4    identifiable, or even potentially severe, manageability problems does not alone render an action

5    inappropriate for class treatment. Rather the question here is "whether reasonably foreseeable

6    difficulties render some other method of adjudication superior to class certification."[125]

7         As the claims at issue here focus on Bayer's conduct, trial will be manageable as it will

8    involve examining evidence of Bayer's practices rather than any issues regarding Class members

9    or their conduct.[126] Class treatment of these claims is the most efficient and just way to proceed.

10   Although Bayer will doubtless raise multiple specious distinctions in their opposition to

11   certification, it is clear the Classes consist of very cohesive groups of consumers who were all

12   tricked by Bayer in the same way.

13   / / /

14   / / /

15   / / /

16   / / /

17   / / /

18   / / /

19   / / /

20   / / /

21   / / /

22

23   [124] Fed. R. Civ. P. 23(b)(3)(D).

24   [125] *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 525 (D.N.J. 1997) (citing 1 Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 4.3, at 4-125 (3d ed. 1992)

25   ("'It is only when such difficulties make a class action less fair and efficient than some other method, such as individual interventions or consolidation of individual lawsuits, that a class action is improper.'")).

26   [126] *See Hanlon*, 150 F.3d at 1023 (9th Cir. 1998) ("From either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions.

27   There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery.").

28

1    **V.      CONCLUSION**

2          For the preceding reasons, Plaintiffs respectfully ask the Court to (1) certify the Classes as

3    defined above; (2) appoint the Plaintiffs as Class representatives; and (3) appoint Interim Class

4    Counsel as Lead Class Counsel.

5

6                                            Respectfully submitted,

7    Dated: January 11, 2017               KAPLAN FOX & KILSHEIMER LLP

8                                            By:   /s/ *Laurence D. King*
                                                      Laurence D. King

9                                            Laurence D. King (SBN 206423)
10                                           *lking@kaplanfox.com*
                                             Linda M. Fong (SBN 124232)
11                                           *lfong@kaplanfox.com*
                                             350 Sansome Street, Suite 400
12                                           San Francisco, California 94104
                                             Telephone: (415) 772-4700
13                                           Facsimile:   (415) 772-4707

14                                           KAPLAN FOX & KILSHEIMER LLP
                                             Robert N. Kaplan (admitted *pro hac vice*)
15                                           *rkaplan@kaplanfox.com*
                                             850 Third Avenue, 14th Floor
16                                           New York, New York 10022
                                             Telephone: (212) 687-1980
17                                           Facsimile:   (212) 687-7714

18                                           STANLEY LAW GROUP
                                             Stephen Gardner (admitted *pro hac vice*)
19                                           *steve@consumerhelper.com*
                                             Amanda Howell (admitted *pro hac vice*)
20                                           *ahowell@stanleylawgroup.com*
                                             6116 N. Central Expressway, Suite 1500
21                                           Dallas, Texas 75206
                                             Tel: (214) 443-4300
22                                           Fax: (214) 443-0358

23                                           *Interim Class Counsel*

24

25

26

27

28