Jonathan F. Cohn (*Pro Hac Vice*)
jcohn@sidley.com
Benjamin M. Mundel (*Pro Hac Vice*)
bmundel@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Telephone:  (202) 736.8000
Facsimile:   (202) 736.8711

Ryan Sandrock (SBN 251781)
rsandrock@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone:  (415) 772.1200
Facsimile:   (415) 772.7400

Attorneys for Defendants
Bayer AG, Bayer Corporation, and Bayer HealthCare LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| COLLEEN GALLAGHER, ILANA FARAR, ANDREA LOPEZ, JOANN CORDARO, and ROSANNE COSGROVE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BAYER AG, BAYER CORPORATION, and BAYER HEALTHCARE LLC,<br><br>Defendants. | Case No. 14-cv-04601-WHO<br><br>**NOTICE OF MOTION AND DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:  May 30, 2017<br>Time: 2:00 pm<br>Courtroom:  17th Floor |

REDACTED VERSION OF DOCUMENT
SOUGHT TO BE SEALED

220596397v 10

# TABLE OF CONTENTS

**Page**

FACTUAL AND PROCEDURAL HISTORY ........................................................................ 2

I.    Background On Multivitamins ...................................................................................... 2

II.   Bayer's Marketing of One A Day ................................................................................ 4

III.  Statutory and Regulatory Background ......................................................................... 5

IV.   The Parties' Scientific Experts .................................................................................... 7

    A.    Dr. Edward Blonz ................................................................................................. 7

    B.    Dr. Jeffrey Blumberg ........................................................................................... 8

V.    The Named Plaintiffs .................................................................................................... 8

    A.    Ilana Farar ............................................................................................................ 8

    B.    Roseanne Cosgrove .............................................................................................. 9

    C.    Andrea Lopez ....................................................................................................... 9

VI.   Procedural History ...................................................................................................... 10

LEGAL STANDARD ........................................................................................................... 10

ARGUMENT ......................................................................................................................... 11

I.    Plaintiffs Lack Article III Standing ............................................................................ 11

    A.    Plaintiffs Have Not Suffered an Injury-In-Fact ................................................. 12

    B.    Plaintiffs Have No Standing for Injunctive Relief Because They Will Not Purchase One A Day in the Future ...................................................................... 14

II.   Plaintiffs' Expert Concedes That Bayer's Claims Are True And Provides No Evidence That The Claims Are Actually False Or Misleading ...................................... 14

    A.    Undisputed Evidence From Dr. Blonz And Other Scientific Authorities Confirms That OAD Multivitamins Support Heart Healthy, Immunity, and Physical Energy ................................................................................................... 15

    B.    Dr. Blonz's Remaining Opinion Is Premised on a Flawed Legal Theory ........... 16

    C.    Plaintiffs' Cannot Survive Summary Judgment With Dr. Blonz's Lack-of-Substantiation Opinion ...................................................................................... 18

III.  The Challenged Claims Are Not Material .................................................................. 19

    A.    Plaintiffs Have No Evidence of Materiality ....................................................... 20

B.      Survey Evidence Proves That The Claims Are Not Material ............................... 20

IV.      Plaintiffs Have No Evidence Of Proper Restitution ......................................... 21

CONCLUSION.................................................................................................................. 22

# TABLE OF AUTHORITIES

**Cases**                                                                                   **Page(s)**

*Anderson v. Liberty Lobby*,
    477 U.S. 242 (1986).................................................................................................12

*Basic Research, LLC v. FTC*,
    No. 2:09–cv–0779 (D. Utah Nov. 25, 2014)........................................................7, 8

*Black Diamond Props., Inc. v. Haines*,
    69 So. 3d 1090 (Fla. Ct. App. 2011) ......................................................................19

*Bober v. Glaxo Wellcome PLC*,
    246 F.3d 934 (7th Cir. 2001) ..................................................................................19

*Brod v. Sioux Honey Ass'n Co-op*,
    927 F. Supp. 2d 811 (N.D. Cal. 2013), *aff'd*, 609 F. App'x 415 (9th Cir. 2015) ...................19

*Bronson v. Johnson & Johnson, Inc.*,
    No. 12-cv-04184, 2013 WL 1629191 (N.D. Cal. Apr. 16, 2013)...........................18

*Bruton v. Gerber Prods. Co.*,
    No. 12-cv-02412, 2014 WL 7206633 (N.D. Cal. Dec. 18, 2014), *appeal docketed*,
    No. 15-15174 (9th Cir. Jan. 30, 2015) ....................................................................20

*Burrows v. Purchasing Power, LLC*,
    No. 12-CV-22800, 2012 WL 9391827 (S.D. Fla. Oct. 18, 2012)...........................19

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)...........................................................................................11, 12

*Clemens v. DaimlerChrysler Corp.*,
    534 F.3d 1017 (9th Cir. 2008) ................................................................................20

*Colgan v. Leatherman Tool Grp., Inc.*,
    135 Cal. App. 4th 663 (2006) .................................................................................13

*Desert Water Agency v. U.S. Dep't of Interior*,
    No. 14-55461, 2017 WL 894462 (9th Cir. Mar. 7, 2017)......................................12

*Ewert v. eBay, Inc.*,
    602 F. App'x 357 (9th Cir. 2015) ...........................................................................21

*Fairbank v. Wunderman Cato Johnson*,
    212 F.3d 528 (9th Cir. 2000) .............................................................................11, 12

*Fraker v. Bayer Corp.*,
    No. 08-cv-1564, 2009 WL 5865687 (E.D. Cal. Oct. 6, 2009)................................18

iii

*Franulovic v. Coca Cola Co.*,
   390 F. App'x 125 (3d Cir. 2010) ......................................................................................19

*FTC v. Garden of Life Inc.*,
   845 F. Supp. 2d 1328 (S. D. Fla. 2012), *vacated in part on other grounds*, 516 F.
   App'x 852 (11th Cir. 2013) ............................................................................................7

*In re GNC Corp.*,
   789 F.3d 505 (4th Cir. 2015) .........................................................................................18

*Haskell v. Time Inc*,
   965 F. Supp. 1398 (E.D. Cal. 1997)...............................................................................20

*Johns v. Bayer Corp.*,
   No. 09-cv-1935, 2013 WL 1498965 (S.D. Cal. Apr. 10, 2013) .....................................19

*Kane v. Chobani, Inc.*,
   973 F. Supp. 2d 1120 (N.D. Cal. 2014), *vacated on other grounds*, 645 F. App'x
   593 (9th Cir. 2016)........................................................................................................12

*Khasin v. R.C. Bigelow, Inc.*,
   No. 12-cv-02204, 2016 WL 4502500 (N.D. Cal. Aug. 29, 2016), *appeal docketed*,
   No. 16-16641 (9th Cir. Sept. 16, 2016) ...............................................................13, 14, 22

*Kosta v. Del Monte Foods, Inc.*,
   308 F.R.D. 217 (N.D. Cal. 2015) ..................................................................................20

*Kwan v. SanMedica Int'l, LLC.*,
   No. 14-CV-03287, 2015 WL 848868 (N.D. Cal. Feb., 25, 2015), *appeal docketed*,
   No. 15-15496 (9th Cir. Mar. 17, 2015) ..........................................................................19

*Lavie v. Procter & Gamble Co.*,
   105 Cal. App. 4th 496 (2003) ...................................................................................19, 20

*Luman v. Theissmann*,
   647 F. App'x 804 (9th Cir. 2016) ..................................................................................14

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986)......................................................................................................11

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012) .........................................................................................12

*McGlinchy v. Shell Chem.*,
   845 F.2d 802 (9th Cir. 1988) .........................................................................................22

*Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm., Inc.*,
   107 Cal. App. 4th 1336 (2003) ......................................................................................18

iv

*Nguyen v. Medora Holdings*,
  No. 5:14-cv-00618, 2015 WL 4932836 (N.D. Cal. Aug. 18, 2015) ..................................12, 13

*In re NJOY, Inc. Consumer Class Action Litig.*,
  No. 14-cv-428, 2016 WL 787415 (C.D. Cal. Feb. 2, 2016) ........................................13

*Perez v. Nidek Co.*,
  711 f.3d 1109 (9th Cir. 2013) ........................................................14

*Rahman v. Mott's LLP*,
  No. CV 13-3482, 2014 WL 5282106 (N.D. Cal. Oct. 15, 2014).........................................20

*Rice v. Fox Broad. Co.*,
  330 F.3d 1170 (9th Cir. 2003) ........................................................19

*Ries v. Ariz. Beverages*,
  No. 10-1139, 2013 WL 1287416 (N.D. Cal. Mar. 28, 2013) .................................20

*Sonner v. Schwabe NA*,
  No. 15-cv-1358, 2017 WL 474106 (C.D. Cal. Feb. 2, 2017), *appeal docketed*, No.
  17-55261 (9th Cir. Feb. 28, 2017) .......................................................18

*Stanley v. Bayer Healthcare LLC*,
  No. 11-cv-862, 2012 WL 1132920 (S.D. Cal. Apr. 3, 2012) ..................................19

*Stutman v. Chem. Bank*,
  709 N.Y.S. 2d 892 (N.Y. 2000) ........................................................19

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*,
  809 F.2d 626 (9th Cir. 1987) .........................................................11

*Tomasino v. Estee Lauder Cos.*,
  44 F. Supp. 3d 251 (E.D.N.Y. 2014) .....................................................19

*United States v. Bayer Corp.*,
  No. 07-cv-01, 2015 WL 5822595 (D.N.J. Sept. 24, 2015).......................................7

*United States v. Park Place Assocs.*,
  563 F.3d 907 (9th Cir. 2009) .........................................................17

*Victor v. R.C. Bigelow*,
  No. 13-CV-02976, 2016 WL 4502528 (N.D. Cal. Aug. 29, 2016), *appeal
  docketed*, No. 16-16639 (9th Cir. Sept. 16, 2016) .................................21

**Statutes and Regulations**

Dietary Supplement Health and Education Act of 1994, Pub. L. No. 103-417, 108
  Stat. 4325 ........................................................................6

21 U.S.C. § 331(d) ............................................................v ...........6

21 U.S.C. § 355(a) ...............................................................................................6

N.Y. Gen. Bus. Law § 350-a ...........................................................................19

21 C.F.R. § 314.126 ...........................................................................................7

65 Fed. Reg. 1000 (Jan. 6, 2000) ...................................................................17

**Rule**

Fed. R. Civ. P. 56 .............................................................................................11

**Legislative History**

*Dietary Supplements*: *Hearing before the H. Subcomm. on Agriculture, Rural Development, Food and Drug Administration, and Related Agencies of the Committee on Appropriations*, 103rd Cong. (1993) ...................................6

*Regulation of Dietary Supplements: Hearing Before the H. Subcomm. on Health and the Environment of the Comm. on Energy and Commerce*, 103rd Cong. (1993) .....................6

**Other Authority**

FTC, *Dietary Supplements: An Advertising Guide for Industry* (Apr. 2001), http://business.ftc.gov/documents/bus09-dietary-supplements-advertising-guide-industry/ ...............................................................................................7

1

**NOTICE OF MOTION AND DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

2  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:  PLEASE TAKE NOTICE THAT

3  on May 30, 2017 or as soon thereafter as this matter may be heard before the above-entitled Court,

4  located at 450 Golden Gate Ave., San Francisco, California 94102, Defendants, Bayer Corporation

5  and Bayer HealthCare, LLC (collectively, "Bayer") will, and hereby do, move for summary

6  judgment on all counts in the Second Amended Complaint.[1]

7

**MEMORANDUM OF POINTS AND AUTHORITIES**

8      Plaintiffs do not come close to meeting their burden at summary judgment.  Not only do they

9  lack evidence supporting their challenge to Bayer's structure/function claims, but their own expert,

10  Dr. Edward Blonz, contradicts their allegations.  For several reasons, this Court should grant

11  summary judgment to Bayer.

12      First and foremost, Plaintiffs have no evidence that the structure/function claims at issue—

13  *i.e.*, One A Day multivitamins (OAD) help "support heart health," immune health" and "energy"—

14  are false or misleading.  To the contrary, Plaintiffs' sole expert testified that the vitamins and

15  nutrients in OAD do "help support heart health, immunity, and physical energy."  Cohn Dec. Ex. 1

16  Blonz Tr. 94:22-24; *see also, e.g.*, *id.* (Blonz Tr. 84:6-94:6, 240:11-14).

17      Dr. Blonz also explained why he believes multivitamins, like OAD, benefit consumers.  The

18  "clear majority of people fail to get the recommended amounts of essential nutrients" from food

19  alone. *Id.* (Blonz Tr. 153:18-21).  This failure could have "negative" health effects, including

20  "repercussions with respect to hearth health, immune health, and energy." *Id.* (Blonz Tr. 205:6-13;

21  240:7-10).  By providing "essential" vitamins and nutrients, OAD can "benefit" Americans,

22  including "with respect to supporting normal hearth health," "normal immune health," and "normal

23  energy health." *Id.* (Blonz Tr. 75; 215:3-20).

24      Bayer's expert wholeheartedly agrees, and so do dozens of leading scientific organizations,

25  including the American Dietetic Association, Harvard University, and the Mayo Clinic.  Blumberg

26  Dec. ¶ 37.  There is no reasonable dispute: OAD multivitamins "help support heart health, immunity,

27

---

28  [1] Bayer is noticing this motion for the same date and time as the hearing on Plaintiffs' motion for class certification.

1   and physical energy," just as Bayer claims.

2          Dr. Blonz's only objection to Bayer's claims is that he views Bayer as "try[ing] to *assuage*

3   *consumers' concerns about disease risks*." Ex 1 (Blonz Tr. at 308:9-13) (emphasis added).  But this

4   objection cannot survive summary judgment for several reasons.  Most importantly, this Court has

5   twice held that Bayer's claims are structure/function claims, not disease claims.  Dkt. 54 at 11; Dkt.

6   78 at 6 ("[T]he Claims may be treated only as structure/function claims.").  This decision is law of

7   the case.

8          Moreover, Dr. Blonz provides no evidentiary basis to find implied disease claims.  He

9   concedes that Bayer does not reference any disease—except where it states on the package that the

10  product is *not* intended to address diseases.  Ex. 1 (Blonz Tr. 344:1-11).  And he also concedes that

11  he is "not an expert in consumer interpretation or impli[ed] claim[s]."  *Id.* (Blonz Tr. 347:3-348:23).

12  Nor did he conduct any "survey" or "ask any consumers if they share [his] view."  *Id.* (Blonz Tr.

13  308:23-25; 309:14-15).  Indeed, he is unable to say whether there is a single "person in the world

14  [who] shares [his] view of Bayer's claims."  *Id.* (Blonz Tr. 310:2-5).  At the end of the day, Dr.

15  Blonz admitted he is "not rendering an expert opinion that Bayer actually is making these implied

16  claims [regarding diseases]."  *Id.* (Blonz Tr. 348:24-349:2).  Such an opinion would be indefensible

17  as it is inconsistent with decades of FDA and judicial precedent.

18         Plaintiffs also lack evidence on other elements of their claims.  First, they have no evidence

19  to establish Article III standing; they have not shown any injury-in-fact through payment of a price

20  premium or purchase of a product they would not have bought but-for the claims.  Second, Plaintiffs

21  have no evidence that the challenged claims are material to a reasonable consumer, while Bayer has

22  undisputed survey evidence proving that the claims are immaterial.  Third, Plaintiffs have not shown

23  they are entitled to any restitution.  Thus, this Court should grant summary judgment to Bayer.

## FACTUAL AND PROCEDURAL HISTORY

### I.     Background On Multivitamins

26         For hundreds of years, the scientific community has recognized that vitamins and minerals

27  play a crucial role in supporting human health.  *See* Blumberg Dec. ¶ 23.  These compounds—

28  including Vitamin A, B, C, D, and calcium—are the building blocks for nearly every biochemical

process in the body.  They are needed for "metabolism and energy release from food," Ex. 1 (Blonz Tr. 85:24-86:2), "normal [heart] function[,]" *id.* (Blonz Tr. 85:16-23), "the immune system," *id.* (Blonz Tr. 86:25-87:5), "fat and carbohydrate metabolism[]," *id.* (Blonz Tr. 86:16-20), "proper vision and skin health," *id.* (Blonz Tr. 87:16-20), "healthy bones and teeth," *id.* (Blonz Tr. 87:21-25), and "normal blood clotting." *Id.* (Blonz Tr. 88:9-12).

Recognizing the crucial role that vitamins play in supporting health, the Institute of Medicine of the National Academy of Science developed the Dietary Reference Intakes ("DRIs").  Blumberg Dec. ¶¶ 25, 26.  The DRIs are a set of reference values that represent the most current knowledge on the nutrient needs of healthy populations.  *Id.*  They have been a cornerstone of federal nutrition policy since its introduction, and are used by health professionals throughout the country for diet planning and nutritional assessment.  *Id.*

The DRIs include the Recommended Dietary Allowance ("RDA"), which is defined as the average daily nutrient intake level sufficient to meet the requirements of nearly all (97% to 98%) healthy individuals in a particular age range or life stage and sex group.  *Id.*  The RDAs are the "goal[s]" that Americans should strive to meet in their daily vitamin consumption.  Ex. 1 (Blonz Tr. at 251:9-252:23).

To help Americans reach their vitamin goals and improve their diets, the United States Department of Health and Human Services and the United States Department of Agriculture publish the Dietary Guidelines for Americans ("DGA").  Cohn Dec. Ex. 2 (DGA at 2).  These guidelines provide "recommendations about the components of a healthy and nutritionally adequate diet to help promote health and prevent chronic disease."  *Id.*  By following these Guidelines, Americans can ensure they generally reach the recommended intake levels of key vitamins and nutrients.  *Id.*

Unfortunately, "the clear majority of people fail to get the recommended amounts of the essential nutrients," because they do not follow these dietary guidelines. Ex. 1 (Blonz Tr. 153:18-21).  For example, most Americans do not eat enough fruits, vegetables, and whole grains, and eat too many sugars, sodium, and saturated fats.  *Id.* (Blonz Tr. 248:13-23).  This has led to an obesity epidemic and poor nutrition for millions of Americans.  *Id*. (Blonz Tr. 198:16-200:10).  Indeed, the Dietary Guidelines note that "some nutrients are consumed by many individuals in amounts below,"

not just the RDAs, but also "the Estimated Average Requirements (EARs)," which provides an even lower target.  Ex. 2 (DGA at 79).  (The EAR is the average daily nutrient intake level estimated to meet the requirement of only half of the healthy individuals in a particular life stage and sex group. Blumberg Dec. ¶ 26.)

The Dietary Guidelines specifically identify "potassium, dietary fiber, choline, magnesium, calcium, and vitamins A, D, E, and C" as under consumed nutrients.  Ex 2. at 79.  Consumption of fiber, vitamin D, calcium, and potassium is so woefully inadequate that it is a "public health concern."  Ex. 1 (Blonz Tr. 246:18-247:6).  And even though individuals with inadequate vitamin and nutrient intakes may "never develop a deficiency disease, a chronically deficient diet will likely have long-term health implications."  *Id*. (Blonz Tr. 191:22-194:8).

Addressing this public health problem, a number of manufacturers began marketing multivitamins in the United States in the early 1940s.  Studies have shown that multivitamins "constitute an important source of vitamins for large segments of the adult population in the United States."  Cohn Dec. Ex. 3 at 7.  Further, the American Dietetic Association (now the "Academy of Nutrition and Dietetics") states: "When taken regularly, [multivitamins] can be an effective way to increase nutrient intakes to meet recommended levels of multiple nutrients."  Ex. 1 (Blonz Tr. 209:2-16).  In 2011, the National Center for Health Statistics reported that, between 2003 and 2006, approximately 40 percent of the U.S. adult population used multivitamins.  Cohn Dec. Ex. 4 at 1.

## II.     Bayer's Marketing of One A Day

Bayer markets more than twenty different multivitamins under its OAD brand name.  All OAD multivitamins are formulated with 100% of the RDAs of a number of essential vitamins and minerals.  The OAD products have different formulations depending on the gender and age group to which they are marketed, because the NIH provides a different RDA for different genders and age groups.  Blumberg Dec. ¶¶ 24-25, 30.  Plaintiffs challenge the following OAD products:

| • Energy<br>• Essential<br>• Teen Advantage for Her<br>• Teen Advantage for Him<br>• Men's Pro Edge<br>• Men's Health<br>• Men's 50+ Healthy Advantage<br>• Men's VitaCraves | • VitaCraves Sour Gummies<br>• VitaCraves Gummies<br>• VitaCraves Gummies Plus Immunity Support<br>• Women's VitaCraves<br>• Women's Formula<br>• Women's Active Metabolism<br>• Women's Active Mind & Body | • Women's Plus Healthy Skin Support<br>• Women's Menopause Formula<br>• Women's Pro Edge<br>• Women's Petites<br>• Women's 50+ Healthy Advantage |

SACAC ¶ 1 n.2.

Before Bayer publishes any advertisement or other material containing any claim, the material and specific claim must be submitted to an intensive compliance review process known as "[l]egal, medical, and regulatory" review. Cohn Dec. Ex. 5 (Cappello Tr. 116:19-117:14). The committee conducting this review meets once a week to discuss each submitted advertisement. Cohn Dec. Ex. 6 (Zisa Tr. 29:14-30:1). The legal team reviews for legal compliance; the regulatory team reviews for compliance with relevant regulations; and the medical team ensures that the scientific and medical literature substantiates the claims. *Id.* (Zisa Tr. 40:2-44:16). Before approving any claim, the medical team conducts a comprehensive literature review and analyzes all of the published literature on the subject. Ex. 5 (Cappello Tr. 48:20-49:23). The medical team stays up to date on changes in the science through additional searches and automated alerts. *Id.*

If any member of the legal, medical, or regulatory team believes a claim may be inappropriate, that representative will deny approval and the claim cannot be made. Ex. 5 (Cappello Tr. 116:19-117:14). Unanimous consent is necessary for publication. *Id.* Neither marketing, nor legal, nor regulatory can overrule the determination by medical that a claim is not substantiated. *Id.*

Each of the claims at issue in this case has gone through the legal, medical, and regulatory review process. *Id.* In particular, a medial representative from Bayer has determined that the structure/function claims for heart health, immunity, and energy are scientifically accurate and fully substantiated.

### III.    Statutory and Regulatory Background

Congress passed the Dietary Supplement Health and Education Act to treat dietary supplements differently from drugs. *See* Dietary Supplement Health and Education Act of 1994 ("DSHEA"), Pub. L. No. 103-417, 108 Stat. 4325 (codified as amended in scattered sections of 21

U.S.C.); s*ee, e.g.*, *Dietary Supplements*: *Hearing before the H. Subcomm. on Agriculture, Rural Development, Food and Drug Administration, and Related Agencies of the Committee on Appropriations*, 103rd Cong. 27 (1993) (statement of Sen. Hatch) ("[I]f you can show scientific evidence that justifies the formulation then it would be all right. *It would be a lesser standard*.") (emphasis added); *Regulation of Dietary Supplements: Hearing Before the H. Subcomm. on Health and the Environment of the Comm. on Energy and Commerce*, 103rd Cong. 8 (1993) (statement of Rep. Gallegly) (supplement claims may be made if "there exists a reasonable scientific basis" for the claims. Whereas new drugs must be pre-approved by the Food and Drug Administration, *see* 21 U.S.C § 331(d); *id.* § 355(a), and traditionally must be supported by randomized, placebo-controlled, double-blind clinical trials, *see* 21 C.F.R. § 314.126, dietary supplements need not.

Consistent with DSHEA, the FTC's published guidance states that the substantiation standard for dietary supplements is "sufficiently flexible to ensure that consumers have access to information about emerging areas of science." FTC, *Dietary Supplements: An Advertising Guide for Industry* (Apr. 2001) at 8, http://business.ftc.gov/documents/bus09-dietary-supplements-advertising-guide-industry/. To be sure, "well-controlled human clinical studies are the most reliable form of evidence." *Id.* at 10. But "[r]esults obtained [from] *in vitro* studies will also be examined, particularly where they are widely considered to be acceptable substitutes for human research or where human research is infeasible." *Id*.

Courts around the country have thus rejected any attempt to apply the drug-level test to dietary supplements. "[D]ietary supplements need not" "be supported by randomized, placebo-controlled, double-blind, clinical trials." *United States v. Bayer Corp.*, No. 07-cv-01, 2015 WL 5822595, at *3 (D.N.J. Sept. 24, 2015); *see also id.* at *14 ("competent and reliable scientific evidence does not require drug-level clinical trials"), *id.* at *16 (in enacting DHSEA, Congress "lowered the substantiation requirement for dietary supplements"); *FTC v. Garden of Life Inc.*, 845 F. Supp. 2d 1328, 1334–35 (S. D. Fla. 2012), *vacated in part on other grounds*, 516 F. App'x 852 (11th Cir. 2013); *Basic Research, LLC v. FTC*, No. 2:09–cv–0779, slip op. at 7 (D. Utah Nov. 25, 2014) (attached as Cohn Dec. Ex. 14). The standard for substantiation for dietary supplements is "competent and reliable [evidence], which can be shown by various factors." *Id.* Nothing "requires

1   those factors to be an 'ideal' study that would meet the Gold Standard" requirements for prescription

2   drugs.  *Id.*

3   **IV.   The Parties' Scientific Experts**

4       **A.    *Dr. Edward Blonz***

5       Plaintiffs have retained Dr. Edward Blonz.  Dr. Blonz is affiliated with a university but has

6   not taught a single course in eight years.  Ex. 1 (Blonz Tr. 55:11-18).  He has written no scientific

7   articles on multivitamins or vitamins of any kind.  *Id.* (Blonz Tr. 70:6-24).  Nor has he conducted

8   any studies on multivitamins, vitamins, or minerals.  *Id.* (Blonz Tr. 69:2-7).  Indeed, he has never

9   conducted any human study at all, let alone the randomized controlled trials that he says are required

10  here.  *Id.* (Blonz Tr. 70:1-3).  Nearly half of Dr. Blonz's scientific articles involve spoiled tuna.  *Id.*

11  (Blonz Tr. 62:17-22).  The only scientific article he has published in the past ten years is on the Zika

12  virus.  *Id.* (Blonz Tr. 58:18-23).

13      Dr. Blonz earns his living testifying as a paid expert on behalf of consumer-protection

14  attorneys.  *Id.* (Blonz Tr. 284:9-23).  However, his opinion has previously been rejected by a court

15  for "applying the incorrect [substantiation] standard" for dietary supplements.  *Basic Research*, No.

16  2:09–cv–0779, slip op. at 8.

17      In this case, Plaintiffs' counsel provided Dr. Blonz with only *one* of the hundreds of

18  substantiation studies Bayer produced during discovery.  Ex. 1 (Blonz Tr. 15:11-21).  Plaintiffs'

19  counsel did not provide Dr. Blonz with *any* of the hundreds of labels, packages, or television

20  advertisements that Bayer produced.  *Id.*  Nor did Dr. Blonz review the deposition transcript of Dr.

21  Debra DeMuth, Bayer's medical director.  *Id.*  Instead, Dr. Blonz only reviewed pictures of OAD

22  packages on Bayer's website, *id.* (Blonz Tr. 22:13-25:7), although he did not disclose this in his

23  expert report or preserve the items he saw.  The only other advertisements that Dr. Blonz reviewed

24  for his report were two labels which Plaintiffs' counsel obtained from amazon.com, not from Bayer.

25  *Id.* (Blonz Tr. 22:14-23:8).

26      At his deposition, Dr. Blonz conceded that the vitamins in OAD "help support normal heart

27  health, immune health and energy."  *Id.* (Blonz Tr. 238:9-240:14).  His only objection to Bayer's

28  advertising is his personal belief that "Bayer is making claims to try to *assuage consumers' concerns*

*about disease risks*," *id.* (Blonz Tr. 308:9-13) (emphasis added), and therefore "randomized controlled trials" showing a reduction in "disease endpoints" are required. *Id.* (Blonz Tr. 167:1-3 & 20-24, 186:22-187:10, 213:9-14). Because there are no such randomized controlled trials, Dr. Blonz concluded that there is no "competent and reliable scientific evidence" (as he has defined it) for these disease claims. *E.g.*, Dkt. 129 ("Motion") Ex. 38 (Blonz Dec. at 10).[2]

**B.** *Dr. Jeffrey Blumberg*

Bayer has retained Dr. Jeffrey Blumberg as a scientific expert. Dr. Blumberg's professional area of study is nutrients and their role in supporting the normal structure and function of the body. Blumberg Dec. ¶ 9. He has published more than 350 scientific articles in peer-reviewed journals and books, including over 135 relevant to vitamins and/or minerals commonly found in multivitamins like OAD. *Id.* He received a PhD in Pharmacology from Vanderbilt University School of Medicine with subsequent postdoctoral training in biochemistry at the University of Calgary. *Id.* at ¶ 10. Currently, he is a professor in the Biochemical and Molecular Nutrition Program at the Friedman School of Nutrition Science and Policy and in the Program in Pharmacology and Experimental Therapeutics, Sacker School of Graduate Biomedical Sciences at Tufts University. *Id.* at ¶ 8.

Dr. Blumberg has broadly reviewed the scientific literature relevant to this matter, including the hundreds of studies produced by Bayer. Blumberg Dec. Ex. C. Dr. Blumberg has also reviewed Bayer's advertising and the deposition transcripts of the named Plaintiffs. *Id.* Dr. Blumberg has concluded that the three claims at issue are scientifically supported and accurate. *Id.*

**V.    The Named Plaintiffs**

**A.** *Ilana Farar*

Plaintiff Ilana Farar is married to a Kaplan Fox attorney. She purchased a bottle of OAD Women's in the summer of 2014, shortly before her husband's firm filed this case in October 2014. She bought the product at a CVS based on the "overall impression" that the product "was specially formulated for women" and that the "product would improve [her] overall health." Cohn Dec. Ex. 7

---

[2] Dr. Blonz concedes that there is no safety concern with multivitamins. Ex. 1 (Blonz Tr. 135:16-20). This concession contradicts an argument that Plaintiffs' counsel asserted at the second hearing on Bayer's motion to dismiss.

(Farar Interrogatory No. 5).  At her deposition, she could not remember any details regarding any commercials or how they made any particular claims.  Cohn Dec. Ex. 8 (Farar Tr. 91:20-92:13) ("Q: How did [the commercial] make those claims?  A.  I don't remember.  I don't remember exactly.").  Ms. Farar also testified that she has taken multivitamins for years, *id.* (Farar Tr. 215:4-6), gives her children "Flintstone" multivitamins, *id.* (Farar Tr. 52:5-13), and that taking a multivitamin is "prudent just to make sure you're getting everything you need."  *Id.* (Farar Tr. 138:25-139:6).

### B.   *Roseanne Cosgrove*

Plaintiff Roseanne Cosgrove is also married to an employee at Kaplan Fox.  Cohn Dec. Ex. 9 (Cosgrove Interrogatory No. 10); Cohn Dec. Ex. 10 (Cosgrove Tr. 208:3-209:18).  She bought OAD Women's from Costco in April 2014 with her husband, Kevin Cosgrove, who is an investigator for Kaplan Fox.  He helps the firm find plaintiffs for lawsuits.  Ex. 10 (Cosgrove Tr. 157:14-24, 187:23-188:1, 210:1-13).  She testified at deposition that she could not recall whether the label's claims affected her purchase.  Ex. 10 (Cosgrove Tr. 325:9-13) ("Q. It's possible that the claims on the bottle made an impact on your purchasing decision, it's possible they did not; you don't remember either way? A. Correct.").

██████████████████████████████████████████████████████████████████

████████████████████████████████████████████████ Specifically, Ms. Cosgrove took multivitamins to "fill in the nutrient gaps [in her diet to] make sure [she is] reaching the right levels of vitamin[s] A, C, [and] B," among others.  *Id.* (Cosgrove Tr. 305:14-24).  Moreover, she has all three of her children on a daily multivitamin regimen so that they get all of the vitamins "that they are potentially not getting any of or enough of in their regular daily diet."  *Id.* (Cosgrove Tr. 41:13-21).

### C.   *Andrea Lopez*

The only named plaintiff in this action who is not married to a Kaplan Fox employee is Andrea Lopez.  But she was brought into the suit by a former employer with whom she still has "a relationship" and who has a financial interest in this case.  Cohn Dec. Ex. 11 (Lopez Tr. 38:11-20; 21:19-22:1; 31:10-20, 36:25-37:12).  Ms. Lopez purchased OAD Women's in March 2014 from Costco.  Cohn Dec. Ex. 12 (Lopez Interrogatory No. 4); Ex. 11 (Lopez Tr. 173:12-14).

1 ████████████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████████

3 ███████████████████████████████████████████████████████████████

4 ██████████████████████████████████████████████████████████

5 ████████████████████████████████████████████████████████

6 ████████████████████████████████████████████████████

7 ███████████████████████████████████████████████████████████████

## VI.   Procedural History

On March 30, 2015, Plaintiffs filed their Second Amended Complaint challenging three OAD claims:  "supports heart health," "supports immunity," and "supports physical energy." Plaintiffs contend that these claims are false or misleading in violation of (1) California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL"), (2) California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA"),  (3) California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.* ("FAL"), SACAC ¶¶ 89, 102, 111, (4) Florida's Unfair Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.* ("FDUTPA"), (5) Florida's Misleading Advertising Statute, Fla. Stat. § 817.41, SACAC ¶¶ 116, 124, (6) New York's General Business Law § 349, and (7) New York's General Business Law § 350.  SACAC ¶¶ 133, 142.  All Plaintiffs also assert an unjust enrichment claim (Count Eight). *Id*. ¶ 154.

Plaintiffs initially challenged Bayer's heart health and immunity claims as "disease prevention" claims.  Dkt. 36.  But the Court dismissed these challenges, holding that Bayer's "supports heart health" and "supports immunity" are structure/function claims as defined by federal law; the argument that they are impermissible disease claims is preempted.  Dkt. 54 at 10-11.  The Court gave Plaintiffs a second chance to replead, *id.* at 16, but in their Second Amended Complaint, Plaintiffs again failed to adequately plead that Bayer made any disease claims.  The Court therefore reaffirmed its prior holding that Bayer's "Claims may be treated only as structure/function claims," and not disease claims.  Dkt. 78 at 6.

### LEGAL STANDARD

Summary judgment is appropriate when there is "no genuine issue as to any material fact and

that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party

moving for summary judgment bears the initial burden of identifying portions of the pleadings,

discovery and affidavits that establish the absence of a genuine issue of material fact.  *Celotex Corp.*

*v. Catrett,* 477 U.S. 317, 323 (1986).  One the moving party meets its burden, the burden shifts to the

opposing party to "set forth specific facts showing that there is a genuine issue for trial."  Fed. R.

Civ. P. 56(e); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *T.W.*

*Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Mere allegations do not establish a genuine issue of material fact—rather actual evidence

adduced during discovery is required.  *Celotex Corp.*, 477 U.S. at 324; *Fairbank v. Wunderman Cato*

*Johnson*, 212 F.3d 528, 531 (9th Cir. 2000).  A party cannot defeat summary judgment merely by

showing "that there is some metaphysical doubt as to the material facts."  *Matsushita*, 475 U.S. at

586; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  When the non-moving

party has the burden of proof at trial, that party must set forth facts "sufficient to establish the

existence of an element essential to that party's case."  *Celotex*, 477 U.S. at 322.  Put another way,

summary judgment is appropriate "unless there is sufficient evidence favoring the nonmoving party

for a jury to return a verdict for that party."  *Anderson*, 477 U.S. at 249-50.

## ARGUMENT

The Court should grant summary judgment to Bayer.  First, Plaintiffs lack Article III

standing because they have no evidence that they suffered an injury in fact.  Second, Plaintiffs

impermissibly challenge Bayer's claims as disease claims, and they have no evidence that the

structure/function claims are actually false; in fact, their own expert concedes they are true.  Third,

there is no evidence that any of the challenged claims are material to a reasonable consumer.  Fourth,

Plaintiffs' have insufficient evidence of damages.

### I.     Plaintiffs Lack Article III Standing

To satisfy Article III standing, each named plaintiff must show that she has "(1) suffered an

injury in fact; (2) that was caused by the defendant's challenged conduct; and (3) that would be

redressed by the remedy the plaintiff seeks." *Desert Water Agency v. U.S. Dep't of the Interior*, No.

14-55461, 2017 WL 894462, at *3 (9th Cir. Mar. 7, 2017) (quoting *Lujan v. Defs. of Wildlife*, 504

1   U.S. 555, 560–61 (1992)).  To prove an injury-in-fact in a deceptive advertising case, plaintiffs must

2   show they: (1) paid a price premium because of the claims; or (2) would not have purchased the

3   products if it did not have the challenged claims.  *See, e.g., Mazza v. Am. Honda Motor Co.*, 666

4   F.3d 581, 595 (9th Cir. 2012); *Nguyen v. Medora Holdings*, No. 5:14-cv-00618-PSG, 2015 WL

5   4932836, at *5 (N.D. Cal. Aug. 18, 2015) ("In food-labeling cases . . . a plaintiff can satisfy . . . [the]

6   injury-in-fact requirement by showing that she either: (1) paid a price premium . . .; or (2) would not

7   have purchased the product had he or she known about the misbranding") (collecting cases); *Kane v.*

8   *Chobani, Inc.*, 973 F. Supp. 2d 1120, 1128–29 (N.D. Cal. 2014), *vacated on other grounds*, 645 F.

9   App'x 593, 594 (9th Cir. 2016).

10         A.     *Plaintiffs Have Not Suffered an Injury-In-Fact*

11         Plaintiffs have no evidence under either prong.  *First*, Plaintiffs make no attempt to show that

12  they paid a "price premium."  They have no evidence of the "difference between the market price

13  actually paid by consumers and the true market price that reflects the impact of the unlawful, unfair,

14  or fraudulent business practices."  *In re NJOY, Inc., Consumer Class Action Lit.*, No. 14-cv-428-

15  JFW, 2016 WL 787415, at *5 (C.D. Cal. Feb. 2, 2016).  Plaintiffs have not submitted any "[e]xpert

16  testimony" regarding the "dollar value of the [claims'] impact."  *Colgan v. Leatherman Tool Grp.,*

17  *Inc.*, 135 Cal. App. 4th 663, 680 (2006).  Nor do Plaintiffs even have any lay testimony regarding the

18  price premium attributable to the challenged claims.

19         Plaintiffs suggest that the product is worthless, but their own expert repudiates this.  Ex. 1

20  (Blonz Tr. 40:1-21) ("I would never say that Bayer multivitamins are worthless.").  Indeed, far from

21  being worthless, Dr. Blonz recounted the various benefits of OAD multivitamins, *see supra,* and he

22  has taken multivitamins for 40 years.[3]  *Id.* (Blonz Tr. 261:24-262:1).  Because Plaintiffs have made

23  no showing of a price premium, let alone the amount of the price premium, a reasonable fact finder

24  could not conclude that Plaintiffs suffered injury on a price-premium theory.  *Nguyen*, 2015 WL

25  4932836, at *6 (finding no injury-in-fact where "Plaintiffs ***allege[d]*** … they paid … a price

26  premium" but made no "***showing*** for [this] theory anywhere in their motion") (emphasis in original);

27

28  [3] Plaintiffs' theory that One A Day is "worthless" should also be rejected for the reasons stated in
    Bayer's Opposition to Plaintiffs' Motion For Class Certification.

*see also Khasin v. R.C. Bigelow, Inc.*, No. 12-cv-02204-WHO, 2016 WL 1213767, at *3 (N.D. Cal. Mar. 29, 2016).[4]

*Second*, the evidence shows that Plaintiffs would have purchased OAD even without the challenged claims.  Ms. Cosgrove did not rely on any of the challenged claims at the time of her purchase, Ex. 10 (Cosgrove Tr. 320:23-321:11),

████████████████████████████████████████████████

████████████████████████████████████  She has taken multivitamins for years—not for any immune, energy, or heart benefit—but because it is an easy way to ensure she "reach[es] the appropriate intake levels" of key vitamins.  *Id.* (Cosgrove Tr. 299:1-10).

Ms. Lopez similarly would have purchased OAD even if it had none of the challenged claims.

████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████

████████

Finally, Ms. Farar remembers purchasing OAD based on Bayer's reputation, not because of any specific advertisement's claims.  Ex. 8 (Farar Tr. 69:6-12) ("I wanted something reputable, and One A Day is very reputable.").  She also takes multivitamins for reasons that are not subject to challenge—for example, to support her nail, hair, bone, and skin health, and to obtain sufficient "calcium [and] Vitamin D, because [she] do[es not] drink milk."  *Id.* (Farar Tr. 54:24-55:12); *id.* (Farar Tr. 223:20-23).  Indeed, she still takes a multivitamin that does not have the challenged claims, demonstrating that she takes multivitamins for reasons independent of those claims.  *Id.* (Farar Tr. 57:5-11).

Because each of the Plaintiffs purchased OAD for reasons unrelated to the challenged claims, they cannot show that they would have acted differently had the claims not been made.

---

[4]  There is also substantial evidence that the claims at issue do not impact the price of OAD.  Bayer's products are priced the same regardless of whether the claims are on the label.  Cappello Dec. ¶ 13. Bayer does not consider the claims it makes when deciding how to price its products.  *Id.*  Moreover, many other multivitamins on the market have the same claims and the prices widely vary. *Id.* ¶ 14.

**B.** *Plaintiffs Have No Standing for Injunctive Relief Because They Will Not Purchase One A Day in the Future*

Standing to pursue prospective injunctive relief requires plaintiffs to "show a sufficient likelihood that they will be injured by [the defendant] again in a similar way." *Luman v. Theismann*, 647 F. App'x 804, 807 (9th Cir. 2016); *Perez v. Nidek Co.*, 711 F.3d 1109, 1113–14 (9th Cir. 2013). If a plaintiff has not demonstrated "an intent to purchase [a challenged] product[] in the future … [she] cannot establish that there is a 'sufficient likelihood' that [s]he will be injured in the future as required to establish Article III standing." *Khasin v. R.C. Bigelow, Inc.*, No. 12-cv-02204-WHO, 2016 WL 4502500, at *6 (N.D. Cal. Aug. 29, 2016). "Plaintiffs . . . who were previously misled by deceptive food labels and now claim to be better informed, lack standing for injunctive relief because there is no danger that they will be misled in the future." *Id.*

The three Plaintiffs lack Article III standing because they have unequivocally testified that they do not intend to purchase OAD in the future. Ex. 10 (Cosgrove Tr. 347:10-17) ("Q. And you're not even opposed to taking Women's One A Day, are you? A. Yes, I am."); Ex. 8 (Farar Tr. 169:10-15) ("No, I wouldn't buy it again."); Ex. 11 (Lopez Tr. 180:24-181:17) ("After I read [the article about multivitamins], I was, like, I am not going to have them again anyway."). They also now contend that, in their view, the product is "worthless" (despite the opinion of their own expert). *See* Ex. 1 (Blonz Tr. at 40:1-21) ("I would never say that Bayer multivitamins are worthless."); *see also* Class Cert. Op. at 11-15. Presumably, Plaintiffs do not spend money on products that they consider to be worthless.

**II.** **Plaintiffs' Expert Concedes That Bayer's Claims Are True And Provides No Evidence That The Claims Are Actually False Or Misleading**

This Court has held that Bayer's "Claims may be treated only as structure/function claims," Dkt. 78 at 6, and that Plaintiffs must prove that the challenged structure/function claims are false or misleading, not merely unsubstantiated. *Id.* at 10. To satisfy this burden, Plaintiffs rely exclusively on the testimony of Dr. Blonz. But Dr. Blonz agrees with Bayer that OAD multivitamins can benefit almost all Americans, and that these benefits include support for heart health, immunity, and energy.

Dr. Blonz nonetheless opines that Bayer's claims are false or misleading. This opinion,

1  however, is premised on a false legal theory.  Specifically, Dr. Blonz believes that "Bayer is making

2  claims to try to assuage consumers' concerns about disease risk," Ex. 1 (Blonz Tr. 308:9-13), even

3  though the Court held that Bayer's "Claims may be treated only as structure/function claims," and

4  not disease claims. Dkt. 78. at 6.   The Court should thus grant summary judgment to Bayer.

A.    ***Undisputed Evidence From Dr. Blonz And Other Scientific Authorities Confirms
      That OAD Multivitamins Support Heart Healthy, Immunity, and Physical Energy***

7        It is undisputed that OAD multivitamins provide benefits to heart health, immune health, and

8  energy.  Specifically, Dr. Blonz testified that the vitamins and minerals in OAD are "essential," Ex.

9  1 (Blonz Tr. 79:15-82:7), and "help support heart health, immunity, and physical energy."  *Id.*

10  (Blonz Tr. 94:22-24); *see also id.* (Blonz Tr. 84:6-94:6, 240:11-14).  He explained that although the

11  government has set established goals for vitamin intake (the RDAs and EARs), the "clear majority of

12  people fail to get the recommended amounts of essential nutrients" from food alone.  *Id.* (Blonz Tr.

13  148:1-20).  Indeed, "when it comes to vitamins D and E, 90[percent]-plus of Americans … fall short

14  of the RDAs."  *Id.* (Blonz Tr. 338:3-9, 295:4-297:15).

15       Failing to meet the RDAs in even one key vitamin could have "negative" health effects,

16  including "repercussions with respect to hearth health, immune health, and energy."  *Id.* (Blonz Tr.

17  205:6-13, 240:6-10).  Multivitamins like OAD can "benefit" Americans by helping them reach the

18  RDAs, *id.* (Blonz Tr. 123:9-16), and this specifically includes "benefits with respect to supporting

19  "normal hearth health," "normal immune health," and "normal energy health."  *Id.* (Blonz Tr. 215:3-

20  20).  Multivitamins provide benefits with respect to heart health, immunity, and energy, even if the

21  consumer's shortfall in vitamins and nutrients is not so severe that the consumer displays symptoms

22  of nutrient deficiency.  *Id.* (Blonz Tr. 191:22-194:8).[5]

23       There is no doubt that Dr. Blonz is correct.  Bayer's expert on vitamins and nutrition, Dr.

24  Jeffrey Blumberg, agrees.  He has reviewed all of the scientific literature on the topic and concluded

---

[5] Dr. Blonz's written report notes that the rate of deficiency disease is relatively low.  However, he testified that the "clear majority of people fail[] to get the recommended amounts of the essential nutrients," Ex. 1 (Blonz Tr. 148:1-9), and that this group can achieve an "overall health" benefit by getting *closer* to the government recommended amounts, even if they are not facing a deficiency disease. *Id.* (Blonz Tr. 123; 138; 297-98).

1    that Bayer's structure/function claims are fully substantiated.  *See* Blumberg Dec. at 2-3.

2          **B.      *Dr. Blonz's Remaining Opinion Is Premised on a Flawed Legal Theory***

3          Unable to challenge the science supporting Bayer's claims, Dr. Blonz does what this Court

4    has already rejected—he attempts to challenge Bayer's claims as disease claims.  He testified that his

5    entire opinion is "premised on [his] position that Bayer is making claims to try to *assuage*

6    *consumers' concerns about disease risks*."  Ex. 1 (Blonz Tr. 308:9-13) (emphasis added).   He

7    opines that these disease claims are not substantiated because there are not "randomized controlled

8    trials" showing a significant effect on "disease end points" like "heart disease."  *Id.*  (Blonz Tr.

9    167:1-3 & 20-24, 186:22-187:10, 213:9-14).  But this testimony that disease claims are

10   unsubstantiated says *nothing* about Bayer's structure/function claims.  Dr. Blonz's testimony cannot

11   meet Plaintiffs' burden at summary judgment for four reasons.

12         *First*, this Court has already ruled that Bayer is making structure/function claims, not disease

13   claims.  Dkt. 78.  This is law of the case, and an expert cannot disturb it.  *United States v. Park Place*

14   *Assocs., Ltd.*, 563 F.3d 907, 925 (9th Cir. 2009) ("The law of the case doctrine … posits that when a

15   court decides upon a rule of law, that decision should continue to govern the same issues in

16   subsequent stages in the same case.").

17         *Second*, Dr. Blonz's specific basis for thinking (but not opining) that Bayer is making disease

18   claims has been rejected by the FDA.  Dr. Blonz suggests that the claims imply disease risk because

19   Bayer did not use the word "normal" as a modifier.  Ex. 1 (Blonz Tr. 279:17-280:5).  According to

20   Dr. Blonz, if Bayer had only used the word "normal" after the word "supports," he would consider

21   the claims to be "ideal" structure/function claims.  *Id.* [6]  But this position is inconsistent with the

22   FDA's guidance and this Court's decisions.  As the Court has recognized, Dkt. 54 at 10-11, Bayer's

23   claims are fundamentally the same as the FDA's suggested language, which does not include the

24   word "normal."

25

26

27   _____

     [6] Dr. Blonz does not even follow his own distinction between supporting health and supporting
28   *normal* health.  Ex. 1 (Blonz Tr. 93:16-94:24) (acknowledging the vitamins in OAD "help support
     heart health, immune health and energy," without using "normal" as a modifier.)

| CLAIM | FDA's Language | Bayer's Claims |
|-------|----------------|----------------|
| **Immunity** | "Supports the immune system." "Is necessary to maintaining a healthy immune response." | Supports "immune health." |
| **Heart Health** | "[H]elps maintain cardiovascular function and a healthy circulatory system." "[S]upports the cardiovascular system." | Supports "heart health" |
| **Energy** | Supplement is "an 'energizer,' a 'rejuvenative,' [or] a revitalizer,'" or it promotes "metabolism." | Supports "physical energy … to help convert food to fuel." |

65 Fed. Reg. 1000; 1012, 1026, 1028-30 (Jan. 6, 2000).

*Third*, Dr. Blonz has no basis to say that Bayer's claims "impl[y]" that they will decrease "disease risk." *Id*. (Blonz Tr. 348:2-349:2).  Dr. Blonz conceded that he is "not an expert in consumer interpretation or impli[ed] claims." *Id*. (Blonz Tr. 347:3-348:23).  Nor did he conduct any "survey[]" or "ask any consumers if they share [his] view." *Id*. (Blonz Tr. 308:23-25, 309:14-15).  He is unable to say whether there is a single "person in the world [who] shares [his] view of Bayer's claims." *Id.* (Blonz Tr. 310:2-5).  Indeed, Dr. Blonz finally conceded that he was not "*not rendering an expert opinion that Bayer actually is making these implied claims* [regarding diseases]." *Id.* (Blonz Tr. 348:24-349:2) (emphasis added).  Without any testimony that Bayer is making disease claims, this argument cannot survive summary judgment.

*Fourth*, Dr. Blonz did not even do the basic work that would be necessary to interpret Bayer's claims.  He did not rely on Bayer's television advertisements or packaging and labels.  *Id.* (Blonz Tr. 25:8-26:9).  Dr. Blonz says that he viewed some pictures of OAD on Bayer's website, *id.* (Blonz Tr. 22:14-25:7), but we do not know what packages he saw or even for what products—he did not disclose this in his expert report or preserve the items he saw as required under the Federal Rules.  *Id.* (Blonz Tr. 22:13-23:8).  He may have seen advertisements on TV and YouTube, but "nothing . . . from those TV . . . or YouTube ads affect[ed] [his] opinion." *Id.* (Blonz Tr. 351:13-24).  The only marketing material that Dr. Blonz expressly relied on is two packages that Plaintiffs' counsel obtained from amazon.com, not from Bayer.  *Id.* (Blonz Tr. 22:14-23:8); Motion, Blonz

Dec. at 1.[7]

### C.   Plaintiffs' Cannot Survive Summary Judgment With Dr. Blonz's Lack-of-Substantiation Opinion

As this Court has held, Plaintiffs must prove that challenged claims are *false or misleading* and not merely lacking substantiation.  Dkt. 54 at 13 (granting Bayer's motion to dismiss and permitting plaintiffs to amend their complaint with "alleg[ations] that Bayer's statements that its Supplements 'support' or help heart health and immunity are false.").  "Claims that rest on a lack of substantiation, instead of provable falsehood, are not cognizable under the California consumer protection laws."  *Bronson*, 2013 WL 1629191, at *8 (dismissing lack of substantiation claims brought under California statutes at issue here). [8]

Yet, Dr. Blonz provides only a lack-of-substantiation opinion.  His entire opinion is that "[t]here is *no competent and reliable evidence*" for what he interprets as Bayer's disease claims.  Blonz Dec. at 10 (emphasis added).  He states a dozen times that "there is no competent and reliable evidence" and "no evidence" for these supposed claims, *see id.* at 11-12, 14-15.  Asserting that a claim "lacks" "competent and reliable evidence" is a classic lack-of-substantiation opinion, which is not actionable.  *Kwan v. SanMedica Int'l, LLC*, No. 14-cv-03287-MEJ, 2015 WL 848868, at *8 (N.D.

---

[7] Even if Bayer were suggesting a reduction in disease risk—and it most certainly is not—Dr. Blonz conceded that there would be support for these claims as well. Ex. 1 (Blonz Tr. 111:21-112:2) (heart disease, certain cancers, rheumatoid arthritis, and cataracts); *Id.* (Blonz Tr. 112:3-8) (osteoporosis, high blood pressure, colon cancer); (Blonz Tr. 116:17-117:2) (heart disease).  The most Dr. Blonz could even say regarding a disease claim is that "[t]he science is mixed," "[the science is] not conclusive," and "[i]t's not been disproven." *Id.* (Blonz Tr. 117:11-25).  But "a plaintiff's reliance on a lack of scientific evidence or inconclusive, rather than contradictory, evidence is not sufficient" under state consumer protection laws. *Bronson v. Johnson & Johnson, Inc.*, No. 12-cv-04184-CRB, 2013 WL 1629191, at *8 (N.D. Cal. Apr. 16, 2013); *In re GNC Corp.*, 789 F.3d 505, 516 (4th Cir. 2015); *Sonner v. Schwabe NA*, No. 15-cv-1358-VAP, 2017 WL 474106, at *7 (C.D. Cal. Feb. 2, 2017), *appeal docketed*, No. 17-55261 (9th Cir. Feb. 28, 2017).

[8] *See also, e.g.*, *Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm., Inc.*, 107 Cal. App. 4th 1336, 1344-45 (2003); *Fraker v. Bayer Corp.*, No. 08-cv-1564-AWI, 2009 WL 5865687, at *7-8 (E.D. Cal. Oct. 6, 2009). The same is true under New York law. *Tomasino v. Estee Lauder Cos.*, 44 F. Supp. 3d 251, 258 (E.D.N.Y. 2014) (dismissing claims on lack of substantiation grounds because the plaintiff "point[ed] to nothing, in the form of scientific evidence or otherwise, that could discredit [defendant] Estee Lauder's statements about the ANR products' skin benefits.").  Florida courts have not yet decided this issue, but there is no reason to believe they will disagree with the law of California, New York, and other states, as well as the decisions of every circuit court to have addressed the issue.  *See, e.g.*, *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 939 n.2 (7th Cir. 2001) (Illinois law); *Franulovic v. Coca Cola Co.*, 390 F. App'x 125, 127-28 (3d Cir. 2010) (New Jersey law).

Cal. Feb., 25, 2015) ("Individuals may not bring suit under the UCL or the CLRA alleging only that advertising claims lack substantiation."); *Johns v. Bayer Corp.*, No. 09-cv-1935-AJB, 2013 WL 1498965, at *45-46 (S.D. Cal. Apr. 10, 2013) (granting summary judgment after Plaintiff failed to adduce any evidence of actual falsity); *Stanley v. Bayer Healthcare LLC*, No. 11-cv-862-IEF, 2012 WL 1132920, at *3 (S.D. Cal. Apr. 3, 2012) (same).  Further, his asserted standard for substantiation—randomized controlled trials—is indisputably inapplicable to structure/function claims.  *Supra* at 5-6.

**III.    The Challenged Claims Are Not Material**

For each cause of action, Plaintiffs must prove that the challenged claims are material.  As to the California causes of action, courts have held that "to establish liability under [the UCL and CLRA] . . . an allegedly misleading statement must be 'material' to a customer's evaluation of a product." *Brod v. Sioux Honey Ass'n Co-op*, 927 F. Supp. 2d 811, 830 (N.D. Cal. 2013), *aff'd*, 609 F.App'x 415 (9th Cir. 2015); *see also Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 513 (2003) (applying the same reasonable consumer standard to FAL).  Under New York law, a plaintiff "must prove . . . [that the challenged act] was misleading in a material way." *Stutman v. Chem. Bank*, 709 N.Y.S. 2d 892, 895 (N.Y. 2000); N.Y. Gen. Bus. Law § 350-a (applying to advertising that is "misleading in a material respect").  "A material misrepresentation" is also required for a statement to be actionable under Florida law.  *Zlotnick v. Premier Sales Group, Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007) (recognizing that reasonable consumer standard applies); *Black Diamond Props., Inc. v. Haines*, 69 So. 3d 1090, 1095 (Fla. Ct. App. 2011) (requiring a material misrepresentation under § 817.41(1) of Florida's Misleading Advertising Statute).

A representation is "material" only if it is likely to "influence the purchasing decision[s]" of consumers.  *See Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1181-82 (9th Cir. 2003).  Although survey evidence is not always required, plaintiffs must produce evidence that "it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Bruton v. Gerber Prods. Co.*, No. 12-cv-02412-LHK, 2014 WL 7206633, at *5 (N.D. Cal. Dec. 18, 2014) (quoting *Lavie*, 105 Cal. App. 4th at 507), appeal docketed, No. 15-15174 (9th Cir. Jan. 30, 2015).  The "personal experience" of the named plaintiffs

is not sufficient.  *See, e.g.*, *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1026 (9th Cir. 2008);. And when the Plaintiffs have no "extrinsic evidence, such as consumer survey evidence" and the defendant provides survey evidence showing that the claims are not material, summary judgment is proper.  *See Ries v. Ariz. Beverages*, No. 10-1139, 2013 WL 1287416, at *6 (N.D. Cal. Mar. 28, 2013); *Haskell v. Time Inc*, 965 F. Supp. 1398, 1408 (E.D. Cal. 1997).

## A.    *Plaintiffs Have No Evidence of Materiality*

Plaintiffs have no consumer survey or other extrinsic evidence showing that a reasonable consumer would find the challenged claims material.  The only evidence that Plaintiffs have is their own "subjective understanding" of the claims, but such examples of "isolated deception" are insufficient to satisfy the materiality requirement.  *Kosta v. Del Monte Foods, Inc.*, 308 F.R.D. 217, 224 (N.D. Cal. 2015) (materiality cannot be based on "the subjective understandings of individual plaintiffs"); *Clemens*, 534 F.3d at 1026 (testimony about "a few isolated examples of actual deception" is insufficient to survive summary judgment).  As this Court has stated "[t]he testimony of a single consumer in a putative class of potentially millions is not enough to meet this burden." *Rahman v. Mott's LLP*, No. 13-cv-3482-SI, 2014 WL 5282106, at *9 (N.D. Cal. Oct. 15, 2014); *Bruton*, 2014 WL 7206633, at *6.

This is particularly true where, as here, each of the Plaintiffs testified that she has no idea why other consumers purchased the product, or what representations on the label mattered to those individuals.  *See* Ex. 8 (Farar Tr. 223:8-11) ("Q: And do you know why other class members took the Bayer product? . . . [A]: I don't."); Ex. 11 (Lopez Tr. 83:18-84:18) ("Q. Does everyone buy them for the same reason? . . . A. I don't know. . . . Everybody has different reasons.  It depends on the age and necessity of the person, I guess. Q. What do you base that on? A. Common sense."); Ex. 10 (Cosgrove Tr. 353:10-15) ("Q. So, if we wanted to find out why a—another person other than yourself purchased One A Day Women's, the only way to figure that out is to ask them, right? . . . A. I guess so.").  Moreover, Plaintiffs themselves bought for other reasons.  *See* Ex. 8 (Farar Tr. 54:24-55:12); Ex. 10 (Cosgrove Tr. 299:1-10); Ex. 11 (Lopez Tr. 204:13-16); *supra* 13.

## B.    *Survey Evidence Proves That The Claims Are Not Material*

Bayer, by contrast, retained Dr. Ran Kivetz, a marketing professor at Columbia University, to

conduct two materiality surveys of 823 multivitamin consumers (one nationwide sample and the second, a sample of California, Florida, and New York purchasers).  Kivetz Dec. ¶¶ 21-22.  Following methodology that has been used in numerous consumer research studies, including hundreds by Dr. Kivetz, half of the study respondents were shown the actual OAD package (the test group) and the other half were shown a control package, which was identical, except that the three challenged claims were removed (the control group).  *Id.* ¶ 31.  The results of these surveys "were conclusive that there was *no* statistical difference in the likelihood of purchasing" between the test and the control groups.  Kivetz Dec. ¶ 23.  Thus, the challenged claims "had no material effect" on the respondents' purchase decision.  *Id.*

Dr. Kivetz's study is confirmed by Bayer's internal market research, which shows that consumers purchase OAD for a wide range of reasons having nothing to do with any of the three challenged claims.  The top three drivers of purchase are (1) providing good value for the money, (2) trusted brand, and (3) the product makes them feel like they are taking good care of themselves.  Cohn Dec. Ex. 13 (DEF-0010728).  Specific claims or benefits are *not* one of the top or key drivers of purchase.  *Id.*  Moreover, consumers largely obtain key information from their physicians, their own research, and friends/family—not advertising claims.  *Id.* (DEF-0010725; DEF-0010739).[9]

## IV.   Plaintiffs Have No Evidence Of Proper Restitution

Plaintiffs seek damages in the form of restitution.  SACAC ¶¶ 100, 110, 115, 157.  To survive summary judgment, Plaintiffs must "offer competent evidence of damages." *Ewert v. eBay, Inc.*, 602 F. App'x 357, 359 (9th Cir. 2015); *McGlinchy v. Shell Chem.*, 845 F.2d 802 (9th Cir. 1988); *Khasin*, No. 12-cv-02204-WHO, 2016 WL 4502500, at *5.  In a mislabeling case, the proper measure of damages is "is the amount necessary to compensate the purchaser for the difference between [the] product as labeled and the product received, not the full purchase price or all profits."

---

[9] Because Plaintiffs have not shown "any actionable misrepresentation or omission," their unjust enrichment claim fails as well.  *Donahue v. Apple Inc.*, 871 F.Supp.2d 913, 933 (N.D. Cal. 2012); *Astiana v. Hain Celestial Grp.*, 783 F.3d 753, 762 (9th Cir. 2015) (requiring "mistake, fraud, [or] coercion" for an unjust enrichment claim); *Hill v. Roll Int'l Corp.*, 195 Cal.App.4th 1295, 1307 (2011) ( "[t]here being no actionable wrong, there is no basis for the relief"); *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 779 (N.Y. 2012) (when a GBL claim is defective, "an unjust enrichment claim cannot remedy the defects").

1   *Victor v. R.C. Bigelow*, No. 13-cv-02976-WHO, 2016 WL 4502528, at *5 (N.D. Cal. Aug. 29,

2   2016).  Thus, to avoid summary judgment, the Plaintiffs must provide evidence that they paid a price

3   premium because of the advertising claims.  *Id.*; *Ries*, 2013 WL 1287416, at *8.

4           Yet Plaintiffs have not introduced any expert testimony on damages and have not presented

5   any evidence of any price premium.  Plaintiffs' sole evidence for damages is their argument for "full

6   restitution" because OAD multivitamins are supposedly "worthless."  Putting aside the numerous

7   legal flaws with this argument that are outlined in Bayer's Opposition to Plaintiffs' Motion for Class

8   Certification, this theory cannot survive summary judgment because *there is no evidence to support*

9   *it*.  Plaintiffs' own expert rejected it.  He testified that he "would never say that Bayer multivitamins

10  are worthless."  Ex. 1 (Blonz Tr. 40:1-2).  Indeed, throughout his deposition, he conceded that there

11  are dozens of benefits from multivitamins, that nearly everyone would benefit from a multivitamin

12  in some way, and that he and his wife have taken multivitamins for decades.  Ex. 1 (Blonz Tr. 41:1-

13  22).

14                                      **CONCLUSION**

15          For the foregoing reasons, Bayer respectfully requests that the Court grant this Motion for

16  Summary Judgment on each count of the Second Amended Complaint.

17  Date:   March 24, 2017

18                                      SIDLEY AUSTIN LLP

19

20                          By:   /s/ *Jonathan F. Cohn*
                                  Jonathan F. Cohn

21

22                          SIDLEY AUSTIN LLP

23                          Jonathan F. Cohn (pro hac vice)
                            Benjamin M. Mundel (pro hac vice)
                            1501 K Street, N.W.
24                          Washington D.C. 20005

25                          Ryan M. Sandrock
                            555 California Street, Suite 2000
26                          San Francisco, California 94104

27                          *Counsel for Defendants Bayer AG, Bayer*
                            *Corporation and  Bayer Healthcare LLC*

28