KAPLAN FOX & KILSHEIMER LLP
Laurence D. King (SBN 206423)
*lking@kaplanfox.com*
Linda M. Fong (SBN 124232)
*lfong@kaplanfox.com*
350 Sansome Street, Suite 400
San Francisco, California 94104
Telephone: (415) 772-4700
Facsimile:   (415) 772-4707

KAPLAN FOX & KILSHEIMER LLP
Robert N. Kaplan (admitted *pro hac vice*)
*rkaplan@kaplanfox.com*
850 Third Avenue, 14th Floor
New York, New York 10022
Telephone: (212) 687-1980
Facsimile:   (212) 687-7714

*Interim Lead Counsel*

STANLEY LAW GROUP
Stephen Gardner (admitted *pro hac vice*)
*steve@consumerhelper.com*
Amanda Howell (admitted *pro hac vice*)
*ahowell@stanleylawgroup.com*
6116 N. Central Expressway, Suite 1500
Dallas, Texas 75206
Tel: (214) 443-4300
Fax: (214) 443-0358

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

COLLEEN GALLAGHER, ILANA FARAR, ANDREA LOPEZ, JOANN CORDARO, and ROSANNE COSGROVE, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

BAYER AG, BAYER CORPORATION, and BAYER HEALTHCARE LLC,

Defendants.

CASE NO. 3:14-cv-04601-WHO

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

Hearing Date: August 23, 2017
Time:           2:00 pm
Judge:          Hon. William H. Orrick
Courtroom:   2, 17th Floor

**REDACTED/PUBLIC VERSION OF DOCUMENT SOUGHT TO BE SEALED**

# TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT .................................................................................... 1

II.  ARGUMENT........................................................................................................... 3

    A.  The Classes Meet Rule 23(a) Requirements ........................................... 3

        1.  The Named Plaintiffs Represent the Interests of the Classes.................... 3

        2.  The Named Plaintiffs' Claims are Typical of the Classes ......................... 4

        3.  Common Issues Predominate....................................................................... 5

    B.  Certification Of An Injunction Class Is Appropriate Because Plaintiffs Are Likely To Purchase The Products In The Future ..................................... 6

    C.  The Classes Should Be Certified Under Rule 23(b)(3)............................ 7

        1.  Common Issues of Fact Predominate............................................................ 7

            a.  Plaintiffs' Damages Model is Proper. ............................................ 8

            b.  Bayer's Misrepresentations are Material. .................................... 10

            c.  Classwide Interpretation of Each of Bayer's Claims Need Not be Proven for Class Certification Purposes........................... 11

        2.  A Class Action is Superior to Any other Means of Resolving Plaintiffs' Claims. ...................................................................................... 11

            a.  Members of the Class Can Be Easily Identified. ......................... 12

            b.  Bayer's FDA Argument is Inapposite and Improper. .................. 14

    D.  Common Issues Predominate In A Nationwide Class. ......................... 14

III.  CONCLUSION ...................................................................................................... 15

# TABLE OF AUTHORITIES

**Page**

## CASES

*Allen v. Hyland's Inc.,*
300 F.R.D. 643 (C.D. Cal. 2014) ............................................................................. 5

*Anderson v. SeaWorld Parks & Entm't, Inc.,*
No. 15-cv-02172-JSW, 2016 WL 4076097 (N.D. Cal. Aug. 1, 2016) .................................. 7

*Briseno v. ConAgra Foods, Inc.,*
844 F.3d 1121 (9th Cir. 2017) ............................................................................... 12

*Bruno v. Eckhart Corp.,*
280 F.R.D. 540 (C.D. Cal. 2012) ........................................................................ 14, 15

*Bruno v. Quten Research Inst., LLC,*
280 F.R.D. 524 (C.D. Cal. 2011) ........................................................................... 12

*Chavez v. Blue Sky Nat'l Beverage Co.,*
268 F.R.D. 365 (N.D. Cal. 2010) ...................................................................... 12, 15

*Comcast Corp. v. Behrend,*
133 S. Ct. 1426 (2013) ......................................................................................... 10

*Decerbo v. Melitta U.S.A. Inc.,*
No. 8:16-cv-850-T-17AAS, 2016 WL 7206244 (M.D. Fla. Oct. 17, 2016) ........................... 7

*Ehret v. Uber Techs., Inc.,*
148 F. Supp. 3d 884 (N.D. Cal. 2015) ...................................................................... 10

*Eisen v. Carlisle & Jacquelin,*
417 U.S. 156 (1974) .............................................................................................. 3

*Enriquez v. Cherry Hill Market Corp.,*
993 F. Supp. 2d. 229 (E.D.N.Y. 2013) ....................................................................... 8

*Fogarazzao v. Lehman Bros., Inc.,*
232 F.R.D. 176 (S.D.N.Y. 2005) .............................................................................. 8

*Forcellati v. Hyland's, Inc.,*
No. CV 12-1983-GHK (MRWx), 2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) ...................... 8

*Hinojos v. Kohl's Corp.,*
718 F.3d 1098 (9th Cir. 2013) ........................................................................... 10, 11

*In re Greenwich Pharm. Sec. Litig.,*
No. 92-3071, 1993 WL 436031 (E.D. Pa. Oct. 25, 1993) ................................................ 4

*In re IPO Sec. Litig.,*
471 F.3d 24 (2d Cir. 2006) ..................................................................................... 3

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*In re Korean Ramen Antitrust Litig.,*
No. 13-cv-04115-WHO, 2017 WL 235052 (N.D. Cal. Jan. 19, 2017) ................................. 5

4

5

*In re MDC Holdings Sec. Litig.,*
754 F. Supp. 785 (S.D. Cal. 1990) ....................................................................................... 15

6

*In re Methyl Tertiary Butyl Ether ("MBTE") Prods. Liab. Litig.,*
209 F.R.D. 323 (S.D.N.Y. 2002) ........................................................................................ 14

7

8

*In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Practices & Prods. Liab. Litig.,*
915 F. Supp. 2d 1151 (C.D. Cal. 2013) ................................................................................ 9

9

*Jermyn v. Best Buy Stores, L.P.,*
256 F.R.D. 418 (S.D.N.Y. 2009) .................................................................................. 12, 14

10

11

*Johnson v. Gen. Mills, Inc.,*
275 F.R.D. 282 (C.D. Cal. 2011) ......................................................................................... 12

12

*Johnson v. Hartford Casualty Ins. Co.,*
No. 15-cv-04138-WHO, 2017 WL 2224828 (N.D. Cal. May 22, 2017) ............................... 7

13

*Keegan v. Am. Honda Motor Co.,*
284 F.R.D. 504 (C.D. Cal. 2012) ......................................................................................... 11

14

15

*Keilholtz v. Lennox Hearth Prods. Inc.,*
268 F.R.D. 330 (N.D. Cal. 2010) ........................................................................................... 5

16

*Kennedy v. Jackson Nat. Life Ins. Co.,*
No. C 07-0371 CW, 2010 WL 2524360 (N.D. Cal. June 23, 2010) ....................................... 8

17

18

*Khasin v. Bigelow,*
No. 12-cv-02204, 2016 WL 1213767 (N.D. Cal. 2016) ......................................................... 7

19

*Korolshteyn v. Costco Wholesale Corp.,*
No. 3:15-CV-709-CAB-RBB, 2017 WL 1020391, (S.D. Cal. Mar. 16, 2017) ........................ 9

20

21

*Kumar v. Salov N. Am. Corp.,*
No. 14-CV-2411-YGR, 2016 WL 3844334 (N.D. Cal. July 15, 2016) ....................... 4, 10, 11

22

*Kurtz v. Kimberly-Clark Corp.,*
No. 14-CV-1142, 2017 WL 1155398 (E.D.N.Y. Mar. 27, 2017) ........................................... 7

23

24

*Leyva v. Medline Indus. Inc.,*
716 F.3d 510 (9th Cir. 2013) ............................................................................................... 10

25

*Lilly v. Jamba Juice Co.,*
No. 13-cv-02998-JST, 2015 WL 1248027 (N.D. Cal. Mar. 18, 2015) ................................ 6, 7

26

*Mazza v. Am. Honda Motor Co.,*
666 F.3d 581 (9th Cir. 2012) ................................................................................... 10, 14, 15

27

28

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*McCrary v. Elations Co.,*
No. 13-cv-00242 JGB OP, 2014 WL 1779243 (C.D. Cal. Jan. 13, 2014) ............................ 13

4

*Moore v. PaineWebber, Inc.,*
5       306 F.3d 1247 (2d Cir. 2002) ........................................................................................ 8

6

*Mullins v. Premier Nutrition Corp.,*
178 F. Supp. 3d 867 (N.D. Cal. 2016) ........................................................................... 9

7

*O'Connor v. Boeing N. Am. Inc.,*
8       184 F.R.D. 311 (C.D. Cal. 2000) ................................................................................. 12

9

*Pokorny v. Quixtar, Inc.,*
601 F.3d 987 (9th Cir. 2010) ....................................................................................... 15

10

*Rikos v. Procter & Gamble Co.,*
11       799 F.3d 497 (6th Cir. 2015), *cert. denied*, 136 S. Ct. 1493 (2016).......................... 9

12

*Rodman v. Safeway Inc.,*
No. 11-cv-03003-JST, 2014 WL 988992 (N.D. Cal. Mar. 10, 2014) ..................... 13

13

*Rushing v. Williams-Sonoma, Inc.,*
14       No. 16-cv-01421-WHO, 2016 WL 4269787 (N.D. Cal. Aug. 15, 2016) .......... 6, 7

15

*Thiedemann v. Mercedes-Benz USA, LLC,*
872 A.2d 783 (N.J. 2005)............................................................................................ 9

16

*Tietsworth v. Harley-Davidson, Inc.,*
17       677 N.W.2d 233 (Wis. 2004) ..................................................................................... 9

18

*Wash. Mut. Bank., FA v. Super. Ct.,*
24 Cal. 4th 906 (2001) ................................................................................................ 15

19

*Weiner v. Snapple Beverage Corp.,*
20       No. 07 Civ 8742(DLC), 2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010)................. 13

21

*Wolin v. Jaguar Land Rover N. Am., LLC,*
617 F.3d 1168 (9th Cir. 2010) .................................................................................... 6

22

*Zakaria v. Gerber Prods. Co.,*
23       No. LA CV 15-00200 JAK (Ex), 2016 WL 6662723 (C.D. Cal. Mar. 23, 2016)............... 3, 4

24

*Zapka v. The Coca-Cola Co.,*
No. 99 CV 8238, 2000 WL 1644539 (N.D. Ill. Oct. 27, 2000) ............................ 14

25

*Zeisel v. Diamond Foods, Inc.,*
26       No. C 10-01192 JSW, 2011 WL 2221113 (N.D. Cal. 2011) ............................ 12, 13

27

28

PLAINTIFFS' REPLY ISO CLASS CERTIFICATION

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

**RULES**

Federal Rules of Civil Procedure
   Rule 23 ................................................................................................................................passim

**TREATISE**

Phillip Nelson, *Information and Consumer Behavior*,
   78 J. Pol. Econ. 311 (1970) ...................................................................................................... 7

Plaintiffs Ilana Farar, Andrea Lopez, and Rosanne Cosgrove ("Plaintiffs") respectfully submit the following reply in support of their motion for class certification. For the reasons stated in Plaintiffs' opening brief, and below, the proposed classes should be certified.

## I.    PRELIMINARY STATEMENT

Bayer opposes class certification based primarily on the argument that its One A Day Products ("Products") should continue to be sold under the status quo. It contends that the proposed Classes lack commonality, a proper measure of damages, and do not fulfill Rule 23's requirements for class certification.[1] However, the proposed Classes are straightforward and rely on common evidence. The trier of fact here can be presented with the: (1) packaging of the Products; (2) testimony of the Plaintiffs showing they relied on the Claims at issue; (3) expert testimony regarding the effect, if any, the Products have on the vast majority of Americans; and (4) evidence that reasonable consumers are misled by Bayer's marketing and labeling of the Products. Given that the reasonable consumer standard is an objective one, this evidence will be the same for Plaintiffs and all other proposed class members.

A key issue here is that Bayer would have its customers—and this Court—believe that the vast majority of Americans benefit from its Products. Bayer's marketing and packaging leads consumers to believe that they will experience significant and measurable health benefits by taking its Products. This is not the case. The Products provide no health benefits at all to Bayer's intended audience, and thus are worthless.[2]

As in its Motion for Summary Judgment, Bayer's argument here relies on more than a few sleights of hand. In its Opposition, Bayer: (1) conflates the fact that *vitamins* are necessary with the conclusion that *its Products* are necessary; (2) equates not consuming the Recommended Dietary Allowance ("RDA") of vitamins with biochemical deficiency; and (3) mischaracterizes the testimony of Plaintiffs and their expert. In truth, few Americans fail to meet the RDA for most

---

[1] Bayer's Opposition to Plaintiffs' Motion for Class Certification (Dkt. 135) ("Def. Opp.").

[2] As explained in further detail in Plaintiffs' Opposition to Bayer's Motion for Summary Judgment, filed concurrently ("Pl. Opp. MSJ"). *See* Expert Report of Edward R. Blonz, Ph.D., in Support of Plaintiffs' Motion for Class Certification (Dkt. 129-38) ("Blonz Expert Report"), Att. I; *see also id.* at 7, 10-11, 16.

1   vitamins.[3] And the structure or function of the body does not suffer if the RDA is not met on any

2   given day.[4] Hardly any Americans suffer from an actual biochemical deficiency.[5]

3        This makes Bayer's Products worthless to the vast majority of its consumers. Realizing this,

4   Bayer has even backed away from claiming any value to the Products other than an "insurance

5   benefit." But this argument, alleging current value based on nothing more than an unlikely

6   possibility of *future* value for the Products, is simply too speculative and uncertain to shore up

7   Bayer's attack of Plaintiffs' theory of damages. And even though Bayer claims its Products act as

8   an "inexpensive" stop-gap—its annual sales show that Bayer profits nicely from its fear mongering.

9        Bayer's further mischaracterizations involve the named Plaintiffs. Yet here too, Bayer's

10  attack fails. After seeing Bayer's representations, the Plaintiffs had the same overall impressions,

11  believing that: (1) the Product they purchased was specially formulated for women, (2) they only

12  needed a single dosage, and (3) the Product would improve their overall health.[6] If Plaintiffs

13  became biochemically deficient at some point in the future, they would consider buying the

14  Products, but only if they could rely with confidence on Bayer's labeling.[7]

15       The standard for class certification is not steep. The United States Supreme Court, the

16  Second Circuit, and the Ninth Circuit have all cautioned that a court is not to look into the merits

---

17  [3] *E.g.*, Declaration of Laurence D. King in Further Support of Plaintiffs' Motion for Class Certification, dated July 7, 2017 ("King Reply Declaration"), Ex. A (Supplemental Declaration of
18  Edward R. Blonz, Ph.D., in Support of Plaintiffs' Reply in Support Class Certification, dated July 6, 2017) ("Blonz Decl."), at ¶6; Blonz Expert Report (Dkt. 129-38) at 8-9. All "Ex. __" references
19  hereafter are to the King Reply Declaration.

    [4] *See, e.g.*, Blonz Expert Report (Dkt. 129-38) at 8-11; Ex. A (Blonz Decl.) at ¶¶ 5-7; Ex. B
20  (Blumberg Tr., at 241:3-6 ███████████████████████████████████████████
21  ████████████████████████████████; 241:22-242:2 (stating that
    ████████████████████████████████████████); 241:19-20 █████████████
22  ████████████ (emphasis added)).

    [5] *See* Blonz Expert Report (Dkt. 129-38) at 8-11; Ex. A (Blonz Decl.) at ¶ 6.

23  [6] Farar Decl. (Dkt. 129-12), at ¶¶7-8; Cosgrove Decl. (Dkt. 129-14), at ¶7; Ex. C (Lopez Tr., at 206:3-13; 207:9-16; 278:7-20). For Plaintiffs' reasons for purchasing the Products, *see* Farar Decl.
24  (Dkt. 129-12), at ¶¶7-8; *see also* Ex. D (Farar Tr., at 67:18-25; 69:13-22; 73:7-15 (relied upon Bayer commercials, its reputation, and affirmative statements that OAD would help energy level,
25  immunity and heart health); 78:14-79:4 (chose Bayer OAD to get extra energy, and to help prevent illness)); Ex. C (Lopez Tr., at 194:3-12; 198:15-25 (boosts your immune system to help you not get
26  sick); 199:1-15 (heart health does not mean curing heart disease); 201:5-16 (immune health means preventing getting sick, not that it cures sickness)); Ex. E (Cosgrove Tr., at 312:23-313:18; 320:11-
27  15; 321:6-11; 325:14- 326:21); *see also* Cosgrove Decl. (Dkt. 129-14), at ¶¶ 7-8.

    [7] Farar Decl. (Dkt. 129-12), at ¶ 14; Lopez Decl. (Dkt. 129-13), at ¶16; Cosgrove Decl. (Dkt. 129-
28  14), at ¶ 15.

---

of the litigation, except to satisfy that the merits can be determined on a class-wide basis.[8] With this in mind, in this matter—a case premised on Claims that have uniformly been used by Bayer in the marketing and packaging of the Products for at least the past four years[9]—the standard for class certification is easily met.

## II.   ARGUMENT

### A.   The Classes Meet Rule 23(a) Requirements

#### 1.   The Named Plaintiffs Represent the Interests of the Classes

Rule 23(a)(4) of the Federal Rules of Civil Procedure ("Rule") requires that "the representative parties will fairly and adequately protect the interests of the class." "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"[10]

Bayer does not challenge class counsels' adequacy, nor could it. Bayer also does not substantively challenge the adequacy of Plaintiffs Farar's and Cosgrove's representation of the proposed class, other than to argue that their husbands' connection to Kaplan Fox creates a conflict of interest that "risk them placing their personal interests ahead of those of the absent class members."[11] However, neither Ms. Cosgrove's husband nor Ms. Farar's husband will receive any compensation as the result of any fee award in this case.[12] All Plaintiffs understand their role as class representative and that they owe a duty to all members of the proposed class to make decisions in their best interests.[13] There is no evidence that Ms. Farar and Ms. Cosgrove would place their

---

[8] *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974); *In re IPO Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006).

[9] Likely much longer, according to Bayer's marketing director Amy Cappello. Ex. F (Cappello Tr., at 46:15-47:15).

[10] *Zakaria v. Gerber Prods. Co*., No. LA CV 15-00200 JAK (Ex), 2016 WL 6662723, at *6 (C.D. Cal. Mar. 23, 2016) (citation omitted).

[11] Def. Opp. at 22-23.

[12] Ex. E (Cosgrove Tr., at 209:5-15). Ms. Farar understands that her husband does not have any profit share or ownership interest in Kaplan Fox. *Id.*, Ex. D (Farar Tr., at 32:24-33:19). *See also* King Reply Decl., ¶¶2-3.

[13] Farar Decl. (Dkt. 129-12), at ¶¶3-5; Lopez Decl. (Dkt. 129-13), at ¶¶3-5; Cosgrove Decl. (Dkt. 129-14), at ¶¶3-5.

1  personal interests ahead of those of the absent class members.

2          The mere fact that Plaintiffs Cosgrove and Farar are married to employees of Kaplan Fox

3  does not create of conflicts of interest as to any other class member, nor does it show that Plaintiffs'

4  counsel will not vigorously prosecute the action on behalf of the proposed class. In general, a

5  defendant must show more than just a relationship between the named plaintiff and class counsel

6  to defeat adequacy of representation.[14] Any suggestion of a conflict is further undermined by the

7  fact that an unrelated law firm will serve as co-lead counsel for the certified class.[15] Plaintiffs

8  Cosgrove and Farar are adequate class representatives.

9          Bayer also argues that Ms. Lopez also has conflicts of interest because her former employer

10  has a financial interest in the case and "approached [her] about becoming a class representative."[16]

11  However, Ms. Lopez asked Mr. Montejo if she could be involved because she had just read an

12  article about how the Product she was taking was deceptive.[17] Ms. Lopez understands her duties as

13  a class representative,[18] and has testified that her participation is not about the money.[19] Just like

14  the other Plaintiffs, there is no reason why Ms. Lopez will not fairly and adequately represent the

15  absent class members.

16          **2.      The Named Plaintiffs' Claims are Typical of the Classes**

17          Although Bayer contends that various factors render the named Plaintiffs atypical, it fails

18  to explain how any apparent differences separate Plaintiffs from other class members with respect

19  to the claims alleged.[20] "Simply because the consumers are different does not make them atypical

20

---

21  [14] *See, e.g.*, *Zakaria,* 2016 WL 6662723, at *6 (citing *Stern v. DoCircle, Inc*., No. SACV 12-2005,
2014 WL 486262, at *7 (C.D. Cal. Jan. 29, 2014) (citing *Lewis v. Goldsmith*, 95 F.R.D. 15, 20
22  (D.N.J. 1982)); *In re Greenwich Pharm. Sec. Litig.*, No. 92-3071, 1993 WL 436031, at *2 (E.D.
Pa. Oct. 25, 1993).

23  [15] *See Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411-YGR, 2016 WL 3844334, at *3 (N.D. Cal.
July 15, 2016).
24
[16] Def. Opp. at 23:7-10.

25  [17] Ex. C (Lopez Tr., at 38:11-20; 21:8-22:9; 22:12-24:6; 24:20-25:17; 56:1-57:20 (Mr. Montejo did
not suggest she become involved in the lawsuit; she wanted to be involved because she bought a
26  "pricey" multivitamin that deceived her about helping her immune system)).

[18] Lopez Decl. (Dkt. 129-13), at ¶¶3-5.
27
[19] Ex. C (Lopez Tr., at 291:2-18).

28  [20] Def. Opp. at 23:11-24:3.

with respect to the factual or legal issues in this case."[21] In determining whether typicality is met, the focus should be on the defendants' conduct and the plaintiffs' theory, not the injury caused to the plaintiff.[22]

All three proposed representatives' claims involve a common pattern of wrongdoing—Bayer's deceptive labeling and marketing of its Products—and are "co-extensive" with those of the absent class members.[23] To illustrate: Ms. Cosgrove relied on the Product label as Bayer concedes,[24] evidencing she is typical of the class.[25] And Ms. Lopez's heart health claim is not preempted as Bayer suggests.[26] Finally, neither Ms. Lopez's past anemia condition six years ago and her current healthy diet, nor Ms. Farar's use of a vitamin similar to the Products, creates unique defenses which threaten to become the focus of this litigation. All three named Plaintiffs are typical of the classes they seek to represent.

### 3.     Common Issues Predominate

Other than an observation that the "commonality requirement is closely related to the predominance requirement," Bayer does not specifically address commonality.[27] Rule 23 contains two related commonality provisions. Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Rule 23(b)(3), "in turn, requires that such common questions predominate over individual ones."[28] "Rule 23(a)(2) only requires that there be *some* common issues of fact and law."[29]

---

[21] *In re Korean Ramen Antitrust Litig.*, No. 13-cv-04115-WHO, 2017 WL 235052, at *20 (N.D. Cal. Jan. 19, 2017).

[22] *Allen v. Hyland's Inc.*, 300 F.R.D. 643, 661 (C.D. Cal. 2014).

[23] *Id.*

[24] Def. Opp. at 23:16-18.

[25] *See Allen*, 300 F.R.D. at 661 (plaintiff need not prove the misrepresentation was the only cause, or even the predominant or decisive factor influencing her conduct).

[26] Def. Opp. at 23:21-24. Ms. Lopez believes "supports heart health" means she will not have heart disease because she will have a healthy heart, not that it will prevent heart disease. Ex. C (Lopez Tr., at 199:1-15). As this Court has previously recognized, with respect to the structure function claim "supports heart health," "[t]here is undoubtedly a correlation between health and the absence of disease." *See* Order Denying Motion to Dismiss and Granting Motion to Appoint Class Counsel, dated August 18, 2015 (Dkt. 78), at 9:4-6.

[27] Def. Opp. at 24:8-10.

[28] *Keilholtz v. Lennox Hearth Prods. Inc.*, 268 F.R.D. 330, 336 (N.D. Cal. 2010).

[29] *Id.* at 337 (emphasis in original).

1    Here, the class members' claims clearly have one thing in common: All class members

2    purchased a Product bearing one or more of Bayer's deceptive claims. The common question of

3    whether Bayer marketed and sold Products using deceptive statements will resolve an issue central

4    to the claims in this case,[30] and is sufficient to satisfy the commonality test.[31]

5    **B.      Certification Of An Injunction Class Is Appropriate Because Plaintiffs Are Likely To Purchase The Products In The Future**

6

7    Bayer contends Plaintiffs lack standing to seek injunctive relief because they have not

8    established that they face "a real and immediate threat of repeated injury."[32] However, Plaintiffs

9    have testified that they may consider purchasing the Products in the future—if the need arises—but

10   only if Bayer stops its current practices and they can rely with confidence on Bayer's labeling.[33]

11   Where, as here, a consumer would not be able to easily discern whether the product is actually what

12   is represented by defendant, there is a real threat of future harm sufficient to meet the requirement

13   for standing.[34]

14   In *Rushing v. Williams-Sonoma, Inc.*, for example, this Court found the plaintiff faced a real

15   threat of future injury because the false labeling would not be immediately apparent to a

16   consumer.[35] As a result, the consumer might purchase the product again under the belief that the

17   advertised product attributes were accurate. To discover any discrepancy, the plaintiff would have

18   to have the product tested.[36] Therefore standing to seek injunctive relief has been found in labeling

19   cases where the veracity of the claims on the labels cannot be easily or readily verified by looking

20   at other information on the label.[37]

21

22   [30] *See also* Second Amended Class Action Compl., dated March 30, 2015 ("Complaint") (Dkt. 58), ¶83 (common questions of law and fact alleged).

23   [31] *See Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010).

24   [32] Def. Opp. at 21-22.

[33] Farar Decl. (Dkt. 129-12), at ¶14; Lopez Decl. (Dkt. 129-13), at ¶16; Cosgrove Decl. (Dkt. 129-14), at ¶15. *See also* Pl. Opp. MSJ, concurrently filed.

25   [34] *E.g., Lilly v. Jamba Juice Co.*, No. 13-cv-02998-JST, 2015 WL 1248027, at *4 (N.D. Cal. Mar. 18, 2015).

26   [35] No. 16-cv-01421-WHO, 2016 WL 4269787, at *9 (N.D. Cal. Aug. 15, 2016).

27   [36] *Id.* at *10; *see also Johnson v. Hartford Casualty Ins. Co.*, No. 15-cv-04138-WHO, 2017 WL 2224828, at *10-11 (N.D. Cal. May 22, 2017).

28   [37] *Rushing*, 2016 WL 4269787, at *10.

Here, it is near certain that consumers will be misled in the future. Because the Products are credence goods,[38] Plaintiffs and other consumers cannot tell whether Bayer's claims are true even if they buy and use the Products. Moreover, as Bayer's nutrition science experts have testified,

████████████████████████████████████████████████████████
████████████.[39] Thus, as in *Rushing* and *Johnson*, consumers have no way of knowing if they are deceived. Under these circumstances, Plaintiffs have shown a reasonable prospect of future harm.[40]

Finally, Bayer argues that Plaintiffs' stated intent to purchase in the future is not credible.[41] However, Bayer fails to point to any testimony or otherwise provide any reason to consider Plaintiffs' testimony as "unconvincing,"[42] and Plaintiffs have testified that they considered Bayer as a trusted brand—consistent with their willingness to give Bayer "another chance" if they can rely with confidence on Bayer's labeling.[43] Plaintiffs' reasons as to their future intent are directly related to the injunctive relief Plaintiffs seek—to force Bayer to stop using false and deceptive claims on its Products. Accordingly, certification of an injunction class is appropriate.

### C.   The Classes Should Be Certified Under Rule 23(b)(3)

#### 1.   Common Issues of Fact Predominate.

Rule 23(b)(3)'s predominance inquiry simply "tests whether proposed classes are sufficiently cohesive," encompassing "cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated,

---

[38] A credence good is a good whose qualities consumers are not perfectly able to judge, even after they consume it, due to both the nature of the product as well as unequal access to information. *See* Phillip Nelson, *Information and Consumer Behavior*, 78 J. POL. ECON. 311 (1970); *see also* Compl., ¶¶11-15.

[39] Ex. G (DeMuth Tr., at 72:17-18); Ex. B (Blumberg Tr., at 271:18-24 ████████████████████ ████████████).

[40] *See also Lilly*, 2015 WL 1248027, at *3-5; *Anderson v. SeaWorld Parks & Entm't, Inc.*, No. 15-cv-02172-JSW, 2016 WL 4076097, at *5-8 (N.D. Cal. Aug. 1, 2016) (changing product to be something plaintiffs may want); *Kurtz v. Kimberly-Clark Corp.*, No. 14-CV-1142, 2017 WL 1155398, at *49 (E.D.N.Y. Mar. 27, 2017); *Decerbo v. Melitta U.S.A. Inc.*, No. 8:16-cv-850-T-17AAS, 2016 WL 7206244, at *3 (M.D. Fla. Oct. 17, 2016).

[41] Def. Opp. at 21-22.

[42] Def. Opp. at 21. *See Khasin v. Bigelow*, No. 12-cv-02204, 2016 WL 1213767, at *5 (N.D. Cal. 2016) (finding the plaintiff's declaration "manufactured" and his testimony unconvincing).

[43] Ex. D (Farar Tr., at 94:1-19); Ex. E (Cosgrove Tr., at 330:8-18); Ex. C (Lopez Tr., at 198:5-25).

without sacrificing procedural fairness or bringing about other undesirable results."[44] Courts have found that this requirement for maintenance of a class action, that common issues predominate over individual issues, is readily met in cases of consumer protection actions.[45]

Here, Plaintiffs have shown that Bayer's marketing and labeling of the Products was uniform and common to all class members. Classwide proceedings in this case would indeed "generate common answers apt to drive the resolution of the litigation,"[46] and any dissimilarity within the proposed class would not "impede the generation of common answers."[47]

Although Bayer tries to portray its marketing and labeling of the Products as impossibly diverse, it is not. The Claims have been uniformly used by Bayer throughout the Class Period.[48] And courts have found that "claims based on uniform misrepresentations made to all members of the class … are appropriate subjects for class certification because the standardized misrepresentations may be established by generalized proof."[49] Plaintiffs clearly have shown that this proof exists,[50] and that common issues predominate over individual issues. What's more, Plaintiffs need not have seen all of the statements in Bayer's marketing campaign for the Products, or have purchased every single variety of Product. To meet Rule 23(b)(3)'s predominance inquiry, it is enough to show that Bayer engaged in a common course of conduct.

### a.   Plaintiffs' Damages Model is Proper.

Plaintiffs present a damages model based on Bayer selling Products to consumers that provide no value—the Products do not provide the specific health benefits touted by Bayer (heart health, immunity, energy), or any general health benefits either. Plaintiffs have shown that Bayer's Products are useless for non-biochemically deficient consumers.[51] Given that the vast majority of

---

[44] *Enriquez v. Cherry Hill Market Corp.*, 993 F. Supp. 2d 229, 235-36 (E.D.N.Y. 2013) (quotation omitted); Fed. R. Civ. P. 23(b)(3).

[45] *Fogarazzao v. Lehman Bros., Inc.*, 232 F.R.D. 176, 182 (S.D.N.Y. 2005).

[46] *Forcellati v. Hyland's, Inc.*, No. CV 12-1983-GHK (MRWx), 2014 WL 1410264, at *9 (C.D. Cal. Apr. 9, 2014) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011)).

[47] *Id.* at *11.

[48] *See* Ex. F (Cappello Tr., at 46:15-47:15).

[49] *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1253 (2d Cir. 2002); *see Kennedy v. Jackson Nat. Life Ins. Co.*, No. C 07-0371 CW, 2010 WL 2524360, at *8 (N.D. Cal. June 23, 2010).

[50] *See, e.g.*, Pl. Opp. MSJ.

[51] *See id.*

1  Americans are not biochemically deficient,[52] Bayer's Products will provide them with no

2  significant or measurable health benefits at all.[53] This makes the Products worthless.

3      Plaintiffs' damages model mirrors established case law for products that provide full

4  restitution when products have zero value.[54] Bayer argues that this model is inappropriate where

5  the product at issue provides other benefits.[55] Bayer's reliance on cases exclusively involving foods

6  is misplaced—as its Products do not provide *any* benefits to consumers. The Products contain no

7  calories, and do not satisfy the function of a food (*e.g*., satisfying hunger, taste, thirst). The only

8  possible benefit of the Products is to improve the health of Americans who consume the Products.

9  However, Plaintiffs have offered evidence that the vitamins and minerals in the Products do not

10  affect the health of Americans and that taking the Products amounts to taking a sugar pill.

11      In a last-ditch attempt to save its argument, Bayer claims that, at the very least, its Products

12  provide "insurance value" to consumers—*i.e*., in the event that their diets drastically change for a

13  long period of time and they would potentially become biochemically deficient.[56] This argument,

14  alleging current value based on nothing more than an unlikely possibility of *future* value for the

15  Products, is simply too speculative and uncertain to support Bayer's attack of Plaintiffs' theory of

16  damages.[57]

17      Bayer's argument that Plaintiffs cannot satisfy *Comcast* rests on its conclusion that

18  Plaintiffs are not entitled to full refunds. Because plaintiffs are entitled to full refunds where

19  products are worthless—as is the case here—Plaintiffs clearly present a damages methodology tied

20  _____

21  [52] *See, e.g.*, Blonz Expert Report (Dkt. 129-38) at 8-11.

  [53] And, as further detailed in Plaintiffs' Opposition to Bayer's Motion for Summary Judgment, the
  Products may even be harmful to consumers' health.

22  [54] *Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867, 898–99 (N.D. Cal. 2016); *see*

23  *Korolshteyn v. Costco Wholesale Corp*., No. 3:15-CV-709-CAB-RBB, 2017 WL 1020391, at *7
  (S.D. Cal. Mar. 16, 2017); *Rikos v. Procter & Gamble Co*., 799 F.3d 497, 523-24 (6th Cir. 2015),
  *cert. denied*, 136 S. Ct. 1493 (2016).

24  [55] Def. Opp. at 13.

25  [56] Def. Opp. at 12.

  [57] While no directly relevant case law exists, other courts have stricken similarly creative claims.
26  *See, e.g.*, *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 795 (N.J. 2005) (declining to
  allow "future hypothetical diminution in value" as a recoverable loss); *Tietsworth v. Harley-*
27  *Davidson, Inc.*, 677 N.W.2d 233, 240-41 (Wis. 2004) (same); *In re Toyota Motor Corp. Hybrid*
  *Brake Mktg., Sales Practices & Prods. Liab. Litig.*, 915 F. Supp. 2d 1151, 1157-58 (C.D. Cal.
28  2013). ("merely stating a creative theory does not establish [an actual injury]. . .").

1  to their theory of liability—and one that is capable of measurement on a classwide basis.[58] In any

2  event, "[i]n this circuit [] damage calculations alone cannot defeat certification."[59]

3  **b.    Bayer's Misrepresentations are Material.**

4  "Under California's UCL, restitution is available to absent class members without

5  individualized proof of deception, reliance, or injury."[60] Reliance can be established on a class-

6  wide basis. If the "trial court finds that material misrepresentations have been made to the entire

7  class, an inference of reliance arises as to the class."[61] A representation is material "if a reasonable

8  consumer would attach importance to it *or* if the maker of the representation knows or has reason

9  to know that its recipient regards or is likely to regard the matter as important in determining his

10  choice of action."[62]

11  Because Bayer's briefing on materiality is based in large part on a study it commissioned,

12  which has many factual problems, Plaintiffs discuss materiality in depth in their opposition to

13  summary judgment. Plaintiffs can prove both tests of materiality, using "defendant's own, market

14  research showing the importance of such representations to purchaser."[63] Bayer's internal research

15  proves that it knows that the claims are material to consumers and that it intended them to rely on

16  the claims. And, because Plaintiffs have alleged a violation of California's Sherman Law, there is

17  a presumption of materiality in this case.[64]

18  Bayer's partial survey of one product label does not establish that none of its customers

19  could possibly have found the four claims at issue in this lawsuit material. Based on the testimony

20  of Plaintiffs' own marketing expert, that evidence fails miserably.

21

---

22  [58] *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013).

    [59] *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513 (9th Cir. 2013) (citation omitted).

23  [60] *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 595 (9th Cir. 2012) (citation omitted).

24  [61] *Ehret v. Uber Techs., Inc.*, 148 F. Supp. 3d 884, 902 (N.D. Cal. 2015) (internal quotations and citations omitted).

25  [62] *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) (emphasis added, internal citations omitted). Contrary to Bayer's claim, Def. Opp. at 17, proving materiality is not dependent on Plaintiffs' knowledge of the materiality standard. Criticizing Plaintiffs for not being lawyers or

26  marketing experts is as helpful as asking the head of Bayer about the intricacies of Bayer's legal defenses.

27  [63] *Kumar*, 2016 WL 3844334, at *8 (citations omitted).

28  [64] *See* Pl. Opp. MSJ for further discussion.

1

<strong>c.   Classwide Interpretation of Each of Bayer's Claims Need Not be Proven for Class Certification Purposes.</strong>

2   Bayer argues that Plaintiffs can only meet the predominance requirement if they prove—at

3   the class certification stage—that there is a "common, classwide interpretation of each claim."[65]

4   But Plaintiffs need not prove that all members of the Classes interpreted the Claims in the same

5   way. Instead, the question here is whether a reasonable consumer would attach importance to the

6   Claims.[66]

7   Here, every consumer who bought the boxes containing the Claims saw the Claims. At least

8   some of the class members saw other forms of marketing given Bayer's uniform, prolonged

9   marketing campaign using the Claims. Bayer's assertion that "there is no evidence that all

10   consumers were exposed to the challenged claims"[67] is disingenuous. Further, whether any given

11   Claim was the sole purchasing decision for every consumer does not matter. It is enough that Bayer

12   knew that its intended audience would regard, or be likely to regard, the Claims as important.[68]

13   Further, "[o]n a motion for class certification, it is not necessary for the expert testimony to

14   resolve factual disputes going to the merits of plaintiffs' [] claims; instead, the testimony must be

15   relevant to determining 'whether there was a common pattern and practice that could affect the

16   class as a whole.'"[69] "Proof that statements were material to the plaintiff [] class, and that class

17   members relied on those statements in making purchasing decisions, does not necessarily require

18   individualized evidence for each class member."[70] And as with Bayer's argument on typicality,

19   Plaintiffs' interpretations of the Claims likely reflect the way other class members read the Claims.

20

<strong>2.   A Class Action is Superior to Any other Means of Resolving Plaintiffs' Claims.</strong>

21

22   Rule 23(b)(3) requires a court to determine whether a class action is "superior to other

23   available methods for fairly and efficiently adjudicating the controversy." While the identity of the

24   ---

[65] Def. Opp. at 16-18.

25   [66] *Kohl's Corp.*, 718 F.3d at 1107. Bayer's apparent concerns do not apply at all to the UCL claim, which does not require individual proof of deception.

[67] Def. Opp. at 18.

26   [68] *See Kohl's Corp.*, 718 F.3d at 1107.

27   [69] *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 515 (C.D. Cal. 2012) (quoting *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 (9th Cir. 2011)).

28   [70] *Kumar*, 2016 WL 3844334, at *8 (citations omitted).

1   class members need not be known at the time of certification, the class definition must be "definite

2   enough so that it is administratively feasible for the court to ascertain whether an individual is a

3   member."[71] Courts routinely find that this is the case in suits involving low-price consumer goods.

4                        **a.      Members of the Class Can Be Easily Identified.**

5          "An identifiable class exists if its members can be ascertained by reference to objective

6   criteria."[72] That is clearly the case here, where the class definitions are based exclusively on

7   objective criteria.[73] Bayer nonetheless argues that Plaintiffs cannot demonstrate an "objective or

8   manageable way" to identify class members.[74] In this ineffective attempt to defeat class

9   certification, Bayer contends that the Court would need to conduct a fact-intensive inquiry as to the

10  products consumers purchased and their reasons for purchasing them.[75] Bayer specifically contends

11  that there is no identifiable class because it is a wholesaler, and the Product labels have changed

12  over the Class Period (despite Bayer's marketing director testifying that the Claims have been used

13  during the past 15 years).[76] Adopting Bayer's position would prevent any class involving low-cost

14  common products (often purchased with cash and discarded after use) from ever being certified.

15  This is not the law, and actions that involve these types of products are frequently certified.[77]

16         Here, the Classes cover sales made during a definite period of time. Bayer's own sales

17  records reflect the amount of sales made in those states during those times. To the extent Bayer's

18  argument is predicated on the fact that it does not sell directly to consumers, *Zeisel v. Diamond*

19  *Foods* is on point. *Zeisel* involves the sale to consumers of individual packets of shelled walnuts

20  that were alleged to contain false representations regarding the health benefits of walnuts. The

---

[71] *O'Connor v. Boeing N. Am. Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 2000) (citation omitted).

[72] *See Jermyn v. Best Buy Stores, L.P.*, 256 F.R.D. 418, 432 (S.D.N.Y. 2009) (citation omitted).

[73] *But see Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1126 (9th Cir. 2017) (finding that Rule 23 does not "impose a freestanding administrative feasibility prerequisite to class certification").

[74] Def. Opp. at 18.

[75] *Id.*

[76] Ex. F (Cappello Tr., at 46:15-47:15).

[77] *See e.g.*, *Johnson v. Gen. Mills, Inc.*, 275 F.R.D. 282 (C.D. Cal. 2011) (yogurt); *Chavez v. Blue Sky Nat'l Beverage Co.*, 268 F.R.D. 365 (N.D. Cal. 2010) (soda); *Bruno v. Quten Research Inst., LLC,* 280 F.R.D. 524 (C.D. Cal. 2011) (dietary supplements); *Zeisel v. Diamond Foods, Inc.*, No. C 10-01192 JSW, 2011 WL 2221113 (N.D. Cal. 2011) (shelled walnuts).

1  defendant there argued that it was not feasible to determine class membership because most

2  plaintiffs did not have receipts or other proof of purchase.[78] The court rejected this argument,

3  holding that:

> The Court is not persuaded. The proposed class includes (1) all persons (2) who
> purchased Shelled Walnut Products in 6 ounce, 10 ounce, 16 ounce and/or 3 pound
> bags (3) which bore labels bearing the Structure Function Claim and Banner
> (4) from March 22, 2006 through the present. The Court does not find this definition
> to be subjective or imprecise. Rather, it includes objective characteristics that would
> permit a consumer to identify themself as a member of the proposed class.[79]

8  Bayer provides no compelling reasons why declarations or other proof of purchase from

9  putative class members would not be sufficient.[80] Bayer's position would essentially have the Court

10 adopt the standard in the Third Circuit, where certification is essentially prohibited "in any case

11 where the consumer does not have a verifiable record of its purchase, such as a receipt, and the

12 manufacturer or seller does not keep a record of buyers."[81] However, that is not the law in the Ninth

13 Circuit. Here, as in other low purchase price consumer class actions, "it is enough that the class

14 definition describes 'a set of common characteristics sufficient to allow' a prospective plaintiff to

15 'identify himself or herself as having a right to recover based on the description.'"[82]

16 Bayer's alleged concerns about identifying class members who are biochemically deficient

17 is yet another red herring. The Court need not conduct mini-trials to determine if a class member is

18 biochemically deficient. Plaintiffs have offered more than sufficient evidence to show that the vast

19 majority of Americans are not biochemically deficient (and thus receive no benefit at all from the

20 Products). In addition, the inclusion of uninjured class members does not necessarily render a class

21 unascertainable.[83] Further, Bayer cannot be allowed both to recommend its Products to all

22 Americans (as an insurance benefit) without checking first if they are deficient, yet escape

---

[78] *Zeisel*, 2011 WL 2221113, at *6.

[79] *Id.* (citations omitted).

[80] *See Weiner v. Snapple Beverage Corp.*, No. 07 Civ 8742, 2010 WL 3119452, at *13 (S.D.N.Y. Aug. 5, 2010).

[81] *McCrary v. Elations Co.*, No. 13-cv-00242, 2014 WL 1779243, at *8 (C.D. Cal. Jan. 13, 2014) (citing *Carrera v. Bayer Corp.*, 727 F.3d 300 (3d Cir. 2013)).

[82] *Id.* (quoting *Moreno v. AutoZone, Inc.*, 251 F.R.D. 417, 421 (N.D. Cal. 2008)).

[83] *See Rodman v. Safeway Inc.*, No. 11-cv-03003-JST, 2014 WL 988992, at *16 (N.D. Cal. Mar. 10, 2014).

1   responsibility at class certification when its consumers lack this same type of knowledge.

2   In short, there are no individual determinations that need to be made here, and members of

3   the classes are readily identifiable.[84]

4   **b.   Bayer's FDA Argument is Inapposite and Improper.**

5   Bayer argues that, because Congress has approved of the regulatory scheme surrounding

6   supplements, the Products cannot be worthless. But, equating FDA's approval of regulations does

7   not mean that the FDA has "determined that multivitamins are not worthless" in this scenario.[85]

8   Bayer's argument is unclear, but what is clear is that FDA has not opined on, let alone approved

9   of: (1) the Products, (2) the use of the Claims in the Products' marketing and labeling, (3) the

10  Products' marketing or labeling generally,[86] (4) the substantiation Bayer has for the Products, or

11  (5) the population to whom Bayer markets the Products. It is incontrovertible that the FDA has not

12  weighed in on Plaintiffs' theory on damages. This frankly bizarre argument is inapposite to whether

13  a class action is superior to other available methods for fairly and efficiently adjudicating the

14  controversy and thus is improper at class certification.

15  **D.   Common Issues Predominate In A Nationwide Class.**

16  Bayer incorrectly asserts that the Ninth Circuit case, *Mazza v. American Honda Motor Co.*,

17  prevents this Court from certifying a nationwide class.[87] Yet Bayer fails to offer any evidence to

18  establish that certification of a nationwide class is not appropriate here.

19  *Mazza* did not change California's substantive choice-of-law rules,[88] which places the

20  burden on the *defendant* to show that another state's law, rather than California law should apply

21  to class claims.[89] The analysis must be conducted on a case-by-case basis because it requires

22  analyzing various states' laws "under the circumstances of the particular case" and given "the

---

[84] *See Jermyn*, 256 F.R.D. at 433; *see also, e.g.*, *In re Methyl Tertiary Butyl Ether ("MBTE") Prods. Liab. Litig.*, 209 F.R.D. 323, 337 (S.D.N.Y. 2002); *Zapka v. The Coca-Cola Co.*, No. 99 CV 8238, 2000 WL 1644539, at *3 (N.D. Ill. Oct. 27, 2000) (class defined by reference to the defendant's conduct).

[85] Def. Opp. at 20.

[86] Indeed, this is beyond the FDA's purview.

[87] 666 F.3d at 594; Def. Opp. at 24.

[88] *Bruno v. Eckhart Corp.*, 280 F.R.D. 540, 545 (C.D. Cal. 2012).

[89] *Id.* (citing *Wash. Mut. Bank., FA v. Super. Ct.*, 24 Cal. 4th 906, 921 (2001)) (emphasis in original).

particular [legal] issue in question."[90] In short, Plaintiffs have the initial burden to show that California has sufficient contacts with the claims to satisfy due process. Plaintiffs easily meet this burden here where Bayer has places of business here and much of the misconduct occurs in California.[91] But the burden then shifts to *Bayer* to establish that a law other than the state of California should apply.[92] The burden also demands that Bayer convince this court of "material" differences in the law.[93]

Remarkably, Bayer entirely ignores this requirement, which stands in stark contrast to the defendants in *Mazza* who "exhaustively detailed" the differences between California's law and that of other jurisdictions.[94] Bayer also fails to make the additional showings required to establish a material conflict, demonstrate that the conflict exists under the facts of this case, or show that the interests of other states outweigh California's interest in applying its law to the facts of this case.[95] Where, as here, a defendant fails to meet this burden, Courts routinely apply California law to a nationwide class.[96]

## III.   CONCLUSION

For the preceding reasons, Plaintiffs respectfully ask the Court to certify the Classes.

Respectfully submitted

Dated: July 7, 2017                    KAPLAN FOX & KILSHEIMER LLP

By:   /s/ *Laurence D. King*
Laurence D. King

---

[90] *Bruno*, 280 F.R.D. at 545 (quoting *Kearney v. Salomon Smith Barney*, 39 Cal. 4th 95, 107-8 (2006)).

[91] *See Chavez*, 268 F.R.D. at 379. It's impossible to tell due to the cursory briefing, but Bayer seems to imply Plaintiffs must show that the consumer laws of California and nationwide are the same. No such showing is required. *See Mazza*, 666 F.3d at 591.

[92] *Wash. Mut. Bank*, 24 Cal. 4th at 921; *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 995 (9th Cir. 2010).

[93] *Pokorny*, 601 F.3d at 995.

[94] *Mazza*, 666 F.3d at 591.

[95] *Id.* at 594.

[96] *Bruno*, 280 F.R.D. at 550; *cf. In re MDC Holdings Sec. Litig.,* 754 F. Supp. 785, 803-04 (S.D. Cal. 1990). If the Court finds that *Mazza* prevents nationwide certification here (which it should not), Plaintiffs request that the Court certify the California, Florida, and New York classes.

Laurence D. King (SBN 206423)
*lking@kaplanfox.com*
Linda M. Fong (SBN 124232)
*lfong@kaplanfox.com*
350 Sansome Street, Suite 400
San Francisco, California 94104
Telephone: (415) 772-4700
Facsimile:   (415) 772-4707

KAPLAN FOX & KILSHEIMER LLP
Robert N. Kaplan (admitted *pro hac vice*)
*rkaplan@kaplanfox.com*
850 Third Avenue, 14th Floor
New York, New York 10022
Telephone: (212) 687-1980
Facsimile:   (212) 687-7714

STANLEY LAW GROUP
Stephen Gardner (admitted *pro hac vice*)
*steve@consumerhelper.com*
Amanda Howell (admitted *pro hac vice*)
*ahowell@stanleylawgroup.com*
6116 N. Central Expressway, Suite 1500
Dallas, Texas 75206
Tel: (214) 443-4300
Fax: (214) 443-0358

*Interim Class Counsel*