Jonathan F. Cohn (*Pro Hac Vice*)
jfcohn@sidley.com
Benjamin M. Mundel (*Pro Hac Vice*)
bmundel@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
Telephone: (202) 736-8000
Facsimile: (202) 736-8711

Ryan M. Sandrock (SBN 251781)
rsandrock@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-1200
Facsimile: (415) 772-7400

Attorneys for Defendants Bayer AG,
Bayer Corporation, and Bayer HealthCare LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| COLLEEN GALLAGHER, ILANA FARAR, ANDREA LOPEZ, JOANN CORDARO, and ROSANNE COSGROVE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BAYER AG, BAYER CORPORATION, and BAYER HEALTHCARE LLC,<br><br>Defendants. | Case No. 3:14-CV-04601-WHO<br><br>**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date: October 18, 2017<br>Time: 2:00 p.m.<br>Courtroom: 17th Floor, Courtroom Two<br>Judge: The Hon. William H. Orrick |

# REDACTED VERSION OF
# DOCUMENT SOUGHT TO BE SEALED

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................. 2

    A. Plaintiffs Lack Article III Standing ........................................................................ 2

    B. Plaintiffs Have No Evidence of Actual Falsity, And Their Own Expert Confirms That Bayer's Claims Are True ................................................................. 4

        1. Dr. Blonz confirms that Bayer's claims are true ......................................... 4

        2. Dr. Blonz's objection to Bayer's claims is legally flawed and inconsistent with this Court's rulings ........................................................ 7

    C. Undisputed Evidence Shows The Claims Are Not Material .................................. 9

    D. Plaintiffs Cannot Receive A Full Refund Or An Injunction ................................ 14

III. CONCLUSION ............................................................................................................. 15

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*In re 5-HOUR ENERGY*,
   No. 13-mdl-2438, 2017 WL 2559615 (C.D. Cal. June 7, 2017) ..................................................10

*Allen v. Hyland's Inc.*,
   300 F.R.D. 643 (C.D. Cal. 2014) ..............................................................................................3

*In re Bayer Phillips Colon Health Probiotics Sales Prac. Litig.*,
   No. 11-cv-03017, 2017 WL 1395483, at *11 (D.N.J. Apr. 18, 2017).............................................9

*Bronson v. Johnson & Johnson, Inc.*,
   No. 12-cv-04183, 2013 WL 1629191 (N.D. Cal. Apr. 16, 2013)...................................................8

*Brown v. Hain Celestial Grp., Inc.*,
   No. 11-cv-03082-LB, 2015 WL 3398415 (N.D. Cal. May 26, 2015) ..........................................14

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993)....................................................................................................................11

*Ehret v. Uber Techs., Inc.*,
   148 F. Supp. 3d 884 (N.D. Cal. 2015) .......................................................................................13

*English v. Apple Inc.*,
   No. 3:14-cv-01619-WHO, 2017 WL 106299 (N.D. Cal. Jan. 11, 2017)................................2, 3

*Ewert v. eBay, Inc.*,
   602 F. App'x 357 (9th Cir. 2015) ...............................................................................................14

*Hambleton Bros. Lumber Co. v. Balkin Enters. Inc.*,
   397 F.3d 1217 (9th Cir. 2005) ....................................................................................................11

*Johnson v. Hartford Casualty Ins. Co.*,
   No. 15-cv-04138, 2017 WL 2224828 (N.D. Cal. May 22, 2017).............................................3, 15

*Kane v. Chobani, Inc.*,
   973 F. Supp. 2d 1120 (N.D. Cal. 2014), *vacated on other grounds*, 645 F. App'x
   593 (9th Cir. 2016)........................................................................................................................3

*Kennedy v. Allied Mut. Ins. Co.*,
   952 F.2d 262 (9th Cir. 1991) .......................................................................................................5

*Khasin v. R.C. Bigelow*,
   No. 12-cv-02204, 2016 WL 1213767 (N.D. Cal. Mar. 29, 2016) .........................................14, 15

*Khasin v. R.C. Bigelo*w,
   No. 12-cv-02204, 2016 WL 4502500 (N.D. Cal. Aug. 29, 2016) ..............................................14

*Kwan v. SanMedica Int'l, LLC*,
   No. 14-cv-03287, 2015 WL 848868 (N.D. Cal. Feb. 25, 2015) .....................................................8

*Lewis v. CCPOA Benefit Trust Fund*,
   No. 08-cv-03228, 2010 WL 3398521 (N.D. Cal. Aug. 27, 2010) .................................................11

*In re Oracle Corp. Sec. Litig.*,
   627 F.3d 376 (9th Cir. 2010) ...........................................................................................................1

*Radobencko v. Automated Equip. Corp.*,
   520 F.2d 540 (9th Cir. 1975) ...........................................................................................................5

*Rahman v. Mott's LLP*,
   No. 13-cv-3482, 2014 WL 5282106 (N.D. Cal. Oct. 15, 2014) .....................................................10

*Ries v. Arizona Beverage*,
   287 F.R.D. 523 (N.D. Cal. 2012) ....................................................................................................3

*Rushing v. Williams-Sonoma, Inc.*,
   No. 16-cv-01421, 2016 WL 4269787 (N.D. Cal. Aug. 15, 2016) .................................................15

*Teleshuttle Techs. LLC v. Microsoft Corp.*,
   No. 04-cv-02927, 2005 WL 3259992 (N.D. Cal. Nov. 29, 2005) .................................................11

*In re Tobacco Cases II*,
   192 Cal. Rptr. 3d 881 (2015) ........................................................................................................14

*United States v. Bayer Corp.*,
   No. 07-cv-01, 2015 WL 5822595 (D.N.J. Sept. 24, 2015).............................................................9

*United States v. Park Place Assocs., Ltd.*,
   563 F.3d 907 (9th Cir. 2009) ..........................................................................................................8

**Other Authorities**

Fed. R. Civ. P. 30..................................................................................................................................11

Manual for Complex Litigation 4th §11.493 ........................................................................................12

I.     INTRODUCTION

In their opposition brief, Plaintiffs ignore two fundamental defects in their case.  First, their expert, Dr. Blonz, testified that his "entire report is premised on [his] position that Bayer is making claims to try to assuage consumers' concerns about *disease risks*."  Cohn Decl., Ex. 1 (Blonz Tr. 308:9-13) (emphasis added).  Because this Court already ruled—twice—that Bayer is not making disease claims, this premise is erroneous and barred by law of the case.  Dkt. 54, at 11; Dkt. 78, at 6.

Second, Dr. Blonz conceded that the vitamins in One A Day ("OAD") "help support normal heart health, immune health, and energy."  *Id.* (Blonz Tr. 238:9-240:14).  He conceded not just the benefits of vitamins in the abstract, but, specifically, the "*benefit in taking a supplement*" like OAD, *see*, *e.g.*, *id.* (Blonz Tr. 123:9-16) (emphasis added), for the "large percentage of Americans," who are "getting inadequate amount of various vitamins" in their diet.  *Id.* (Blonz Tr. 214:18-215:2); *see also id.* (Blonz Tr. 230:15-21; 295:21-296:6) ("over 90 percent of Americans").  This testimony directly contradicts Plaintiffs' argument that, although vitamins are essential to health, OAD provides no benefits to almost all consumers.  Dkt. 141, at 1, 3, 10-11.

Plaintiffs ignore these defects, but the Court should not.  At summary judgment, Plaintiffs "must show more than the mere existence of a scintilla of evidence" or some "metaphysical doubt as to the material facts at issue."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).  They must "come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor."  *Id.*

Plaintiffs only evidence is Dr. Blonz, and far from providing sufficient evidence to overcome summary judgment, Dr. Blonz sinks Plaintiffs' case.  He does *not* consider OAD to be a "worthless" "sugar pill" that "provide[s] no health benefits at all" "in the absence of a biochemical deficiency."  Dkt. 141, at 10-11.  To the contrary, Dr. Blonz testified under oath that a "clear majority" of consumers receive a benefit from multivitamins because they fail to get the recommended daily allowances (RDAs) of essential nutrients from food alone.  Cohn Decl., Ex. 1 (Blonz Tr. 148:1-20); *see also id.* (Blonz Tr. 40:1-21) ("I would never say that Bayer multivitamins are worthless.").  This failure can have "negative" health effects, including "repercussions with respect to hearth health, immune health, and energy."  *Id.* (Blonz Tr. 205:6-13; 240:6-10).  Multivitamins like OAD can fix

this problem by helping consumers "get[] [closer to] the RDAs of … vitamins [and] nutrients." *Id.* (Blonz Tr. 123:9-16).  By helping consumers reach the RDAs, multivitamins like OAD provide benefits, including "with respect to supporting normal hearth health," "normal immune health," and "normal energy health." *Id.* (Blonz Tr. 215:3-20).

That is precisely why Dr. Blonz believes that "[a] daily multivitamin is an inexpensive nutrition insurance policy," *id*. (Blonz Tr. 210:19-25); *see also id.* (Blonz Tr. 124:25-125:9; 152:9-15; 200:16-24), and agrees that consumers should "[t]ry to take one every day."  *Id.* (Blonz Tr. 210:19-25).  He has followed this advice for the past "40 years," *id*. (Blonz Tr. 261:24-262:1), and repeatedly given it to anyone who reads his blogs, books, or website.  Among the consumers who follow this advice: his wife.  She takes a multivitamin every day, even though he has no reason to doubt the sufficiency of her diet.  *Id.* (Blonz Tr. 264:1-265:8).

Because Dr. Blonz agrees with Bayer, there is no scientific evidence to weigh and no genuine issue of material fact.  Summary judgment should be granted.

## II. ARGUMENT

For several reasons, this Court should grant Bayer's motion.  First, Plaintiffs do not have standing to challenge the claims at issue.  Second, Bayer's structure-function claims are indisputably true—as Dr. Blonz agrees.  Third, the claims are not material.  Fourth, Plaintiffs cannot obtain the relief they seek: they cannot get a "full refund" because their expert testified OAD is not worthless, and they cannot get an injunction because Plaintiffs testified they would not buy OAD again.

### A. Plaintiffs Lack Article III Standing

As an initial matter, Plaintiffs do not have standing to bring this suit.  No Plaintiff can challenge the statement on which Plaintiffs focus in their briefs: "*Up to 90% of Americans fall short in obtaining key nutrients from food alone*."  Dkt. 141, at 11 (emphasis added).  This claim did not start airing until "January 2015," Dkt. 135-1, at 3 ¶12, and all of the Plaintiffs purchased OAD in 2014.  *See* Dkt. 136-13, at 7 (Farar purchased OAD in the "summer of 2014"); Dkt. 136-15, at 7 (Cosgrove purchased "in April 2014"); Dkt. 136-18, at 7 (Lopez "purchased … in March, 2014").  Thus, Plaintiffs cannot show "that they saw … [and] actually relied on [the alleged] misrepresentation." *English v. Apple Inc.*, No. 3:14-cv-01619-WHO, 2017 WL 106299, at *13-14

(N.D. Cal. Jan. 11, 2017), *appeal filed*, No. 17-15251, (9th Cir. Feb. 13, 2017); *see also* Dkt. 54, at 15 n.12 (dismissing Plaintiffs' claims regarding Bayer's "blood pressure" statement because of "no evidence that any of the plaintiffs purchased a product … [with] any reference to blood pressure.").

Nor can Plaintiffs challenge the statements about heart health, immune health, or energy, because Plaintiffs admit they "do not allege a price premium," Dkt. 141, at 1 n.1, and they have insufficient evidence that they "would not have otherwise purchased [OAD] but for the alleged misconduct." *Id.* at 6. Indeed, each Plaintiff testified under oath that she purchased OAD for reasons independent of the challenged claims.

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

(Cosgrove Tr. 305:14-24). Ms. Cosgrove could not recall whether the claims "made an[y] impact on [her] purchasing decision." *Id.* (Cosgrove Tr. 325:9-13). █████████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████ *Id.* (Lopez Tr. 204:1-8). Ms. Farar purchased OAD because she "wanted something reputable, and OAD is very reputable." Cohn Decl., Ex. 4 (Farar Tr. 69:6-12). Ms. Farar understands the many benefits of multivitamins beyond the claims at issue because she still takes a multivitamin to this day. *Id.* (Farar Tr. 57:5-11).

In light of these admissions, the Court should hold that Plaintiffs lack standing.[1] *See Kane v. Chobani, Inc.*, 973 F. Supp. 2d 1120, 1128–29 (N.D. Cal. 2014) (dismissing standing claim), *vacated*

---

[1] Plaintiffs' reliance on *Allen v. Hyland's Inc.*, 300 F.R.D. 643, 661 (C.D. Cal. 2014), is misplaced. Dkt. 141, at 7. That decision dealt with state law standing, not standing under Article III. *Allen*, 300 F.R.D. at 661. It is well settled that the "expansive" "standing" under California law "does not do away with the requirements of Article III." *Johnson v. Hartford Casualty Ins. Co.*, No. 15-cv-04138, 2017 WL 2224828, at *10 (N.D. Cal. May 22, 2017), *appeal filed*, No. 17-80095, (9th Cir. June 6, 2017). Plaintiffs also cannot rely on *Ries v. Arizona Beverage*, 287 F.R.D. 523, 530 (N.D. Cal. 2012), because in that case, unlike here, Plaintiffs produced actual evidence that supported their theory of injury based on a price premium.

*on other grounds*, 645 F. App'x 593, 594 (9th Cir. 2016). Plaintiffs were not injured by the alleged misrepresentations. Rather, they brought suit because of relationships they have with Plaintiffs' counsel; two of them are married to Kaplan Fox employees. Cohn Decl., Ex. 2 (Cosgrove Tr. 208:3-8; 215:13-23); *id.*, Ex. 4 (Farar Tr. 21:12-16).

### B. Plaintiffs Have No Evidence of Actual Falsity, And Their Own Expert Confirms That Bayer's Claims Are True

Even if Plaintiffs had standing, their claims still fail on the merits. Plaintiffs' own expert agrees that Bayer's claims are true. Contrary to Plaintiffs' assertions in their opposition brief, Dr. Blonz agrees that "vitamins and minerals are necessary for human survival," *and* that multivitamins like OAD "help support normal heart health, immune health, and energy." *Id.* (Blonz Tr. 238:9-240:14).[2] Dr. Blonz's dispute is with the law and this Court's prior holdings that Bayer is making structure-function claims, not disease claims.

#### 1. Dr. Blonz confirms that Bayer's claims are true

In his deposition, Dr. Blonz stated over and over again that the vitamins and minerals in OAD "help support normal heart health, immune health and energy." Cohn Decl., Ex. 1 (Blonz Tr. 238:9-240:14). In his view, the vitamins and minerals in OAD are "essential," *id.* (Blonz Tr. 79:15-82:7), and "help support heart health, immunity, and energy." *Id.* (Blonz Tr. 94:22-24); *see also id.* (Blonz Tr. 84:6-94:6; 240:11-14). The government has set established goals for vitamin intake (the RDAs and EARs), and the "*clear majority* of people fail to get the recommended amounts of essential nutrients" from food alone. *Id*. (Blonz Tr. 153:18-21) (emphasis added). Indeed, "when it comes to vitamins D and E, *90-plus[%] of Americans ... fall short of the RDAs*." *Id.* (Blonz Tr. 338:3-9) (emphasis added); *see also id.* (Blonz Tr. 295:4-297:15).

Failing to meet the RDAs in even one key vitamin can have "negative" health effects, including "repercussions with respect to hearth health, immune health, and energy … ." *Id*. (Blonz

---

[2] Plaintiffs argue that OAD is not "necessary" for all Americans, Dkt. 141, at 1, but Bayer does not claim that OAD is necessary. Bayer agrees that consumers can obtain vitamins and minerals from other sources, including food. However, as Dr. Blonz agrees, the "clear majority" of Americans fail to get the requisite amount of vitamins from food alone. Cohn Decl., Ex. 1 (Blonz Tr. 153:18-21).

Tr. 240:7-10). Multivitamins like OAD can "benefit" Americans by helping them reach the RDAs, *id.* (Blonz Tr. 238:15-18), and this specifically includes "benefits with respect to supporting normal hearth health," "normal immune health," and "normal energy health." *Id.* (Blonz Tr. 215:3-20). Multivitamins provide these specific benefits, even if the consumer does not suffer from a biochemical deficiency. *Id.* (Blonz Tr. 191:22-194:8; 238:9-240:10).

Dr. Blonz testified throughout his deposition that there are dozens of benefits from multivitamins, that nearly everyone would benefit from a multivitamin in some way, and that he and his wife have taken multivitamins for decades. *Id.* (Blonz Tr. 41:1-22; 261:24-262:1). For these reasons, he "would never say that Bayer multivitamins are worthless." *Id.* (Blonz Tr. 40:1-21).

Dr. Blonz's deposition testimony merely confirmed what he has been writing and telling consumers for decades. He has opined countless times about the important health benefits of vitamins and minerals, and even about the health benefits of multivitamins specifically. *Id.* (Blonz Tr. 147:15-148:20; 200:16-24).

Dr. Blumberg (Bayer's expert), the American Dietetic Association, Harvard University, the Mayo Clinic, and many other authoritative scientific organizations all agree. Dkt. 136-3, at 15 ¶37. There is no doubt that the average American benefits from multivitamins.

Apparently well aware that Dr. Blonz's sworn testimony contradicts their entire case, Plaintiffs attached to their opposition brief a supplemental declaration from Dr. Blonz. *See* Dkt. 141-10. This declaration provides no scientific analysis, citations, or reasoning. It only has a number of legal conclusions that directly contradict his prior sworn testimony. Because Dr. Blonz's supplemental declaration "flatly contradicts" his prior deposition testimony, it cannot create a disputed issue of material fact. *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266-67 (9th Cir. 1991); *Radobencko v. Automated Equip. Corp.*, 520 F.2d 540, 544 (9th Cir. 1975).[3]

Indeed, Dr. Blonz's testimony under oath not only contradicts the supplemental declaration but also confirms the science underlying Bayer's claims. First, Dr. Blonz agrees that most

---

[3] If there is any doubt (and there should not be), Bayer will seek leave to re-depose Dr. Blonz on his supplemental declaration, which he filed after his deposition.

Americans do not meet the RDAs. *Contra* Dkt. 141, at 10. He testified under oath:

- "The unfortunate fact of the matter is that time and again, surveys find that the *clear majority of people fail to get the recommended amounts of the essential nutrients*. Many get less than 70 percent of the recommended daily allowance, RDA, which is cause for concern." Cohn Decl., Ex. 1 (Blonz Tr. 148:3-20) (emphasis added);
- "Q. ... But you've agreed with me through like eight different articles that a *large percentage of Americans are getting inadequate amounts of various vitamins*; correct? A. Yes." *Id.* (Blonz Tr. 214:18-22) (emphasis added);
- "Measurements of food consumption has consistently shown that the *average individual does not get the recommended dietary allowance* of all the essential vitamins and minerals on a given day." *Id.* (Blonz Tr. 192:17-193:8) (emphasis added);
- "40 percent of Americans are not getting enough calcium from food alone ..." *Id.* (Blonz Tr. 231:8-16);
- "43 percent" are not getting enough "Vitamin A." *Id.* (Blonz Tr. 231:17-21);
- "38.9 percent ... are not getting enough [Vitamin C] to meet the EAR ..." *Id.* (Blonz Tr. 232:10-13);
- Consumption of fiber, vitamin D, calcium, and potassium is so woefully inadequate that it is a "public health concern." *Id.* (Blonz Tr. 246:18-247:14); and
- "[W]hen it comes to vitamins D and E … *90-plus [percent] of Americans … fall short of the RDAs ...*" *Id.* (Blonz Tr. 338:3-9); *id.* (Blonz Tr. 230:15-21) (no dispute that "94.3 percent of Americans are not getting enough Vitamin D from food alone").

Second, again contradicting Plaintiffs' brief, Dr. Blonz agrees there are benefits to consuming enough vitamins to reach the RDAs, regardless of whether a person is "biochemically deficient." *Contra* Dkt. 141, at 10-11. Dr. Blonz stated plainly: "even if you're not below the deficiencies, there are still benefits in getting up to the EAR or the RDA … ." Cohn Decl., Ex. 1 (Blonz Tr. 238:15-18) ("Definitely"); *id.* (Blonz Tr. 123:13-16) ("Q. For that matter, if consumers were not getting the RDA of other vitamins or nutrients, there's a benefit in taking a supplement; right? A. Yes."). For those individuals between the "deficiency" levels and the RDAs, Dr. Blonz

agrees that the vitamins and minerals in OAD "help support normal heart health, immune health, and energy." *Id.* (Blonz Tr. 94:22-24); *see also id.* (Blonz Tr. 193:23-194:8) ("Although [those who continually fail to eat properly] may never develop a deficiency disease, a chronically deficient diet will likely have long-term health implications."); *id.* (Blonz Tr. 123:17-25) ("[I]f you're not going to get them from the food you eat, it's better to get them from a pill than not at all.").

<u>Third</u>, contradicting Plaintiffs' brief once more, Dr. Blonz agrees with Bayer that there is no harm in taking OAD. *Contra* Dkt. 141, at 11. He repudiated any notion that Bayer's products are "unsafe." *Id.* (Blonz Tr. 135:13-20) ("Q. In fact, you have no safety opinion anywhere in your report; correct? A. Correct."). In fact, he and his wife both take a multivitamin. *Id.* (Blonz Tr. 261:24-262:1; 264:1-13). He has been recommending multivitamins for decades. *Id.* (Blonz Tr. 147:17-148:23; 190:23-193:22).

In their opposition brief, Plaintiffs ignore this testimony. They do not respond to it because there is nothing for them to say. Their own expert strongly believes that the vitamins and minerals in OAD "help support normal heart health, immune health and energy," *id.* (Blonz Tr. 238:9-240:14), and has been living this belief for 40 years.

**2.     Dr. Blonz's objection to Bayer's claims is legally flawed and inconsistent with this Court's rulings**

Dr. Blonz objects to Bayer's claims, but his objection is legally flawed and inconsistent with this Court's prior rulings in this case. According to Dr. Blonz, Bayer is making disease claims. His "entire report is premised on [his] position that Bayer is making claims to try to assuage consumers' concerns about disease risks." *Id.* (Blonz Tr. 308:9-13).

Bayer is making disease claims, he explained, because Bayer did not use the word "normal" as a modifier after the word "supports." *Id.* (Blonz Tr. 279:1-280:4). If Bayer had done so, Dr. Blonz would consider the claims to be "ideal" structure-function claims. *Id.*

This position, however, is inconsistent with the FDA's guidance and this Court's decisions. As the Court has recognized, Dkt. 54, at 10-11, Bayer's claims are fundamentally the same as the FDA's suggested language, which does not include the word "normal."

| CLAIM | FDA's Language | Bayer's Claims |
|---|---|---|
| **Immunity** | "Supports the immune system." "Is necessary to maintaining a healthy immune response." | Supports "immune health." |
| **Heart Health** | "[H]elps maintain cardiovascular function and a healthy circulatory system." "[S]upports the cardiovascular system." | Supports "heart health" |
| **Energy** | Supplement is "an 'energizer,' a 'rejuvenative,' [or] a revitalizer,'" or it promotes "metabolism." | Supports "physical energy … to help convert food to fuel." |

Dr. Blonz's critique of Bayer's claims is thus legally flawed. Dkt. 136, at 7; Cohn Decl., Ex. 1 (Blonz Tr. 167:1-3 & 20-24; 186:22-187:10). Plaintiffs do not even respond to this point, let alone address why his testimony should be considered. Because Dr. Blonz's objection to Bayer's structure-function claims is inconsistent with FDA guidance and this Court's prior rulings in this case, this Court should grant summary judgment to Bayer. *See United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 925 (9th Cir. 2009).

Further, as Bayer explained in its opening brief, Dr. Blonz has no basis to say that Bayer's claims "impl[y]" that they will decrease "disease risk." Cohn Decl., Ex. 1 (Blonz Tr. 348:2-349:2). He is "not an expert in consumer interpretation or impli[ed] claims," *id*. (Blonz Tr. 347:3-348:23), did not conduct any "survey," *id*. (Blonz Tr. 308:23-25), did not "ask any consumers if they share [his] view," *id*. (Blonz Tr. 309:14-15), and is unable to say whether there is a single "person in the world [who] shares [his] view of Bayer's claims … ." *Id*. (Blonz Tr. 310:2-5). He concedes he was not "*not rendering an expert opinion that Bayer actually is making these implied claims* [regarding diseases]." *Id.* (Blonz Tr. 348:24-349:2) (emphasis added). Once again, Plaintiffs ignore their expert's testimony and do not respond to Bayer's argument.

Finally, there is yet another flaw in Dr. Blonz's opinion: Dr. Blonz is providing a classic lack-of-substantiation opinion. Dkt. 136, at 16-19. Under state law, private plaintiffs cannot make a lack-of-substantiation challenge. *See Bronson v. Johnson & Johnson, Inc.*, No. 12-cv-04183, 2013 WL 1629191, at *8 (N.D. Cal. Apr. 16, 2013); *see also Kwan v. SanMedica Int'l, LLC*, No. 14-cv-03287, 2015 WL 848868, at *8 (N.D. Cal. Feb. 25, 2015). In their brief, Plaintiffs assert that the

Court rejected Bayer's argument *at the motion to dismiss stage*.  Dkt. 141, at 15.  But, at the motion to dismiss stage, the Court allowed Plaintiffs' case to proceed based on "*alleg[ations]* that Bayer's statements that its Supplements 'support' or help heart health and immunity are false." Dkt. 54, at 13 (emphasis added).  Now that the case has proceeded to summary judgment, Plaintiffs must now have *evidence* of actual falsity.  Yet all they have is Dr. Blonz.  And he does not provide any evidence that Bayer's claims are affirmatively false.  Instead he delivers a legally flawed opinion that "[t]here is no competent and reliable evidence to support" Bayer's claims.  *E.g.*, Dkt. 129-38, at 7, 10 ¶3, 11-12 ¶¶5; *see also* Dkt. 141-10, at 3 ¶8 ("When I testify that there is no evidence or basis to conclude that the Products will provide any measurable support for heart health when added to a typical, non-supplemented diet, this means that these claims are untrue for the majority of otherwise-healthy, well-nourished Americans."); *id.* ¶¶9-10.[4]  Plaintiffs' case fails for this reason as well.[5]

   C.   **Undisputed Evidence Shows The Claims Are Not Material**

Even if Bayer's claims were false—and they clearly are not—the Court should still grant Bayer summary judgment, because the challenged claims are not material to a reasonable consumer.  Whereas Bayer has produced empirical surveys from a leading consumer survey expert showing that the claims at issue are not material, Dkt. 136-4, at 7, 9, 20-28, Plaintiffs have no survey, no focus group, no empirical data, and no expert opinion.  Although Plaintiffs nitpick Bayer's survey, they do not argue that it is inadmissible or that it should be excluded.

---

[4] Moreover, Plaintiffs' demand for specific testing of OAD is inconsistent with government guidance and case law.  *See* Cohn Decl., Ex. 5 (FTC Guidance, *Dietary Supplements: An Advertising Guide to Industry*, at 8-9) (for dietary supplements, "[t]here is no fixed formula for the … type of studies required" to substantiate a structure/function claim); *see also United States v. Bayer Corp.*, No. 07-cv-01, 2015 WL 5822595, at *3-4 (D.N.J. Sept. 24, 2015) (recognizing "the FTC Guidance makes clear that … '[t]here is no fixed formula for the … *type of studies required*.'") (citing FTC Guidance, *Dietary Supplements: An Advertising Guide for Industry*, at 8-9) (emphasis added); *In re Bayer Phillips Colon Health Probiotics Sales Prac. Litig.*, No. 11-cv-03017, 2017 WL 1395483, at *11 (D.N.J. Apr. 18, 2017) (granting summary judgment because "Plaintiffs' expert opines that [Bayer's "promotes digestive health" claim is] false absent an RCT showing [the product's] efficacy"), *appeal filed sub nom.*, *Rikos v. Bayer Healthcare*, No. 17-2123, (3d Cir. May 18, 2017).

[5] In passing, Plaintiffs assert that OAD is not "complete." Dkt. 141, at 12.  This claim is not at issue in this case and appears nowhere in the complaint.  Further, the undisputed evidence is that OAD multivitamins are complete.  Dkt. 136-3, at ¶¶4, 35.

The law is clear: when one party has survey evidence proving that claims are immaterial, and the other side has no contrary survey evidence, summary judgment is proper. *Rahman v. Mott's LLP*, No. 13-cv-3482, 2014 WL 5282106, at *9 (N.D. Cal. Oct. 15, 2014); *see also In re 5-HOUR ENERGY*, No. 13-mdl-2438, 2017 WL 2559615, at *8, 11 (C.D. Cal. June 7, 2017) (no materiality where plaintiffs relied primarily on the testimony of company testimony and named plaintiff's testimony and defendant provided an expert survey showing energy claim was not material).

For example, in *Rahman* the court granted the defendant's summary judgment motion when the defendant had conducted a survey finding no materiality and the plaintiff did "not conduct a survey of his own" but only "criticiz[ed] the methodology" of the defendant's survey. 2014 WL 5282106, at *9-10. The Court held that merely criticizing the other side's survey is "no substitute for introducing evidence which arrives at the opposite conclusion." *Id.* So too here. Plaintiffs have *no evidence* of materiality. Their purported expert, Jonathan Hibbard, has not "offer[ed] an opinion that the challenged claims are, in fact, material to an average consumer." Cohn Decl., Ex. 6 (Hibbard Tr. 82:16-19).

Even if mere criticism could meet Plaintiffs' burden at summary judgment, Hibbard's report does not come close to undermining Bayer's expert survey evidence. To begin, Hibbard lacks the necessary expertise in survey design. He is an assistant professor at Boston University, *id.* (Hibbard Tr. 96:10-16), and none of his official Boston University biographies state that his research or teaching involves consumer behavior or survey design. *Id.* (Hibbard Tr. 114:5-116:9). He has published only one article in the past five years, and it was not even an "academic" article, *id.* (Hibbard Tr. 120:13-121:22), but only a two-and-a-half-page report written for lawyers as "a form of marketing." *Id.* (Hibbard Tr. 126:4-128:7). In the past 10 years, Hibbard has written only one peer-reviewed academic article, which involved business-to-business marketing, not consumer surveys. And he cannot recall if he has ever in his entire career published a single peer-reviewed article involving a "survey on consumers," *id.* (Hibbard Tr. 151:8-13), or "interpretation of

1   advertisements." *Id.* (Hibbard Tr. 151:20-24).[6]

2   His expert report also lacks any of the academic or intellectual rigor necessary to satisfy *Daubert* and Rule 702. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). For 11 out of his 14 criticisms, Hibbard provides zero citation to academic literature or academic research—he merely states his own personal opinion. *See* Dkt. 141-2. He even conceded in his deposition that studies published in peer-reviewed literature used the same methods as Dr. Kivetz—even though Hibbard criticized them as unreliable. Cohn Decl., Ex. 6 (Hibbard Tr. 260:6-264:15) (consumers in experiment told to assume "all the options were identical on all other attributes, including price"); *id.* (Hibbard Tr. 230:23-231:6; 239:6-240:4) (academic studies sometimes show one package, not an array, and ask questions about that package); *id.* (Hibbard Tr. 287:1-19) (thousands of academic studies over the past 50 years have not published entire verbatim coding); *id.* (Hibbard Tr. 369:20-25) (surveys in academic literature use 200 as a benchmark for sample size).

Still more, many of Hibbard's criticism were based on a "cursory review" he conducted while "walking down the aisle" of one drug store, not any "rigorous analysis" or scientific method necessary to support an expert opinion. *Id.* (Hibbard Tr. 272:1-273:22). Hibbard's report is also riddled with errors. Dr. Hibbard states that Dr. Kivetz undercounted the number of times survey respondents in the test group mentioned the three challenged claims. Dkt. 141-2, at 8-9. Yet to

---

[6] Defendants move to strike Dr. Hibbard's deposition errata, which attempts to make substantive changes to deposition answers without *any* explanation. *See,* Cohn Decl., Ex. 8 (errata and relevant deposition pages). Among other changes, Dr. Hibbard attempts to change his answer from "no" to "yes" to this question: "have you ever conducted a survey for litigation purposes?" *Id.* The Federal Rules and Ninth Circuit precedent bar these contradictory changes in an errata, particularly with no explanation. *See*, *e.g.*, *Hambleton Bros. Lumber Co. v. Balkin Enters. Inc.*, 397 F.3d 1217 (9th Cir. 2005) (affirming decision to strike deposition errata because no explanation for the changes were given and "the Rule requires that a statement giving reasons for the corrections be included"); *Lewis v. CCPOA Benefit Trust Fund,* No. 08-cv-03228, 2010 WL 3398521, at *4 (N.D. Cal. Aug. 27, 2010) (granting motion to strike errata changes because "under Ninth Circuit law, contradictory changes are not given the imprimatur and benefit of Rule 30(e) certification"); *Teleshuttle Techs. LLC v. Microsoft Corp.*, No. 04-cv-02927, 2005 WL 3259992, at *3 (N.D. Cal. Nov. 29, 2005) (granting motion to strike errata changes that substantively changed or contradicted deposition testimony); *see also* Fed. R. Civ. P. 30(e) (requires the deponent to "sign a statement listing the changes *and the reasons for making them*.") (emphasis added). Bayer is prejudiced by Dr. Hibbard's new statements because it did not have an opportunity to ask follow up questions.

reach this conclusion, Hibbard wrongfully included respondents from the *control* group in his count. Cohn Decl., Ex. 6 (Hibbard Tr. 290:5-293:25).  Confronted with this fact, Hibbard acknowledged that his own declaration was "inaccurate," and he corrected his declaration at deposition. *Id.* (Hibbard Tr. 301:23-302:6).  Moreover, he based the remainder of his verbatim coding on pure "assumptions" rather than fact. *E.g.*, *id.* (Hibbard Tr. 312:15-315:20; 319:15-322:15; 322:16-324:17) (he assumed that when respondents mentioned "health" they were referring to *all 3 challenged claims* instead of the non-challenged claims).

At bottom, Dr. Hibbard conceded that Dr. Kivetz's survey methodology complied with the seven factors of reliability described in the Manual for Complex Litigation.[7]  He agreed that Dr. Kivetz selected the "correct [survey] population," and that those surveyed were "representative." *Id.* (Hibbard Tr. 209:21-211:8).  He had no reason to doubt the accuracy of the data, *id.* (Hibbard Tr. 211:24-212:3), and agreed that Dr. Kivetz analyzed the data with "an acceptable statistical method." *Id.* (Hibbard Tr. 211:9-23).  The survey questions were neither "leading" nor "confusing," *id.* (Hibbard Tr. 208:28-209:1), and the survey interviewers were qualified. *Id.* (Hibbard Tr. 200:13-202:24).  Finally, as to objectivity, Hibbard agreed that the blinded nature of the survey "helped to ensure the [study's] objectivity." *Id.* (Hibbard Tr. 206:10-208:13).[8]

---

[7] Plaintiffs also criticize Dr. Kivetz for telling "the Court … that his study complied with seven factors from the Manual for Complex Litigation." Dkt. 141, at 18.  According to Plaintiffs, the manual lists "eight factors, not seven." *Id.*  Plaintiffs are wrong.  The Manual lists the following seven—not eight—factors:

1. The population was properly chosen and defined;
2. The sample chosen was representative of that population;
3. The data gathered were accurately reported;
4. The data were analyzed in accordance with accepted statistical principles;
5. Whether the questions asked were clear and not leading;
6. Whether the survey was conducted by qualified persons following proper interview procedures; and
7. Whether the process was conducted so as to ensure objectivity (e.g., determine if the survey was conducted in anticipation of litigation and by persons connected with the parties or counsel or by persons aware of its purpose in the litigation).

*See* Manual for Complex Litigation 4th §11.493, at 102 [bullets in original replaced with numbers].

[8] For additional reasons why Dr. Hibbard's criticisms lack any basis, *see* the Expert Surrebuttal Declaration of Dr. Ran Kivetz attached as Exhibit 7 to the Cohn Declaration.

Plaintiffs' other arguments about materiality fare no better.

<u>First</u>, relying on *Ehret v. Uber Techs., Inc.*, 148 F. Supp. 3d 884, 901–02 (N.D. Cal. 2015), Plaintiffs claim that materiality can be established through a showing of reliance. Dkt. 141, at 15. However, that court held that reliance could by established through materiality—not the other way around. *Ehret*, 148 F. Supp. 3d at 901–02. In any event, as discussed above, none of the Plaintiffs relied on the advertising at issue. They bought for other reasons, including trying to support their spouses' firm's lawsuit.

<u>Second</u>, Plaintiffs assert that Bayer's own documents prove that the claims are material. Dkt. 141, at 16. That is also wrong. After a comprehensive review, Dr. Kivetz concluded that Bayer's "consumer surveys, market studies," and employee testimony demonstrate that "[t]he three challenged claims are not material or common factors in consumers' decisions." Dkt. 135-3, at 7 ¶13(a). The materials cited by Plaintiffs say no different. One is an OAD guide that describes the substantiation for the claims, Dkt. 141-25, and has absolutely nothing to do with materiality. While some of the materials describe how consumers perceive "heart health," "immunity," or "energy" in the abstract, *see* Dkt. 141-13, at DEF-0010797, none show that the claims are material. Nor did Plaintiffs' purported marketing expert even review these materials, let alone conclude that they demonstrate materiality.[9]

<u>Third</u>, Plaintiffs have claimed the legislature has determined that Bayer's structure/function claims are material because they have alleged that the advertisement violates California's Sherman Law. Dkt. 141, at 17. This mistakes pleading with evidence. In the only summary-judgment case cited by Plaintiffs, the court held that materiality was satisfied because the plaintiffs had actually "*shown*" a violation of the Sherman Law. *Brown v. Hain Celestial Grp., Inc.*, No. 11-cv-03082-LB, 2015 WL 3398415, at *7 (N.D. Cal. May 26, 2015) (emphasis added). Here, Plaintiffs have not

---

[9] Appendix 10 to the King Declaration purports to be a summary or "appendix" of various Bayer documents. Dkt. 141-11. The Appendix is not a Bayer document and it does not accurately describe any Bayer documents. It appears to be nothing more than legal argument by Plaintiffs' counsel. It lacks foundation, is inauthentic, and is an attempt to circumvent this Court's page limits by including four pages of argument in an exhibit. Bayer hereby objects to what appears to be additional lawyer argument pursuant to Local Rule 7-3(c). The Court should strike the exhibit.

1  even explained the basis on which OAD is "misbrand[ed]"; nor have they provided any evidence for
2  the Court to conclude that OAD violates the law.  *Brown*, 2015 WL 3398415, at *7.

3          **D.**        **Plaintiffs Cannot Receive A Full Refund Or An Injunction**

4          In any event, even if Plaintiffs had a claim on the merits, they could not receive the relief
5  they seek.  First, they cannot get damages because their only damages model is premised on OAD
6  being "worthless," and their expert conceded that the product is not "worthless."  Cohn Decl., Ex. 1
7  (Blonz Tr. 40:1-2).  Under California law, a "full refund may be available in a UCL case when the
8  plaintiffs prove the product had no value."  *In re Tobacco Cases II*, 192 Cal. Rptr. 3d 881, 895
9  (2015).  Plaintiffs must present "competent evidence" that OAD is worthless.  *Ewert v. eBay, Inc.*,
10 602 F. App'x, 357, 359 (9th Cir. 2015).

11         Plaintiffs have not come close to meeting that burden because Dr. Blonz testified he "would
12 never say that Bayer multivitamins are worthless."  Cohn Decl., Ex. 1 (Blonz Tr. 40:1-2).  He agrees
13 that "taking a multivitamin or other supplement on a daily basis can make good sense."  *Id.* (Blonz
14 Tr. 206:3-14).  Plaintiffs assert that the "damages analysis should be deferred" because Bayer
15 "leapfrogg[ed] past their right to merits discovery," Dkt. 141, at 24, but no amount of additional
16 discovery could support Plaintiffs' claim that OAD is "worthless."  Plaintiffs' premise is
17 contradicted by their own expert, Cohn Decl., Ex. 1 (Blonz Tr. 40:1-2), as well as the other evidence
18 in the record.  *See, e.g.*, Dkt. 136-3, at 15 ¶¶37, 45-62.

19         Second, as Bayer explained in its opposition to class certification, Plaintiffs cannot obtain
20 injunctive relief, because they do not "inten[d] to purchase [OAD] in the future."  *Khasin v. R.C.*
21 *Bigelow*, No. 12-cv-02204, 2016 WL 1213767, at *4 (N.D. Cal. Mar. 29, 2016); *see also Khasin v.*
22 *R.C. Bigelow*, No. 12-cv-02204, 2016 WL 4502500, at *6 (N.D. Cal. Aug. 29, 2016) (granting
23 summary judgment on same grounds).  All three testified under oath that they would never purchase
24 OAD again.  Cohn Decl., Ex. 4 (Farar Tr. 169:10-15) ("No, I wouldn't buy it again."); Cohn Decl.,
25 Ex. 3 (Lopez Tr. 180:24-181:17) ("After I read [the article about multivitamins], I was, like, I am not
26 going to have them again anyway."); Cohn Decl., Ex. 2 (Cosgrove Tr. 347:10-17) ("Q. And you're
27 not even opposed to taking Women's One A Day, are you? A. Yes, I am.").

28         The post-deposition, lawyer-drafted, conditional declarations do not suffice for injunctive

relief. *See Khasin*, 2016 WL 1213767, at *5. This is especially true where, as here, "deposition testimony" fails to "support" the declaration, rendering the declaration "unconvincing." *Id.* at *4-5. Plaintiffs do not even address this Court's decision in *Khasin*, much less attempt to distinguish it.

Moreover, Plaintiffs' conditional declarations are inconsistent with Plaintiffs' premise that OAD is "worthless." Dkt. 141, at 11 & 23. If OAD were truly worthless, Plaintiffs could not possibly say they would buy them in the future. Thus, if the Court were to agree with Plaintiffs and hold that multivitamins are worthless, it is inconceivable that Plaintiffs would spend money on OAD again; therefore, injunctive relief would be improper. *Id.* at 11.[10]

Finally, Plaintiffs' reliance on *Johnson v. Hartford Casualty Insurance Company*, No. 15-cv-04138, 2017 WL 2224828 (N.D. Cal. May 22, 2017), *appeal filed*, No. 17-800095, (9th Cir. June 6, 2017) and *Rushing v. Williams-Sonoma, Inc.*, No. 16-cv-01421, 2016 WL 4269787 (N.D. Cal. Aug. 15, 2016) is misplaced. Dkt. 141, at 9. This Court found standing for injunctive relief in *Johnson* and *Rushing* expressly noting that those situations were "*distinct* from [the] many food products labeling cases where courts have found no standing." *Johnson*, 2017 WL 2224828, at *11 (emphasis added). The Court explained that particularly when plaintiffs allege that products are "useless"—like Plaintiffs allege here—there can be no possibility "that reasonable consumers would [] intend or want to purchase in the future given the nature of their claims," *Rushing*, 2016 WL 4269787, at *9.

## III. CONCLUSION

For the reasons stated above, and those in Bayer's opening brief, Bayer respectfully requests that this Court grant Bayer's Motion for Summary Judgment.

Dated: September 6, 2017                                SIDLEY AUSTIN LLP

By: /s/ Jonathan F. Cohn
Jonathan F. Cohn
Attorney for Defendants Bayer AG, Bayer Corporation, and Bayer HealthCare LLC

---

[10] Plaintiffs also suggest they may purchase OAD if they develop a "biochemical deficienc[y]" disease, Dkt. 141, at 9, but a multivitamin is not intended to treat diseases, and Bayer is not making disease claims.