UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ILANA FARAR, et al.,

          Plaintiffs,

    v.

BAYER AG, et al.,

          Defendants.

Case No.  14-cv-04601-WHO

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 129, 136

## INTRODUCTION

Plaintiffs Ilana Farar, Andrea Lopez, and Rosanne Cosgrove are consumers who purchased multivitamin products marketed by Bayer AG, Bayer Corporation, and Bayer Healthcare LLC ("Defendants" or "Bayer").  They allege that defendants' products contain false or misleading health claims relating to heart health, immunity, and physical energy, and bring suit under the consumer protection laws of California, New York, and Florida on behalf of themselves and four proposed classes.  Plaintiffs now move for certification of their proposed classes, while defendants move for summary judgment.  I GRANT plaintiffs' motion for class certification, except their request for a nationwide class, because they meet the requirements of Fed. R. Civ. P. 23, and DENY defendants' motion for summary judgment because material facts are in dispute.  My reasoning follows.

## BACKGROUND

### I.    Factual Background

Defendants market more than twenty different multivitamins under their brand name, One A Day ("One A Day," "One A Day Products," or "Products").  *See* Second Amended Class Action

United States District Court
Northern District of California

Complaint ("SACAC") ¶ 1 n.2 [Dkt. No. 58].  Defendants' products make various claims relating to health on their product packaging and in other marketing materials.

Relevant to this lawsuit are three claims in particular relating to heart health, immunity, and physical energy.  On the front of the product packaging for the Women's One A Day Formula, for example, it states: "Formulated to Support" "Hearth Health," as well as "Immunity" and "Physical Energy."  *Id.* ¶ 35.  Several of defendants' One A Day Products include the claim that they "support heart health."  *Id.* ¶ 34.[1]  In a television advertisement for One A Day Men's 50+, a man swims across a pool with the words "Supports heart and eye health" prominently displayed over the footage, while a voice-over states that the product is "designed for men's health concerns as we age."  *Id.* ¶ 36.  With respect to immunity support, defendants market the One A Day VitaCraves plus Immunity Support product in a magazine advertisement that states, "Immunity support in a gummy?  Sweet."  *Id.* ¶ 53.[2]  And similarly, with respect to physical energy, a television advertisement for One A Day VitaCraves with Energy Support shows a man performing gymnastics on a tight rope while a voice-over states, "[f]or those who want to enjoy their days, not just get through them:  new One A Day VitaCraves with Energy Support.  The only complete gummy multivitamin that supports energy and mental alertness."  *Id.* ¶ 72.[3]

Named plaintiffs are three adult women who purchased defendants' Products.  Ilana Farar

---

[1] These products include One A Day Women's Formula, One A Day Men's 50+, One A Day Men's Health Formula, One A Day Women's 50+, One A Day Menopause Formula, One A Day Essential, One A Day VitaCraves, One A Day Men's VitaCraves, One A Day VitaCraves Sour Gummies, and One A Day Energy.  *See* SACAC ¶ 34.

[2] Additional products that claim to support immunity are One A Day Women's Formula, One A Day Women's 50+, One A Day Men's Health Formula, One A Day Men's 50+, One A Day Women's Petites, One A Day Women's Plus Healthy Skin Support, One A Day Teen Advantage for Her, One A Day Teen Advantage for Him, One A Day Essential, One A Day VitaCraves, One A Day Men's VitaCraves, One A Day VitaCraves Sour Gummies, and One A Day Energy.  *See* SACAC ¶ 51.

[3] Products including the physical energy support claim include One A Day Women's Formula, One A Day Women's 50+, One A Day Men's Health Formula, One A Day Men's 50+, One A Day Women's Petites, One A Day Women's Menopause Formula, One A Day Women's Active Mind & Body, One A Day Women's Plus Healthy Skin Support, One A Day Teen Advantage for Her, One A Day Teen Advantage for Him, One A Day Essential, One A Day VitaCraves, One A Day Women's VitaCraves, One A Day Men's VitaCraves, One A Day VitaCraves Sour Gummies, and One A Day Energy.  *See* SACAC ¶ 70.

United States District Court
Northern District of California

1   is a resident of California, where she purchased the "One A Day Women's Supplement" from one

2   or more retailers.  SACAC ¶ 20.  Andrea Lopez purchased the same Product in Florida, where she

3   is a resident.  *Id.* ¶ 21.  Rosanne Cosgrove is a resident of New York, where she purchased the

4   same Product.  *Id.* ¶ 23.  All three plaintiffs have stated that they read the aforementioned relevant

5   health claims on the Product's label, saw defendants' marketing materials online, in print, or on

6   television, and relied on those claims in purchasing the Product.  *Id.* ¶¶ 19–21; Farar Decl. in

7   Support of Pls.' Mot. for Class Cert. ¶¶ 7–8 [Dkt. No. 129-12]; Lopez Decl. in Support of Pls.'

8   Mot. for Class Cert. ¶¶ 7–8 [Dkt. No. 129-13]; Cosgrove Decl. in Support of Pls.' Mot. for Class

9   Cert. ¶¶ 7–8 [Dkt. No. 129-14].

10      Plaintiffs challenge each of these claims because they do not affect or benefit the heart

11   health, immunity, or physical energy levels of the average American (and the majority of

12   consumers to whom Bayer markets its Products).  *See* SACAC ¶¶ 8–10.  Instead, plaintiffs

13   contend that while some Americans may not meet the daily Recommended Dietary Allowance

14   ("RDA") for each vitamin or mineral through diet alone, most Americans do not suffer from any

15   biochemical deficiency, and multivitamin supplementation in the absence of such a deficiency has

16   no health benefit or effect.  *See* Pls.' Opp. to MSJ at 10 [Dkt. No. 141]; Declaration of Dr. Edward

17   R. Blonz ("Blonz Decl.") [Dkt. No. 129-38].  Because studies support that multivitamin

18   supplementation does not have any benefit to heart health, immunity, or physical energy, plaintiffs

19   assert that defendants' three health claims are "false, misleading, and deceptive."  *See* SACAC ¶

20   31.

21      **II.      Procedural Background**

22      Plaintiffs bring suit as individuals as well as on behalf of a nationwide class and three

23   statewide classes in California, Florida, and New York.  They allege unlawful, unfair, and

24   fraudulent business practices in violation of California's Unfair Competition Law ("UCL") on

25   behalf of Ms. Farar and the California class, unlawful and deceptive business practices in violation

26   of California's Consumer Legal Remedies Act ("CLRA") on behalf of Ms. Farar and the

27   California class, false or misleading advertising in violation of California law on behalf of Ms.

28   Farar and the California class, unfair or deceptive practices in violation of the Florida Deceptive

and Unfair Trade Practices Act on behalf of Ms. Lopez and the Florida class, misleading advertising in violation of Florida Statute Section 817.41 on behalf of Ms. Lopez and the Florida class, deceptive acts and practices in violation of the New York General Business Law Section 349 on behalf of Ms. Cosgrove and the New York class, false advertising in violation of the New York General Business Law Section 350 on behalf of Ms. Cosgrove and the New York class, and unjust enrichment/quasi-contract on behalf of the nationwide class. They seek equitable relief, including an injunction enjoining defendants from making such claims, restitution, and/or disgorgement, as well as damages.

Fact discovery closed on November 9, 2016. Plaintiffs filed their Motion for Class Certification [Dkt. No. 129] on January 11, 2017. In that motion, they seek certification of the following four classes:

> **Nationwide**: All persons in the United States who purchased Bayer One A Day Supplements in the United States that contained one or more Claims from October 15, 2010 until the date of certification ("Class Period").
> **California**: All persons in California who purchased Bayer One A Day Supplements in California that contained one or more Claims during the Class Period.
> **Florida**: All persons in Florida who purchased Bayer One A Day Supplements in Florida that contained one or more Claims during the Class Period.
> **New York**: All persons in New York who purchased Bayer One A Day Supplements in New York that contained one or more Claims during the Class Period.

Pls.' Mot. for Class Cert. at 7–8. Defendants opposed that motion and contemporaneously filed a motion for summary judgment on March 24, 2017. *See* Defs.' Opp. to Pls.' Mot. for Class Cert. [Dkt. No. 135]; Defs' MSJ [Dkt. No. 136]. I heard argument on October 18, 2017.

## LEGAL STANDARD

### I.      Federal Rule of Civil Procedure 23

Federal Rule of Civil Procedure 23 governs class actions. "Before certifying a class, the trial court must conduct a rigorous analysis to determine whether the party seeking certification has met the prerequisites of Rule 23." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012) (internal quotation marks omitted). The burden is on the party seeking certification to show, by a preponderance of the evidence, that the prerequisites have been met. *See Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *Conn. Ret. Plans & Trust Funds v. Amgen Inc.*, 660 F.3d 1170, 1175 (9th Cir. 2011).

United States District Court
Northern District of California

United States District Court
Northern District of California

Certification under Rule 23 is a two-step process.  The party seeking certification must first satisfy the four threshold requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy.  Specifically, Rule 23(a) requires a showing that:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  The party seeking certification must then establish that one of the three grounds for certification applies.  *See* Fed. R. Civ. P. 23(b).  Plaintiffs invoke both Rule 23(b)(2) and Rule 23(b)(3).

A class action may proceed under Rule 23(b)(2) where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them."  *Dukes*, 564 U.S. at 360 (internal quotation marks omitted).  Rule 23(b)(2) "does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant."  *Id.* (emphasis omitted).  Nor "does [it] authorize class certification when each class member would be entitled to an individualized award of monetary damages."  *Id.*

Rule 23(b)(3) provides that a class action may be maintained where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(2)(3).  The matters pertinent to these findings include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

*Id.*

In considering a motion for class certification, the substantive allegations of the complaint are accepted as true, but "the court need not accept conclusory or generic allegations regarding the suitability of the litigation for resolution through a class action." *Hanni v. Am. Airlines, Inc.*, No. 08–cv–00732–CW, 2010 WL 289297, at *8 (N.D. Cal. Jan. 15, 2010); *see also Jordan v. Paul Fin., LLC*, 285 F.R.D. 435, 447 (N.D. Cal.2012) ("[Courts] need not blindly rely on conclusory allegations which parrot Rule 23 requirements."). Accordingly, "the court may consider supplemental evidentiary submissions of the parties." *Hanni*, 2010 WL 289297, at *8; *see also Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975).

"A court's class-certification analysis . . . may entail some overlap with the merits of the plaintiff's underlying claim." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 465–66 (2013) (internal quotation marks omitted). However, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Id.* at 466. "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.*

## II.       Summary Judgment

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to identify "specific facts showing there is a genuine issue for trial." *Id.* The party opposing summary judgment must then present affirmative evidence from which a jury could return a verdict in that party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986).

On summary judgment, the Court draws all reasonable factual inferences in favor of the non-movant. *Anderson*, 477 U.S. at 255. In deciding a motion for summary judgment,

United States District Court
Northern District of California

1     "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate

2     inferences from the facts are jury functions, not those of a judge." *Id.*  However, conclusory and

3     speculative testimony does not raise genuine issues of fact and is insufficient to defeat summary

4     judgment. *See Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir.

5     1979).

## DISCUSSION

### I.     Motion for Class Certification

All three named plaintiffs have satisfied each of Rule 23's requirements for class

certification of the proposed California, New York, and Florida classes, as discussed below.

Plaintiffs have failed, however, to meet their burden with respect to the nationwide class.

#### A.   Rule 23(a)

##### 1.   Numerosity

Rule 23(a)(1) requires that the "the class is so numerous that joinder of all members is

impracticable."  Fed. R. Civ. P. 23(a)(1).  The party seeking certification "do[es] not need to state

the exact number of potential class members, nor is a specific number of class members required

for numerosity." *In re Rubber Chemicals Antitrust Litig.*, 232 F.R.D. 346, 350 (N.D. Cal. 2005).

However, courts generally find that numerosity is satisfied if the class includes forty or more

members. *See Villalpando v. Exel Direct Inc.*, 303 F.R.D. 588, 605–06 (N.D. Cal. 2014); *In re*

*Facebook, Inc., PPC Adver. Litig.*, 282 F.R.D. 446, 452 (N.D. Cal. 2012).

Here, plaintiffs argue that numerosity is indisputable, as the proposed classes consist of

"hundreds of thousands of individuals."  Pls.' Mot. for Class Cert. at 10.  Defendants do not

dispute that the proposed classes satisfy the numerosity requirement.  I find that this element has

been satisfied for all classes.

##### 2.   Commonality

Commonality requires that there be questions of law or fact common to the class.

Fed.R.Civ.P. 23(a)(2).  Plaintiffs must show that the class members have suffered "the same

injury"—which means that the class members' claims must "depend upon a common contention"

which is of such a nature that "determination of its truth or falsity will resolve an issue that is

United States District Court
Northern District of California

central to the validity of each [claim] in one stroke." *Dukes*, 564 U.S. at 350 (internal quotation marks and citation omitted).  The plaintiff must demonstrate not merely the existence of a common question, but rather "the capacity of classwide proceedings to generate common answers apt to drive the resolution of the litigation." *Id.* (internal quotation marks and emphasis omitted). For purposes of Rule 23(a)(2), "even a single common question will do." *Id.* at 359 (internal quotation marks and modifications omitted).

Plaintiffs present a number of what they characterize as common questions:  (1) "[w]hether Bayer marketed, advertised, labeled and sold One A Day Products using false, misleading or deceptive representations," (2) "[w]hether Bayer omitted or misrepresented material facts in connection with the marketing, advertising, labeling and sale of One A Day Products," (3) "[w]hether Bayer's marketing, advertising, labeling and sale of One A Day Products constitutes an unfair, unlawful or fraudulent business practice," (4) "[w]hether Bayer's marketing, advertising, labeling and selling of One A Day Products constitutes a deceptive business practice," and (5) "[w]hether Bayer's marketing, advertising and labeling of One A Day Products constitutes false advertising." Pls.' Mot. for Class Cert. at 10–11.  Defendants do not directly respond to plaintiffs' questions presented, but instead assert that "for the same reasons that there is no predominance, . . . there is no commonality either." Defs.' Opp. to Pls.' Mot. for Class Cert. at 24. While commonality and predominance are related issues and there is often substantial overlap between the two tests, the test for predominance is "far more demanding." *Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997).  Plaintiffs have presented not just one but five questions common to all class members, which is sufficient to establish commonality.

### 3.   Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  The typicality requirement of Rule 23(a)(3) assures that the interests of the named representatives align with the interests of the rest of the class. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler*

United States District Court
Northern District of California

United States District Court
Northern District of California

1     *Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). "The test of typicality is whether other members have

2     the same or similar injury, whether the action is based on conduct which is not unique to the

3     named plaintiffs, and whether other class members have been injured by the same course of

4     conduct." *Hanon*, 976 F.2d at 508 (internal quotation marks omitted).

5         Plaintiffs claim that they allege a common pattern of wrongdoing and will present the same

6     evidence in support of their claims and the claims of class members. Pls.' Mot. for Class Cert. at

7     11. Defendants argue that plaintiffs' claims are not typical, however, because each individual

8     plaintiff faces unique defenses. Defendants claim that Ms. Cosgrove did not rely on advertising in

9     making her purchase, Ms. Lopez's heart health claim is preempted, Ms. Lopez also has an

10    extremely uncommon diet, and Ms. Farar currently uses a multivitamin similar to the One A Day

11    product she purchased. Defs.' Opp. to Pls.' Mot. for Class Cert. at 23–24.

12        Defendants focus their argument on the wrong parties. "In determining whether typicality

13    is met, the focus should be on the defendants' conduct and the plaintiffs' legal theory, not the

14    injury caused to the plaintiff." *Allen v. Hyland's Inc.*, 300 F.R.D. 643, 661 (C.D. Cal. 2014).

15    Indeed, plaintiffs and class members all allege injury from the same conduct of defendants, which

16    was not unique to any individual plaintiff. While defendants point to minor differences among or

17    potential defenses to each named plaintiff's claims, accepting defendants' arguments would

18    demand that the representative claims be substantially identical to those of absent class members.

19    This Circuit has expressly rejected such a showing. *See Hanlon*, 150 F.3d at 2010. Plaintiffs have

20    therefore established typicality.

21                   **4. Adequacy**

22        Finally, to establish adequacy under Rule 23(a)(4), named plaintiffs must show that they

23    "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To

24    determine whether named plaintiffs will adequately represent a class, courts must resolve two

25    questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other

26    class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously

27    on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011)

28    (internal quotation marks omitted).

Defendants argue that plaintiffs cannot adequately protect the interests of the class because each plaintiff has a conflict of interest with absent class members. Both Ms. Cosgrove and Ms. Farar are married to employees of Kaplan Fox & Kilsheimer LLP ("Kaplan Fox"), one of the two firms representing plaintiffs in this matter. Defs.' Opp. to Pls.' Mot. for Class Cert. at 22–23. Ms. Cosgrove's husband, Kevin Cosgrove, is a Chief Investigator for Kaplan Fox, whose job responsibilities include finding named plaintiffs for class action lawsuits. Cohn Decl. Ex. 7 (Roseanne Cosgrove Dep. Tr.), at 210:9–13 [Dkt. No. 135-12]. He first discussed the case with Ms. Cosgrove, leading to her to retain Kaplan Fox. *Id.* at 136:25–137:11. Ms. Farar's husband, Justin Farar, is Of Counsel at Kaplan Fox. Cohn Decl. Ex. 16 (Kaplan Fox website). And defendants contend that Ms. Lopez has a conflict of interest because her former employer, Andres Montejo, approached her about becoming a class representative. Cohn Decl. Ex. 9 (Andrea Lopez Dep. Tr.), at 21:8–22:15. Plaintiffs dispute that these relationships, absent anything more, create any conflict of interest.

"Although a relationship between the named plaintiff and class counsel can defeat adequacy of representation, in general, more than such a relationship must be shown." *Zakaria v. Gerber Prods. Co.*, No. LA CV 15-00200, 2016 WL 6662723, at *6 (C.D. Cal. Mar. 23, 2016); *see also Stern v. DoCircle, Inc.*, No. SACV 12-2005, 2014 WL 486262, at *7 (C.D. Cal. Jan. 29, 2014) ("[T]he Court does not believe that, without more, some preexisting relationship between a named plaintiff and counsel makes the plaintiff an inadequate class representative."). In *Kumar v. Salov N. Am. Corp.*, for example, another judge in this district considered whether there was a conflict of interest where the record indicated that the named plaintiff first discussed the relevant issue with her friend, one of the counsel in the matter, over brunch, which led to the filing of the action. No. 14-CV-2411-YGR, 2015 WL 3844334, at *3 (N.D. Cal. July 15, 2016). The Hon. Yvonne Gonzalez-Rogers concluded that "[a]ny suggestion of a conflict here is undermined by the fact that [the attorney in question] is not a partner and is only one of several attorneys, from two firms, litigating the case." *Id.* On the contrary, in *Bohn v. Pharmavite, LLC*, the court concluded that the named plaintiff could not adequately represent the class when she not only had a close personal friendship with class counsel, but also provided inconsistent testimony regarding her

1   purchase and failed to conduct basic due diligence, instead relying on her attorney's

2   representations.  No. CV 11-10430-GHK, 2013 WL 4517895, at *3 (C.D. Cal. Aug. 7, 2013).

3   And I have previously found inadequacy of class counsel where named plaintiffs had prior

4   relationships with class counsel, the record indicated that named plaintiffs purchased the products

5   at issue at the direction of counsel for the purpose of initiating the lawsuit, and counsel had no

6   experience litigating class actions.  *See English v. Apple Inc.*, No. 14-cv-01619-WHO, 2016 WL

7   1188200, at *13–14 (N.D. Cal. Jan. 5, 2016).

8          While defendants do identify the types of close personal relationships between class

9   counsel and Ms. Cosgrove and Ms. Farar that deserve scrutiny, the absence of any further

10  improprieties indicate that there is no conflict of interest present here.  Neither Ms. Cosgrove nor

11  Ms. Farar's husbands are partners at Kaplan Fox, and while the firm itself hopes to profit from this

12  litigation, neither Mr. Cosgrove nor Mr. Farar have a personal stake in the litigation as Mr.

13  Cosgrove is a salaried employee and Ms. Farar indicated that she believes Mr. Farar is not

14  working on the case.  *See* Cohn Decl. Ex. 7, at 209:2–4; Ex. 8, at 134:25–135:13.  Kaplan Fox is

15  also one of two firms representing plaintiffs in this matter.  Further, Ms. Montejo's relationship to

16  her former employer—whom she speaks to approximately "once a year"—is not the type of close

17  personal relationship giving rise to a conflict of interest.  *See* Cohn Decl. Ex. 9, at 38:11–20.

18         Finally, there is no indication that either named plaintiffs or class counsel will not or have

19  not prosecuted the action vigorously.  There is no evidence that named plaintiffs have failed to do

20  due diligence, nor that class counsel lacks expertise in litigating class actions.  Accordingly,

21  named plaintiffs adequately represent the interests of the class, and have fulfilled each of Rule

22  23(a)'s requirements.

23                              **B.  Rule 23(b)**

24         Having found that named plaintiffs satisfy Rule 23(a)'s requirements, I must also evaluate

25  whether they meet the requirements for certification under both Rule 23(b)(2) for injunctive relief

26  and Rule 23(b)(3) for damages.

27                     **1.  Injunctive Relief Pursuant to Rule 23(b)(2)**

28  Defendants argue that injunctive relief is inappropriate on standing grounds—named

United States District Court
Northern District of California

11

plaintiffs are not likely to purchase One A Day Products in the future, and therefore cannot establish that any ongoing threat of harm.   In order to establish standing for prospective injunctive relief, plaintiffs must demonstrate that they "ha[ve] suffered or [are] threatened with a concrete and particularized legal harm, coupled with a sufficient likelihood that [they] will again be wronged in a similar way."  *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (internal quotation marks and citations omitted); *Khasin v. R.C. Bigelow, Inc.*, No. 12-cv-02204-WHO, 2016 WL 1213767, at *3 (N.D. Cal. Mar. 29, 2016) (same).  Plaintiffs must establish a "real and immediate threat of immediate injury."  *Bates*, 511 F.3d at 985.  "[P]ast wrongs do not in themselves amount to [a] real and immediate threat of injury necessary to make out a controversy."  *Id.*  "However, past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury."  *Id.* (internal quotation marks omitted).

In *Khasin*, the plaintiff did not plausibly allege intent to purchase the defendant's green tea products with statements about healthy antioxidants in the future where he testified at deposition that he had not purchased any of the products since the commencement of the lawsuit, but added in a declaration that he would consider buying such products again under certain conditions, including removal of allegedly misleading health claims.  2016 WL 1213767, at *5.  Not only was his conditional, unsupported assertion unconvincing, but the plaintiff also failed to establish a likelihood of suffering the same harm because there was no danger that he would be misled in the future.  *Id.*

Since *Khasin*, I have found standing for injunctive relief claims "where without injunctive relief, [plaintiff] could never rely with confidence on product labeling when considering whether to purchase Defendants' product."  *Rushing v. Williams-Sonoma, Inc.*, No. 16-cv-01421-WHO, 2016 WL 4269787, at *10 (N.D. Cal. Aug. 15, 2016) (internal quotation marks omitted) (citing *Lilly v. Jamba Juice Co.*, No. 13-cv-02998-JST, 2015 WL 1248027 (N.D. Cal. Mar. 18, 2015)).  That was particularly true in *Rushing*, which dealt with misleading thread count labeling on bed sheets, "where because of the nature of the product and the necessity of scientific testing to confirm the product is not as advertised, a consumer c[ould not] easily assess the veracity of a defendant's representation when considering a future purchase."  *Id.*; *see also Johnson v. Hartford*

12

*Cas. Ins. Co.*, No. 15-cv-04138-WHO, 2017 WL 2224828, at *11 (N.D. Cal. May 22, 2017) ("[A]ny consumer of Hartford's insurance products would not be able to easily discern whether it was complying with the law. . . . As a result, Johnson has adequately demonstrated the prospect of future, repeated harm."). The same is true here, where plaintiffs would have to have the multivitamins tested in order to assess the veracity of the claims on their labels.

The Ninth Circuit has recently spoken on the issue in *Davidson v. Kimberly-Clark Corp.*, -- F.3d --, 2017 WL 4700093 (9th Cir. 2017). In that case, the Ninth Circuit reversed the district court's decision that the plaintiff lacked standing because she "ha[d] no intention of purchasing the same [] product in the future." *Id.* at *7. Instead, the Court held that

> a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' thread of future harm. Knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future. In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to. In other cases, the threat of future harm may be the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved.

*Id.* at *9 (internal citations omitted). The court concluded that, accepting the plaintiff's allegations as true, she had sufficiently alleged a threat of future harm because she desired to purchase the products in the future. *Id.* at *10.

Defendants nonetheless argue that none of the named plaintiffs are likely to purchase One A Day Products again in the future, pointing to their deposition testimony. They concede, however, that Ms. Cosgrove testified that she "will take multivitamins again." Cohn Decl. Ex. 7, at 255:17–20. Ms. Farar stated that "[b]uying the One A Day vitamin for me was a departure from my normal shopping criteria, when I look for a multivitamin . . . [b]ecause this is not a raw, organic, doesn't have all of that language. This is different than what I'm in the habit of buying." Cohn Decl. Ex. 8, at 178:20–25. She also testified, however, that she "looked specifically for 'raw' or 'whole food' language, and possibly this one [Bayer's One A Day Product] showed up first." *Id.* at 60:3–9. While defendants claim that this shows Ms. Farar is unlikely to purchase

13

One A Day Products again because none of their multivitamins make a raw or organic claim, they did not at the time of Ms. Farar's original purchase, either. Instead, her testimony shows only that she purchased such products in spite of her usual predilections, and is just as likely to do so in the future. Finally, although Ms. Lopez testified that she "just do[es]n't believe in multivitamins anymore," Cohn Decl. Ex. 9, at 73:18–19, she also testified that she had been diagnosed with anemia and vitamin deficiency in the past, which prompted her to seek out vitamin supplementation, *id.* at 58:4–7, 204:4–6. Moreover, plaintiffs offer a declaration in support of their motion from Ms. Lopez, which states:

> Although I now know that the promises Bayer made to me, described above, were untrue, it is likely that I will buy multivitamin supplements in the future. Because Bayer is one of the biggest supplement companies in America, I will likely consider buying their products in the future (especially if I become vitamin deficient), but only if their current practices are stopped. Otherwise, I can't rely with confidence on Bayer's labeling when I consider giving Bayer another chance.

*See* Lopez Decl. at ¶ 16. At this stage in the proceedings, the allegations from all three plaintiffs are sufficient to allege a threat of future harm that plaintiffs will not purchase the Products although they would like to, or that they will reasonably, but incorrectly, assume that the Products have improved. Named plaintiffs have thus established standing to seek injunctive relief.

## 2. Damages Pursuant to Rule 23(b)(3)

Finally, plaintiffs also seek to proceed pursuant to Rule 23(b)(3) for damages. Defendants dispute both that common questions of fact or law predominate over individualized questions and that class treatment is a superior method for adjudicating plaintiffs' claims. Defendants do not dispute the substance of plaintiffs' arguments in support of predominance in plaintiffs' opening brief, but instead advance three separate arguments as to why there is no predominance here: first, plaintiffs fail to present a proper damages model; second, plaintiffs cannot show that the disputed claims were material; and third, plaintiffs cannot show that there is a common, classwide interpretation of each disputed claim. With respect to superiority, defendants do not dispute plaintiffs' contentions that the first three of the four Rule 23(b)(3) factors support plaintiffs, but dispute that maintaining a class action is manageable because there is no manageable way to identify class members. They also contest superiority on the grounds that both Congress and the

United States District Court
Northern District of California

1  FDA have determined that multivitamins should be sold in the United States.  I disagree with each

2  of defendants' arguments.

3  ### a.  Plaintiffs' Damages Model

4  The predominance inquiry "tests whether proposed classes are sufficiently cohesive to

5  warrant adjudication by representation."  *Amchem Prods.*, 521 U.S. at 623.  As part of this inquiry,

6  plaintiffs must demonstrate that "damages are capable of measurement on a classwide basis."

7  *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013).  Plaintiffs must present a damages model

8  consistent with their theory of liability—that is, a damages model "purporting to serve as evidence

9  of damages in this class action must measure only those damages attributable to that theory."  *Id.*

10  at 35.  "Calculations need not be exact," *id.*, nor is it necessary "to show that [the] method will

11  work with certainty at this time," *Khasin*, 2016 WL 1213767, at *3.

12  Plaintiffs claim that they present a damages model based on their theory that defendants'

13  One A Day Products provide no general health benefits, and therefore no value at all, to the

14  majority of Americans (who are not biochemically deficient).  Pls.' Rep. in Support of Class Cert.

15  at 8–9 [Dkt. No. 143].  Reflecting this theory, their damages model provides for full restitution.

16  Defendants contend that the full restitution model is inappropriate because it fails to account for

17  the substantial nutritional value in the One A Day multivitamins.  Defs.' Opp. to Pls.' Mot. for

18  Class Cert. at 11–14.  Defendants emphasize that plaintiffs cannot show that their Products are

19  "worthless."  *Id.* at 13.

20  "Under California law, a full refund may be available as a means for restitution only when

21  plaintiffs prove the product had *no* value to them."  *Stathakos v. Columbia Sportswear Co.*, No.

22  15-cv-04543-YGR, 2017 WL 1957063, at *10 (N.D. Cal. May 11, 2017) (denying full refund

23  theory where "plaintiffs undeniably obtained some value from the garments they purchased,

24  separate and apart from the allegedly deceptive advertising practices").  Several courts in this

25  district have dealt with claims involving the full refund model.  *See, e.g.*, *Mullins v. Premier*

26  *Nutrition Corp.*, 178 F. Supp. 3d 867, 899 (N.D. Cal. 2016) ("Unlike juice, which consumers

27  purchase for hydration, or cigarettes, which smokers purchase for flavor and to assuage nicotine

28  cravings, Joint Juice is for all intents and purposes a liquid pill."); *Ries v. Arizona Beverages USA*

United States District Court
Northern District of California

1  *LLC*, 287 F.R.D. 523, 532 (N.D. Cal. 2012) ("Even if the beverages plaintiffs purchased were not

2  all natural, they still had some market value that accrued to plaintiffs."); *Khasin*, 2016 WL

3  1213767, at *3 ("Attributing a value of $0 to the Green Tea Products assumes that consumers gain

4  no benefit in the form of enjoyment, nutrition, caffeine intake, or hydration from consuming the

5  teas.  This is too implausible to accept."); *Jones v. ConAgra Foods, Inc.*, No. 12-01633 CRB, 2014

6  WL 2702726, at *23 (N.D. Cal. June 13, 2014) (rejecting damages model premised on claim that

7  Swiss Miss products are "legally worthless").

8  　　　In *Mullins*, the court differentiated the "Joint Juice" product at issue from other food

9  mislabeling cases, reasoning that the product was "nothing more than a liquid pill, which nobody

10  would purchase unless they were concerned about joint health." 178 F. Supp. 3d at 899.  That

11  assertion was backed by evidence in the record showing that "many consumers cite joint pain as

12  the reason for trying and using Joint Juice, which raise[d] the reasonable inference that they would

13  not have bought the product absent the joint-health claims."  *Id.*  Plaintiffs liken this case to

14  *Mullins*, arguing that defendants' One A Day Products provide no health benefits to consumers,

15  nor do they provide any other benefits that foods might, such as calories, satisfaction of hunger,

16  tastiness, or hydration.  Pls.' Rep. in Support of Class Cert. at 9.  Defendants, on the other hand,

17  argue that One A Day multivitamins are food products and provide nutritional value in the form of

18  essential vitamins and nutrients.  Defs.' Opp. to Pls.' Mot. for Class Cert. at 11.

19  　　　I agree with plaintiffs.  Like Joint Juice, defendants' One A Day products are literally pills,

20  and plaintiffs testified that they purchased the products only for their touted health benefits.  *See*

21  Cohn Decl. Ex. 7, at 313: 5–10 (Ms. Cosgrove testifying that she took One A Day because "the

22  Bayer One A Day describes overall health, heart health, immunity, energy"); Ex. 8, at 69:3–22

23  (Ms. Farar testifying that she chose Bayer One A Day for her "energy level, and so that I don't get

24  sick and I can keep up with my kids.  And I thought, you know, the heart healthy issue was

25  interesting . . . ."); *id.* at 78:20–23 ("I chose Bayer because I thought it was going to make me feel

26  better, I would get extra energy, I would feel I would never get sick."); Ex. 9, at 59:10–24 (Ms.

27  Lopez testifying, "When I saw, you know, the bottle on the commercials, they said it's going to

28  help your hearth health.  It's going to help your immune system.  It's going to help your skin look

16

1    better.  So that's the reason why me and everybody would buy it.").

2            Plaintiffs' theory of full restitution is supported not only by their individual allegations, but

3    also ample evidence in the record.  Defendants' own research and marketing strategy documents

4    confirm the effectiveness of their marketed health claims, *see infra* Section I(B)(2)(b) at 18–21,

5    and lend credence to plaintiffs' assertions that they purchased the One A Day products for their

6    touted health claims.  Moreover, plaintiffs present expert testimony from Dr. Edward R. Blonz

7    supporting their assertion that there is no measurable benefit for the typical American from taking

8    defendants' Products, as well as that the evidence does not support the Products' claims regarding

9    heart health, immunity, or physical energy.  *See* Blonz Decl. at 11–15.  Defendants point to

10   portions of his deposition in which they claim that he concedes that their products are not

11   "worthless," but a review of his testimony in context reveals that it is consistent with his report.

12   *See* Cohn Decl. Ex. 1 (Blonz Dep. Tr.), at 39:21–41:22 (testifying that Bayer multivitamins are not

13   absolutely "worthless" because they may help individuals with specific vitamin deficiencies or

14   other particular needs, but expressing concern that the claims of supporting overall heart health,

15   immunity, and physical energy for the typical adult are misleading).

16           Defendants make much of the fact that even if their products do not fulfill the touted health

17   benefits, they are not "worthless" because they provide essential vitamins and nutrients to

18   consumers.  But it is not plaintiffs' obligation to prove "worthlessness."  Their theory is not that

19   the products are absolutely worthless; instead, it is that they do not provide value to the average

20   American because the average American does not suffer from a biochemical deficiency.  That the

21   One A Day Products are made up of vitamins and nutrients does not change the conclusion here.

22   Under plaintiffs' theory, the vitamins and nutrients do not provide any value or worth to the

23   average American.

24           In *Mullins*, it was undisputed that Joint Juice contained glucosamine and chondroitin,

25   "essential for biosynthesis of the connective tissue between movable joints."  178 F. Supp. 3d at

26   877.  Yet it was the joint health claims alone that persuaded consumers to purchase the product;

27   here, plaintiffs similarly allege that they purchased defendants' One A Day Products for the touted

28   health claims and received no other benefits from them.  Unlike in *Khasin*, where it was

1    implausible that consumers purchasing green tea beverage products did not also derive benefits in

2    the form of hydration or caffeine, plaintiffs have derived no such benefits here.  *See, e.g.*, *Khasin*,

3    2016 WL 1213767, at *3.

4            Defendants also argue that multivitamins provide an "insurance benefit," premised on the

5    theory that because individual consumers cannot know whether they have any nutrient deficiencies

6    without blood testing, multivitamin products can provide such nutrients where consumers' diets

7    fall short.  Defs.' Opp. to Pls.' Mot. for Class Cert. at 12.  While defendants are able to point to

8    various statements from plaintiffs' experts in which they do not necessarily disagree with that

9    claim, the "insurance benefit" theory is irrelevant to plaintiffs' case, which is premised on their

10   claim that defendants' products are of no value to the typical adult, who experiences no such

11   dietary deficiencies.  The "insurance benefit" theory is also speculative; defendants' only evidence

12   mentioning this benefit appears in Dr. Blumberg's declaration:  "A report from the Harvard T.H.

13   Chan School of Public Health states that a 'daily multivitamin is an inexpensive nutritional

14   insurance policy.'"  Blumberg Decl. at 15 [Dkt. No. 136-3].  This "evidence" does not refute

15   plaintiffs' central theory:  that the average American actually receives no tangible benefit.  Instead,

16   the "insurance benefit" theory is akin to defendants arguing that taking their products may not help

17   but cannot hurt.  This is no benefit at all, and certainly not one that can overcome plaintiffs' "full

18   restitution" model of damages.  No plaintiff claimed that she decided to purchase the One A Day

19   products for the so-called insurance benefit.  Nor do defendants market this supposed benefit on

20   their product packaging or other marketing materials.

21           Finally, defendants contend that it is implausible for plaintiffs to claim that multivitamins

22   are worthless to them, especially in light of the fact that several of the One A Day Products'

23   advertised benefits, such as skin or bone health, have gone unchallenged.  Opp. at 13–14.  While

24   plaintiffs may ultimately fail to prove that nobody would purchase defendants' Products absent the

25   specific health claims at issue here, they have produced enough evidence at this stage to render

26   that a plausible conclusion.  They present a sufficient damages model.  *See Mullins*, 178 F. Supp.

27   3d at 899.  Plaintiffs may proceed on their full restitution theory of damages.

28

United States District Court
Northern District of California

18

United States District Court
Northern District of California

**b.  The Materiality of Plaintiffs' Challenged Claims**

Defendants next argue that plaintiffs cannot establish predominance because they cannot show that defendants' alleged misrepresentations were material to a reasonable consumer, a required element of each of plaintiffs' causes of actions.  Defs.' Opp. to Pls.' Mot. for Class Cert. at 14; *see also Kosta v. Del Monte Foods, Inc.*, 308 F.R.D. 217, 224 (N.D. Cal. 2015).  "A representation is 'material' . . . if a reasonable consumer would attach importance to it or if the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action."  *Id.* (citing *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013), *as amended on denial of reh'g and reh'g en banc* (July 8, 2013)) (internal quotation marks omitted).  "[P]laintiffs must offer some means of providing materiality and reliance by a reasonable consumer on a classwide basis in order to certify a class."  *Del Monte Foods*, 308 F.R.D. at 225.

Plaintiffs rely on defendants' own internal research to show the materiality of their stated claims to consumers.[4]  Defendants' internal documents include slides on brand drivers among both females and males, and list "Supports my immunity levels" and "Maintains a healthy heart" as brand purchase drivers for both women and men.  King Decl. in Support of Pls.' Opp. to MSJ Ex. 10-2, at DEF-0010796–97 [Dkt. No. 141-13].  A presentation on the research results of One A Day "90% Fall Short Strategy Concept Test[ing]," a study evaluating defendants' marketing strategies to particular age groups, contains a slide showing that both men and women ages 50+ found "physical energy support" relevant.  King Decl. Ex. 10-5, at DEF-0012569.  Results from another focus group of male and female multivitamin users ages 50–64 list that participants were "[v]ery or somewhat concerned with" factors including "heart attack" and "heart disease."  King Decl. Ex. 10-2, at DEF-0007538.  In a section on "Driving Growth" in another presentation, a slide on "category specific drivers of growth" for vitamin supplements generally lists "Condition-

---

[4] As discussed in the accompanying Order Regarding Administrative Motion to File Under Seal, I am preserving, at least for now, the confidentiality of several documents that show Bayer's marketing strategy and nonpublic financial information.  I am relying on certain facts contained in those documents, however.  The public has a strong interest in the disclosure of those facts and compelling reasons for their continued confidentiality do not exist.

specific supplements:  Introduction of supplements that are targeting specific conditions.

Opportunities are seen within the joint, and cardiovascular segments."  King Decl. Ex. 12, at DEF-

0016388.  In a presentation on "Optimizing Messaging," all of the top five messages for One A

Day Men's Health include references to immune health, heart health, or physical energy, King

Decl. Ex. 10-6*., at DEF-0069548, and six of the top ten messages for One A Day Women's Health

include references to the same, *id.* at DFE-0069563.  Plaintiffs present several other similar

examples of defendants' internal materials, which show that defendants thoroughly investigated

the types of health claims most effective to various types of consumers in order to shape their

brand marketing and strategy, and these claims included heart health, immunity, and physical

energy claims.[5]  Indeed, defendants' own documents support that a reasonable consumer attaches

importance to these claims, and that defendants knew that its consumers would regard these claims

as important, rendering these claims material.

       Defendants interpret their internal documents as supporting the opposite.  They point to

slides which list the top or key drivers of purchase as "[g]ood value for the money," "[m]akes me

feel like I'm taking good care of myself," and "[b]rand I trust" for both men and women.  Cohn

Decl. Ex. 15, at DEF-0010728 [Dkt. No. 135–20].  Such evidence does not preclude that the

specific messaging and disputed claims are not also effective drivers of purchase, and defendants'

own materials strongly support that conclusion.  Moreover, the fact that defendants have certain

products that specifically target certain disputed health claims, such as One A Day VitaCraves

---

[5] *See generally* King Decl. Ex. 10; *see, e.g.*, King Decl. Ex. 10-2, at DEF-0010718, DEF-0010759 (research seeking to "update [One A Day's] current set of target segments, and inform its upcoming brand marketing strategies and tactics," shows that one particular male target segment wants "specific benefits and ingredients in his multivitamin, especially those related to heart health and immunity"); King Decl. Ex. 10-3, generally and at DEF-0011004–09 (focus group results showing that men and women ages 50–69 exhibit particular concerns regarding "lack of energy" and testing various marketing strategies' effectiveness targeting that concern); *id.* at DEF-0011023 (tested claim that "B-Vitamin Complex, including Vitamin B12, which supports physical energy" "resonates as scientifically impressive" and "registers as deeply meaningful" among men); *id.* at DEF-0011024 ("Mirroring men's responses, women respond warmly to the vision of a product that sustains their current good heart health"; same tested claim "creates an impactful overall impression of comprehensive heart health support" among men and women); King Decl. Ex. 10-5, at DEF-0007405 (listing "Communication Objective #1" for One A Day Men's as "One A Day Men's is a complete multi-vitamin with Vitamin D, which supports healthy blood pressure and overall heart health"); King Decl. Ex. 10-9, at DEF-0022079 ("Of the new VitaCraves ideas tested, IMMUNITY demonstrates a higher level of potential than the others.").

Gummies with Immunity Support and One A Day VitaCraves Gummies with Energy Support, further undermines their assertions that such claims are not material.  *See* King Decl. Ex. 10.

Defendants also present the expert testimony of Dr. Ran Kivetz, who conducted two materiality surveys of 823 multivitamin consumers.  *See* Kivetz Decl., at ¶¶ 12, 21–22 [Dkt. No. 135-3].  Dr. Kivetz' surveys showed half of the participants actual One A Day packaging, and the other half a control package, which were identical except that the three challenged claims (regarding heart health, immunity, and physical energy) were removed.  *Id.* at ¶¶ 29–31.  He found "*no* statistical difference in the likelihood of purchasing the disputed Bayer product between the test group respondents and the control group respondents.  That is, in each of the two surveys, modifying the One A Day product package by removing the allegedly deceptive heart health, immune health, and physical energy claims had *no* material effect on respondents' purchase decisions."  *Id.* at ¶ 23.  Dr. Kivetz's surveys, conducted for purposes of this litigation, are somewhat undermined by defendants' own materials already discussed.  Plaintiffs also point to several flaws in his surveys, including that he failed to test any form of marketing other than a single product's box, did not consider other types of advertisements, and only tested women.  Pls.' Opp. to MSJ at 18–19.  In light of defendants' documents on marketing strategies, Dr. Kivetz's surveys are inconclusive as to the question of materiality of the disputed claims, and cannot overcome plaintiffs' showing as a matter of law.

Plaintiffs have presented volumes of support for their allegation that defendants' disputed health claims were indeed material to the reasonable consumer, and that defendants knew as much. This is sufficient to establish materiality at this stage of the proceedings.

### c.  Uniform Classwide Interpretation of Claims

Defendants' final argument that plaintiffs cannot show predominance challenges whether plaintiffs can show that there is a common, classwide interpretation of each disputed claim, such that individualized inquiries into how each consumer interpreted the claims are not necessary. This inquiry is intertwined with the question of materiality.  *See In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 576–77 (C.D. Cal. 2014) ("[I]f a misrepresentation is not material as to all class members, the issue of reliance 'var[ies] from consumer to consumer,' and no classwide inference

arises."); *Bradach v. Pharmavite LLC*, No. CV 14-3218-GHK, 2016 WL 7647661, at *5 (C.D. Cal. July 6, 2016); *Thurston v. Bear Naked, Inc.*, No. 3:11-CV-02890-H, 2013 WL 5664985, at *8 (S.D. Cal. July 30, 2013).

While defendants argue that plaintiffs have failed to present expert testimony or survey evidence showing uniform interpretation of each claim, plaintiffs have already established the materiality of defendants claims and in doing so, have offered evidence that their claims were targeted to consumers based on their researched effectiveness across various focus groups including men and women of all ages.  Because plaintiffs have already established materiality of the claims as to all class members, this is sufficient to show that the issue of reliance does not vary from consumer to consumer.  *See ConAgra Foods*, 302 F.R.D. at 576–77; *see also Ehret v. Uber Techs., Inc.*, 148 F. Supp. 3d 884, 902 (N.D. Cal. 2015) ("Reliance can be established on a class-wide basis by materiality.  In short, if the trial court finds that material misrepresentations have been made to the entire class, an inference of reliance arises as to the class.") (internal quotation marks omitted).  For these reasons, I agree with plaintiffs that common questions of fact and law predominate over individualized inquiries, and will thus evaluate whether class litigation is a superior method to adjudicate this controversy.

### d.  Identification of Class Members

Defendants claim that a class action is not a superior method of adjudicating this controversy because there is no manageable way to identify class members.  *See* Fed. R. Civ. P. 23(b)(3) ("The matters pertinent to these findings include . . . the likely difficulties in managing a class action.").  Their argument essentially goes to whether the proposed class is ascertainable.

While ascertainability may factor into evaluation of a proposed definition of a class, the Ninth Circuit has never adopted an ascertainability requirement.  *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 n.4 (9th Cir. 2017).  Nonetheless, district courts evaluate this factor, testing whether "[a] class is ascertainable if it identifies a group of unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify himself or herself as having a right to recover based on the description." *Larson v. Trans Union LLC*, 2015 WL 3945052, at *14 (N.D. Cal. June 26, 2015).  But the Ninth Circuit has specifically

United States District Court
Northern District of California

1  held that "Rule 23 does not impose a freestanding administrative feasibility prerequisite to class

2  certification." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1126 (9th Cir. 2017).

3       Here, plaintiffs' class definitions provide objective criteria that allow class members to

4  determine whether they are included in the proposed class. *See In re Lidoderm Antitriust Litig.*,

5  No. 14-md-02521-WHO, 2017 WL 679367, at *25 (N.D. Cal. Feb. 21, 2017); *Philips v. Ford

6  Motor Co.*, No. 14-CV-02989-LHK, 2016 WL 7428810, at *12 (N.D. Cal. Dec. 22, 2016).  For

7  each proposed class, class members need only evaluate whether they (1) purchased Bayer One A

8  Day Supplements (2) that contained one or more Claims (3) during the Class Period.  *See* Mot. at

9  7–8.  Defendants instead characterize the relevant class as consumers who (1) purchased OAD

10 products (2) containing one of the challenged claims (3) for a challenged purpose, (4) who relied

11 on an advertisement or label that made one of the challenged claims, and (5) who were not vitamin

12 deficient.  In *Chavez v. Blue Sky Natural Beverage Co.*, the defendants made a similar argument

13 that class "membership "[wa]s contingent on the prospective member's state of mind."  268

14 F.R.D. 265, 376 (N.D. Cal. 2010).  As is the case, here, however, plaintiffs' CLRA and UCL

15 claims "d[id] not require individualized showing of reliance." *Id.*  There is thus no need to engage

16 in the fact-intensive inquiry that defendants suggest given that plaintiffs have presented sufficient

17 evidence of materiality. *See* Opp. at 19–20.

18       Defendants' arguments regarding the difficulty of obtaining retail receipts to verify

19 customers are also unconvincing and have been repeatedly rejected in this district. *See, e.g.*, *In re

20 Korean Ramen Antitrust Litig.*, No. 13-cv-04115-WHO, 2017 WL 235052, at *21 (N.D. Cal. Jan.

21 19, 2017); *Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411-YGR, 2016 WL 3844334, at *6–7

22 (N.D. Cal. July 15, 2016); *Zeisel v. Diamond Foods, Inc.*, No. 10-01192 JSW, 2011 WL 2221113,

23 at *6 (N.D. Cal. June 7, 2011).  "Though it is unlikely that this class of consumers will be able to

24 produce evidence of purchase such as receipts . . . , there is no impediment to offering evidence of

25 purchase by affidavit on a claim form." *Kumar*, 2016 WL 3844334, at *7.  While the court in

26 *Xavier v. Philip Morris USA Inc.* rejected the submission of affidavits from consumers, it did so

27 because class members were required to have specifically smoked 146,000 Marlboro cigarettes, a

28 "categorically different" task than swearing to something like "I was within ten miles of the toxic

1    explosion on the day it happened," or, in this case, that a consumer purchased the Products at issue

2    here.  787 F. Supp. 3d 1075, 1090 (N.D. Cal. 2011).

3         Finally, defendants argue that class members must not be vitamin deficient.  I agree with

4    plaintiffs that they have presented sufficient evidence to support their claim that the majority of

5    Americans are not deficient, and thus receive no benefits from defendants' Products.  *See* Blonz

6    Decl., at 8–11.  For these reasons, I disagree with defendants that identification of the proposed

7    class is unmanageable.

8              **e.  Congress and the FDA's Determination that Multivitamins Should**

9                   **Be Sold in the United States**

10        Defendants' last argument in opposition to class certification is that both Congress and the

11   FDA have determined that multivitamins are not worthless.  It is unclear what bearing this

12   assertion has with respect to any of Rule 23(b)(3)'s four factor analysis and the question of

13   superiority.  Defendants cherry pick from an unpublished opinion from the federal district court in

14   the District of Minnesota in support of their contention that "[w]hen Congress has charged an

15   administrative agency with oversight, 'Plaintiffs must climb a steep hill to prove that a class action

16   is superior to another method of adjudication.'"  *See* Defs.' Opp. to Pls.' Mot. for Class Cert. at 20

17   (citing *Gardner v. First am. Title Ins. Co.*, No. Civ. 00-2176, 2003 WL 221844, at *8 (D. Minn.

18   Jan. 27, 2003)).  This citation is a disingenuous misrepresentation of what the opinion actually

19   states, which is that "[w]here Congress has charged an administrative agency with global oversight

20   *and provided attorneys' fees for individual enforcement*, Plaintiffs must climb a steep hill to prove

21   that a class action is superior to another method of adjudication."  *Gardner*, 2003 WL 221844, at

22   *8 (emphasis added).  Indeed, as the full sentence clearly shows, that case dealt with whether the

23   class action is superior to individual enforcement where Congress has specifically spoken and

24   "guaranteed legal representation" under a statute for such individual enforcement.  *Id.*

25        Nor does *Imber-Fluck v. Google Inc.*, No. 5:14-cv-0107-RMW, 2015 WL 1522076 (N.D.

26   Cal. Apr. 3, 2015) help defendants.  In that case, the FTC had already conducted an investigation

27   into the challenged conduct and reached a settlement, "which provide[d] significant relief in the

28   form of a complete refund and an injunction."  *Id.* at *3.  "Because the FTC settlement provide[d]

United States District Court
Northern District of California

1    nearly all, if not all, of the possible relief sought in the [complaint]," maintenance of a class action

2    was not superior to other available methods of adjudication.  *Id.*

3           Defendants' argument is irrelevant to superiority in this case.  Congress has not passed any

4    statute indicating the superiority of individual enforcement of plaintiffs' claims, nor has any

5    agency reached a settlement with defendants providing relief to plaintiffs.  Plaintiffs have shown

6    that each of Rule 23(b)(3)'s factors weigh in favor of certifying the proposed class for damages.

7                      **C.  Plaintiffs' Proposed Nationwide Class**

8           Defendants separately challenge the certification of a nationwide class only on

9    predominance grounds, arguing that the laws of all 50 states would apply.  Plaintiffs disagree, and

10   instead assert that California law should apply to their nationwide claims.  Neither party, however,

11   gives this important question much attention in their briefing.

12          Under *Mazza v. American Honda Motor Co., Inc.*, 666 F.3d 581, 289 (9th Cir. 2012), "[a]

13   federal court sitting in diversity must look to the forum state's choice of law rules to determine the

14   controlling substantive law.  Under California's choice of law rules, it is plaintiffs who "bear[] the

15   initial burden to show that California has 'significant contact or significant aggregation of

16   contacts' to the claims of each class member."  *Id.*  The burden then shifts to defendants "to

17   demonstrate 'that foreign law, rather than California law, should apply to class claims."  *Id.* at 590.

18          California law may only apply to nationwide class claims where "the interests of other

19   states are not found to outweigh California's interest in having its law applied."  *Id.*  This

20   determination entails a three-step governmental interest test:  first, I must determine "whether the

21   relevant law of each of the potentially affected jurisdictions with regard to the particular issue in

22   question is the same or different"; second, if there is a difference, I must "examine[] each

23   jurisdiction's interest in the application of its own law under the circumstances of the particular

24   case to determine whether a true conflict exists"; and third, if there is a true conflict, I must

25   "carefully evaluate[] and compare[] the nature and strength of the interest of each jurisdiction in

26   the application of its own law to determine which state's interest would be more impaired if its

27   policy were subordinated to the policy of the other state, and then ultimately appl[y] the law of the

28   state whose interest would be more impaired if its law were not applied."  *Id.*

United States District Court
Northern District of California

United States District Court
Northern District of California

1    In support of their claim that California has significant contacts to the claims of each class

2  member, plaintiffs state, without evidence, that "Bayer has places of business here and much of

3  the misconduct occurs in California."  Pls.' Rep. in Support of Class Cert. at 15.  Even if these

4  unsupported allegations are true, plaintiffs have not established that they fulfill the "significant

5  contacts" necessary to satisfy the demands of due process.  In *Mazza*, for example, both the

6  defendant's corporate headquarters and the advertising agency that produced the allegedly

7  fraudulent misrepresentations were located in California, and one fifth of the propose class

8  members were located in California.  666 F.3d at 590; *see also Opperman v. Path, Inc.*, 87 F.

9  Supp. 3d 1018, 1041 (N.D. Cal. 2014) (finding sufficient contacts where defendant was

10  headquartered in California and defendant's misconduct, alleged false advertising, occurred in

11  California).  Plaintiffs do not contend that defendants are headquartered in California or

12  incorporated under California's laws, nor do they quantify how much of the alleged misconduct

13  occurs in California sufficient for me to evaluate whether class members' claims have the

14  necessary "significant contacts" to California.

15    Plaintiffs fail to meet this burden, and as such I cannot certify their nationwide class.

16  Because the issue may be raised again, however, I also note that defendants too fail to meet their

17  burden to show that foreign law, rather than California law, should apply to class members'

18  claims.  *Mazza* places the burden on defendants to fulfill the three-step governmental interest test,

19  which defendants in *Mazza* did by "exhaustively detail[ing] the ways in which California law

20  differs from the laws of the [] other jurisdictions in which class members reside."  666 F.3d at 591.

21  Defendants instead rely on *Mazza* to argue only that "[t]hese state consumer protection laws

22  diverge on key questions including scienter and reliance."  Defs.' Opp. to Pls.' Mot. for Class

23  Cert. at 24.  While this may or may not suffice to establish that the relevant laws differ, defendants

24  fail all together to address the next two steps of the inquiry.  Should plaintiffs be able to show

25  significant contacts so as to satisfy due process in the future, defendants should be prepared to

26  more thoroughly explain why foreign law should apply to class members' claims.

27    **D.  Conclusion**

28    Plaintiffs have successfully shown that they fulfill the requirements of Rules 23(a),

23(b)(2), and 23(b)(3) in order to seek both injunctive relief and damages on behalf of the proposed California, New York, and Florida classes.  Accordingly, I GRANT plaintiffs' motion for class certification with respect to all proposed statewide classes.  I DENY plaintiffs' motion for certification of the nationwide class.

## II.    Motion for Summary Judgment

Defendants move for summary judgment on all of plaintiffs' claims on four grounds:  first, plaintiffs lack Article III standing because they have not suffered an injury-in-fact; second, plaintiffs provide no evidence that defendants' claims are actually false or misleading; third, the challenged claims are not material; and fourth, plaintiffs' have no evidence of proper restitution. Defendants' third and fourth arguments duplicate those addressed above concerning plaintiffs' motion for class certification and I will not address them again here.[6]

### A.  Plaintiffs' Injury-in-Fact

In order to show constitutional standing under Article III, plaintiffs must show that they suffered an injury-in-fact fairly traceable to defendants' challenged conduct and likely redressable by the court.  *City of Oakland v. Lynch*, 798 F.3d 1159, 1163 (9th Cir. 2015) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).  Defendants contend that plaintiffs are unable to demonstrate injury-in-fact only.  Defs.' MSJ at 11 [Dkt. No. 136].

In cases involving deceptive claims, plaintiffs can satisfy the injury-in-fact requirement by showing that they paid more for a product than they otherwise would have paid (e.g., a price premium), or that they would not have purchased a product at all absent the deceptive claims.  *See Mazza*, 666 F.3d at 595.  Defendants argue that plaintiffs make no attempt to show that they paid a price premium.  Defs.' MSJ at 12.  This is unsurprising, given that plaintiffs' claims do not rest upon a price premium theory, but instead are premised on the theory that they would not have purchased defendants' One A Day Products absent the allegedly deceptive claims.  *See, e.g.*, Pls.' Rep. in Support of Mot. for Class Cert. at 8–10.

Defendants also contend, however, that plaintiffs fail to show that defendants' Products are

---

[6] Defendants also challenge plaintiffs' standing to pursue injunctive relief.  Because I have already resolved this issue in plaintiffs' motion for class certification, I will not address it here either.

United States District Court
Northern District of California

worthless.  This is not, however, what injury-in-fact requires.  Plaintiffs need only show that they would not have purchased defendants' Products absent the deceptive claims, which they have done through both deposition testimony and declarations.  *See, e.g.*, King Decl. Ex. 7, at 325:9–13, 326:2–21  [Dkt. No. 141-8] (testimony from Ms. Cosgrove that the claims on her bottle of multivitamins possibly made an impact on her purchasing decision and that she was looking specifically for a multivitamin to help with immunity, heart health, and bone strength); King Decl. Ex. 5, at 59:6–60:20, 63:18–64:9 (testimony from Ms. Lopez that she made her purchase due to claims relating to heart health, immune system, skin, eyes, and memory); King Decl. Ex. 6, at 69:6–70:13 (testimony from Ms. Farar that she chose One A Day because she believed it was "reputable" based on commercials with claims regarding "energy level," not getting sick, and "the heart healthy issue"); Lopez Decl. at ¶¶ 10, 13–14; Cosgrove Decl. at ¶¶ 10, 12–13; Farar Decl. at ¶¶ 10, 12.  While defendants offer different interpretations of plaintiffs' testimony, they are overzealous in the inferences they draw; plaintiffs are entitled to all reasonable inferences in their favor on summary judgment.  The evidence they have provided is sufficient to establish injury-in-fact for purposes of standing with respect to the heart health, immunity, and physical energy claims.[7]

## B.  Plaintiffs' Evidence That Defendants' Claims Are False or Misleading

Defendants also move for summary judgment on the grounds that plaintiffs cannot show that defendants' claims are false or misleading.  Defs.' MSJ at 14.  Their argument focuses on the expert testimony of Dr. Blonz.  According to defendants, Dr. Blonz and other scientific authorities confirm that One A Day multivitamins do provide benefits to heart health, immunity, and physical energy, Dr. Blonz's opinion regarding consumers' concerns about disease risks impermissibly attempts to challenge defendants' claims as disease claims rather than structure/function claims,

---

[7] Plaintiffs also make reference to and take issue with defendants' claim that "[u]p to 90% of Americans fall short in obtaining key nutrients from food alone."  This claim is not challenged in the operative complaint.  *See* SACAC.  Moreover, defendants contention that it did not begin appearing in defendants' marketing materials until January 2015, after plaintiffs purchased relevant Products, is well taken.  *See* Rep. at 2; Capello Decl. at ¶ 12 [Dkt. No. 135-1].  I agree that plaintiffs do not have standing to challenge that claim, as none could have possibly relied on that alleged misrepresentation in purchasing defendants' Products if they had not seen it.

United States District Court
Northern District of California

1    and Dr. Blonz's opinion does not prove that the challenged claims are false or misleading, but

2    only lacking in substantiation.  Plaintiffs contend that the evidence shows that vitamin

3    supplementation for most Americans provides no health benefit, and that it contravenes

4    defendants' claims regarding heart health, immunity, and physical energy.

5           While defendants selectively quote from Dr. Blonz's deposition testimony in claiming that

6    he does not dispute that One A Day multivitamins provide the challenged benefits, *see* Defs.' MSJ

7    at 15, a fair reading of his deposition testimony establishes its consistency with his expert report

8    and supports plaintiffs' assertion that defendants' Products provide no measurable benefit to the

9    average American who is not biochemically deficient.  *See* Blonz Decl., at 10–12; Pls.' Opp. to

10   MSJ at 10–11.  Defendants offer the expert report of Dr. Jeffrey R. Blumberg to support their

11   claim that One A Day multivitamins do support heart health, immunity, and physical energy, but

12   his report does not address Dr. Blonz's argument that the average American is not biochemically

13   deficient, and therefore derives no measureable benefit from the multivitamins.  *See* Blumberg

14   Decl.  Even if he did, however, such conflicting evidence would merely create a genuine issue of

15   material fact inappropriate for summary adjudication.[8]

16          Defendants next argue that Dr. Blonz attempts to challenge defendants' claim as disease

17   claims, rather than structure/function claims, pointing to one line in his deposition in which he

18   testifies, "Correct," when asked, "So your entire report is premised on your position that Bayer is

19   making claims to try to assuage consumers' concerns about disease risks; correct?"  Cohn Decl.

20   Ex. 1, at 308:9–13.  That Dr. Blonz believes defendants' marketing strategy focuses on

21   consumers' concerns about disease risks, however, does not establish that plaintiffs attempt to

22   treat defendants' claims as disease claims rather than structure/function claims.  Disease claims

23   aside, Dr. Blonz opines that defendants' claims are misleading because they do not qualify their

24   claims that their Products support certain health functions with the word "normal."  *Id.* at 277:24–

25   279:16.  This is consistent with my previous order, in which I stated that the FDA does not

26

27   ───────────────────

28   [8] Plaintiffs also argue that defendants' representation that its Products are "complete" are
     misleading.  Pls.' Opp. to MSJ at 12.  Defendants are correct, however, that this claim is not at
     issue in this case as it has not been raised in the operative complaint.  *See* SACAC.

United States District Court
Northern District of California

1    preempt a claim that "supports heart health," as a structure/function claim, is a false and

2    misleading statement contrary to scientific statements.  *See* Order Granting in Part and Denying in

3    Part Motion to Dismiss at 10 [Dkt. No. 54].

4         Defendants' last argument characterizes Dr. Blonz's opinion as only showing lack of

5    substantiation, rather than showing that the claims are false or misleading.  Defendants claim that

6    "[h]is entire opinion is that '[t]here is *no competent and reliable evidence*' for what he interprets

7    as Bayer's disease claims."  Defs.' MSJ at 18 (citing Blonz Decl. at 10).  Plaintiffs explain that

8    "Dr. Blonz uses language common to scientific conclusions when confirming that Bayer's Claims

9    are false and misleading."  Pls.' Opp. to MSJ at 14.  While the choice of language does cloud the

10   issue somewhat, review of Dr. Blonz's report shows that he does not merely rely on a lack of

11   substantiation argument, but instead presents competent evidence that the typical American does

12   not suffer from biochemical deficiency, and that defendants' Products provide no benefit to the

13   typical American.  *See* Blonz Decl. at 8–11.  Dr. Blonz's evidence that the typical American

14   derives *no* benefit from defendants' Products is sufficient to show that, or at minimum to establish

15   a genuine issue of material fact regarding whether, defendants' challenged claims are false or

16   misleading.

17        Because defendants have failed to show that there is no genuine issue of material fact as to

18   whether their claims are false or misleading, I DENY their motion for summary judgment.

19                                    **CONCLUSION**

20        For the foregoing reasons, I GRANT IN PART and DENY IN PART plaintiffs' motion for

21   class certification.  I DENY defendants' motion for summary judgment.  A further Case

22   Management Conference to set the trial and remainder of the case schedule is set for December

23   19, 2017 at 2:00 p.m.  The Joint Case Management Statement is due on December 12, 2017.

24        **IT IS SO ORDERED.**

25   Dated: November 15, 2017

26

27

28                                    William H. Orrick
                                       United States District Judge

United States District Court
Northern District of California

30