| | |
|---|---|
| **KAPLAN FOX & KILSHEIMER LLP**<br>Laurence D. King (SBN 206423)<br>*lking@kaplanfox.com*<br>Linda M. Fong (SBN 124232)<br>*lfong@kaplanfox.com*<br>Mario M. Choi (SBN 243409)<br>*mchoi@kaplanfox.com*<br>350 Sansome Street, Suite 400<br>San Francisco, CA  94104<br>Telephone: (415) 772-4700<br>Facsimile:  (415) 772-4707<br><br>**STANLEY LAW GROUP**<br>Matthew Joseph Zevin (SBN 170736)<br>*mzevin@aol.com*<br>10021 Willow Creek Road, Suite 200<br>San Diego, CA 92131<br>Telephone: (619) 235-5306<br>Facsimile: (815) 377-8419<br><br>*Counsel for Plaintiffs*<br><br>[*Additional Counsel Appear on Signature Page*] | **SIDLEY AUSTIN LLP**<br>Jonathan F. Cohn (admitted *pro hac vice*)<br>*jcohn@sidley.com*<br>Benjamin M. Mundel (admitted *pro hac vice*)<br>*jmundel@sidley.com*<br>1501 K Street, N.W.<br>Washington, D.C. 20005<br>Telephone: (202) 736.8000<br>Facsimile: (202) 736.8711<br><br>**SIDLEY AUSTIN LLP**<br>Ryan Sandrock (CA Bar 251781)<br>*rsandrock@sidley.com*<br>555 California Street, Suite 2000<br>San Francisco, CA 94104<br>Telephone: (415) 772.1200<br>Facsimile: (415) 772.7400<br><br>*Counsel for Defendants* |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLLEEN GALLAGHER, ILANA FARAR, ANDREA LOPEZ, JOANN CORDARO, and ROSANNE COSGROVE, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>  v.<br><br>BAYER AG, BAYER CORPORATION, and BAYER HEALTHCARE LLC,<br><br>      Defendants. | CASE NO.  3:14-cv-04601-WHO<br><br><u>CLASS ACTION</u><br><br>**SUBSEQUENT JOINT CASE MANAGEMENT STATEMENT**<br><br>Judge: Hon. William H. Orrick<br>Ctrm: 2, 17th Floor<br>Date: April 17, 2018<br>Time: 2:00 p.m. |

The parties to the above-entitled action jointly submit this JOINT CASE MANAGEMENT STATEMENT pursuant to the Standing Order for All Judges of the Northern District of California dated July 1, 2011 and Civil Local Rule 16-10(d).

**1.     JURISDICTION AND SERVICE**

   **A.     Plaintiffs**

This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332(a) and (d), as amended by the Class Action Fairness Act of 2005, because the aggregate claims of the Class exceed $5,000,000, exclusive of interest and costs, and there is diversity of citizenship between proposed class members and Bayer. See 28 U.S.C. §1332(d)(2)(A). This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

No issues exist regarding personal jurisdiction or venue. No parties remain to be served at this time.

   **B.     Defendants**

This Court lacks subject matter jurisdiction over most of this action, because Plaintiffs lack standing to pursue most of their claims.

**2.     FACTS**

   **A.     Plaintiffs**

Defendants market more than twenty different multivitamins under their brand name, One A Day ("One A Day," "One A Day Products," or "Products"). *See* Second Amended Class Action Complaint ("SACAC") ¶ 1 n.2 [Dkt. 58]. Defendants' Products make various claims relating to health on their product packaging and in other marketing materials.

Three claims specifically relate to heart health, immunity, and physical energy. On the front of the product packaging for the Women's One A Day Formula, for example, it states: "Formulated to Support" "Hearth Health," as well as "Immunity" and "Physical Energy." *Id.* ¶ 35. Several of Defendants' One A Day Products include the claim that they "support heart health." *Id.* ¶ 34. In a television advertisement for One A Day Men's 50+, a man swims across a pool with the words "Supports heart and eye health" prominently displayed over the footage, while a voice-over states that the product is "designed for men's health concerns as we age." *Id.*

¶ 36. With respect to immunity support, Defendants market the One A Day VitaCraves plus Immunity Support product in a magazine advertisement that states, "Immunity support in a gummy? Sweet." *Id.* ¶ 53. And similarly, with respect to physical energy, a television advertisement for One A Day VitaCraves with Energy Support shows a man performing gymnastics on a tight rope while a voice-over states, "[f]or those who want to enjoy their days, not just get through them: new One A Day VitaCraves with Energy Support. The only complete gummy multivitamin that supports energy and mental alertness." *Id.* ¶ 72.

Plaintiffs purchased Defendants' Products, having read the above-mentioned health claims on the Product's label, seeing Defendants' marketing materials online, in print, or on television, and relied on those claims in purchasing the Product. *Id.* ¶¶ 19-21; Farar Decl. in Support of Pls.' Mot. for Class Cert. ¶¶ 7-8 [Dkt. 129-12]; Lopez Decl. in Support of Pls.' Mot. for Class Cert. ¶¶ 7-8 [Dkt. 129-13]; Cosgrove Decl. in Support of Pls.' Mot. for Class Cert. ¶¶ 7-8 [Dkt. 129-14]. Plaintiffs challenge each of these claims because the Products do not affect or benefit the heart health, immunity, or physical energy levels of the average American (and the majority of consumers to whom Bayer markets its Products). *See* SACAC ¶¶ 8-10. Instead, while some Americans may not meet the daily Recommended Dietary Allowance ("RDA") for each vitamin or mineral through diet alone, most Americans do not suffer from any biochemical deficiency, and multivitamin supplementation in the absence of such a deficiency has no health benefit or effect. *See* Pls.' Opp. to MSJ at 10 [Dkt. 141]; Decl. of Dr. Edward R. Blonz [Dkt. 129-38]. Because studies support that multivitamin supplementation does not have any benefit to heart health, immunity, or physical energy, Defendants' three health claims are "false, misleading, and deceptive." *See* SACAC ¶ 31.

**B.     Defendants**

Plaintiffs challenge over twenty Bayer One A Day ("OAD") multivitamins, Dkt. 58, which are formulated with 100% of the Recommended Daily Allowance ("RDA") of a number of essential vitamins and minerals. Dkt. 135 (11:17-18). RDAs are reference values developed by the Institute of Medicine of the National Academy of Sciences. *Id.* (3:2-12). They are defined as the average daily nutrient intake level sufficient to meet the requirements of nearly all (97% to

98%) healthy individuals in a particular age range or life stage or sex group. *Id*. RDAs are used by health professionals throughout the country, as well as the Department of Health and Human Services and the Department of Agriculture, as the proper standard of vitamin intake. *Id*. (3:13-18). As Plaintiffs' expert testified, RDAs are the "goals" that Americans should strive to meet in their vitamin consumption. *Id*. (3:11-12).

Unfortunately, most Americans do not eat a healthy diet and therefore do not obtain the recommended amounts of these nutrients from food alone. Dkt 136-7 (153:18-21). Taking a multivitamin like OAD helps consumers reach their RDAs even if they do not consume enough vitamins in the food they eat. *Id*. (4:9-21). As a result, there is a "benefit in taking a supplement" for the "large percentage of Americans," who are "getting inadequate amount of various vitamins" through their diet even if they are not biochemically deficient. Dkt. 152 (1:8-12); *id*. (6:24-28). Plaintiffs' expert (Dr. Edward Blonz) agrees with the U.S. Government that Americans' consumption of some vitamins is so inadequate that it is a "public health concern." Dkt. 135 (4:3-4). Accordingly, he has been recommending and taking multivitamins for decades. *Id*. (1:9-11). As he explains, while it is better to get vitamins from food, "it's better to get the nutrients from a supplement than not at all." Dkt. 135-6 (123:17-25).

Dr. Blonz also testified that a "clear majority of people fail to get the [government] recommended amounts of the essential nutrients" from food. Dkt. 135-6. (148:1-9). "[W]hen it comes to vitamins D and E … *90-plus [percent] of Americans … fall short of the RDAs ...*" Dkt. 152-2 (338:3-9) (emphasis added); *id*. (230:15-21); "40 percent of Americans are not getting enough calcium from food alone ..." *Id*. (231:8-16); "43 percent" are not getting enough "Vitamin A." *Id*. (231:17-21); "38.9 percent ... are not getting enough [Vitamin C] to meet the EAR ..." *Id*. (232:10-13); and that consumption of fiber, vitamin D, calcium, and potassium is so woefully inadequate that it is a "public health concern." *Id*. (246:18-247:14).

This shortfall in vitamin intake has a negative impact on public health. Plaintiffs' expert agrees that the vitamins in OAD are essential for normal health including heart health, immune health, and energy, *id*. (75:1-9, 86:3-15, 90:9-91:16, 92:4-94:6 & 22-24), and that OAD provides "benefits with respect to supporting normal heart health," "normal immune health," and "normal

98%) healthy individuals in a particular age range or life stage or sex group. *Id*. RDAs are used by health professionals throughout the country, as well as the Department of Health and Human Services and the Department of Agriculture, as the proper standard of vitamin intake. *Id*. (3:13-18). As Plaintiffs' expert testified, RDAs are the "goals" that Americans should strive to meet in their vitamin consumption. *Id*. (3:11-12).

Unfortunately, most Americans do not eat a healthy diet and therefore do not obtain the recommended amounts of these nutrients from food alone. Dkt 136-7 (153:18-21). Taking a multivitamin like OAD helps consumers reach their RDAs even if they do not consume enough vitamins in the food they eat. *Id*. (4:9-21). As a result, there is a "benefit in taking a supplement" for the "large percentage of Americans," who are "getting inadequate amount of various vitamins" through their diet even if they are not biochemically deficient. Dkt. 152 (1:8-12); *id*. (6:24-28). Plaintiffs' expert (Dr. Edward Blonz) agrees with the U.S. Government that Americans' consumption of some vitamins is so inadequate that it is a "public health concern." Dkt. 135 (4:3-4). Accordingly, he has been recommending and taking multivitamins for decades. *Id*. (1:9-11). As he explains, while it is better to get vitamins from food, "it's better to get the nutrients from a supplement than not at all." Dkt. 135-6 (123:17-25).

Dr. Blonz also testified that a "clear majority of people fail to get the [government] recommended amounts of the essential nutrients" from food. Dkt. 135-6. (148:1-9). "[W]hen it comes to vitamins D and E … *90-plus [percent] of Americans … fall short of the RDAs ...*" Dkt. 152-2 (338:3-9) (emphasis added); *id*. (230:15-21); "40 percent of Americans are not getting enough calcium from food alone ..." *Id*. (231:8-16); "43 percent" are not getting enough "Vitamin A." *Id*. (231:17-21); "38.9 percent ... are not getting enough [Vitamin C] to meet the EAR ..." *Id*. (232:10-13); and that consumption of fiber, vitamin D, calcium, and potassium is so woefully inadequate that it is a "public health concern." *Id*. (246:18-247:14).

This shortfall in vitamin intake has a negative impact on public health. Plaintiffs' expert agrees that the vitamins in OAD are essential for normal health including heart health, immune health, and energy, *id*. (75:1-9, 86:3-15, 90:9-91:16, 92:4-94:6 & 22-24), and that OAD provides "benefits with respect to supporting normal heart health," "normal immune health," and "normal

energy health," *id.* (215:3-20). Indeed, Plaintiffs' expert testified that Bayer's claims would be "proper"—and even "ideal"—if Bayer had only inserted the word "normal" between "supports" and "heart health," "immune health," and "energy," Dkt. 135-6 (164:14-166:1, 279:1-280:4), underscoring the benefits of OAD.

Finally, Plaintiffs' physicians agree with Plaintiffs' expert that multivitamins are valuable. All three Plaintiffs were advised by their physicians to take vitamin supplements. One Plaintiff has been diagnosed with a vitamin deficiency. Dkt. 135 (13:1-5). The second still takes multivitamins for their health benefits. Dkt. 135-13 (55:4-12). The third gives multivitamins to her kids on the recommendation of their pediatrician "[s]o that they could get nutrients and vitamins that they need that they are potentially not getting any of or enough of in their regular daily diet." Dkt. 135 (6:1-3; 23:27-28).

Nonetheless, Plaintiffs claim in this litigation that multivitamins are worthless.

3. **LEGAL ISSUES**

   A. **Plaintiffs**

   Legal issues to be determined by the triers of fact include:[1]

   (1) Whether Defendants marketed, advertised, labeled and sold One A Day Products using false, misleading or deceptive representations?

   (2) Whether Defendants omitted or misrepresented material facts in connection with the marketing, advertising, labeling and sale of One A Day Products?

   (3) Whether Defendants' marketing, advertising, labeling and sale of One A Day Products constitutes an unfair, unlawful or fraudulent business practice?

   (4) Whether Defendants' marketing, advertising, labeling and selling of One A Day Products constitutes a deceptive business practice?

   (5) Whether Defendants' marketing, advertising and labeling of One A Day Products constitutes false advertising?

   (6) Whether Defendants must cease their misleading conduct?

   (7) Whether Class members are entitled to a full refund as restitution?

---

[1] Some of the claims at issue, such as California Business & Professions Code Sections 17200 and 17500, require a bench trial, while others, such as the California Consumer Legal Remedies Act Claim, California Civil Code sections 1750, *et seq.*, require a jury trial.

(8)     Whether Class members are entitled to other damages, including compensatory and punitive, as well as attorneys' fees and costs?

**B.     Defendants**

1.     Are Defendants' three structure function claims—which are standard across the multivitamin industry—actually false or misleading, even though they are supported by volumes of science and Plaintiffs' own science expert?

2.     Can Plaintiffs prevail on a theory that multivitamin claims are false or misleading when there is a reasonable disagreement among scientists?

3      Do reasonable scientists disagree about the truth of Defendants' three structure function claims or the value of multivitamins?

4.     Are all multivitamins in the United States including One A Day worthless, even though the benefits of multivitamins are supported by volumes of science and Plaintiffs own science expert and physicians?

5.     Are any of the named Plaintiffs among the Americans who could benefit by taking a multivitamin?

6.     Are the three challenged structure function claims, which are made on some but not all of the challenged products, material?

7.     Can a damages class seeking a full refund be tried based upon a purported loss to the "average" class member or a "majority" of class members?

8.     Are there too many difference among the class members for the class action to be maintained through trial?

9.     Can uninjured class members recover damages or even be included in the class?

10.    Can the named Plaintiffs obtain injunctive relief considering that they view the products as worthless and would never buy the product again?

11.    Are the Plaintiffs entitled to equitable restitution?

**4.     MOTIONS**

The Parties do not have any motions currently pending before the Court.

The Parties have filed their respective trials plans for discussion with and guidance from the Court [Dkt. 186, 191, 192]. The Parties have also filed a Joint Stipulation and [Proposed]

Order re Class Notice Plan [Dkt. 190], for review by the Court. The Parties hope to take up these issues with the Court at the case management conference.

In addition, the Parties anticipate filing Motions in Limine and *Daubert* motions in advance of trial. Finally, if the Parties cannot reach an agreement regarding any remaining discovery items, they anticipate seeking the Court's guidance on these issues.

**5.   AMENDMENT OF PLEADINGS**

The Parties do not anticipate further amending the pleadings to add or dismiss parties, claims, or defenses.

**6.   EVIDENCE PRESERVATION**

The parties have reviewed the Guidelines for the Discovery of Electronically Stored Information ("ESI Guidelines"), and have met and conferred about reasonable and proportionate steps to take regarding evidence preservation, and will continue to do so. The Parties have continued to meet their obligations under the ESI Guidelines.

**7.   DISCLOSURES**

The Parties fully and timely complied with their obligations to make initial disclosures pursuant to Rule 26. The Parties have agreed that they will continue to update their disclosures throughout the remainder of this case as new information becomes available.

**8.   DISCOVERY**

Fact discovery closed on November 9, 2016. Dkt. 125. The status of additional discovery is as follows:

*Interrogatories:* The Parties each propounded interrogatories. The Parties have agreed that they will update their interrogatory responses by June 1, 2018. In addition, after Defendants produce the damages information discussed below, each party will be permitted two additional interrogatories on damages, which will be propounded no later than August 1, 2018.

*Requests for Admission:* Plaintiffs have propounded twelve Requests for Admission (RFA) and Bayer has propounded none. The Parties have agreed to propound additional RFAs to streamline and narrow the issues for trial, which will be propounded no later than May 9, 2018.

*Document production:* On June 6, 2016, this Court deferred production of certain of

Plaintiffs' document requests relating to damages information until after a ruling on class certification. The Parties discussed the scope of Plaintiffs' request and Defendants produced responsive information.

*Expert discovery:* Both Parties may still disclose a damages expert. The Parties agree that if a party discloses a damages expert, the other party will have the opportunity to depose that expert. As discussed below, the Court has entered a schedule for expert discovery.

*Depositions:* The Parties have each taken several depositions. Neither Party has reached the 10-deposition limit. Both parties anticipate taking additional depositions in preparation for trial.

Plaintiffs have taken seven depositions:

- Amy Cappello in her individual capacity (2016.04.18)
- Debra DeMuth in her individual capacity (2016.11.04)
- Gian Zisa in his individual capacity (2016.04.20)
- Dara Siva in her individual capacity (2016.04.22)
- Dr. Ran Kivetz (2017.05.12)
- Dr. Jeffrey Blumberg (2017.04.14)
- Amy Cappello as a Rule 30(b)(6) corporate representative (2016.11.08);
- Debra DeMuth as a Rule 30(b)(6) corporate representative (2016.11.04)

Defendants have taken five depositions:

- Plaintiff Roseanne Cosgrove (2016.04.21)
- Plaintiff Ilana Farar (2016.04.25)
- Plaintiff Andrea Lopez (2016.04.09)
- Dr. Edward R. Blonz (2017.03.08)
- Dr. Jonathan D. Hibbard (2017.08.02)

The Parties have met and conferred regarding their positions on additional depositions. Both Parties reserve the right to depose any witness listed on a party's witness list for trial, provided that a witness that has already been deposed may not be deposed again without leave of Court for good cause shown.

      Plaintiffs have also indicated that, following Bayer's production of damages information, they may seek an additional Rule 30(b)(6) deposition limited to those documents. Bayer has made this production and Plaintiffs have not sought a Rule 30(b)(6) deposition or sought to clarify this information through questions. Plaintiffs reserve the right to seek a Rule 30(b)(6) deposition and further damages information.

      *Absent Class Member Discovery*: Defendants may seek discovery of absent class members, especially if the trial might affect the rights of such class members. This will depend upon the Court's order on the proposed trial plans. Plaintiffs do not believe discovery of absent class members is either necessary or warranted. Should Defendants propound such discovery, Plaintiffs reserve the right to oppose such discovery and seek a ruling from the Court pursuant to its procedures for the resolution of discovery disputes.

## 9. CLASS ACTIONS

      Plaintiffs filed a Motion to certify three state specific classes (California, New York and Florida) and a nationwide class on January 11, 2017. Dkt. 129. Defendants filed their Opposition to Plaintiffs' Motion for Class Certification on March, 24, 2017. Dkt. 135. Plaintiffs filed their Reply to Defendants' Opposition on July 17, 2017. Dkt. 143. This Court held a hearing on the Motion for Class Certification on October 18, 2017. On November 15, 2017, this Court granted Plaintiffs' Motion to certify the three state specific classes and denied Plaintiffs' Motion to certify the nationwide class without prejudice. Dkt. 164. On November 29, 2017, Defendants timely filed a Petition of Appeal pursuant to Fed. R. Civ. P. 23(f) and Fed. R. App. P. 5 in the Ninth Circuit. *Ilana Farar, et al v. Bayer AG, et al*, No. 17-80247, Dkt. 1-3 (9th Cir. Nov. 29, 2017). On December 14, 2017, Plaintiffs timely filed in the Ninth Circuit an Opposition to Defendants' Petition. On December 21, 2017, Defendants filed a Motion for leave to file a Reply in support of their Petition, and on December 22, 2017, Plaintiffs filed an opposition to Defendants' Motion for leave to file a Reply. On March 1, 2018, the Ninth Circuit denied the permission to appeal. *Farar v. Bayer*, No. 17-80247, Dkt. 11 (9th Cir. Mar. 1, 2018). On March 15, 2018, Defendants filed a Petition for Rehearing *En Banc*. At this time, Defendants' motion remains pending in the Ninth Circuit.

1   In light of the Court's order granting class certification, the Parties are required to provide
2   class notice pursuant to Rule 23(c)(2). The Parties have submitted a proposed Class Notice Plan
3   under which the Parties agree on the manner of notice but disagree on the form of proposed
4   notices. Dkt. 190.

5   **10.   RELATED CASES**
6   As far as the Parties are aware, there are no related cases or proceedings pending before
7   another judge of this Court, or before another court or administrative body.

8   **11.   RELIEF**
9   To streamline the issues for trial, the Parties have met and conferred regarding Plaintiffs'
10  proposed requested relief for both the Rule 23(b)(2) and Rule 23(b)(3) classes. Pursuant to
11  Defendants' request that Plaintiffs disclose the specific injunction that they are seeking, Plaintiffs
12  proposed injunctive-relief language on January 31, 2018, with the understanding that the Court is
13  empowered to fashion injunctive relief which it deems appropriate under the circumstances of the
14  case.
15  With regard to the Rule 23(b)(3) classes, the parties disagree on whether there needs to be
16  a procedure for identifying which class members were injured and entitled to receive damages.

17  **A.   Defendants**
18  Uninjured class members are not entitled to damages; indeed, they do not even have
19  Article III standing. *Brazil v. Dole Packaged Foods, LLC*, 660 Fed. Appx. 531, 35 (9th Cir.
20  2016); *Tyson Foods, Inc. v. Bouaphakeo,* 136 S. Ct. 1036, 1053 (2016) (Roberts, C. J. concurring
21  in full) ("Article III does not give federal courts the power to order relief to any uninjured
22  plaintiff, class action or not.  The Judiciary's role is limited 'to provid[ing] relief to claimants, in
23  individual or class actions, who have suffered, or will imminently suffer, actual harm.'" (quoting
24  *Lewis v. Casey,* 518 U.S. 343, 349 (1996)); *Mazza v. American Honda Motor Co., Inc.*, 666 F.3d
25  581, 594 (9th Cir. 2012); *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006);
26  *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1034 (6th Cir. 2010); *In re Rail Freight Fuel
27  Surcharge Antitrust Litig.*, 725 F.3d 255, 252 (D.C. Cir. 2013). Accordingly, there must be a
28  process for identifying which class members were injured. Plaintiffs, however, take the position

that there is no need to identify which class members were injured. Thus, Plaintiffs may be seeking to bestow a windfall on uninjured individuals who benefitted from One A Day and lack standing to sue in federal court. We simply do not know.

More troubling, Plaintiffs are taking the position that there is "no need to identify class members" at all. This makes no sense. Under Plaintiffs' view, the Court can award damages even if there are no class members to collect them. Plaintiffs never explain what would happen to the damages that exceed the amounts (if any) asserted on the "claim forms," *see supra*. The Court cannot order the payment of damages to phantom individuals who are not even asserting—let alone proving—injury. Therefore, the Court should require a process for identifying class members and injury. *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1131 (9th Cir.), cert. denied sub nom. *ConAgra Brands, Inc. v. Briseno*, 138 S. Ct. 313 (2017) ("At the claims administration stage, parties have long relied on claim administrators, various auditing processes, sampling for fraud detection, follow-up notices to explain the claims process, and other techniques tailored by the parties and the court to validate claims." (quotations omitted)).

In addition, Bayer must have the opportunity for disputing any asserted injury—*i.e.*, showing that the individual claimant benefitted from One A Day. *See In re Korean Ramen Antitrust Litig.*, 2017 WL 235052, at *21 (N.D. Cal. Jan. 19, 2017) ("Post-judgment claims forms and other tools can be used to allow *defendants to test an absent class member's purported entitlement* to damages and to appropriately apportion damages between class members." (emphasis added)); *Briseno*, 844 F.3d at 1131 ("Defendants will have similar opportunities to *individually challenge the claims* of absent class members if and when they file claims for damages." (emphasis added)).

Plaintiffs have also now indicated in their trial plan brief that they plan to seek cy pres. Such relief is not permitted under the law in these circumstances and any request for cy pres relief should be rejected.

The Court ordered briefing on trial plan and defendants position is more fully set out therein. These issues will have a substantial impact on discovery, damages expert reports, and the scope and length of trial. It is proper and efficient to deal with it now.

**B.     Plaintiffs**

Plaintiffs disagree with Defendants that there is any need to identify class members and their eligibility for a refund at this stage of the litigation. However, as the Court aptly pointed out, plaintiffs' class definitions provide objective criteria that allow class members to determine whether they are included in the proposed class. *See In re Lidoderm Antitriust Litig.*, No. 14-md-02521-WHO, 2017 WL 679367, at *25 (N.D. Cal. Feb. 21, 2017); *Philips v. Ford Motor Co.*, No. 14-CV-02989-LHK, 2016 WL 7428810, at *12 (N.D. Cal. Dec. 22, 2016). For each proposed class, class members need only evaluate whether they (1) purchased Bayer One A Day Supplements (2) that contained one or more Claims (3) during the Class Period. Order at 23. Indeed, as the Court also notes, "there is no impediment to offering evidence of purchase by affidavit on a claim form." *Id.* (quoting *Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411-YGR, 2016 WL 3844334, at *7 (N.D. Cal. July 15, 2016)).

And, as indicated in their trial plan, Plaintiffs disagree with Defendants' cy pres argument as premature and contrary to the law.

**12.    SETTLEMENT AND ADR**

The Parties have not discussed settlement. While Plaintiffs have raised the issue with Defendants, Defendants are not interested in settling the case at this time.

**13.    CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES**

The Parties do not consent to have a magistrate judge conduct all further proceedings including trial and entry of judgment.

**14.    OTHER REFERENCES**

The Parties do not presently consider this case suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**15.    NARROWING OF ISSUES**

The Parties will continue to meet and confer to narrow the issues for trial. The Parties have agreed to propound no later than May 9, 2018 additional Requests for Admission which may serve to narrow the issues for trial.

**16.   EXPEDITED TRIAL PROCEDURE**

The Parties do not consider this the type of case that can be handled under the Expedited Trial Procedure of General Order 64.

**17.   SCHEDULING**

On January 18, 2018, the Court granted the Parties' stipulation (Dkt. 176) and entered the following schedule (Dkt. 179):

| Event | Date |
| --- | --- |
| Deadline to Serve New Requests for Admission | 5/9/2018 |
| Plaintiffs' disclosure of damages expert and report, if any | 5/15/2018 |
| Deadline to serve amended supplemental interrogatory responses | 6/1/2018 |
| Defendants' disclosure of damages expert and report, if any | 7/16/2018 |
| Deadline to serve two interrogatories related to damages | 8/1/2018 |
| Deadline to file any motions to compel discovery | 9/3/2018 |
| Dispositive motions hearing | 9/26/2018 |
| Deadline to file *Daubert* motions | 11/12/2018 |
| Pre-Trial Conference | 12/17/2018 |

**18.   TRIAL**

The Court has set January 15, 2019 as the date for the trial. Dkt. 174.

**19.   DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

The Parties have each filed their Local Rule 3-15 Non-party Interest statements. Dkt. 22, 51, 80.

**20.   PROFESSIONAL CONDUCT**

All attorneys of record for the Parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

///

///

///

**21. OTHER**

Other than the measures described above, at this time, the Parties have not identified any other matters that may facilitate the just, speedy, and inexpensive disposition of this matter.

DATED: April 10, 2018

Respectfully submitted,

| | |
|---|---|
| **KAPLAN FOX & KILSHEIMER LLP** | **SIDLEY AUSTIN LLP** |
| By:  /s/ *Laurence D. King* <br>     Laurence D. King | By:  /s/ *Jonathan F. Cohn* <br>     Jonathan F. Cohn |
| Laurence D. King (SBN 206423) <br> lking@kaplanfox.com <br> Linda M. Fong (SBN 124232) <br> lfong@kaplanfox.com <br> Mario M. Choi (SBN 243409) <br> mchoi@kaplanfox.com <br> 350 Sansome Street, Suite 400 <br> San Francisco, CA 94104 <br> Telephone: (415) 772-4700 <br> Facsimile: (415) 772-4707 | Jonathan F. Cohn (admitted *pro hac vice*) <br> jcohn@sidley.com <br> Benjamin M. Mundel (admitted *pro hac vice*) <br> bmundel@sidley.com <br> 1501 K Street, N.W. <br> Washington, D.C. 20005 <br> Telephone: (202) 736.8000 <br> Facsimile: (202) 736.8711 |
| **KAPLAN FOX & KILSHEIMER LLP** <br> Robert N. Kaplan (admitted *pro hac vice*) <br> rkaplan@kaplanfox.com <br> 850 Third Avenue, 14th Floor <br> New York, NY 10022 <br> Telephone: (212) 687-1980 <br> Facsimile: (212) 687-7714 | **SIDLEY AUSTIN LLP** <br> Ryan Sandrock (CA Bar 251781) <br> rsandrock@sidley.com <br> 555 California Street, Suite 2000 <br> San Francisco, CA 94104 <br> Telephone: (415) 772.1200 <br> Facsimile: (415) 772.7400 |
| **STANLEY LAW GROUP** <br> Matthew Joseph Zevin (SBN 170736) <br> mzevin@aol.com <br> 10021 Willow Creek Road, Suite 200 <br> San Diego, CA 92131 <br> Telephone: (619) 235-5306 <br> Facsimile: (815) 377-8419 | *Counsel for Defendants* |
| **STANLEY LAW GROUP** <br> Scott Andrew Kitner (*pro hac vice*) <br> skitner@stanleylawgroup.com <br> 6116 North Central Expressway, Suite 1500 <br> Dallas, Texas 75206 <br> Telephone: (214) 443-4300 <br> Facsimile: (214) 443-0358 | |
| *Counsel for Plaintiffs and the Class* | |

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I, Laurence D. King, attest that concurrence in the filing of this document has been obtained from the other signatories. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 10th day of April 2018, at San Francisco, California.

                                           */s/ Laurence D. King*
                                             Laurence D. King