Sean Eskovitz (SBN 241877)
*seskovitz@wilkinsonwalsh.com*
**WILKINSON WALSH + ESKOVITZ LLP**
11601 Wilshire Blvd., Suite 600
Los Angeles, CA 90049
Telephone: (424) 316-4000
Facsimile: (202) 847-4005

Alexandra M. Walsh (*pro hac vice*)
*awalsh@wilkinsonwalsh.com*
Brian L. Stekloff (*pro hac vice*)
*bstekloff@wilkinsonwalsh.com*
James M. Rosenthal (*pro hac vice*)
*jrosenthal@wilkinsonwalsh.com*
Kieran Gostin (*pro hac vice*)
*kgostin@wilkinsonwalsh.com*
**WILKINSON WALSH + ESKOVITZ LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005

*Counsel for Defendants Bayer AG, Bayer Corporation, and Bayer HealthCare LLC*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| ILANA FARAR, ANDREA LOPEZ, and ROSANNE COSGROVE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BAYER AG, BAYER CORPORATION, and BAYER HEALTHCARE LLC,<br><br>Defendants. | Case No. 3:14-CV-04601-WHO<br><br>**DEFENDANTS' MOTION TO DECERTIFY THE CLASSES AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date: January 9, 2019<br>Time: 2:00pm<br>Courtroom: 17th Floor |

## TABLE OF CONTENTS

**NOTICE OF MOTION AND MOTION** ...................................................................... 1

**MEMORANDUM OF POINTS AND AUTHORITIES** ......................................... 1

    **A.**    **BACKGROUND** ......................................................................... 3

        **I.**    **Preliminary Certification Of The Classes** ................................ 3

        **II.**    **Plaintiffs' Lack Of Causation Evidence** ................................... 4

        **III.**    **Defendants' Substantial Evidence That Class Members Purchased One A Day Products For Reasons Other Than The Challenged Statements** ................................... 5

            **A.**   **Dr. Nancy Mathiowetz** ........................................ 5

            **B.**   **Dr. Denise Martin** .......................................... 6

    **B.**    **LEGAL STANDARD** ................................................................ 7

    **C.**    **ARGUMENT** .............................................................................. 8

        **I.**    **Plaintiffs' Theory Of Causation Requires Proof That The Challenged Statements Caused Class Members To Purchase The Product** ................................... 8

        **II.**    **Courts Do Not Presume Universal Reliance Where Such A Presumption Is Contradicted By The Evidentiary Record** .............. 10

            **A.**   **Courts Reject Reliance Presumptions Where Contrary To The Record** ................................... 10

            **B.**   **The Limitations On Reliance Presumptions Accord With General Principles Of Evidentiary Presumptions, Due Process, And The Rules Enabling Act** ............................... 13

        **III.**    **The Record Contradicts Any Presumption Of Universal Reliance** ... 15

        **IV.**    **Without The Presumption, There Is No Basis For Certification** ...... 16

**CONCLUSION** ......................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Algarin v. Maybelline, LLC,*
  300 F.R.D. 444 (S.D. Cal. 2014) ..............................................................11, 17

*Bridge v. Phoenix Bond & Indem. Co.,*
  553 U.S. 629 (2008) ................................................................................... 16

*Cimino v. Raymark Indus., Inc.,*
  151 F.3d 297 (5th Cir. 1998) ...................................................................... 16

*Cohen v. DIRECTV, Inc.,*
  178 Cal. App. 4th 966 (Cal. Ct. App. 2009) ............................................ 8, 11

*Comcast Corp. v. Behrend,*
  569 U.S. 27 (2013) ..................................................................................... 10

*Connelly v. Hilton Grand Vacations Co.,*
  294 F.R.D. 574 (S.D. Cal. 2013) ................................................................. 3

*Cordejo–Trejo v. I.N.S.,*
  40 F.3d 482 (1st Cir. 1994)......................................................................... 14

*Gay v. Waiters' & Dairy Lunchmen's Union, Local No. 30,*
  694 F.2d 531 (9th Cir. 1982) ...................................................................... 13

*Gen. Tel. Co. of S.W. v. Falcon,*
  457 U.S. 147 (1982) ..................................................................................... 7

*Greenstein v. Peters,*
  No. 08-cv-6104-PSG, 2009 WL 722067 (C.D. Cal. Mar. 16, 2009)........................ 9

*Gutierrez v. Wells Fargo & Co.,*
  No. 07-cv-5923-WHA, 2009 WL 1247040 (N.D. Cal. May 5, 2009)............................ passim

*Gutierrez v. Wells Fargo Bank, N.A.,*
  No. 07-cv-05923-WHA, 2008 WL 4279550 (N.D. Cal. Sept. 11, 2008) .............................. 12

*Halliburton Co. v. Erica P. John Fund, Inc.,*
  134 S. Ct. 2398 (2014) ................................................................................ 14

*In re Dial Complete Mktg. & Sales Practices Litig.,*
  312 F.R.D. 36 (D.N.H. 2015) ...................................................................... 13

*In re Korean Ramen Antitrust Litig.,*
  No. 13-cv-4115-WHO, 2018 WL 1456618 (N.D. Cal. Mar. 23, 2018).................................... 8

ii

**TABLE OF AUTHORITIES**

*In re Myford Touch Consumer Litig.*,
   No. 13-cv-3072-EMC, 2016 WL 7734558 (N.D. Cal. Sept. 14, 2016) .......................11, 12, 17

*In re Nexus 6P Prods. Liab. Litig.*,
   293 F. Supp. 3d 888 (N.D. Cal. 2018) ................................................................................. 8

*Jones v. ConAgra Foods, Inc.*,
   No. 12-cv-1633-CRB, 2014 WL 2702726 (N.D. Cal. June 13, 2014)..............................11, 17

*Kang v. Attorney Gen. of U.S.*,
   611 F.3d 157 (3d Cir. 2010) ............................................................................................... 14

*Kaser v. Swann*,
   141 F.R.D. 337 (M.D. Fla. 1991)........................................................................................ 13

*Lindsey v. Normet*,
   405 U.S. 56 (1972) ............................................................................................................. 14

*Marlo v. United Parcel Serv., Inc.*,
   639 F.3d 942 (9th Cir. 2011) ................................................................................................ 8

*McLaughlin v. Am. Tobacco Co.*,
   522 F.3d 215 (2d Cir. 2008) ............................................................................................... 16

*Mezzadri v. Med. Depot, Inc.*,
   No. 14-cv-2330-AJB, 2016 WL 5107163 (S.D. Cal. May 12, 2016) ................................11, 17

*Morrissey v. Nextel Partners, Inc.*,
   72 A.D.3d 209 (N.Y. Sup. Ct. App. Div. 2010) .................................................................. 13

*Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*,
   730 F.3d 1111 (9th Cir. 2013) .............................................................................................. 8

*Officers for Justice v. Civ. Serv. Comm'n of City & Cty. of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) ................................................................................................ 7

*Poulos v. Caesars World, Inc.*,
   379 F.3d 654 (9th Cir. 2004) ........................................................................................... 9, 14

*Randolph v. J.M. Smucker Co.*,
   303 F.R.D. 679 (S.D. Fla. 2014) ........................................................................................ 13

*Sanchez v. Wal Mart Stores, Inc.*,
   No. 06-cv-2573-JAM, 2009 WL 1514435 (E.D. Cal. May 28, 2009) ................................. 14

*Singleton v. Fifth Generation, Inc.*,
   No. 15-cv-474-BKS, 2017 WL 5001444 (N.D.N.Y. Sept. 27, 2017)..................................... 9

*Small v. Lorillard Tobacco Co.*,
   720 N.E. 2d 892 (N.Y. 1999).............................................................................................. 12

iii

**TABLE OF AUTHORITIES**

*Stearns v. Ticketmaster Corp.*,
   655 F.3d 1013 (9th Cir. 2011) ............................................. 10

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta,*
   *Inc.*, 552 U.S. 148 (2008) ................................................. 8

*Sweet v. Pfizer*,
   232 F.R.D. 360 (C.D. Cal. 2005) ......................................... 2

*Tenneco Chems., Inc. v. William T. Burnett & Co.*,
   691 F.2d 658 (4th Cir. 1982) ...........................................13, 14

*Tucker v. Pac. Bell Mobile Servs.*,
   208 Cal. App. 4th 201 (Cal. Ct. App. 2012) ............................ 2, 11

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016) ................................................. 16

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ................................................14, 16, 17

*Wang v. Chinese Daily News, Inc.*,
   737 F.3d 538 (9th Cir. 2013) ............................................. 7

*Weisberg v. Takeda Pharma. U.S.A., Inc.*,
   No. 18-cv-784-PA, 2018 WL 4043171 (C.D. Cal. Aug. 21, 2018) ...........11, 12, 17


**Statutes**

New York General Business Law Section 349 .................................... 9, 12
New York General Business Law Section 350 ..................................... 12

**Rules**

Fed. R. Civ. P. 23(c)(1)(C) ...................................................2, 7, 8

## NOTICE OF MOTION AND MOTION

### TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT at 2:00pm on January 9, 2019, or as soon thereafter as this matter may be heard by the above-titled Court, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendants Bayer AG, Bayer Corporation, and Bayer HealthCare LLC will, and hereby do, move the Court to decertify the classes in light of changes in the record since certification. The motion is based on this notice of motion, the memorandum of points and authorities attached hereto, and the argument of counsel at the hearing of this motion.[1]

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants bring this motion because developments in the evidentiary record following the Court's certification order demonstrate that Plaintiffs' claims cannot properly be litigated as a class action.

In seeking certification, Plaintiffs asserted that, at trial, they could show universal reliance—*i.e.*, that no class member would have purchased One A Day multivitamins absent Defendants' statements that these multivitamins "support" heart health, immunity, and physical energy. The Court found that theory "plausible." Order Granting in Part & Denying in Part Pls.' Mot. Class Cert. ("Class Cert. Order"), ECF No. 164 at 18. As the Court subsequently explained, this theory was plausible because, under appropriate circumstances, plaintiffs may be able to establish reliance through an evidentiary presumption—specifically, a presumption that, when deciding to purchase a product, a consumer relies on material statements about the product. *See* Trial Plan Hr'g Tr., ECF No. 204-4 at 6:12–14; *id.* at 9:19–22. That presumption,

---

[1] Defendants maintain that the classes here should not have been certified for numerous reasons, including all the reasons set forth in their opposition to class certification, which Defendants incorporate herein. *See generally* Defs.' Opp'n Pls.' Mot. Class Cert., ECF No. 135. This motion is focused on an issue for which there has been a material change in the record—*i.e.*, the evidence as to whether it can be presumed that all class members purchased One A Day products because of the challenged statements.

the Court has indicated, could allow Plaintiffs to litigate reliance, and thus causation and injury, on a class-wide basis.

The Court has also made clear, however, that the availability of a reliance presumption will not necessarily carry the day for Plaintiffs—observing that when it comes time for trial, Plaintiffs could "ultimately fail to prove that nobody would [have] purchase[d] defendants' Products absent the specific health claims at issue here." Class Cert. Order at 18. That observation reflects what numerous cases have recognized: Plaintiffs may not establish reliance via a presumption "where the record will not permit it." *Tucker v. Pac. Bell Mobile Servs.*, 208 Cal. App. 4th 201, 228 (Cal. Ct. App. 2012).

A year has now passed since the Court's certification order, discovery is essentially closed, and trial is nearly upon us. And on one issue (at least) the record is clear: It will not permit the presumption that Plaintiffs require to litigate their claims as a class action. To the contrary, Defendants have now offered not one, but two experts who opine—based on economic theory, market evidence, and consumer surveys—that *many* consumers would have "purchase[d] defendants' Products absent the specific health claims at issue here." To take just one example: a survey conducted by one of these experts shows that only 27.5 percent of One A Day consumers would stop purchasing these multivitamins if they learned that the multivitamins do not support heart health, immunity, or physical energy for healthy people who eat a well-balanced diet. Against this evidence, Plaintiffs offer no expert opinion of their own or any other evidence capable of supporting a universal presumption that every class member who purchased One A Day multivitamins did so because of the statements Plaintiffs challenge, and would *not* have done so absent those statements.

Because the record does not and will not permit a presumption Plaintiffs require to establish reliance—and therefore causation and injury—on a class-wide basis, Defendants respectfully move the Court to decertify the three classes.[2]

---

[2] The reasoning applies to both the (b)(2) and (b)(3) classes. *See Sweet v. Pfizer*, 232 F.R.D. 360, 374 (C.D. Cal. 2005) ("[B]ecause the predominance of individual issues barred certification under Rule 23(b)(3), certification under Rule 23(b)(2) is similarly barred.");

# BACKGROUND

## I.   Preliminary Certification Of The Classes.

In certifying the classes and denying Defendants' summary judgment motion, the Court recognized that Plaintiffs' theory of causation hinges on their allegation that class members purchased One A Day products in reliance on the challenged statements:

> [P]laintiffs' claims . . . are premised on the theory that *they would not have purchased defendants' One A Day Products absent the allegedly deceptive claims.*

Class Cert. Order at 27 (emphasis added).

At the class certification hearing, Plaintiffs' counsel addressed the Court's concerns about how Plaintiffs would prove reliance for the entire class by promising expert evidence at trial as to "how people are going to react" to the challenged statements:

> **The Court:** *How do you know that they relied on [the challenged claims]?* I mean, some of us have been taking One A Days since—or some variant of that since we were kids because we were told that it's a good thing, and it has nothing to do with what's on the box, besides the name.
>
> **Mr. Gardner:** It's an offshoot of the materiality point.  Mr. Cohn said we didn't prove it.  We did.  Their own internal studies show that they are deliberately making these claims to people so that they will buy the product.
>
> We didn't have our own test of it because we don't have the affirmative duty to prove our case at class certification.  *We will, in fact, I will predict—or actually they will since I've told the Court I'm gone—need to hire a perception expert who will be able to attest to how people are going to react to these when they see it.*

Class Cert. Hr'g Tr., ECF No. 162 at 27:11–28:1 (emphases added).  Plaintiffs' counsel then criticized Defendants' expert for failing to conduct a survey testing "whether or not these claims

---

*Connelly v. Hilton Grand Vacations Co.*, 294 F.R.D. 574, 579 (S.D. Cal. 2013) ("[A] (b)(2) class may require more cohesiveness than a (b)(3) class.") (internal quotation marks omitted).

had an effect," and again promised that Plaintiffs would present such reliance evidence at trial: "We'll need to do that, but that's a matter for trial." *Id.* at 28:8–9.

Consistent with these assurances, the Court concluded in its certification order that "[w]hile plaintiffs may ultimately fail to prove that nobody would purchase defendants' Products absent the specific health claims at issue here, *they have produced enough evidence at this stage to render that a plausible conclusion*." Class Cert. Order at 18 (emphasis added).

The Court's subsequent Trial Plan provides that, in Phase I, the three class representatives must prove that they "saw and relied on the misrepresentations." Civil Minutes, ECF No. 198 at 2. The Trial Plan does not contemplate that absent class members would have to make the same showing. Instead, at the hearing on the Trial Plan, the Court indicated that the absent class members may satisfy causation through application of an evidentiary presumption that everyone relied. *See* Trial Plan Hr'g Tr. at 6:12–14; *id.* at 9:19–22.

## II. Plaintiffs' Lack Of Causation Evidence.

Since these classes were certified, Plaintiffs have disclosed a single expert witness: Brian J. Bergmark. Contrary to Plaintiffs' assurances at the class certification hearing, Mr. Bergmark is not a consumer perception expert. Rather, Mr. Bergmark is an accountant who merely purports to calculate the money spent on One A Day products during the class period and the amounts received by Defendants from those sales.

Mr. Bergmark testified that he "hasn't been asked to address" and "hasn't formed an opinion" on whether "plaintiffs relied on any of the challenged claims in this case in purchasing any One A Day products." Decl. of S. Eskovitz ("Eskovitz Decl."), Ex. A, Deposition of B. Bergmark ("Bergmark Dep.") at 66:2–14. He also "ha[s]n't done any kind of analysis to determine the number of class members, if any, who purchased One A Day products because they saw any of the challenged claims" or "any analysis to determine the number of class members who purchase One A Day products for reasons other than anything relating to these

1  three challenged claims." *Id.* at 91:22–92:8.

2  **III.  Defendants' Substantial Evidence That Class Members Purchased One A Day**
   **Products For Reasons Other Than The Challenged Statements.**

3

4  In contrast, since the class certification order, Defendants have disclosed two experts

5  who *disprove* the assumption that no class member would have purchased One A Day products

6  absent the three challenged statements.

7  **A.  Dr. Nancy Mathiowetz.**

8  Dr. Mathiowetz is Professor Emerita at the University of Wisconsin–Milwaukee, where

9  she teaches courses on survey methodology, questionnaire design, and advanced statistical

10  methods.  Eskovitz Decl., Ex. B, Expert Report of N. Mathiowetz (dated Oct. 2, 2018)

11  ("Mathiowetz Report") ¶ 1.  She is a past president of the American Association for Public

12  Opinion Research, which selected her for its Award for Exceptionally Distinguished

13  Achievement in 2015, and is an elected fellow of the American Statistical Association.

14  Mathiowetz Report, App. A at 14.

15  Dr. Mathiowetz conducted a survey that asked One A Day consumers whether they

16  would continue to purchase One A Day products even if, as Plaintiffs allege, the supplements

17  provided no support for heart health, immunity, or physical energy to an otherwise healthy

18  person who eats a well-balanced diet:

19

20  

In answering the next question, please assume the following information:

*For an otherwise healthy person who eats a well balanced diet, One A Day Men's Health Formula Multivitamins do not provide additional support for heart health, immunity, or physical energy.*

Given this information, would you....

○ no longer purchase One A Day Men's Health Formula Multivitamins

○ continue to purchase One A Day Men's Health Formula Multivitamins

○ I don't know

25  The majority of respondents—56.6 percent—indicated that they would continue to

26  purchase One A Day products even when presented with this information.  Mathiowetz Report

27  ¶ 10.  An additional 15.9 percent were unsure what they would do.  *Id.*  Only 27.5 percent

28  indicated that they would stop purchasing One A Day products.  *Id.*  Dr. Mathiowetz explained

that "this estimate [of 27.5 percent] likely overstates the extent to which individuals would change their behavior." *Id.* ¶ 33.[3]

### B.  Dr. Denise Martin.

Dr. Martin is a Harvard-trained Ph.D. economist and Managing Director at NERA Economic Consulting, where she has worked since 1991.  Eskovitz Decl., Ex. C, Expert Report of D. Martin (dated Oct. 2, 2018) ("Martin Report") ¶¶ 9–10.  Based on economic theory, documentary evidence, consumer surveys, and market evidence, Dr. Martin determined that "consumers purchase [One A Day] products for a variety of reasons, many of which are unrelated to the challenged claims." *Id.* ¶ 29.

Among other reasons, Dr. Martin explained that consumers purchase One A Day products based on:  (1) the desire to meet the Recommended Dietary Allowances ("RDAs") set by the National Academy of Medicine and adopted by federal government agencies; (2) recommendations by other medical and health authorities reinforcing consumer belief that meeting the RDAs is beneficial; (3) the desire to decrease the risk of becoming biochemically deficient, which can result in disease or death; (4) the desire to avoid taking regular blood tests to ensure adequate micronutrient levels; and (5) health concerns other than heart health, immunity, or physical energy—including other claims made on One A Day products.  *Id.* ¶¶ 24, 27, 29–30.

Dr. Martin also shows that market evidence confirms that consumers purchase One A Day products for these and other reasons unrelated to the three challenged claims.  For example, Dr. Martin observes that:

- Numerous One A Day products have never included any of the challenged claims, yet still generated millions of dollars in sales during the Class Period.  *Id.* ¶ 33(a).  These "consumers cannot have been

---

[3] Dr. Mathiowetz also asked survey respondents whether they "take a multivitamin supplement at the recommendation of a doctor, nurse, or other health professional."  Mathiowetz Report, App. B at 29.  Approximately 32 percent responded "yes."  Mathiowetz Report ¶ 34.

purchasing [One A Day] products because of the challenged claims because the challenged claims were not on the product." *Id.*

- During the Class Period, the challenged claims were added to several One A Day products that had previously been sold without any of the claims, without any discernable impact on those products' performance in the market. *Id.* ¶ 39.  "[T]he fact that there is no evidence that the presence or absence of the challenged claims on the labels affected the [One A Day] product sales makes it likely that *many* individuals would have continued to purchase absent the challenged claims." *Id.* ¶ 40 (emphasis in original).

- The vast majority of One A Day products are sold with other claims not challenged by Plaintiffs here. *Id.* ¶ 33(b).  Consumers could be purchasing One A Day products because of these unchallenged claims, and not because of the challenged claims.  *Id.*

Taken together, this market evidence further confirms that consumers do not universally purchase One A Day products because of the challenged claims.

## LEGAL STANDARD

The Court addressed the standard for obtaining class certification when it granted in part and denied in part Plaintiffs' motion for certification.  Class Cert. Order at 4–6.  An order certifying a class, however, is "inherently tentative."  *Officers for Justice v. Civ. Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 633 (9th Cir. 1982).  "Rule 23 provides district courts with broad authority at various stages in the litigation to revisit class certification determinations and to redefine or decertify classes as appropriate."  *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 546 (9th Cir. 2013); *see also* Fed. R. Civ. P. 23(c)(1)(C).  In deciding whether to decertify a class or a portion of a class, a court may consider "subsequent developments in the litigation," including changes to the evidentiary record.  *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 160 (1982).  But the ultimate standard is the same for class decertification as it is for class certification:  The court must ensure that the plaintiff has

-7-

1   satisfied all of Rule 23's requirements. *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 947

2   (9th Cir. 2011).  As this Court has recognized, Plaintiffs retain the burden, at all stages of the

3   case, to demonstrate that class-wide treatment is appropriate under Rule 23. *In re Korean*

4   *Ramen Antitrust Litig.*, No. 13-cv-4115-WHO, 2018 WL 1456618, at *2 n.1 (N.D. Cal. Mar. 23,

5   2018); *see also Marlo*, 639 F.3d at 947.

**ARGUMENT**

6

7   **I.   Plaintiffs' Theory Of Causation Requires Proof That The Challenged Statements**
     **Caused Class Members To Purchase The Product.**

8

9         The starting point of this motion is a ruling already made by the Court:  To satisfy their

10  burden of demonstrating causation, Plaintiffs must prove that they would not have purchased

11  the One A Day products at issue absent the challenged claims.  Class Cert. Order at 18, 27.

12        Causation and reliance are two theoretically distinct, but often interrelated, elements of

13  deceptive marketing claims.  The "causation" element requires the plaintiff to show that he or

14  she suffered a loss as a result of the alleged deception.  The "reliance" element requires the

15  plaintiff to prove that but-for the alleged deception, he or she would not have purchased the

16  product.[4]  Consumer protection statutes vary as to whether causation alone is sufficient to prove

17  a claim, or whether the plaintiff must show both reliance and causation.[5]

18        The distinction between these different elements can be seen in "price premium"

19

20  _____

21  [4] Despite the nomenclature, reliance and causation are both forms of causation.  In the securities
    litigation context, courts use the terms "transaction causation" and "loss causation" to refer to

22  these elements.  As courts have explained, "[t]ransaction causation is akin to reliance; it focuses

23  on the time of the transaction and refers to the causal link between the defendant's misconduct
    and the plaintiff's decision to buy or sell securities." *Nuveen Mun. High Income Opportunity*

24  *Fund v. City of Alameda, Cal.*, 730 F.3d 1111, 1118 (9th Cir. 2013) (internal quotation marks
    omitted); *see also Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 171

25  (2008) ("Reliance is often equated with transaction causation." (internal quotation marks
    omitted)).  "Loss causation," in contrast, "is simply a causal connection between the material

26  misrepresentation and the loss." *Nuveen Mun. High Income Opportunity Fund*, 730 F.3d at

27  1119 (internal quotation marks omitted).

    [5] *Compare, e.g.*, *Cohen v. DIRECTV, Inc.*, 178 Cal. App. 4th 966, 980 (Cal. Ct. App. 2009)
28  (CLRA requires proof of reliance) *with In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888,

cases—where the plaintiff alleges that he or she purchased a product at a price that was inflated due to an alleged deception.  Demonstrating a price premium is insufficient to prove a claim that requires reliance because it says nothing about the consumer's reasons for purchasing the product at issue.  *See, e.g.*, *Singleton v. Fifth Generation, Inc.*, No. 15-cv-474-BKS, 2017 WL 5001444, at *19 (N.D.N.Y. Sept. 27, 2017) (proof of price premium is *insufficient* for claims with reliance requirement).  But proving that a price was inflated by alleged misrepresentations is enough to show causation where reliance is not required because it demonstrates that the consumer suffered a loss as a result of purchasing the product.  *See, e.g.*, *id.* (proof of price premium is *sufficient* for claim with *no* reliance requirement).

In some cases, however, the distinction between causation and reliance is irrelevant because the plaintiff's theory of causation hinges on reliance.  Where, as here, the plaintiff does not allege that he or she paid an inflated price, but rather alleges a loss because the misrepresentation caused the purchase, causation and reliance merge into a single inquiry.  In those circumstances, courts recognize that the plaintiff must prove reliance even if is not a separate element of the claim, because reliance is a critical link in the causal chain.  *See, e.g.*, *Poulos v. Caesars World, Inc.*, 379 F.3d 654, 664 (9th Cir. 2004) (requiring proof of reliance where it is "a milepost on the road to causation"); *Greenstein v. Peters*, No. 08-cv-6104-PSG, 2009 WL 722067, at *3 (C.D. Cal. Mar. 16, 2009) (although "reliance itself [wa]s not an element of the cause of action" at issue, the plaintiff had to prove reliance to establish his theory of causation).

In certifying these classes and denying Defendants' summary judgment motion, this Court recognized that Plaintiffs' theory of causation in this case depends on proof of reliance:

> [P]laintiffs' claims *do not rest upon a price premium theory*, but instead are premised on the theory that *they would not have purchased defendants' One A Day Products absent the allegedly deceptive claims.*

Class Cert. Order at 27 (emphases added); *see also id.* at 18 ("[P]laintiffs may ultimately fail to

956–57 (N.D. Cal. 2018) (section 349 of the New York General Business Law requires proof only of causation).

1   prove that *nobody would purchase defendants' Products absent the specific health claims at*

2   *issue here*.") (emphasis added).

3         This Court correctly described Plaintiffs' theory of causation, then and now.  Plaintiffs

4   have offered no proof that class members paid an inflated price because of the three challenged

5   statements at issue here.  They have no expert economist, for example, who opines that without

6   the challenged statements, One A Day products would have a lower fair market value.

7         Instead, Plaintiffs contend that all members of the three classes suffered an injury in the

8   amount of the full purchase price they paid for all One A Day products because the three

9   challenged statements caused class members to purchase One A Day products:

10          Plaintiffs purchased a Product that they would not otherwise have purchased
11          if they had known that the Product would not provide the benefits promised
        by Bayer.

12  Pls.' Opp. Defs.' Mot. Summ. J., ECF No. 141 at 7.

13        As a result, without proof that class members relied on the three challenged statements,

14  there is a missing link in Plaintiffs' theory of causation, and Plaintiffs' claims must fail.

15  **II.**    **Courts Do Not Presume Universal Reliance Where Such A Presumption Is**
16         **Contradicted By The Evidentiary Record.**

17        While recognizing that Plaintiffs must prove reliance to establish causation, the Court

18  has suggested that Plaintiffs may be able to employ a presumption of universal reliance to

19  satisfy this burden for the classes.  *See* Trial Plan Hr'g Tr. at 6:12–14; *id.* at 9:19–22.  In some

20  instances, courts do presume class reliance.  *See, e.g.*, *Stearns v. Ticketmaster Corp.*, 655 F.3d

21  1013, 1022 (9th Cir. 2011), *abrogated on other grounds by Comcast Corp. v. Behrend*, 569 U.S.

22  27 (2013).  But such presumptions are not inviolate.  To the contrary, courts have repeatedly

23  rejected a presumption that is (as here) contrary to the evidentiary record.  This is firmly

24  established by courts applying consumer protection statutes from all three states and is

25  consistent with general evidentiary principles.

26        **A.  Courts Reject Reliance Presumptions Where Contrary To The Record.**

27        Courts applying California, New York, and Florida law have declined to presume

28  universal reliance where the record demonstrates that not all purchasers relied on the challenged

1    statements.

2         ***California.***  California courts have repeatedly declined to presume reliance "where the

3    record will not permit it."  *Tucker v. Pac. Bell Mobile Servs.*, 208 Cal. App. 4th 201, 228 (Cal.

4    Ct. App. 2012).  In *Tucker*, for example, the California Court of Appeal acknowledged that a

5    determination that an alleged misrepresentation is material *may* create "an inference of common

6    reliance."  *Id.* at 226.  Nevertheless, the court declined to presume that all cellular service

7    subscribers relied on the defendant's failure to disclose its rounding-up practices in calculating

8    airtime usage.  *Id.* at 228–29.  As the court explained, the record demonstrated that some

9    purchasers "were aware of the round up practice" and thus could not have relied.  *Id.*

10        Similarly, in *Cohen v. DIRECTV*, the plaintiffs alleged that the defendant had published

11   misleading advertisements about its high-definition television services.  178 Cal. App. 4th 966,

12   969 (Cal. Ct. App. 2009).  The California Court of Appeal held that class-wide reliance could

13   not be inferred because the record showed that the proposed class would include subscribers

14   who never saw the allegedly misleading advertisements or who decided to subscribe to the

15   services for reasons unrelated to the allegedly deceptive advertisements, including "based on

16   word of mouth or because they saw DIRECTV's HD in a store or at a friend's or family

17   member's home."  *Id.* at 979.

18        Federal courts applying California's consumer protection statutes have come to the same

19   conclusion where the record contradicts a presumption of universal reliance.  *See Weisberg v.*

20   *Takeda Pharma. U.S.A., Inc.*, No. 18-cv-784-PA, 2018 WL 4043171, at *8–9 (C.D. Cal. Aug.

21   21, 2018);  *In re Myford Touch Consumer Litig.*, No. 13-cv-3072-EMC, 2016 WL 7734558, at

22   *22 (N.D. Cal. Sept. 14, 2016), *on reconsideration in part*, No. 13-cv-03072-EMC, 2016 WL

23   6873453 (N.D. Cal. Nov. 22, 2016); *Mezzadri v. Med. Depot, Inc.*, No-14-cv-2330-AJB, 2016

24   WL 5107163, at *6–7 (S.D. Cal. May 12, 2016); *Jones v. ConAgra Foods, Inc.*, No. 12-cv-

25   1633-CRB, 2014 WL 2702726, at *14 (N.D. Cal. June 13, 2014); *Algarin v. Maybelline, LLC*,

26   300 F.R.D. 444, 453–54 (S.D. Cal. 2014); *Gutierrez v. Wells Fargo & Co.*, No. 07-cv-5923-

27   WHA, 2009 WL 1247040, at *8 (N.D. Cal. May 5, 2009).

28        For example, in *Myford Touch*, Judge Chen declined to "presume classwide reliance" in

-11-

an action alleging that Ford had misrepresented the effectiveness of touchscreens in its vehicles. 2016 WL 7734558, at *22.  The court recognized that, under California law, "reliance is treated liberally and subject to possible presumptions for purposes of class adjudication." *Id.* at *20. But the court determined that such a presumption was improper in that case because the record demonstrated that (1) not every purchaser had seen the alleged misrepresentations, and (2) at least some purchasers had purchased the vehicle despite seeing disclosures about the alleged defects in the touchscreens.  *Id.*[6]

Likewise, in *Weisberg*, the court "accept[ed] as true that all class members saw" the allegedly misleading statement.  2018 WL 4043171, at *8.  Even so, the court rejected a class-wide presumption of reliance because "the evidence suggest[ed] that consumers had unique reasons for" purchasing the product other than the alleged misrepresentations.  *Id.* at *9.

Finally, in *Gutierrez*, Judge Alsup originally certified a class alleging that Wells Fargo provided inaccurate available-balance information based on a determination that "a jury might reasonably infer that customers regularly relied on Wells Fargo's dissemination of this information."  *Gutierrez v. Wells Fargo Bank, N.A.*, No. 07-cv-05923-WHA, 2008 WL 4279550, at *15 (N.D. Cal. Sept. 11, 2008).  After the close of discovery, however, the court decertified this class.  The court acknowledged that "courts have developed presumptions of reliance to serve as class-wide methods of proof."  *Gutierrez*, 2009 WL 1247040, at *8.  But based on the record that had developed and "common experience," the court found that "it is too far a leap to presume that all customers" relied.  *Id.*

**New York.**  Courts adjudicating claims under New York's consumer protection statutes draw the same line.  If the record shows that consumers purchased the product at issue for reasons other than the challenged claims, reliance cannot be presumed.  *See, e.g.*, *Small v. Lorillard Tobacco Co.*, 720 N.E. 2d 892, 896 (N.Y. 1999) (record evidence that there was "widely available information" regarding the dangers of smoking "foreclosed any presumption

---

[6] Applying the same reasoning, the court also rejected a presumption of reliance as to the plaintiffs' claims under New York General Business Law §§ 349 and 350.  *Id.* at *22–23.

of reliance" on the alleged misrepresentations); *Morrissey v. Nextel Partners, Inc.*, 72 A.D.3d 209, 217 (N.Y. Sup. Ct. App. Div. 2010) ("[A] variety of factors influenced [the plaintiffs'] decision to purchase defendant's services, including defendant's 'walkie-talkie' feature, word-of-mouth recommendations and convenience of store location, such that reliance will not be presumed.").

 *Florida.*  Defendants are unaware of any case applying a reliance presumption under Florida law.  Instead, courts have rejected the presumption due to the "individual nature" of the reliance inquiry.  *Kaser v. Swann*, 141 F.R.D. 337, 341 (M.D. Fla. 1991); *see also In re Dial Complete Mktg. & Sales Practices Litig.*, 312 F.R.D. 36, 63 (D.N.H. 2015) (relying on *Kaser* to reject a presumption under Florida's Misleading Advertising Statute); *Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 696 n.17 (S.D. Fla. 2014) (rejecting attempt to incorporate securities fraud-on-the-market presumption of reliance in the context of a Florida Deceptive and Unfair Trade Practices Act claim).

 ### B.  The Limitations On Reliance Presumptions Accord With General Principles Of Evidentiary Presumptions, Due Process, And The Rules Enabling Act.

 The robust case law described above—in which courts have repeatedly rejected presumptions of universal reliance where such presumptions are contradicted by the record—stems from the limited role that presumptions are designed to play.  Presumptions are not designed to eliminate the requirement that the plaintiff prove causation or some other element of a claim; they are merely inferences that may be drawn in specific cases based on *proven* factual predicates.  *See Gay v. Waiters' & Dairy Lunchmen's Union, Local No. 30*, 694 F.2d 531, 543 n.11 (9th Cir. 1982).  If the predicate facts required to establish a presumption have not been established, or if the evidentiary record demonstrates that the presumption is inconsistent with reality, then the presumption cannot be applied.  As Judge Weinstein has summarized this principle:

> [I]f a basic fact (Fact A) is established, then the fact-finder must accept that the presumed fact (Fact B) has also been established, *unless the presumption is rebutted.*

1 Weinstein's Federal Evidence § 301.02 (2018) (emphasis added); *see also, e.g., Tenneco*

*Chems., Inc. v. William T. Burnett & Co.*, 691 F.2d 658, 663 (4th Cir. 1982) ("It is axiomatic that a presumption is not evidence and disappears in the face of evidence sufficient to rebut it.").

This widespread understanding of presumptions is found in numerous legal contexts.  It is well established, for example, that reliance may be presumed in securities class actions under certain conditions.  But the Supreme Court has made clear that the presumption "*does not require courts to ignore a defendant's direct, more salient evidence*," and that the presumption "does not apply" where it is contradicted by the record.  *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2416 (2014) (emphasis added).  The Ninth Circuit has similarly declined to presume reliance in a RICO action where the record demonstrated that it could not "assume" that all consumers "share[d] a common universe of knowledge and expectations." *Poulos*, 379 F.3d at 665.  And courts have likewise held that deference to administrative agencies "is not due where [an agency's] findings and conclusions are based on inferences or presumptions that are not reasonably grounded in the record." *Cordejo–Trejo v. I.N.S.*, 40 F.3d 482, 487 (1st Cir. 1994); *see also Kang v. Attorney Gen. of U.S.*, 611 F.3d 157, 163–64 (3d Cir. 2010).

Moreover, allowing class members to recover based on a presumption in the face of evidence demonstrating that those class members could not satisfy an essential element of their claims—in this case, causation—would violate Due Process and the Rules Enabling Act.  The Supreme Court has recognized that a defendant in a class action may not be compelled to pay in excess of its liability or be prohibited from presenting individualized defenses affecting that liability.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 365–67 (2011); *see also Lindsey v. Normet*, 405 U.S. 56, 66 (1972) ("Due Process requires that there be an opportunity to present every available defense.").  Similarly, courts in the Ninth Circuit have recognized that in consumer class actions, "[d]efendants must be afforded the opportunity to explore and introduce evidence, with respect to each class member's claim, including . . . the factors relevant (or not relevant) to the class member's decision to purchase [the product]." *Sanchez v. Wal Mart Stores, Inc.*, No. 06-cv-2573-JAM, 2009 WL 1514435, at *4 (E.D. Cal. May 28, 2009); *see also Gutierrez*, 2009 WL 1247040, at *8 ("In a class action, as stated, it is still necessary to prove *each* class member's full claim, including the elements of proof needed for the claim.")

-14-

(emphasis in original).  The same is true where application of a presumption would preclude Defendants from relying on record evidence to refute causation and defeat liability with respect to class members who did not rely.

### III.   The Record Contradicts Any Presumption Of Universal Reliance.

Here, as in the cases described above, the record developed since certification forecloses any presumption of class-wide reliance.

As discussed above, Plaintiffs' counsel addressed the Court's concerns about proof of reliance by promising expert evidence of reliance at trial.  *See supra* at 3.  The Court thus concluded in certifying the class that it was "plausible" that "nobody would purchase defendants' Products absent the specific health claims at issue here," while recognizing that "plaintiffs may ultimately fail to prove" such universal reliance.  Class Cert. Order at 18.

Plaintiffs did not even attempt to carry their burden.  Discovery is now complete, and Plaintiffs have not put forth a consumer perception expert or any other expert to show that reliance can be presumed.

That does not mean, however, that the record is devoid of evidence on this issue.  *See supra* at 5–7.  Defendants have produced direct proof demonstrating that it cannot be presumed that all class members relied:  a consumer survey showing that at most 27.5 percent of consumers would not purchase a One A Day product if they were told the products do not provide additional heart health, immunity, or physical energy support for otherwise healthy individuals with a well-balanced diet.  Mathiowetz Report ¶ 10.  By contrast, the majority of consumers (56.6 percent) indicated that they would continue to purchase One A Day products even when presented with this information.  *Id.*

Nor is this survey result surprising.  As Dr. Martin explains, consumers purchase One A Day products for many reasons other than the challenged statements.  Martin Report ¶¶ 24, 27, 29–30; *see supra* at 6.  This is demonstrated by economic theory, documentary evidence, and consumer surveys, and it is also confirmed by market evidence.  *See supra* at 6–7.  As explained, One A Day products sold without any of the challenged statements have generated millions of dollars in sales, and adding the challenged claims to One A Day products previously

-15-

1  sold without the claims has had no discernable market impact.  Martin Report ¶¶ 33(a), 39.  If

2  consumers were purchasing these products exclusively because of the three challenged

3  statements, one would expect to see a significant effect—or at least some effect—on One A Day

4  sales from the absence of those statements.  But that is not what the record shows.

5  **IV.     Without The Presumption, There Is No Basis For Certification.**

6         Plaintiffs have failed to deliver on their promise to disclose an expert who would

7  provide evidentiary support for the presumption of universal reliance, whereas Defendants have

8  adduced substantial evidence demonstrating that it cannot be assumed that the hundreds of

9  thousands of class members relied on the challenged statements in purchasing One A Day

10  products.  This destroys any presumption of reliance, requiring decertification of the classes

11  because of the predominance of individual issues.

12         Plaintiffs have no aggregate, statistical proof of reliance, but even if they did, allowing

13  proof by such means would violate Defendants' constitutional rights and the Rules Enabling

14  Act.  *See, e.g.*, *Wal-Mart*, 564 U.S. at 367 (rejecting "Trial by Formula"); *Tyson Foods, Inc. v.*

15  *Bouaphakeo*, 136 S. Ct. 1036, 1046 (2016) (allowing representative evidence in class action

16  only "where representative evidence is relevant in proving a plaintiff's individual claim");

17  *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 223, 231–32 (2d Cir. 2008) (district court erred

18  in allowing reliance to be adjudicated through statistical estimates as to the class), *abrogated on*

19  *other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 629 (2008); *Cimino v.*

20  *Raymark Indus., Inc.*, 151 F.3d 297, 320 (5th Cir. 1998) (trial by extrapolation violated the

21  defendant's Seventh Amendment right).[7]  In an individual case, reliance is not adjudicated

22  through statistical analysis; it requires a fact-specific inquiry into the plaintiff's reasons for

23  purchase—including a review of documentary evidence, direct testimony, and most

_____

[7] For this reason, causation cannot be litigated in the aggregate with an "offset" to class-wide
damages in Phase II.  In addition to the constitutional and Rules Enabling Act problems inherent
in such an approach, causation is an essential element of Plaintiffs' claims, and thus Plaintiffs—
not Defendants—must bear the burden of demonstrating that class members relied.

-16-

1   importantly, cross examination.  A class member's claims cannot be treated any differently

2   simply because he or she is part of a class.  *See Wal-Mart*, 564 U.S. at 367 (class actions cannot

3   "abridge, enlarge or modify any substantive right") (citation omitted).

4          Accordingly, courts that have declined to apply a presumption of reliance under the

5   consumer protection statutes at issue here have uniformly held that certification was

6   inappropriate.  *See, e.g.*, *Weisberg* 2018 WL 4043171, at *8–9; *In re Myford Touch Consumer*

7   *Litig.*, 2016 WL 7734558, at *22; *Mezzadri*, 2016 WL 5107163, at *6; *Jones*, 2014 WL

8   2702726, at *14; *Algarin*, 300 F.R.D. at 453–54; *Gutierrez*, 2009 WL 1247040, at *8.  In

9   *Gutierrez*, for example, as discussed above, Judge Alsup *decertified* a class after determining

10  that evidentiary record no longer allowed for a presumption and thus reliance would be

11  "hopelessly individualized."  2009 WL 1247040, at *10.  This Court should decertify the

12  classes in this case for the very same reasons.

### CONCLUSION

13

14         The Court should decertify the three classes because developments in the record

15  foreclose any presumption of universal reliance, causing individual issues to predominate over

16  common issues.

17

18  Dated: November 30, 2018                    Respectfully submitted,

19

20                                       By: */s/ Sean Eskovitz*

21                                       **WILKINSON WALSH + ESKOVITZ LLP**
                                         Sean Eskovitz (SBN 241877)
22                                       *seskovitz@wilkinsonwalsh.com*
                                         11601 Wilshire Blvd., Suite 600
23                                       Los Angeles, CA 90025
                                         Telephone: (424) 316-4000
24                                       Facsimile: (202) 847-4005

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**WILKINSON WALSH + ESKOVITZ LLP**
Alexandra M. Walsh (*pro hac vice*)
*awalsh@wilkinsonwalsh.com*
Brian L. Stekloff (*pro hac vice*)
*bstekloff@wilkinsonwalsh.com*
James M. Rosenthal (*pro hac vice*)
*jrosenthal@wilkinsonwalsh.com*
Kieran Gostin (*pro hac vice*)
*kgostin@wilkinsonwalsh.com*
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005

*Counsel for Defendants Bayer AG, Bayer
Corporation, and Bayer HealthCare LLC*