1  Jeff Tillotson, SBN 139372
   jtillotson@TillotsonLaw.com
2  Tillotson Law
   1807 Ross Avenue, Suite 325
3  Dallas, TX 75201
   Telephone: (214) 382-3040
4
   [Additional Counsel Appears on Signature Page]
5  *Counsel for Plaintiffs*

6

7

8                    **UNITED STATES DISTRICT COURT**
                   **NORTHERN DISTRICT OF CALIFORNIA**
9                     **SAN FRANCISCO DIVISION**

10

11 | ILANA FARAR, ANDREA LOPEZ, and | Case No. 3:14-CV-04601-WHO |

ROSANNE COSGROVE, on behalf of
12 themselves and all others similarly situated,     **CLASS ACTION**

13                    Plaintiff,              **PLAINTIFFS' NOTICE OF MOTION AND**
                                             **MOTION TO STRIKE AND EXCLUDE**
14 v.                                         **TESTIMONY AND OPINIONS OF**
                                             **DEFENDANTS' EXPERTS NANCY A.**
15 BAYER AG, BAYER CORPORATION, and          **MATHIOWETZ AND DENISE N. MARTIN**
   BAYER HEALTHCARE LLC,
16                                            Judge: Hon. William H. Orrick
                    Defendants.              **Courtroom: 17th Floor**
17                                           **Date:  January 22, 2019**
                                             **Time: 9:00 AM**
18

19

20

21

22          **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 22, 2019, at 9:00 a.m., or as soon as this motion can be heard, in Courtroom 2 of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California 94102, the Honorable William H. Orrick, presiding, Plaintiffs Ilana Farar, Andrea Lopez, and Rosanne Cosgrove (collectively, "Plaintiffs"), will and hereby do move for an Order striking and excluding the testimonies and reports of Defendants Bayer AG, Bayer Corporation, and Bayer Healthcare LLC (collectively "Defendant" or "Bayer") experts, Dr. Nancy A. Mathiowetz ("Mathiowetz") and Dr. Denise N. Martin ("Martin").

This motion is based upon this Notice of Motion and Motion to Strike and Exclude Testimony and Opinions of Defendants' Experts Nancy A. Mathiowetz and Denise N. Martin, the Memorandum of Points and Authorities set forth below, the accompanying Declaration of Jeff Tillotson in Support of Plaintiffs' Motion to Strike and Exclude Defendant's Experts, dated December 17, 2018, and the exhibits thereto, the pleadings and records on file in this action, and other such matters and argument as the Court may consider at the hearing of this motion.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether the testimony and report of Defendant's expert Dr. Mathiowetz should be excluded pursuant to Federal Rules of Civil Procedure 37 and Federal Rule of Evidence 702; and

2. Whether the testimony and report of Defendant's expert Dr. Martin should be excluded pursuant to Federal Rules of Civil Procedure 37 and Federal Rule of Evidence 702.

# **TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION.................................................................................. ii

STATEMENT OF ISSUES TO BE DECIDED ...................................................................... ii

TABLE OF AUTHORITIES ................................................................................................. iv

I.    Introduction and Summary of Relief Sought. ........................................................ 1

II.   Relevant Procedural and Factual Background. ...................................................... 3

III.  Legal Standard........................................................................................................ 5

IV.   Argument................................................................................................................ 6

    A.   The Experts' Testimony and Opinions on Class Certification
    and Liability Must Be Struck and Excluded as Untimely................................ 6

    B.   The Court Should Also Exclude the Vast Majority of the Experts'
    Testimony at the Damages Phase Because It Does Not, in Fact, Address Damages ........... 8

    C.   The Court Should Also Exclude Dr. Martin's Materiality Opinions as Irrelevant and
    Unhelpful to the Trier of Fact...................................................................... 12

    D.   The Court Should Also Exclude Dr. Mathiowetz's Opinion Concerning Health
    Professional Recommendations as Unhelpful to the Trier of Fact.................................. 15

CONCLUSION.................................................................................................................... 17

# TABLE OF AUTHORITIES

**CASES**

*Apple, Inc. v. Samsung Elecs. Co.*,
No. 11-CV-01846-LHK, 2012 WL 2571332 (N.D. Cal. June 30, 2012)................................ 5, 12

*Daubert v. Merrell Dow Pharm., Ind.*,
509 U.S. 579 (1993) ................................................................................................ 5, 12

*Holder v. Fraser Shipyards, Inc.*,
288 F. Supp. 3d 911 (W.D. Wis. 2018)................................................................................ 5

*In re Live Concert Antitrust Litig.*,
863 F. Supp. 2d 966 (C.D. Cal. 2012)...................................................................... 6, 14, 15

*In re Welding Fume Prods.*,
No. 1:03-CV-17000, MDL 1535, 2005 WL 1868046 (N.D. Ohio Aug. 8, 2005) .................... 6, 12

*Kassab v. Skinner*,
733 F. App'x 877 (9th Cir. 2018) ...................................................................................... 5

*Kosta v. Del Monte Foods, Inc.*,
308 F.R.D. 217 (N.D. Cal. 2015)...................................................................................... 12

*Lassalle v. McNeilus Truck & Mf'g, Inc.*,
No. 16-cv-00766-WHO, 2017 WL 3115141 (N.D. Cal. July 21, 2017)................................ 5, 7

*Leverette v. Louisville Ladder Co.*,
183 F.3d 339 (5th Cir. 1999) ........................................................................................ 6, 12

*Mullins v. Premier Nutrition Corp.*,
178 F. Supp. 3d 867 (N.D. Cal. 2016).............................................................................. 13

*Stathankos v. Columbia Sportswear Co.*,
No. 15-cv-045430YRG, 2017 WL 1957063 (N.D. Cal. May 11, 2017)................................ 13

*United Food & Comm'l Workers Local 1776 & Participating Employer*
*Health & Welfare Fund v. Teikoku Pharma USA*,
296 F. Supp. 3d 1142 (N.D. Cal. 2017)........................................................................ 5, 12

*United States v. Antero*,
121 F.3d 1256 (9th Cir. 1997) .......................................................................................... 6

**RULES**

FED. R. CIV. P. 26............................................................................................................ 5, 6

FED. R. CIV. P. 37............................................................................................................ 5, 7

Federal Rule of Evidence 702........................................................................................ ii, 5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiffs Ilana Farar, Andrea Lopez, and Rosanne Cosgrove ("Plaintiffs") respectfully submit the following Motion to Strike and Exclude Testimony and Opinions of Defendants' Experts Nancy A. Mathiowetz and Denise N. Martin.  For the reasons stated below, the Court should grant this Motion, strike Defendants' use of these experts' testimony in Defendants' Motion to Decertify the Classes [ECF No. 244], and exclude both experts' testimony at trial as set forth herein.

## I.     Introduction and Summary of Relief Sought.

This Motion asks the Court to enforce its own orders and uphold the well-established law it has unambiguously found applies here.  The Court's Trial Plan provides that the trial in this case "will be bifurcated with a jury considering first liability, then damages, restitution, and offsets, as may be warranted," with a third phase of claims administration to follow those trial phases.  ECF No. 198. Discovery has similarly been bifurcated in practice.  The deadlines to complete fact and class discovery and disclose corresponding experts expired long ago, and the Court subsequently extended only the deadlines for *damages* discovery and experts.  In purported compliance with that, Defendants disclosed Drs. Mathiowetz and Martin (the "Experts") as "damages experts" on the damages-expert deadline.  That is problematic for multiple reasons, both procedural and substantive.

*First*, the deadlines to disclose experts on class certification and liability passed 18 months ago, and Defendants have only proffered Drs. Mathiowetz and Martin as damages experts.  Thus, their testimony is inadmissible except as to damages in Phase II of the litigation.  Defendants, however, are already attempting to use the Experts' testimony to relitigate class certification on the grounds that individualized questions of reliance predominate because Defendants' misrepresentations are not "material."  *See* ECF No. 244.  Materiality is an issue of liability, not damages—a fact this Court properly recognized when it unambiguously ordered that the question of whether "the misrepresentations were material" is to be tried in the liability phase of this trial, not the damages phase.  ECF No. 198 at 2.  The upshot is that the Court must strike the Experts' testimony

and opinions from Defendants' Motion to Decertify and make explicit that which already seemed clear: the testimony and opinions of "damages experts" like Drs. Mathiowetz and Martin are inadmissible to relitigate class certification and in the liability phase of this trial.

**Second**, the overwhelming majority of the Experts' testimony and opinions is equally inadmissible at the damages phase because it addresses liability.  This is the flipside of the prior point.  Procedurally, Drs. Mathiowetz and Martin cannot testify as to liability or class certification because they were not timely disclosed for that.  But because Defendants actually retained the Experts to address a liability question that Defendants have since used to relitigate class certification, their opinions overwhelmingly address that, not damages.  Needless to say, opinions that address issues to be decided at or before the liability phase are not admissible at the damages phase.

**Third**, Dr. Martin's opinions are further inadmissible because they are inconsistent with this Court's orders and the relevant legal standards and fail to control for even a single of the myriad alternative explanations, so they would not be helpful to the trier of fact.  For example, Dr. Martin opines that consumers received an "insurance benefit" that should offset any damages, but this Court has already explicitly considered and rejected the "insurance benefit" as "irrelevant" and "no benefit at all."  More broadly, Dr. Martin seeks to disprove the proposition that "nobody would have purchased the [Defendants'] product absent the challenged claims" based on sales data showing that some consumers bought some products even without the challenged claims, but that is not the relevant legal standard and there are myriad alternative explanations for the sales data she relies on, none of which she considered or controlled for.  The law only asks whether Defendants' misrepresentations were material (a liability question) and whether consumers received a health benefit from Defendants' products (a damages question).  Dr. Martin does not even attempt to answer either of these questions, so her testimony answering a different one that no one has asked would be irrelevant and utterly unhelpful to the trier of fact.

***Fourth***, Dr. Mathiowetz's only opinion that even arguably addresses damages is also unhelpful and inadmissible on multiple grounds.  That opinion seeks to assess the number of individuals who "were taking a multivitamin at the recommendation of a health professional"—an opinion Dr. Mathiowetz offers because, in her words, "the Court's Trial Plan Order indicates that consumers 'who were prescribed vitamins or otherwise took supplements because of a diagnosed nutrition deficiency' will not be entitled to damages."  But "recommendation" does not mean "prescription"; "health professionals" include people who are unqualified and unauthorized to diagnose nutrition deficiencies and prescribe treatment; and Dr. Mathiowetz did nothing to determine whether any such "recommendation" actually bore any relationship to a diagnosed nutrition deficiency.  Further, the Trial Plan actually says that, *in "Phase III – Claims Administration* . . . [,] *Claim forms* may exclude claimants who were prescribed vitamins or otherwise took supplements because of a diagnosed nutrition deficiency."  ECF No. 198 at 2 (emphases added).  Thus, Dr. Mathiowetz's opinion is unhelpful to the trier of fact because it (1) applies the wrong legal standard and (2) addresses an issue that is to be dealt with in a non-jury phase of litigation through claim forms that neither merit nor require expert opinions like hers.

## II.        Relevant Procedural and Factual Background.

Expert disclosure deadlines for this case were first set in December 2015, when the Court ordered that "expert report[s], if any," be disclosed at the same time the parties filed their respective class certification briefs.  ECF No. 92.  Those deadlines were extended several times until the parties filed the class certification briefs to which expert disclosures were tied on January 11, 2017 and March 24, 2017, respectively.  *See* ECF Nos. 115, 120, 125, 129, 133, 135.  Both Plaintiffs and Defendants timely disclosed their relevant experts on those dates, and that seemed to be the end of it.  *See* ECF No. 139 at 2.  Indeed, on April 10, 2017, the Court entered a Stipulation and Order for Further Extensions of Case Deadlines into which Bayer had inserted a footnote stating: "Plaintiffs have

suggested that they might disclose additional experts.  Bayer does not consent or agree to a belated disclosure of an expert . . . ."  *Id.* at 2 n.1.

The parties then proceeded to brief Defendants' motion for summary judgment, which the Court heard and denied in November 2017 at the same time it certified several classes.  *See* ECF No. 166.  The parties' next Joint Case Management Statement included a section entitled "Expert discovery" and stated only that "[b]oth Parties may still disclose a damages expert," without any mention of a right to disclose any further experts on anything other than damages.  ECF No. 169 at 7.  It also included deadlines only for disclosure of "damages expert[s."  *Id.* at 11-12.  Stipulations and court orders in January and April 2018 reiterated that further expert disclosures were limited to "damages experts."  ECF Nos. 179 at 5, 193 at 7.  Those deadlines for "Disclosure of Damages Expert and Report, if any," were subsequently extended, but since the time class certification briefing was completed in early 2017, no one has requested or obtained leave to designate any experts other than on damages.  *See* ECF Nos. 203, 216.

The last Stipulation and Order Extending Case Deadlines to address experts set the deadline for "Defendants' Disclosure of Damages Expert and Report, if any," as October 2, 2018.  ECF No. 216 at 1.  Defendants disclosed Drs. Mathiowetz and Martin on that date, and their counsel subsequently confirmed they had been designated only as damages experts for Phase II of the trial.  Then, a few weeks ago, Defendants filed a Motion to Decertify arguing that the classes this Court certified in 2017 should be decertified because, according to Defendants, Drs. Mathiowetz's and Martin's opinions show Defendants' misrepresentations are not "material," and therefore prevent Plaintiffs from "establish[ing] reliance . . . on a class-wide basis."  ECF No. 244 at 2, 5-7.  Plaintiffs will respond to that Motion to Decertify separately, and here simply move to strike and exclude Drs. Mathiowetz's and Martin's testimony and opinions in the phases and filings, and for the reasons, set forth below.

1

### III.        Legal Standard.

2        Like all evidence, the admissibility of proffered expert testimony is subject to both procedural

3   and substantive limits.  Procedurally, expert testimony must be disclosed at the time the court orders.

4   FED. R. CIV. P. 26(a)(2)(D).  "If a party fails to [timely disclose an expert], the party is not allowed

5   to use that . . . witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure

6   was substantially justified or is harmless." FED. R. CIV. P. 37(c).  The party that failed to disclose

7   timely bears the burden of showing substantial justification/harmlessness, and the failure to so results

8   in the untimely-disclosed portion(s) being struck and excluded.  *E.g.*, *Lassalle v. McNeilus Truck &*

9   *Mf'g, Inc.*, No. 16-cv-00766-WHO, 2017 WL 3115141, *1 n.1 (N.D. Cal. July 21, 2017) (Orrick J.)

10  (noting this Court "would strike" untimely portions of expert opinions under those circumstances);

11  *Kassab v. Skinner*, 733 F. App'x 877, 880 (9th Cir. 2018) (affirming exclusion of expert testimony

12  that was not disclosed timely).

13       Substantively, Federal Rule of Evidence 702 governs the admissibility of expert opinions and

14  testimony.  "Expert testimony is admissible under Rule 702 if it is both relevant and reliable."  *United*

15  *Food & Comm'l Workers Local 1776 & Participating Employers Health & Welfare Fund v. Teikoku*

16  *Pharma USA*, 296 F. Supp. 3d 1142, 1176 (N.D. Cal. 2017) (Orrick, J.).  "'Relevance means that the

17  evidence will assist the trier of fact to understand or determine a fact in issue.'"  *Id.* (quoting *Cooper*

18  *v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007)); *Daubert v. Merrell Dow Pharm., Ind.*, 509 U.S. 579,

19  591 (1993) ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo,

20  non-helpful." (internal quotation marks omitted)).  Expert opinions that are "contrary to the law"

21  and/or "inconsistent with" the applicable legal standards are irrelevant, unhelpful, and properly

22  excluded under Rule 702.  *E.g.*, *Teikoku*, 296 F. Supp. 3d at 1176 (citing *Apple, Inc. v. Samsung*

23  *Elecs. Co.*, No. 11-CV-01846-LHK, 2012 WL 2571332, *7 (N.D. Cal. June 30, 2012), for proposition

24  that "expert opinions that are 'contrary to the law' and therefore not helpful to the jury" are properly

25  excluded); *Apple*, 2012 WL 2571332 at *6 (excluding testimony that apportioned damages in a way

26  that was "inconsistent with" the applicable statutory standard); *Holder v. Fraser Shipyards, Inc.*, 288

27  F. Supp. 3d 911, 932 (W.D. Wis. 2018) ("[I]t is improper for an expert to offer opinions inconsistent

28

with the appropriate legal standard" the trier of fact must apply.); *Leverette v. Louisville Ladder Co.*, 183 F.3d 339, 341-42 (5th Cir. 1999) (affirming exclusion of expert's opinion on manufacturing defect where expert did not apply actual legal standard for manufacturing defect); *In re Welding Fume Prods.*, No. 1:03-CV-17000, MDL 1535, 2005 WL 1868046, *7 (N.D. Ohio Aug. 8, 2005) (expert opinion that manufacturer's action "would reveal 'a possibility that danger may be present'" inadmissible because "[t]his is simply not the correct legal standard—knowledge of a mere 'possibility of danger' does not necessarily translate to a legal warning requirement, nor does it necessarily imply liability").

By a similar token, "[a] statistical study that fails to correct for salient explanatory variables, or even to make the most elementary comparisons, has no value as causal explanation and is therefore inadmissible in a federal court." *United States v. Antero*, 121 F.3d 1256, 1262 (9th Cir. 1997) (internal quotation marks omitted) (affirming exclusion of expert opinions as "irrelevant" on that basis); *see also*, *e.g.*, *In re Live Concert Antitrust Litig.*, 863 F. Supp. 2d 966, 973-83 (C.D. Cal. 2012) (discussing law on the issue and excluding expert opinions because the underlying analysis "does not account for *any* other possible explanation(s) for this disparity," including factors "[c]ommon sense dictates" would provide an explanation).

## IV. Argument

### A. The Experts' Testimony and Opinions on Class Certification and Liability Must Be Struck and Excluded as Untimely.

As previously noted, parties must disclose an expert witness at the time the court orders, or else they are "not allowed to use that . . . witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 26(a)(2)(D), 37(c). Here, the Court ordered that Defendants' expert witnesses be disclosed on March 24, 2017. ECF Nos. 92, 115, 120, 125, 129, 133. Defendants did, in fact, timely disclose two experts on that date: Dr. Blumberg (a pharmacologist who opined that the claims Plaintiffs challenge are scientifically supported and accurate) and Dr. Kivetz (a marketing professor who conducted "materiality surveys" to determine why consumers purchase Defendants' products and the extent to which the challenged claims are one such reason). *See* ECF No. 135 at 1, 15; ECF No. 135-2; ECF No. 135-3.

There is no real question that the Court orders setting the March 24, 2017 deadline applied to experts on class certification and any other topic except damages. The parties originally requested deadlines for "expert reports related to class certification," but the deadlines the Court set were, instead, for "expert report[s], if any," without any further limitation to certification or anything else. *See* ECF Nos. 88, 92. Defendants apparently understood the deadline to apply broadly because, just a few weeks later, they stated: "Plaintiffs have suggested that they might disclose additional experts. Bayer does not consent or agree to a belated disclosure of an expert . . . ." ECF No. 139 at 2 n.1. And although a number of subsequent Scheduling Orders, Case Management Orders, and Joint Case Management Statements provided additional expert deadlines, every single one of them explicitly limited those extended deadlines to "damages experts." *See* ECF Nos. 169, 179, 193, 203, 216.

Defendants did not disclose Drs. Mathiowetz and Martin until October 2, 2018, over 18 months after the March 24, 2017 deadline for non-damages experts. Dr. Mathiowetz confirmed in her deposition that she ███████████████████████████████ Mathiowetz Depo. at 56:18-57:2, attached hereto as Declaration Exhibit C. And Defendants' counsel has explicitly stated that Mathiowetz and Martin are damages experts who will testify only in Phase II. *See* Nov. 19, 2018 Email from Kieran Gostin, counsel for Defendants, to Jeff Tillotson, counsel for Plaintiffs, attached hereto as Declaration Exhibit A ("If there is a Phase II, we would intend to call Mathiowetz and Martin as expert witnesses."). Thus, it should go without saying that the Experts' testimony is inadmissible as to anything other than damages, and at any phase other than Phase II. *See*, *e.g.*, *Lassalle*, 2017 WL 3115141, at *1 n.1 (citing FED. R. CIV. P. 37(c)).

Normally, the Court would now have to parse through the Experts' opinions to determine which address damages, liability, certification, etc., and thereby identify the opinions that are admissible. But in this case, the Court need not do that to enter the order Plaintiffs seek because the trial has been bifurcated and certification is the subject of distinct briefing. Because damages will be addressed in a dedicated and distinct phase, the Court may and should first, and at a bare minimum, simply order that the testimony and opinions of Drs. Mathiowetz and Martin are inadmissible except in that phase. As a practical matter, that means Defendants' references to and reliance upon the

Experts in their renewed challenge to class certification (*see* ECF No. 244) must be stricken,[1] and to the extent Defendants intend to use the Experts' testimony and opinions at the liability phase of the trial, they must be precluded from doing so.

    **B.**     **The Court Should Also Exclude the Vast Majority of the Experts' Testimony at the Damages Phase Because It Does Not, in Fact, Address Damages.**

The Court should also exclude the Experts' testimony and opinions at the damages phase because, although Defendants disclosed them timely for that phase (and only that phase), the vast majority of the Experts' testimony and opinions addresses topics this Court has already held are questions of liability, not damages.

As previously noted, this case has been bifurcated (or trifurcated) into multiple phases. Phase I addresses liability, Phase II addresses damages, and Phase III addresses claim administration. *See* ECF No. 198. The Court ordered that bifurcation after Defendants argued that it was necessary and appropriate. As they told the Court in their Trial Plan Brief, "[t]his is precisely the type of case in which bifurcation is required: there must be an individualized inquiry to determine whether a particular class member was harmed and damaged," and that individualized inquiry should occur only after the court "conduct[s] a class trial on common issues" of liability. ECF No. 186 at 3-4. Accordingly, Defendants proposed that the Court bifurcate the trial as follows:

---

[1] The Experts' testimony is actually doubly inadmissible in the Motion to Decertify because Defendants employ that testimony to argue that reliance and materiality are individualized inquiries that preclude certification. *See* ECF No. 244 at 2. As discussed in Section IV.B., *infra*, and established in the Court's Trial Plan, however, reliance and materiality are questions of liability, not damages. *See* ECF No. 198 at 2.

**Phase I:  Classwide Liability Trial**

Phase I of the proceeding will be a liability trial.  The jury should be charged with determining whether Bayer violated the statutes at issue.  The jury should decide the following common issues:

- Whether the three challenged claims on Bayer's labels are false or misleading;
- Whether the named Plaintiffs relied on each of those claims when making their purchase;
- Whether the claims were material such that "nobody would purchase defendants' Products absent the specific health claims at issue here"  Dkt. 164 (18:24-25);
- Whether the named plaintiffs did not receive any benefits from the One A Day product;

**Phase II:  Individual Damages & Injury Determinations**

If Plaintiffs are successful at proving liability in Phase I, Phase II of this proceeding will be a variation of typical Phase II damages trials.  Here, Plaintiffs have presented only one damages model: a full refund.  But they have acknowledged that even if they prove liability, not all class members are eligible for this full refund.  The Phase II proceedings will have to determine whether an absent class member who submits a claim is eligible for the refund and the amount of the refund.  Phase II will include the following:

- Absent class members who are seeking to recover will have to submit evidence (1) that they purchased one of the challenged One A Day products during the relevant time period; (2) how much they paid for that product(s); (3) that they relied on one of the challenged claims in their purchase decision; and (4) that the product was worthless to them.
- Bayer will be able to challenge these claims through cross examination.  Bayer expects that the parties and the Court can agree to an initial administration process that can likely filter out some claims that are insufficient as a matter of law.  For claims that are valid as pled, Bayer reserves the right to a jury trial on these issues.

ECF No. 186 at 14-15.  Plaintiffs did not oppose bifurcation, and agreed that, *inter alia*, "the bench/jury trial would begin with a 'Liability' phase, where Plaintiffs will bear the burden of proving: (1) a likelihood of deception; (2) materiality; and (3) their own standing," followed by a damages phase.  ECF No. 191 at 3-7.  With a few exceptions not relevant to this Section, the Court adopted Defendants' proposal, and ordered that the trial be bifurcated as follows:

**Phase I - Liability**

- Plaintiffs prove that false or misleading representations were made – hearth health, immunity, physical energy.
- Plaintiffs prove that named plaintiffs saw and relied on the misrepresentations.
- Plaintiffs prove the misrepresentations were material, through evidence of Bayer's marketing materials/plans/research, named plaintiffs testimony, marketing/ expert testimony.
- Liability under the UCL determined by Court based upon evidence presented during Phase I.

**Phase II - Damages/Restitution/Relief**

Damages/Restitution

- Plaintiffs prove that supplements do not benefit majority of class members.
- Plaintiffs prove how much product containing the misrepresentations was sold – to set the aggregate damage award/restitution base

Offset
- Defendants prove a reduction in aggregate damages award/argue for reduction in restitution due to benefit of supplements to some class members.
- Plaintiffs rebut

Ultimate Aggregate Damages Award
- Determined by jury

Ultimate Restitution Award
- Determined by Court

Injunctive Relief
- Determined by Court

**Phase III – Claims Administration**

Claim Form
- Claim forms may exclude claimants who were prescribed vitamins or otherwise took supplements because of a diagnosed nutrition deficiency.
- The exact nature of claimants who may be "carved out" and not entitled to damages or restitution to be determined based on evidence in Phase II.
- Bayer will be allowed to challenge any particular claimant's entitlement to benefits, under procedure administered by Claims Administrator.

ECF No. 198 at 2.

In sum, Defendants argued, Plaintiffs agreed, and the Court ordered that reliance and materiality are questions of liability to be litigated in Phase I with evidence of "Bayer's marketing materials/plans/research, named plaintiffs testimony, [and] marketing/ expert testimony," and Phase II consists of litigating the benefits of Defendants' products and quantities sold. *Id.* Therefore, expert testimony (and any other evidence) concerning reliance and the materiality of the challenged misrepresentations is irrelevant to and inadmissible in "Phase II – Damages/Restitution/Relief." That liability issue, however, is all that the overwhelming majority of the Experts' opinions here address.

Dr. Mathiowetz offers two basic opinions, both based on consumer surveys she conducted: (1) "the majority of the consumers would continue to purchase the [Defendants'] product, even after being informed that the product does not provide any additional benefits with respect to heart health, immunity, or energy for an otherwise healthy person who eats a balanced diet," and (2) "slightly less than one-third of consumers of such products take multivitamins at the recommendation of a health professional." ECF No. 244-3 ¶¶ 40-41.  Similarly, the vast majority of Dr. Martin's report is devoted to her opinion that "consumers purchase for many reasons other than or in addition to the challenged claims and, indeed, purchased when these claims were not on the label."  *See* ECF No. 244-4 §§ I, IV, VI, VIII, IX.  These are quintessential reliance/materiality (and, therefore, liability) opinions.  Dr. Martin has ███████████ *see* Martin Depo. Tr. at 214:3-17, attached hereto as Declaration Exhibit B ████████████████████████████████████████████████ ███████████████████████████████████████████████[2] and Defendants confirmed it by moving to decertify on the grounds that Drs. Mathiowetz's and Martin's opinions "foreclose any presumption of universal reliance" by showing the challenged claims are not material, ECF No. 244 at 1-2, 5-7, 15, 17; *see also* ECF No. 129 at 14-20 (citing and discussing reliance presumption legal standard).

The result is, again, clear.  None of Dr. Mathiowetz's and only a tiny portion of Dr. Martin's reports and opinions actually address damages.[3]  Thus, without even inquiring into whether the Experts' opinions would be helpful to the trier of fact in the proper setting, the Court may and should exclude from Phase II (and therefore all phases) all of Dr. Mathiowetz's testimony and opinions and

---

[2] ████████████████████████████████████████████████████████████

[3] The only portions of Dr. Martin's opinions that actually appear to address damages are those that seek to rebut Plaintiff's damages expert, Mr. Bergmark.  *See* ECF No. 244-4 §§ V, VII, X.

the testimony and opinions set forth in Sections IV, VI, VIII, IX, and the corresponding paragraphs in Section I of Dr. Martin's report.

### C. The Court Should Also Exclude Dr. Martin's Materiality Opinions as Irrelevant and Unhelpful to the Trier of Fact.

Even if the Court found Dr. Martin's materiality opinions were, in fact, damages opinions, they would still be inadmissible as irrelevant and unhelpful to the trier of fact for multiple reasons.

*First*, Dr. Martin opines that consumers obtain "economic value or utility" from Defendants' products in the form of avoiding blood tests and various forms of an "insurance benefit."  ECF No. 244-4 ¶ 24.  The Court has already explicitly rejected that precise supposed "benefit" as "irrelevant to plaintiffs' case" and providing "no benefit at all, and certainly not one that can overcome plaintiffs' 'full restitution' model of damages."  ECF No. 166 at 18.  Needless to say, testimony concerning irrelevant topics is not helpful to the trier of fact.  *E.g.*, *Daubert*, 509 U.S. at 591; *Teikoku*, 296 F. Supp. 3d at 1176.

*Second*, Dr. Martin applies the wrong legal standards.  That, too, renders her opinions unhelpful and inadmissible.  *See, e.g.*, *id.*; *Apple*, 2012 WL 2571332 at *6; *Leverette*, 183 F.3d at 341-42; *Welding*, 2005 WL 1868046 at *7.  She only seeks to answer the question of whether "nobody would purchase defendants' Products absent the specific health claims at issue," which she seems to believe this Court set as the legal standard for either damages or materiality (it is unclear which).  ECF No. 244-4 ¶ 3 (quoting ECF No. 166 at 18); *see also* Declaration Ex. B (Martin Depo.) at 52:11-16, 55:14-17, 69:8-70:7, 126:11-128:23, 214:7-17, 217:10-16, 324:2-10 (same).  Either way, that is not accurate.  "'A misrepresentation is material . . . if a reasonable consumer would attach importance to it or is likely to regard the matter as important in determining his choice of action.'"  ECF No. 166 at 19 (quoting *Kosta v. Del Monte Foods, Inc.*, 308 F.R.D. 217, 224 (N.D. Cal. 2015)).  Thus, Defendants' misrepresentations here may be material, even if—as Dr. Martin opines—"consumers purchase for many reasons other than or in addition to the challenged claims and, indeed, purchased when these claims were not on the label."  ECF No. 244-4 ¶ 3.  The one does

1    not necessarily lead to the other.  Thus, even if Dr. Martin was timely disclosed to address materiality

2    (which she was not, *see* Section IV.A-B., *supra*), her opinion would be unhelpful on that issue.

3         Similarly, Plaintiffs need not "prove that nobody would purchase Defendants' Products

4    absent the specific health claims at issue here."  ECF No. 166 at 18.  The Court did observe that

5    "plaintiffs may ultimately fail to prove" that, but both this Court and the case it cited when it made

6    that observation recognized that the applicable legal standard is, instead, whether "the product had

7    *no* value to [plaintiffs]."  *Id.* at 15 (quoting *Stathankos v. Columbia Sportswear Co.*, No. 15-cv-

8    045430YRG, 2017 WL 1957063, *10 (N.D. Cal. May 11, 2017)) (emphasis original); *Mullins v.*

9    *Premier Nutrition Corp.*, 178 F. Supp. 3d 867, 898-99 (N.D. Cal. 2016) (cited by ECF No. 166 at

10   15-18).  The Court made clear in that Order that "no value" here means "no health benefit" for most

11   consumers.  ECF No. 166 at 15-18, 29-30.  Defendants adopted this standard and "benefit" language

12   in their Trial Plan Brief, and the Court reiterated it in the final Trial Plan.  *See* ECF No. 186 at 5, 14;

13   ECF No. 198 at 2 (reiterating that damages phase focuses on litigating whether Defendants' products

14   "do not benefit majority of class members" and "benefit . . . some class members").  Even Dr. Martin

15   ████████████████████████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████████████████████████

17   ████████████████████████████    Declaration Ex. B (Martin Depo.) at 128:5-23.  Dr. Martin does not

18   ████████████████████████████████████████████████████████████████████    *See*,

19   *e.g.*, *id.* at 63:10-64:15, 128:5-23, 161:14-162:7 ████████████

20         ***Third***, the statistical analysis Dr. Martin performed and relied upon is fatally flawed.  The

21   ████████████████████████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████████████████████████

23   ████████████████████████████████    *Id.* at 100:19-102:1; ECF No. 244-4 ¶¶ 39-40.  In other

24   words, she opines that the challenged claims are not material because sales did not change

25   significantly when they were added.  *See also* ECF No. 244 at 1, 15-16 (Defendants relying on Dr.

26   Martin's opinion to argue that very point).  The problem is, even Dr. Martin admits ████████

27

28

1  ██████████████████████████████████████████[4] █████████████████████

2  █████████████████████████████████████████████████████████████████████

3  ███████ Declaration Ex. B (Martin Depo.) at 129:1-130:14, 133:10-17, 142:11-21; ECF No. 244-4 at

4  45-59.  Common sense dictates that there are myriad possible explanations for this, many of which

5  would be directly relevant to this case, and could actually provide additional evidence that

6  Defendants' claims *are* material.  For example, sales could have risen substantially in the weeks

7  after Defendants added the challenged claims because of the challenged claims, and sales could have

8  dropped because prices rose, coupons expired, the store itself stopped advertising, competitors

9  introduced new products or any one of innumerable other factors.  Even Dr. Martin admits that

10  ███████████████████████████████████████████████████████████████████

11  Declaration Ex. B (Martin Depo.) at 131:21-132:11.  Yet, she ███████████████████

12  control for *any* of these (or any other) factors.  *See*, *e.g.*, *id.* at 129:1-130:14, 133:10-17; *see also id.*

13  at 122:13-23.  Literally, ████████████████████████████████

14  ███████████████████████ *Id.* at 147:19-148:3. But, she has ████████████

15  ███████████████████████████████████████████████████████

16  ███████ (*id.* at 152:17-153:3), and she ████████████████████████████

17  ████████████████████████████████████████ *Id.* at 151:14-152:1.

18  Dr. Martin's flawed analysis is like one the expert employed in *In re Live Concert Antitrust*

19  *Litig.*, 863 F. Supp. 2d 966, 973-83 (C.D. Cal. 2012).  He opined that the defendants' anticompetitive

20  conduct caused concert ticket prices to rise based on analyses showing that ticket prices increased

21  after defendants' entry into the market and that tickets for concerts the defendants promoted were

22  more expensive than others.  *See id.* at 975, 977.  As the court there observed, those analyses

23  "account[] for no independent variables other than time" and "impermissibly *assume[]* that any

---

24  [4] The "products" on which Dr. Martin relied are also problematic.  She says she studied "five Bayer OAD products that

25  were sold both with and without the challenged claims at various times throughout the class periods," ECF No. 244-4 ¶

   39, but █████

26  ███████████████████████████████████████████████████████████████████

27  ██████████████████████████████████████████████████████ Thus, it is not even clear

   how she could extrapolate her opinion beyond just one, single product.

28

observed increase in average ticket prices . . . is due entirely to Defendants' anticompetitive conduct," despite many other "possible explanation(s)," including those that even "[c]ommon sense dictates." *Id.* at 975, 978 (emphasis original).  The court there found the expert's failure to account for major variables rendered his opinions inadmissible.  This Court should do the same.

In short, Dr. Martin's opinions rely on a flawed analysis and seek to answer why consumers might buy Defendants' products in the first place, whereas the relevant legal standards ask whether reasonable consumers would regard Defendants' misrepresentations as important and whether consumers who already bought the products actually received a benefit from them.  That departure from proper analysis and the actual legal standards is neither harmless nor accidental.  Rather, it seeks to aid Defendants by excluding from the certified classes as many consumers as possible.  She cannot do that, however, by applying the wrong legal standard and simply ignoring obvious alternative explanations that could undermine her conclusions.  Her opinions should be excluded on this ground, as well.[5]

### D.    The Court Should Also Exclude Dr. Mathiowetz's Opinion Concerning Health Professional Recommendations as Unhelpful to the Trier of Fact.

Dr. Mathiowetz only offers two opinions.  As previously discussed, both are quintessential materiality/liability questions.  *See* Section IV.B., *supra*.  But she does at least attempt to tie her second opinion to damages.  In that second opinion, Dr. Mathiowetz seeks to assess the number of individuals who "were taking a multivitamin at the recommendation of a health professional."  ECF No. 244-3 ¶ 8.  She assesses this because, in her words, "the Court's Trial Plan Order indicates that consumers 'who were prescribed vitamins or otherwise took supplements because of a diagnosed nutrition deficiency' will not be entitled to damages."  *Id.* (quoting ECF No. 198 at 2-3).  That is

---

[5] Dr. Martin's attempt to connect her opinion regarding consumers' reasons for purchasing to "economic values" received from the purchase are unavailing.  It appears that all of those supposed "values" are forms of the "insurance benefit" this Court already properly rejected.  *See* ECF No. 244-4 ¶¶ 24, 34.  And in any event, it is common sense that a consumer's decision to purchase is driven by *expected* values and benefits, and does not speak to whether any such value or benefit was actually *received*.

1  only partly correct, and in any event confirms that Dr. Mathiowetz's opinion is unhelpful and

2  inadmissible for multiple reasons.

3  **First**, like Dr. Martin, Dr. Mathiowetz seeks to answer an unasked question.  The Trial Plan

4  does say that "claimants who were prescribed vitamins or otherwise took supplements because of a

5  diagnosed nutrition deficiency" may be excluded from recovery.  ECF No. 198 at 2.  But the first

6  problem is, Dr. Mathiowetz did not attempt to identify those "claimants."  Instead, she attempted to

7  determine how many consumers "were taking a multivitamin at the recommendation of a health

8  professional."  ECF No. 244-3 ¶ 7.  A "recommendation" is not necessarily a prescription; a "health

9  professional" includes nurses, psychologists, and others who might not even be authorized or

10  qualified to prescribe medications, much less diagnose nutrition deficiencies; and she did not even

11  █████████████████████████████████████████████████████████████████████████████

12  nutrition deficiency."  *See*, *e.g.*, Declaration Ex. C (Mathiowetz Depo.) at 57:10-65:18 (admitting

13  █████████████████████████████ ; ECF No. 244-3 at 36-47 (survey questions).

14  In short, this is just a repeat of the Dr. Martin problem.  Dr. Mathiowetz (1) focuses on the

15  reasons consumers purchased Defendants' products (which is, at most, a liability issue), not the

16  benefit they received from those products (which is the damages issue, *see* ECF No. 198 at 2]), and

17  (2) offers an opinion that does not match the relevant legal standard anyway.  Again, the importance

18  of this should not be underestimated.  Dr. Mathiowetz departs from the legal standards and Trial

19  Plan in multiple, material ways, all of which tilt heavily toward Defendants by seeking to exclude

20  as many consumers as possible from the classes in this case.  Therefore, for the same reasons

21  discussed above concerning Dr. Martin, Dr. Mathiowetz's opinions about consumers "taking a

22  multivitamin at the recommendation of a health professional" would not be helpful to the trier of

23  fact, and are, therefore, inadmissible.

24  **Second**, and independently, Dr. Mathiowetz's opinion would also be unhelpful because the

25  Court did not merely say that claimants who took supplements because of a diagnosed nutrition

26  deficiency may be excluded; it said that, *in "Phase III – Claims Administration* . . . [,] *Claim forms*

27  may exclude claimants who were prescribed vitamins or otherwise took supplements because of a

28

1   diagnosed nutrition deficiency."  ECF No. 198 at 2 (emphases added).  Thus, Dr. Mathiowetz's

2   opinion concerning the number of individuals taking multivitamins at a health professional's

3   recommendation is even more unhelpful to the trier of fact because it addresses an issue that is to be

4   dealt with (1) in a third phase that does not involve the jury, and (2) through claim forms that do not

5   include or require expert testimony or industry surveys.  As such, her opinion is further inadmissible,

6   even in the damages phase of this litigation.

7                                           **<u>CONCLUSION</u>**

8        For the reasons set forth above, the Court should grant this Motion and (1) strike all portions of

9   Defendants' Motion to Decertify ECF No. 244] that refer to, reference, and/or rely on testimony or

10  opinions of Drs. Mathiowetz or Martin, (2) exclude Drs. Mathiowetz's and Martin's testimony and

11  opinions entirely from Phase I of this litigation, (3) exclude Dr. Mathiowetz's testimony and

12  opinions entirely from Phase II of this litigation, and (4) exclude all of Dr. Martin's testimony and

13  opinions from Phase II of this litigation except to the extent it rebuts the expert testimony of Mr.

14  Bergmark, and award Plaintiffs any further relief to which they may be entitled.

15

16  Dated: December 17, 2018                    */s/ Jeffrey M. Tillotson*
                                                Jeffrey M. Tillotson (SBN 139372)
17                                              **TILLOTSON LAW**
                                                1807 Ross Avenue, Suite 325
18                                              Dallas, Texas 75201
                                                Telephone: (214) 382-3041
19                                              Facsimile:  (214) 292-6564
                                                Email: jtillotson@tillotsonlaw.com
20
                                                KAPLAN FOX & KILSHEIMER LLP
21                                              Laurence D. King (SBN 206423)
                                                lking@kaplanfox.com
22                                              Mario M. Choi (SBN 243409)
                                                mchoi@kaplanfox.com
23                                              350 Sansome Street, Suite 400
                                                San Francisco, California 94104
24                                              Telephone: (415) 772-4700
                                                Facsimile:  (415) 772-4707
25                                              -and-

26

27

28

KAPLAN FOX & KILSHEIMER LLP
Robert N. Kaplan (admitted pro hac vice)
rkaplan@kaplanfox.com
850 Third Avenue, 14th Floor
New York, New York 10022
Telephone: (212) 687-1980
Facsimile:  (212) 687-7714
-and-
STANLEY LAW GROUP
Matthew Zevin (SBN 170736)
mzevin@aol.com
10021 Willow Creek Road
San Diego, California 92131
Telephone: (619) 235-5306
Facsimile:  (815) 337-8419

*Counsel for Plaintiffs*
*Ilana Farar, Andrea Lopez and Rosanne Cosgrove, on*
*behalf of themselves and all others similarly situated*

## CERTIFICATE OF SERVICE

The above and foregoing document was served upon all counsel of record herein by ECF on December 17, 2018.

*/s/ Jeffrey M. Tillotson*
Jeffrey M. Tillotson (SBN 139372)