Sean Eskovitz (SBN 241877)
seskovitz@wilkinsonwalsh.com
**WILKINSON WALSH + ESKOVITZ LLP**
11601 Wilshire Blvd., Suite 600
Los Angeles, CA 90049
Telephone: (424) 316-4000
Facsimile: (202) 847-4005

Alexandra M. Walsh (*pro hac vice*)
awalsh@wilkinsonwalsh.com
Brian L. Stekloff (*pro hac vice*)
bstekloff@wilkinsonwalsh.com
James M. Rosenthal (*pro hac vice*)
jrosenthal@wilkinsonwalsh.com
Kieran Gostin (*pro hac vice*)
kgostin@wilkinsonwalsh.com
**WILKINSON WALSH + ESKOVITZ LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005

*Counsel for Defendants Bayer AG, Bayer Corporation, and Bayer HealthCare LLC*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ILANA FARAR, ANDREA LOPEZ, and ROSANNE COSGROVE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BAYER AG, BAYER CORPORATION, and BAYER HEALTHCARE LLC,<br><br>Defendants. | Case No. 3:14-CV-04601-WHO<br><br>**NOTICE OF MOTIONS AND DEFENDANTS' MOTIONS IN LIMINE**<br><br>Hearing Date: January 22, 2019<br>Time: 9:00 AM<br>Courtroom: 17th Floor<br>Judge: Hon. William H. Orrick |

**NOTICE OF MOTIONS AND MOTIONS**

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT at 9:00 a.m. on January 22, 2019, or as soon thereafter as this matter may be heard by the above-titled Court, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendants Bayer AG, Bayer Corporation, and Bayer HealthCare LLC (collectively, "Bayer") will, and hereby do, move for an Order, *in limine*:

1. To preclude evidence and argument related to Plaintiffs' dismissed "90%" claim;
2. To preclude evidence and argument related to advertisements that were not uniformly seen by the class;
3. To preclude evidence and argument related to the allegation that Bayer improperly markets One A Day multivitamins to targeted populations;
4. To preclude evidence and argument related to implied-falsity claims that are inconsistent with the record and prior proceedings in this case;
5. To preclude evidence and argument related to the allegation that One A Day multivitamins may cause harm;
6. To preclude argument that Bayer is liable for lack of substantiation; and
7. To preclude the introduction of news articles about dietary supplements.

These motions are based on this notice of motions, the memorandum of points and authorities attached hereto, and the argument of counsel at the hearing of this motion.

# TABLE OF CONTENTS

I. Plaintiffs Should Not Be Permitted to Introduce Evidence and Argument Related to Claims and Theories That Were Not Certified in this Class Action. ................................. 1

    A. Motion *In Limine* No. 1: To Preclude Evidence and Argument Related to Plaintiffs' Dismissed "90%" Claim ................................................................. 2

    B. Motion *In Limine* No. 2: To Preclude Evidence and Argument Related to Advertisements that Were Not Uniformly Seen by the Class ............................... 3

    C. Motion *In Limine* No. 3: To Preclude Evidence and Argument Related to the Allegation that Bayer Improperly Markets One A Day Multivitamins to Targeted Populations .................................................................................................. 5

II. Plaintiffs Should Be Prohibited from Arguing Implied-Falsity Claims that Are Inconsistent with the Record and Prior Proceedings in this Case (Motion *In Limine* No. 4). ................................................................................................................. 6

III. There Are Several Other Miscellaneous Categories of Evidence and Argument that Should Be Excluded. ......................................................................................... 9

    A. Motion *In Limine* No. 5: To Preclude Evidence and Argument Related to the Allegation that One A Day Multivitamins May Cause Harm ............................... 9

    B. Motion *In Limine* No. 6: To Preclude Argument that Bayer Is Liable for Lack of Substantiation ............................................................................................. 10

    C. Motion *In Limine* No. 7: To Preclude the Introduction of News Articles About Dietary Supplements .................................................................................. 10

CONCLUSION ........................................................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bober v. Glaxo Wellcome PLC*,
  246 F.3d 934 (7th Cir. 2001) ................................................................................................10

*Bronson v. Johnson & Johnson, Inc.*,
  No. C 12–04184 CRB, 2013 WL 1629191 (N.D. Cal. Apr. 16, 2013)....................................10

*Cabral v. Supple LLC*,
  608 F. App'x 482 (9th Cir. 2015) ............................................................................................3

*Calloway v. Hayward*,
  No. 1:08-cv-01896, 2017 WL 363000 (E.D. Cal. Jan. 24, 2017) .............................................2

*Davis-Miller v. Auto. Club of S. Cal.*,
  134 Cal. Rptr. 3d 551 (Cal. Ct. App. 2011) .............................................................................3

*Doe v. Texaco, Inc.*,
  No. C06-02820 WHA, 2006 WL 2850035 (N.D. Cal. Oct. 5, 2006) .....................................11

*Ebner v. Fresh*, Inc.,
  838 F.3d 958 (9th Cir. 2016) ...................................................................................................7

*English v. Apple Inc.*,
  No. 3:14-CV-01619-WHO, 2017 WL 106299 (N.D. Cal. Jan. 11, 2017) ...............................7

*Fowler v. State Farm Fire & Cas. Co.*,
  1:06CV489, 2008 WL 3050417 (S.D. Miss. July 25, 2008) ....................................................2

*Franulovic v. Coca Cola Co.*,
  390 F. App'x 125 (3d Cir. 2010) ...........................................................................................10

*Haskell v. Time, Inc.*,
  965 F. Supp. 1398 (E.D. Cal. 1997).........................................................................................7

*Heighley v. J.C. Penney Life Ins. Co.*,
  257 F. Supp. 2d 1241 (C.D. Cal. 2003) ...................................................................................7

*In re Century 21-RE/MAX Real Estate Advert. Claims Litig.*,
　882 F. Supp. 915 (C.D. Cal. 1994) ..............................................................................................7

*In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prod. Liab. Litig.*,
　No. 3:09-CV-20001, 2012 WL 865041 (S.D. Ill. Mar. 13, 2012) ..............................................3

*Khasin v. R. C. Bigelow, Inc.*,
　No. 12-CV-02204-WHO, 2016 WL 4502500 (N.D. Cal. Aug. 29, 2016) ................................7

*Quinn v. Walgreen Co.*,
　958 F. Supp. 2d 533 (S.D.N.Y. 2013) ......................................................................................10

*RPost Holdings, Inc. v. Trustifi Corp.*,
　No. CV 10-1416, 2012 WL 12952728 (C.D. Cal. May 11, 2012) ............................................7

*Runton v. Brookdale Senior Living, Inc.*,
　No, 17-60664-CIV, 2018 WL 1057436 (S.D. Fla. Feb. 2, 2018) ..............................................7

*Stewart v. Wachowski*,
　574 F. Supp. 2d 1074 (C.D. Cal. 2005) ...................................................................................11

*Stutman v. Chem. Bank*,
　731 N.E.2d 608 (N.Y. 2000) ......................................................................................................7

*Wyatt Technology Corp. v. Malvern Instruments*,
　No. CV 07-8298, 2010 WL 115055684 (C.D. Cal. Jan. 25, 2010) ...........................................2

**Rules**

Fed. R. Evid. 401 ...............................................................................................................1, 2, 9, 11

Fed. R. Evid. 402 ...............................................................................................................1, 2, 9, 11

Fed. R. Evid. 403 ................................................................................................................. *passim*

Fed. R. Evid. 802 ........................................................................................................................10

Fed. R. Evid. 803 ........................................................................................................................10

Defendants Bayer AG, Bayer Corporation, and Bayer Healthcare LLC (collectively, "Bayer") move *in limine* to preclude Plaintiffs from introducing the following categories of evidence at trial.

**I.      Plaintiffs Should Not Be Permitted to Introduce Evidence and Argument Related to Claims and Theories That Were Not Certified in this Class Action.**

The certified classes in this case consist of California, Florida, and New York consumers who purchased One A Day multivitamins with packaging stating that One A Day supports heart health, immunity, and/or physical energy. *See* Order on Class Cert. and Summ. J. ("Class Cert. Order"), ECF No. 164 at 4; Minutes from Trial Plan Conf. ("Trial Plan"), ECF No. 198 at 1. Plaintiffs do not dispute that a person's heart health, immune system, and ability to turn food into energy all require the consumption of certain essential vitamins.[1] Nor do Plaintiffs contest that One A Day multivitamins contain each of these essential vitamins. Plaintiffs also *acknowledge* that many Americans do not get the vitamins they need from diet alone—recognizing that up to 10 percent of the population do not eat the foods necessary to avoid dangerous vitamin deficiency syndromes. A far greater number fail to meet the Recommended Dietary Allowances (the "RDAs") set by the National Academy of Medicine.

Despite all that, Plaintiffs contend that Bayer's statements that One A Day is formulated with vitamins to support heart health, immunity, and energy are false. Plaintiffs' ability to persuade a jury of that claim is what the trial should be about. Nonetheless, Plaintiffs have indicated that they will attempt to stray from the falsity claim on which they obtained class certification and present evidence and argument about *other* aspects of Bayer's marketing. The Court should bar Plaintiffs from doing so under Federal Rules of Evidence 401, 402, and 403.

---

[1] Indeed, Plaintiffs' expert, Dr. Blonz agrees that vitamins and minerals are "important" to "heart, energy, and immune health" and that "without its essential vitamins and minerals, the structure and function of bodily systems, and our overall health can suffer." *See* Decl. of S. Eskovitz ("Eskovitz Decl."), Ex. A, Blonz Supp. Decl. ¶¶ 2, 3.

### A. Motion *In Limine* No. 1: To Preclude Evidence and Argument Related to Plaintiffs' Dismissed "90%" Claim

In certifying the classes, the Court held that Plaintiffs could not proceed on their claim that Bayer misled consumers by stating in its advertising that "[u]p to 90% of Americans fall short in obtaining key nutrients from food alone." Class Cert Order at 28 n.7. That marketing statement (1) was not challenged in the operative complaint, and (2) was neither seen nor relied on by the class representatives. *Id.* at 28 n.7, 29 n.8. Allowing Plaintiffs now to take issue with the "90%" statement at trial would run afoul of Federal Rules of Evidence 401, 402, and 403.[2]

In similar circumstances, courts have regularly precluded argument and evidence related to dismissed claims. For example, in *Wyatt Technology Corp. v. Malvern Instruments*, the court allowed the plaintiff to proceed on several trade-secret claims but dismissed others at summary judgment. No. CV 07-8298, 2010 WL 115055684, at *13 (C.D. Cal. Jan. 25, 2010). Before trial, the court granted the defendant's motion to preclude the plaintiff from introducing evidence related to the alleged trade secrets that were the subject of the dismissed claims. The court determined that the evidence was both irrelevant to the remaining claims and created a substantial risk of juror confusion. As the court explained: "[A] jury would at best become confused about [the plaintiff's] remaining trade secret claims and at worst be misled into compensating [the plaintiff] for claims that no longer remain in the case." *Id.*[3]

---

[2] To be clear, Bayer does not seek to exclude scientific evidence about whether Americans' nutritional needs are met by food alone. *See* Blonz Supp. Decl. ¶ 6. Rather, Bayer seeks only to exclude evidence and argument that Bayer's "90%" statement did and was intended to mislead consumers since that theory of liability has been removed from the case.

[3] *See also, e.g., Calloway v. Hayward*, 1:08-cv-01896, 2017 WL 363000, at *4 (E.D. Cal. Jan. 24, 2017) (precluding plaintiff who was pursuing excessive-force claim from bringing evidence at trial to show racial bias because plaintiff's equal protection claim had been dismissed); *Fowler v. State Farm Fire & Cas. Co.*, 1:06CV489, 2008 WL 3050417, *7 (S.D. Miss. July 25, 2008) (excluding evidence in breach-of-contract case regarding defendant's alleged fraud, as all fraud claims had been dismissed and "any probative value [the fraud evidence] might have is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury").

The same would be true here.  The "90%" marketing campaign was a substantial focus of Plaintiffs in discovery.  Plaintiffs sought information related to, among other things, Bayer's business motivations for including the "90%" statement in its advertising, how consumers interpret this statement, the statement's effect on sales, communications with drug stores about the statement, and Bayer's review process for determining if the statement was medically accurate and consistent with regulatory requirements.[4]  The admission of this evidence, or any argument related to it, would be irrelevant to the statements about heart health, immunity, and energy that Plaintiffs are permitted to challenge at trial.  Moreover, if evidence related to the "90%" statement were admitted, the jury could easily become confused about which statements it must evaluate and might be misled into assessing liability for marketing statements that are not at issue.

### B. Motion *In Limine* No. 2:  To Preclude Evidence and Argument Related to Advertisements that Were Not Uniformly Seen by the Class

False-advertising claims can proceed on a class-wide basis only where the class was uniformly exposed to alleged misrepresentations.[5]  To satisfy this requirement, Plaintiffs sought and obtained certification of classes of consumers who purchased One A Day multivitamins with packaging containing one or more of the three challenged statements.  *See*

---

[4] *See, e.g.*, Eskovitz Decl., Ex. B, Bayer 30(b)(6) Dep. of A. Cappello ("Bayer Dep. (Cappello)") at 10:10-15, 10:20-24, 76:15-82:2, 101:7-102:17; *id.* Ex. C, Dep. of A. Cappello at 61:20-74:21, 117:16-126:1, 152:17-153:3; *id.* Ex. D, Dep. of D. DeMuth ("Demuth Dep.") at 73:1-79:21; *id.* Ex. E, Dep. of G. Zisa at 149:10-14; *id.* Ex. F, Dep. of D. Siva ("Siva Dep.") at 118:7-20, 123:11-126:10, 129:18-135:8.

[5] *See Cabral v. Supple LLC*, 608 F. App'x 482, 483 (9th Cir. 2015) (holding that in false-advertising class actions, "it is critical that the misrepresentation in question be made to all of the class members"); *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prod. Liab. Litig.*, No. 3:09-CV-20001, 2012 WL 865041, at *19 (S.D. Ill. Mar. 13, 2012) ("[A] class action may be denied where individual proof would be necessary to determine whether fraudulent representations were actually made to each class member and/or putative class members were not exposed to the same fraudulent representations."); *Davis-Miller v. Auto. Club of S. Cal.*, 134 Cal. Rptr. 3d 551, 564-65 (Cal. Ct. App. 2011) ("An inference of classwide reliance cannot be made where there is no evidence that the allegedly false representations were *uniformly* made to all members of the proposed class." (emphasis added)).


Class Cert. Order at 4; *see also* Trial Plan at 1.[6]  They did not seek certification of a class of consumers who were exposed to marketing materials *other than* the packaging.  And for good reason.  There is simply no evidence that all, or even a significant portion of, One A Day consumers were uniformly exposed to any particular commercial or advertisement.  Indeed, at least one of the class representatives testified that she did not recall seeing any One A Day advertisements *at all* before she purchased the multivitamins.  *See* Decl. of S. Eskovitz ("Eskovitz Decl."), Ex. G, Dep. of R. Cosgrove at 313:23-314:12, 315:2-13, 320:23-321:11.

Nonetheless, throughout the litigation, Plaintiffs have referenced commercials and advertisements as purportedly relevant to their claims.  *See, e.g.*, Second Am. Compl., ECF No. 58 ¶¶ 35-36, 50, 53, 71-72; Pls.' Opp. to Defs.' First Mot. To Dismiss, ECF No. 40 at 19-20; Pls.' Opp. to Defs.' Second Mot. To Dismiss, ECF No. 61 at 9.  Many of these promotional pieces contain statements that have nothing to do with heart health, immunity, or energy.  *See, e.g.*, One A Day VitaCraves TV Commercial, "Let's Do More," https://www.ispot.tv/ad/7Jid/one-a-day-vitacraves-gummies-lets-do-more (cited in Second Am. Compl. ¶ 9 n.14) (stating that One A Day VitaCraves Gummies support bone health, which is not a challenged claim).  And none of them are materials for which Plaintiffs have any proof of uniform class-wide exposure.

The Court should not permit Plaintiffs to present these materials to the jury.  They do not make it any more or less likely that the statements on the One A Day packaging are false; nor are they relevant to any other disputed issue in the case.  Moreover, permitting Plaintiffs to present these non-packaging advertisements could very well lead the jury to decide this case on improper grounds.  In particular, the jury might reject Plaintiffs' claims that the statements on the One A Day packaging are somehow misleading—but nonetheless return a verdict against Bayer because they believe a particular TV commercial was misleading, even though there is

---

[6] While conforming these motions to the Court's prior rulings, Defendants reserve their objection to class certification, including because it cannot be assumed that all class members would have seen the challenged claims on the packages.

no evidence about what portion of the class saw the TV commercial before purchasing One A Day multivitamins and the commercial was not the basis for certification.

### C. Motion *In Limine* No. 3:  To Preclude Evidence and Argument Related to the Allegation that Bayer Improperly Markets One A Day Multivitamins to Targeted Populations

The same reasoning applies to Plaintiffs' assertion that Bayer improperly "targets" particular groups—based on their age, gender, and health concerns—through the marketing of One A Day sub-brands (*e.g.*, One A Day Men's 50+).  Dr. Blonz would be Plaintiffs' main witness on this topic.  He states in his expert report that Bayer's "targeting" is misleading because it "is not based on any tests of the Products on these various populations," and "[i]n order to make these age- [and] gender- . . . specific claims, Bayer should have substantiation—i.e., testing of the Products on the population they're marketed to."  Eskovitz Decl., Ex. A, Blonz Supp. Decl. ¶¶ 11-12.[7]  Dr. Blonz should not be permitted to offer this opinion at trial, and Plaintiffs should not be permitted to argue to the jury that Bayer should be held liable for marketing One A Day multivitamins to specific populations.  That is true for several reasons.

*First*, any allegation that Bayer's marketing of One A Day multivitamins to specific populations is misleading has no relevance to whether One A Day multivitamins support heart health, immunity, or physical energy—the three marketing statements that are actually challenged in this case.

*Second*, reliance on the evidence of this alleged "targeting" would be inconsistent with class-wide treatment of Plaintiffs' claims.  While every class member purchased One A Day multivitamins with at least one of the challenged statements, class members did not uniformly purchase products marketed to a single population; they purchased a variety of different One A

---

[7] Plaintiffs have also designated portions of the deposition of Dr. Debra DeMuth, Bayer's director of U.S. Medical Affairs, in which Plaintiffs' counsel questioned her about testing of and substantiation for claims on products marketed to specific populations.  *See, e.g.*, DeMuth Dep. at 55:7-21, 57:6-13, 58:22-59:13.  As Dr. DeMuth explained, each sub-brand of multivitamins is specifically formulated for population to which it is advertised. *Id.* at 49:24-55:2.  For example, multivitamins for women often have more vitamin D because "women have characteristically lower vitamin D levels than men." *Id.* at 50:8-16.

Day multivitamins marketed to a variety of different populations, as well as sub-brands not marketed to any specific population. Accordingly, any suggestion that marketing to a particular population is misleading would have no relevance to the claims of class members outside that population. *See supra* at 3-4 n.5 (class actions require uniform exposure to the alleged deceptive practices).

*Third*, such evidence and argument would waste time and potentially confuse the jury. If plaintiffs were permitted to suggest that Bayer's targeted marketing is misleading, Bayer would be forced to respond with scientific evidence of how each of these particular groups is likely to benefit from the specific formulations of multivitamins used in its sub-brands. These mini-trials would be extremely time consuming and could potentially mislead the jury into deciding liability based on alleged misrepresentations that are not the basis of Plaintiffs' claims.

## II. Plaintiffs Should Be Prohibited from Arguing Implied-Falsity Claims that Are Inconsistent with the Record and Prior Proceedings in this Case (Motion *In Limine* No. 4).

As noted above, Plaintiffs do not dispute that the heart, the immune system, and the body's ability to make energy all require certain vitamins. Nor do they dispute that One A Day contains those micronutrients. Thus, at trial, Plaintiffs will not (and cannot) contend to the jury that the challenged statements—support for heart health, immunity, and physical energy—are literally false. Instead, in seeking certification, Plaintiffs explained that they will contend these statements are impliedly false because they suggest One A Day will provide heart, immunity, and energy support to *almost anyone* who takes them, regardless of how well they already eat and how much of their essential vitamins they get from food. In fact, according to Plaintiffs, the only people who get any benefit from multivitamins are the 10 percent of Americans that have developed a biochemical deficiency.[8]

---

[8] As for those people who do not suffer such a deficiency but nonetheless fail to consume the RDA for one or more vitamins, Plaintiffs contend that taking a multivitamin provides no benefit to heart, immunity, or physical energy. Instead, Plaintiffs' position is that, as long as a person

-6-

To succeed at trial on these implied falsity claims, Plaintiffs must prove, among other things, that (1) a reasonable consumer would understand the challenged statements to have this purported meaning; and that (2) the challenged statements, so understood, are false. *See Ebner v. Fresh*, Inc., 838 F.3d 958, 965 (9th Cir. 2016); *Stutman v. Chem. Bank*, 731 N.E.2d 608, 611-12 (N.Y. 2000); *Runton v. Brookdale Senior Living, Inc.*, 17-60664-CIV, 2018 WL 1057436, at *4 (S.D. Fla. Feb. 2, 2018). To meet this first requirement, Plaintiffs must introduce competent and sufficient extrinsic evidence, such as a consumer survey establishing how consumers understand the statements at issue.[9] Here, Plaintiffs do not have such a consumer survey, nor have they identified any other extrinsic evidence that they intend to use to demonstrate the implied meaning of their claims.[10] Thus, it remains unclear how Plaintiffs

---

has cleared the cut-off for biochemical deficiency, there is no benefit to increasing vitamin intake any higher, including to meet the RDA.

[9] *See RPost Holdings, Inc. v. Trustifi Corp.*, No. CV 10-1416, 2012 WL 12952728, at *10 (C.D. Cal. May 11, 2012) ("Although the Ninth Circuit has not strictly delimited the type of extrinsic evidence required to demonstrate consumers have been misled or confused, acceptable types of proof may include consumer surveys or declarations from consumers." (citation omitted)); *Heighley v. J.C. Penney Life Ins. Co.*, 257 F. Supp. 2d 1241, 1260–61 (C.D. Cal. 2003) ("To prevail, a plaintiff must demonstrate by extrinsic evidence, such as consumer survey evidence, that the challenged statements tend to mislead consumers. To state a cognizable claim, a plaintiff must demonstrate that a statistically significant part of the commercial audience holds the false belief allegedly communicated by the challenged advertisement." (citations and internal quotation marks omitted)); *Haskell v. Time, Inc.*, 965 F. Supp. 1398, 1407 (E.D. Cal. 1997) ("Furthermore, anecdotal evidence alone is insufficient to prove that the public is likely to be misled. Thus, to prevail, plaintiff must demonstrate by extrinsic evidence, such as consumer survey evidence, that the challenged statements tend to mislead consumers." (citations and internal quotation marks omitted)); *In re Century 21-RE/MAX Real Estate Advert. Claims Litig.*, 882 F. Supp. 915, 922-23 (C.D. Cal. 1994) ("However, if a plaintiff cannot show literal falsity and instead relies on a claim of an implied falsehood, the plaintiff must prove, by extrinsic evidence, the challenged advertisements tend to mislead or confuse consumers." (citations and internal quotation marks omitted).

[10] Plaintiffs appear to try to rely solely on the testimony of the class representatives to establish the implied meaning of the claims. But the law is clear that "a few isolated examples of actual [alleged] deception are insufficient" to establish that an entire class of consumers interpreted a statement to have the same deceptive meaning. *English v. Apple Inc.*, No. 3:14-CV-01619-WHO, 2017 WL 106299, at *15 (N.D. Cal. Jan. 11, 2017) (citations and internal quotation marks omitted); *see also Khasin v. R. C. Bigelow, Inc.*, No. 12-CV-02204-WHO, 2016 WL 4502500, at *4 (N.D. Cal. Aug. 29, 2016) ("[I]ndividual testimony is insufficient to establish that a

will carry their burden on this critical issue. One thing, however, is clear: Whatever their evidence may be, Plaintiffs should not be permitted to present to the jury an implied falsity theory on which they did *not* obtain certification.

Plaintiffs have elsewhere suggested that they may attempt to pursue other *un*-certified theories of implied falsity. For example, Ilana Farar testified at her deposition that she believed Bayer's marketing implies that One A Day multivitamins are "completely different than the other multivitamins on the market," Eskovitz Decl., Ex. H, Dep. of I. Farar at 94:3-6—even though competitor multivitamins make *exactly* the same marketing statements about heart health, immunity, and physical energy, and there is no extrinsic evidence to support Ms. Farar's interpretation of the statements on One A Day multivitamins.

During the meet-and-confer process, Plaintiffs refused to confirm that they would stick to the theory of implied falsity on which they sought and obtained class certification. The Court should make clear that this will not be permitted. In addition to being inconsistent with the Court's certification order, switching or expanding their theory—including by suggesting that the challenged statements have *multiple* implied meanings that are false—would unfairly prejudice Bayer's defense and significantly increase the complexity and duration of the trial. *See* Fed. R. Evid. 403. Bayer would have no choice but to introduce evidence demonstrating that each of the potential implied meanings suggested by Plaintiffs is scientifically accurate. And, in the process, the jury would be exposed to numerous alleged implied claims for which there is no competent extrinsic evidence.

---

reasonable consumer is likely to be misled as required under the reasonable consumer test."), *aff"d sub nom. Victor v. R.C. Bigelow, Inc.*, 708 F. App'x 333 (9th Cir. 2017).

### III. There Are Several Other Miscellaneous Categories of Evidence and Argument that Should Be Excluded.

**A. Motion *In Limine* No. 5: To Preclude Evidence and Argument Related to the Allegation that One A Day Multivitamins May Cause Harm**

Plaintiffs should not be permitted to argue or introduce evidence suggesting that micronutrient supplements such as One A Day can cause physical harm because such allegations are irrelevant to Plaintiffs' claims. *See* Fed. R. Evid. 401-403.

Dr. Blonz, for example, relies on NIH fact sheets addressing the harms that can be caused by taking too much of a micronutrient. The vitamin B6 fact sheet he cites states that excessive amounts of vitamin B6 can cause "severe nerve damage," "painful, unsightly skin patches, extreme sensitivity to sunlight, nausea, and heartburn." National Institutes of Health, *Vitamin B6 Fact Sheet for Consumers* at 2 (2016), *available at* https://ods.od.nih.gov/pdf/factsheets/VitaminB6-Consumer.pdf (cited in Blonz Supp. Decl). Likewise, the vitamin A fact sheet he cites states that excessive vitamin A consumption by pregnant women can "cause birth defects." National Institutes of Health, *Vitamin A Fact Sheet for Consumers* at 2 (2016), *available at* https://ods.od.nih.gov/pdf/factsheets/Vitamina-Consumer.pdf (cited in Blonz Supp. Decl).

This evidence, however, is irrelevant to Plaintiffs' claims in this case. Plaintiffs are not seeking recovery for alleged physical harms suffered by class members. They are seeking a full refund of the purchase price based on the allegation that consumers would not have purchased One A Day multivitamins absent the challenged statements, which Plaintiffs allege are false. *See* Class Cert. Order at 15-18. Evidence of potential harms caused by excessive consumption of micronutrients is not relevant to whether the challenged statements are true, nor is it relevant to the alleged economic losses suffered by class members.

Even if these statements did have some minimal probative value, it would be substantially outweighed by confusion of the issues and wasting time. Though it is possible for humans to consume too much of a micronutrient (through food or supplementation), One A Day multivitamins are formulated to avoid consumers exceeding the Tolerable Upper Intake

Levels ("ULs") for each micronutrient they contain. Among other things, permitting evidence of harm would require Bayer to put on unnecessary and time-consuming evidence about, among other things, the very small risk of excessive micronutrient consumption, how ULs are determined, and the actions Bayer takes to prevent consumers from exceeding the ULs. It might also lead the jury to decide Plaintiffs' claims based of these unrelated harms instead of truth of the statements that Plaintiffs challenge.

### B. Motion *In Limine* No. 6: To Preclude Argument that Bayer Is Liable for Lack of Substantiation

Plaintiffs also may not argue that Bayer should be held liable because the three challenged statements lack substantiation. As this Court has held, Plaintiffs must prove that the challenged claims are false, not that they simply lack sufficient substantiation. Order on Mot. to Dismiss, ECF No. 54 at 13-14; *see also Bronson v. Johnson & Johnson, Inc.*, No. C 12–04184 CRB, 2013 WL 1629191, at *8 (N.D. Cal. Apr. 16, 2013) (California law); *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013) (New York law).[11] Consistent with this legal requirement, Plaintiffs should not be allowed to suggest to the jury that lack of substantiation, by itself, is sufficient to demonstrate liability.

### C. Motion *In Limine* No. 7: To Preclude the Introduction of News Articles About Dietary Supplements

Plaintiffs should be precluded from introducing at trial news articles, including articles reporting on the value or utility of multivitamins, because such articles are inadmissible hearsay not subject to any exception. *See* Fed. R. Evid. 802-803. In particular, Bayer anticipates that Plaintiffs may seek to introduce a series of recent news articles reporting that vitamins are "useless,"[12] or articles indicating that the FDA fails to regulate effectively the

---

[11] Florida courts have not yet decided this issue, but there is no reason to believe they will disagree with the law of California, New York, and other states. *See, e.g.*, *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 939 n.2 (7th Cir. 2001) (Illinois law); *Franulovic v. Coca Cola Co.*, 390 F. App'x 125, 127-28 (3d Cir. 2010) (New Jersey law).

[12] *See, e.g.*, Lindsay Dodgson, *There's even more evidence to suggest popular vitamin supplements are essentially useless*, BUSINESS INSIDER (May 29, 2018), *available at*

multivitamin industry.[13]  *See* Eskovitz Decl., Ex. F, Dep. of D. Siva ("Siva Dep.") at 76:20-79:13 (testimony designated by Plaintiffs about such articles).

Plaintiffs would be offering these articles for their truth—by, for example, introducing an article stating that multivitamins are "useless" to support Plaintiffs' contention that One A Day multivitamins do not support heart health, immunity, and energy.  But it is well-established that "newspaper articles do not fall within any exception to the hearsay rule."  *Doe v. Texaco, Inc.*, No. C06-02820 WHA, 2006 WL 2850035, at *3 (N.D. Cal. Oct. 5, 2006); *see also*, *e.g.*, *Stewart v. Wachowski*, 574 F. Supp. 2d 1074, 1090 (C.D. Cal. 2005).  Accordingly, this evidence should be excluded.

In addition, to the extent that Plaintiffs' attempt to argue that these news articles are admissible because Bayer's "90%" marketing campaign was, in part, a reaction to those articles, such evidence is irrelevant and would be unduly prejudicial.  *See* Fed. R. Evid. 401-403.  As discussed, Plaintiffs' claim that the "90%" marketing statements are false has been dismissed and delving into the motivations for that marketing campaign is the precise type of sideshow that Plaintiffs should not be permitted to put on to try to distract the jury from the issues that are properly in dispute.  Plaintiffs' claims should stand and fall based on their ability to show that the three challenged claims (support for heart health, immunity, and physical energy) are false.  *See supra* at 6-8.  Evidence related to any other marketing statements is a distraction that might confuse the jury and would waste both the jury's and Court's time.

## CONCLUSION

Defendants respectfully request that the Court grant their motions *in limine*.

---

https://www.businessinsider.com/most-vitamin-supplements-are-useless-according-to-new-study-2018-5.

[13] *See, e.g.*, Erin Brodwin, *The $37 billion supplement industry is barely regulated—and it's allowing dangerous products to slip through the cracks*, BUSINESS INSIDER (Nov. 8, 2017), *available at* https://www.businessinsider.com/supplements-vitamins-bad-or-good-health-2017-8.

1 | Dated: January 8, 2019

Respectfully submitted,

By: /s/ Sean Eskovitz

**WILKINSON WALSH + ESKOVITZ LLP**
Sean Eskovitz (SBN 241877)
*seskovitz@wilkinsonwalsh.com*
11601 Wilshire Blvd., Suite 600
Los Angeles, CA 90025
Telephone: (424) 316-4000
Facsimile: (202) 847-4005


**WILKINSON WALSH + ESKOVITZ LLP**
Alexandra M. Walsh (*pro hac vice*)
*awalsh@wilkinsonwalsh.com*
Brian L. Stekloff (*pro hac vice*)
*bstekloff@wilkinsonwalsh.com*
James M. Rosenthal (*pro hac vice*)
*jrosenthal@wilkinsonwalsh.com*
Kieran Gostin (*pro hac vice*)
*kgostin@wilkinsonwalsh.com*
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005


*Counsel for Defendants Bayer AG, Bayer Corporation, and Bayer HealthCare LLC*