Sean Eskovitz (SBN 241877)
*seskovitz@wilkinsonwalsh.com*
**WILKINSON WALSH + ESKOVITZ LLP**
11601 Wilshire Blvd., Suite 600
Los Angeles, CA 90049
Telephone: (424) 316-4000
Facsimile: (202) 847-4005

Alexandra M. Walsh (*pro hac vice*)
*awalsh@wilkinsonwalsh.com*
Brian L. Stekloff (*pro hac vice*)
*bstekloff@wilkinsonwalsh.com*
James M. Rosenthal (*pro hac vice*)
*jrosenthal@wilkinsonwalsh.com*
Kieran Gostin (*pro hac vice*)
*kgostin@wilkinsonwalsh.com*
**WILKINSON WALSH + ESKOVITZ LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005

*Counsel for Defendants Bayer AG, Bayer
Corporation, and Bayer HealthCare LLC*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ILANA FARAR, ANDREA LOPEZ, and ROSANNE COSGROVE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>*v.*<br><br>BAYER AG, BAYER CORPORATION, and BAYER HEALTHCARE LLC,<br><br>Defendants. | Case No. 3:14-CV-04601-WHO<br><br>**DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW FOLLOWING PHASE I** |

**INTRODUCTION**

Understanding the Court deemed this motion filed at the close of evidence yesterday, Defendants were about to file it when the jury issued its verdict, and file now out of an abundance of caution.  For the reasons set forth below, Defendants are entitled to judgment as a matter of law on all of Plaintiffs' claims.  This motion is limited to the issues litigated in Phase I per the Court's Trial Plan, as well as (out of an abundance of caution) issues of liability not included in the Trial Plan.  Defendants will raise any arguments related to issues scheduled to be litigated in Phase II or otherwise relevant to damages as necessary following any Phase II proceedings.

**LEGAL STANDARD**

The Court may grant a motion for judgment as a matter of law against a party on an issue if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."  Fed. R. Civ. P. 50(a).  Judgment as a matter of law is appropriate where "the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion."  *Fujifilm Corp. v. Motorola Mobility LLC*, 182 F. Supp. 3d 1014, 1020 (N.D. Cal. 2016) (Orrick, J.) (quoting *White v. Ford Motor Co.*, 312 F.3d 998, 1010 (9th Cir. 2002)).  But "[n]either a 'mere scintilla' of evidence, nor pure speculation, is enough" to tip the scales for the non-moving party.  *Id.* (quoting *Lakeside–Scott v. Multnomah Cty.*, 556 F.3d 797, 802–03 (9th Cir. 2009)).

**ARGUMENT**

I.   **PLAINTIFFS' CLAIMS ARE PREEMPTED UNDER FEDERAL LAW**

   A.   **All of Plaintiffs' Claims Are Expressly Preempted**

      1.   **Plaintiffs put on no evidence that the Challenged Statements are false and misleading *as structure/function statements***

The Court has permitted Plaintiffs to challenge as alleged violations of state law three specific statements (the "Challenged Statements") that appeared on the labels of certain One A Day multivitamins throughout the class period.  *See* Second Amended Compl., ECF No. 58, ¶¶

89–153.  These Challenged Statements state that One A Day multivitamins are formulated to "support" heart health, immunity, and physical energy.  *Id.* ¶¶ 6, 34, 50, 69.

The federal Dietary Supplement Health and Education Act of 1994 (DSHEA), Pub. L. No. 103–417, 108 Stat. 4325, and FDA's implementing regulations, 21 C.F.R. § 101.93, allow supplement manufacturers to make "structure/function statements."  As relevant here, two types of permissible structure/function statements are those that "describe[] the role of a nutrient or dietary ingredient intended to affect the structure or function in humans," and "characterize[] the documented mechanism by which a nutrient or dietary ingredient acts to maintain such structure or function."  21 U.S.C. § 343(r)(6)(A); 21 C.F.R. § 101.93(f).[1]  Such statements may "use general terms such as 'strengthen,' 'improve,' and 'protect'" to describe structure/function effects.  *Dachauer v. NBTY, Inc.*, 913 F.3d 844, 847 (9th Cir. 2019) (citing 65 Fed. Reg. at 1012, 1028).  As this Court has recognized, FDA guidance also permits structure/function statements such as "helps maintain cardiovascular function and a healthy circulatory system" or "supports the immune system."  Order on First Mot. to Dismiss, ECF No. 54 at 10, 11 (citing 65 Fed. Reg. 1000 at 1012, 1029).

The Court has already determined that the Challenged Statements are structure/function statements.  Order on First Mot. to Dismiss, ECF No. 54 at 10, 11.  As a result, Plaintiffs can only challenge those statements by showing that each is "false and misleading" "*as a structure/function claim*."  *Id.* (emphasis added); *see also* Order Denying Leave to File Add'l Mot. for Summ. J., ECF No. 279 at 1 (Plaintiffs will have to prove the Challenged Statements "do not support heart health, immunity, or energy.").  At trial, Plaintiffs put on zero evidence to support such a claim.  Accordingly, Defendants are entitled to judgment as a matter of law.

As the Ninth Circuit as explained, federal law requires a manufacturer to satisfy three requirements when making a structure/function statement:

---

[1] 21 U.S.C. § 343(r)(6)(A) also permits structure/function statements that "claim[] a benefit related to a classical nutrient deficiency disease and disclose[] the prevalence of such disease in the United States" or "describe[] general well-being from consumption of a nutrient or dietary ingredient."  Those types of structure/function statements are not at issue here.

> (1) the manufacturer has substantiation that the statement is truthful and not misleading; (2) the statement contains a prominent disclaimer that the [FDA] has not evaluated the statement and that the product "is not intended to diagnose, treat, cure, or prevent any disease"; and (3) the statement itself does not "claim to diagnose, mitigate, treat, cure, or prevent" disease.

*Dachauer*, 913 F.3d at 846–47 (quoting 21 U.S.C. § 343(r)(6)).

The second and third requirements are not at issue here. Plaintiffs do not contest—and put on no relevant evidence at trial—that Defendants include the appropriate disclaimer on all of its One A Day multivitamins. And this Court already rejected Plaintiffs' attempts to proceed on a theory that the Challenged Statements "claim to diagnose, mitigate, treat, cure or prevent" disease. Order on First Mot. to Dismiss, ECF No. 54 at 11; *see also* Order Denying Leave to File Add'l Mot. for Summ. J., ECF No. 279 at 1 (noting that disease claims "are no longer at issue in this case").

As to the first requirement, the Ninth Circuit has explained that structure/function statements are substantiated as "truthful and not misleading," as long as the manufacturer has "evidence that a supplement has some structural or functional effect on a given part of the human body." *Dachauer*, 913 F.3d at 846, 848 (citing 65 Fed. Reg. at 1012.). This is not intended to be an onerous requirement: Manufacturers may "substantiate structure/function claims *with evidence of an effect on a small aspect* of the related structure/function." *Id.* at 847 (emphasis added) (citing 65 Fed. Reg. at 1012).

What federal law does (and does not) require for a manufacturer to substantiate a structure/function statement means that a plaintiff seeking to challenge such a statement under state law must target their attack at a single, specific target—or else run headlong into the FDCA's preemption provision. *Id.* at 846–48. If a plaintiff can demonstrate that the "nutrient or dietary ingredient[s]" in a supplement do not have "some structural or functional effect" on the part of the body the supplement claims to support, *id.* at 848, the lawsuit can go forward. In those limited circumstances, a state-law claim would not threaten to impose a requirement that "differ[s] from the FDCA's requirements." *Id.* Rather, such a theory would merely seek to

enforce FDA's requirement that the ingredients in the supplement have some effect on the structure or function in question.

But Plaintiffs in this case chose not to proceed under such a theory.  And with good reason.  It is undisputed that the "nutrient or dietary ingredients" in One A Day multivitamins do have "some structural or functional effect" on heart health, immunity, and physical energy. Indeed, Plaintiffs' only expert, Dr. Edward Blonz, has repeatedly conceded this point.  *See, e.g.*, Feb. 19th Tr. at 313:7–9 ("I would agree that those nutrients [listed on the One A Day Women's box] cited for those specific functions do play a role in the human body, yes.").[2]

### 2. Plaintiffs' theory that the "average" consumer does not receive a benefit from One A Day is preempted

Instead of asserting that the micronutrients in One A Day multivitamins have no effect on heart health, immunity, and energy, Plaintiffs' challenge to Defendants' structure/function statements rests on an entirely different theory.  Plaintiffs contend that these statements are false because the "average" consumer does not receive any benefit to heart health, immunity, or physical energy from One A Day multivitamins since the "average" consumer supposedly receives all the nutrients she needs for these functions from food alone.  *See* Order on Class Cert. & Summ. J., ECF No. 164 at 3 (citing Second Amended Compl. ¶¶ 8–10; Pls.' Opp. to MSJ, ECF No. 141 at 10; Blonz Decl., ECF No. 129-38); Feb 19th Tr. at 179:25 –180:3 (Plaintiffs

---

[2] *See also id.* at 314:14–18 (agreeing that "Vitamins A, C, E, selenium and zinc[] have a role or factor in your body's immune system"); 314:19–21 (agreeing that listed nutrients support heart health and physical energy); Feb. 20th Tr. at 400:12–19 (agreeing that "vitamins and nutrients" in One A Day multivitamins "have to do with the body's function of the heart" and "play a role in how the heart functions"); 402:8–12 (agreeing that "Vitamins A, C, E, Selenium and Zinc" "play a role" "in the body's immune system"); 404:3–6 (agreeing that "B Vitamins and chromium" "play a role" "in the body function of converting food to energy"); 434:5–12 (agreeing that "all of these vitamins and minerals that are identified on the One A Day package as being formulated to support heart health, immune health, physical energy . . . are involved in heart health and immunity and physical energy"); 434:13–16 (vitamin and minerals on the One A Day package "play a role in the bodily processes that relate to how the heart functions, immune system and how your body gets energy from food"); 515:22–516:1 (agreeing that "vitamins listed do play the roles that I described in the human body").

claiming they will show the jury "that for the average consumer the One A Day multivitamin[] does not provide the benefits they say it does").[3]

Because Plaintiffs seek to impose state-law requirements that differ from federal law, their claims are preempted. *Dachauer*, 913 F.3d at 847–48. In *Dachauer*, the plaintiffs challenged structure/function statements that certain Vitamin E supplements would "promote" heart and immune health based on allegations that the supplements did not actually reduce the risk of heart disease or mortality. *Id.*, at 846. In concluding that those claims were preempted, the Ninth Circuit emphasized that to make a structure/function statement under federal law, manufacturers must have "evidence that a supplement has some structural or functional effect on a given part of the human body." *Id.* at 848 (citing 65 Fed. Reg. at 1012). But "[m]anufacturers need *not* also have evidence that those structural or functional effects reduce the risk of developing a certain disease." *Id.* (emphasis added); *see also id.* at 849 ("The FDCA does not require that manufacturers substantiate structure/function claims about immune health with proof that their supplements reduce the risk of all-cause mortality."). As a result, the plaintiffs' claims in *Dachauer* would have improperly imposed state-law requirements "differ[ent] from the FDCA's labeling requirements" by requiring manufacturers to substantiate structure-function statements with disease evidence. *Id.* at 849.

---

[3] *See also*, *e.g.*, *id.* at 185:20–22 (Plaintiffs claimed that, "[f]or the average consumer the One A Day Multivitamin[] does not provide more heart health, more immune health or more physical energy."); 190:5–6 (Plaintiffs claimed the jury would "hear testimony that for the average person [vitamins] are not necessary and they don't do anything for you"); 193:21–25 (Plaintiffs claimed they would show the jury that One A Day "does not provide more heart health to the average consumer, does not provide more immunity to the average consumer, and certainly doesn't provide more physical energy"); 335:18–21 (Dr. Blonz opining that "for the average consumer" there is "no evidence" that One A Day "supports immune health"); Feb. 20th Tr. at 396:6–9 (Dr. Blonz opining that "if an average consumer is getting the vitamins and minerals they need" a multivitamin will not "provide any benefit to them"); 401:4–6 (Dr. Blonz testifying that "[t]here's no evidence that you need these nutrients from this product, especially in light of the fact that the average consumers is getting what they need from the foods they eat"); 402:24–403:4 (according to Dr. Blonz, there is "no evidence" that for an "average consumer" the vitamins and nutrients in One A Day would "do anything for immune health"); 436:6–11 (according to Dr. Blonz, "unless someone is biochemically deficient," "a multivitamin will not provide any benefit to them"); Feb. 21st Tr. at 621:8–622:3 (Ms. Farar agreeing that basis for this lawsuit is that "multivitamins don't provide a benefit to people who don't have a biochemical deficiency").

-5-

1    As this Court has noted, *Dachauer* involved a plaintiff's attempt to challenge a

2    structure/function statement as a disease claim.  But the Ninth Circuit's reasoning in rejecting

3    *Dachauer*'s claim applies to and forbids the theory of falsity on which Plaintiffs have attempted

4    to prove their claims at trial.  As in *Dachauer*, Plaintiffs do not contend that Defendants lack the

5    substantiation that federal law requires to render a structure/function statement "truthful and not

6    misleading."  Instead, as in *Dachauer*, Plaintiffs seek to hold Defendants liable for making

7    structure/function statements without satisfying *additional* requirements, such as obtaining

8    substantiation that One A Day multivitamins will provide a nutritional benefit to some minimum

9    percentage of potential consumers or expressly informing consumers that One A Day

10   multivitamins will not provide a benefit to anyone already obtaining all the nutrients her body

11   requires from food.  *See* Feb. 19th Tr. at 242:10 –17 (One A Day packaging should include a

12   disclaimer that "this product will not give you immediate energy"); 246:16–18 (One A Day

13   should include a disclaimer that "tell[s] people: You're not going to get a boost of energy"); Feb.

14   20th Tr. at 495:6–10 (Dr. Blonz agreeing that One A Day packaging "would be fine and actually

15   ideal if just the word[] 'Normal' were added before 'Heart health, immune health and physical

16   energy'"); Feb. 21st Tr. at 612:11 –18 (Ms. Farar suggesting label should say "[i]f you're eating

17   healthy then you probably don't need this vitamin").

18        None of those additional requirements exist anywhere in federal law.  Quite the opposite:

19   Federal law specifically authorizes manufacturers to use language like "protect," "strengthen,"

20   and as most relevant here, "support," without requiring any evidence or disclosure about how

21   many people the supplement will actually benefit.  65 Fed. Reg. at 1012, 1028, 1029.  That is not

22   an accident—in many other contexts, including for *other types of structure/function statements*,

23   both Congress and FDA have shown they know how to impose such requirements.[4]  But they

24   have not done so here.

25

26   ───────────────

27   [4] *See, e.g.*, 21 U.S.C. § 343(r)(6)(A) (for structure/function statements that "claim[] a benefit
     related to a classical nutrient deficiency disease," requiring "disclos[ure of] the prevalence of
     such disease in the United States"); *id.* § 343(r)(3)(B)(iii) (claims about the relationship of

28   certain nutrients to "a disease or health-related condition" must include information enabling
     "the public to comprehend the information provided in the claim and to understand the relative

-6-

If Plaintiffs were to prevail, it would mean that henceforth, Defendants or any other supplement manufacturer could make structure/function statements *specifically permitted by federal law*—using language *expressly endorsed by FDA*—only if the manufacturer *also* informed consumers that a certain percentage of people would not benefit from the supplement because, for example, they already receive the nutrients their bodies require from food.  This is a textbook case of preemption:  Plaintiffs' state-law claims are prohibited because they would "impose labeling requirements under [state] law that differ from the FDCA's requirements." *Dachauer*, 913 F.3d at 847.

### 3. California's Sherman Law incorporates federal standards and therefore cannot serve as the basis of liability

Plaintiffs' claim under California's Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875 *et seq.*, fails for an additional reason:  As Plaintiffs recognize in their Complaint, the Sherman Law explicitly incorporates federal standards.  *See* Second Am. Compl., ECF No. 58 at 12 n.22, 18 n.29.  Given that FDA has recognized that the Challenged Statements are permissible structure/function statements, *see supra*, p. 2, and does not require Defendants to include information about how many consumers may benefit, *see supra*, p. 6, California's Sherman law must be understood to do the same.

### B. Plaintiffs' Claims Run Afoul of Congressional Intent and Are Thus Impliedly Preempted

To the extent Plaintiffs' claims are not expressly preempted by DSHEA and FDA's implementing regulations, enforcing the state laws in question as Plaintiffs seek to would stand as an obstacle to—indeed, would completely undermine—Congress's goals in enacting DSHEA.  As such, their claims run afoul of conflict preemption principles and cannot succeed.  *See Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372–73 (2000) (state law is preempted where,

---

significance of such information in the context of a total daily diet"); 21 C.F.R. § 101.9(j)(8)(ii) (exempting "medical food" from certain labeling requirements only if, *inter alia*, "[i]t is intended for the dietary management of a patient who, because of therapeutic or chronic medical needs, has limited or impaired capacity to ingest, digest, absorb, or metabolize ordinary foodstuffs or certain nutrients, or who has other special medically determined nutrient requirements, the dietary management of which *cannot be achieved by the modification of the normal diet alone*").

"'under the circumstances of a particular case, the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress'" (citation omitted)); *Credit Suisse First Bos. Corp. v. Grunwald*, 400 F.3d 1119, 1133 (9th Cir. 2005) (citing *Crosby*, 530 U.S. at 372); *see also Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 869–70, 884–85 (2000) (conflict preemption may apply even when a statute includes an express preemption provision).

In enacting DSHEA, Congress sought to implement "a rational Federal framework" for regulating dietary supplements. Pub. L. No. 103-417, at § 2(15)(B), 108 Stat. at 4326. That framework was intended to eliminate the "patchwork" of state laws regulating such supplements prior to DSHEA. *Id.* And the fact that federal law expressly authorizes using such statements in the *exact way Defendants employed them here*, *see* 65 Fed. Reg. 1000 at 1012, 1029, 1030, shows a clear federal policy to allow Defendants to take precisely the actions they took. *See also, e.g.*, Pub. L. No. 103-417, at § 2(15)(A) ("protect[ing] the right of access of consumers to safe dietary supplements is necessary in order to promote wellness").

Plaintiffs, however, seek something different. In attempting to prosecute their claims via the state laws in question, Plaintiffs would expose supplement manufacturers to liability under the laws of 50 different states. Allowing them to do so would restore the patchwork regime Congress sought to eliminate and undercut the nationwide framework established by DSHEA. Not only that, Plaintiffs would use state law to completely rewrite federal labeling requirements for supplements, including by prohibiting the use of structure/function statements that Congress specifically authorized and sought to encourage.

Accordingly, Plaintiffs' claims are preempted. *See Crosby*, 530 U.S. at 373 ("state law must yield to the regulation of Congress" when federal law would be "frustrated and its provisions be refused their natural effect"); *Geier*, 529 U.S. at 886 ("rule of state . . . law for which petitioners argue would stand as an 'obstacle' to the accomplishment of [government's] objective" and was therefore preempted); *see also Ark. Elec. Co-op. Corp. v. Ark. Pub. Serv. Comm'n*, 461 U.S. 375, 384 (1983) ("[A] federal decision to forgo regulation in a given area may imply an authoritative federal determination that the area is best left unregulated, and in that

-8-

event would have as much pre-emptive force as a decision to regulate." (emphases omitted));

*Credit Suisse*, 400 F.3d at 1136 (state law preempted where its enforcement "would result in

a patchwork of inconsistent state . . . regulations that would interfere with Congress's intent").

## II.   NO REASONABLE JURY COULD FIND FOR PLAINTIFFS ON ANY ELEMENT OF THEIR CLAIMS

### A.   Plaintiffs Failed to Prove the Challenged Statements are False or Misleading

#### 1.   Plaintiffs failed to prove the Challenged Statements are false

There are only three statements at issue in this case: statements on the packaging of One

A Day multivitamins indicating they are formulated to support heart health, immunity, and

physical energy.  *See* Second Am. Compl. ¶ 6 (defining statements at issue as those regarding

support for heart health, immunity, and physical energy); Feb. 19th Tr. at 182:22 –25 (Plaintiffs

telling jury that the statements at issue are those "claiming that the product is formulated to

support heart health, immunity and physical energy").  Plaintiffs put on no evidence that those

Challenged Statements are false; that is, they did not put on evidence that the ingredients in One

A Day multivitamins do not support heart health, immunity, or physical energy.  As discussed

above, their lone expert witness, Dr. Edward Blonz, agreed that the nutrients and dietary

ingredients in One A Day support these functions.  *See supra*, p. 4 & n.2.  These concessions

establish that Plaintiffs' claims fail.

Moreover, the only studies that Dr. Blonz relied upon for his opinion that these

Challenged Statements are false are disease studies that measure whether taking multi-vitamins

have an impact on disease outcomes.  *See* Feb 20th Tr. at 470:21–473:15 (studies cited in Dr.

Blonz's report and about which testified are disease-endpoint studies); 497:16–499:12 (Dr. Blonz

discussing disease-endpoint studies as supportive of his opinions in this case); 520:22–521:8

(studies about which Dr. Blonz testified examine cardiovascular disease and cancer).  The Ninth

Circuit has made clear that a plaintiff cannot support a claim that a structure/function statement

is false with disease end-point evidence, as Dr. Blonz attempted to here.  *Dachauer*, 913 F.3d at

848 (plaintiff's claims preempted "to the extent he argues that Defendants' structure/function

claims are false or misleading because their supplements do not prevent cardiovascular disease").

-9-

## 2.    Plaintiffs' theories of implied falsity fail

Because the Challenged Statements are true, Plaintiffs have attempted to argue the Statements *implied* a message that is false.  First, according to Plaintiffs, the Challenged Statements implied that, for the average consumer, taking One A Day multivitamins will benefit their heart health, immunity, and/or energy, when in reality (again, according to Plaintiffs), such benefits obtain only to consumers who are biochemically deficient in one or more of the relevant micronutrients.  *See* Section I.A.2., *supra* at 4 –7.  Second, Plaintiffs suggest that the Challenged Statements implied consumers would get "more" heart health, immunity, and physical energy. *See, e.g.*, Feb. 19th Tr. at 185:16–18.[5]

But in order to succeed on a theory of implied falsity, Plaintiffs were required prove, among other things, that (1) a reasonable consumer would understand the Challenged Statements to have Plaintiffs' purported meaning(s); and that (2) the Challenged Statements, so understood, are false.  *See Ebner v. Fresh*, Inc., 838 F.3d 958, 965 (9th Cir. 2016); *Stutman v. Chem. Bank*, 731 N.E.2d 608, 611–12 (N.Y. 2000); *Runton v. Brookdale Senior Living, Inc.*, 17-60664-CIV, 2018 WL 1057436, at *4 (S.D. Fla. Feb. 2, 2018).  They have failed on both counts.

On the first point, Plaintiffs seek to rely on the testimony of the Class Representatives to establish the implied meaning of the Challenged Statements.  But none of the class representatives testified that she understood the Challenged Statements to imply that the average consumer will get a benefit.  And only one of the Class Representatives—Ms. Farar—testified that she thought the Challenged Statements would give her "more" heart health, immunity, or physical energy.  In any event, as this Court has recognized, the law is clear that "a few isolated examples of actual [alleged] deception are insufficient" to establish that an entire class of consumers interpreted a statement to have the same deceptive meaning.  *English v. Apple Inc.*,

---

[5] *See also, e.g.*, Feb. 21st Tr. at 684:7–14 (Plaintiffs arguing that "support" "means more" and "[b]etter heart health[,]" "a better immune system[,]" and "more energy"), 688:19–22 (Plaintiffs arguing that One A Day packaging "implies that Bayer is giving you something more, more heart health, more immune health"); 689:21 –2 (icon on One A Day label is "conveying [] the message you're getting more energy"), 691: 22–25 ("They're conveying to people more immune health, through a doctor shield, means you will have a better immune system.  You'll get more immune health.  You'll be better off.").

No. 3:14-CV-01619-WHO, 2017 WL 106299, at *15 (N.D. Cal. Jan. 11, 2017) (citations and internal quotation marks omitted); *see also Khasin v. R. C. Bigelow, Inc.*, No. 12-CV-02204-WHO, 2016 WL 4502500, at *4 (N.D. Cal. Aug. 29, 2016) ("[I]ndividual testimony is insufficient to establish that a reasonable consumer is likely to be misled as required under the reasonable consumer test."), *aff'd sub nom. Victor v. R.C. Bigelow, Inc.*, 708 F. App'x 333 (9th Cir. 2017).

Plaintiffs were required to introduce competent and sufficient extrinsic evidence, such as a consumer survey, establishing how consumers understand the statements at issue.  *See RPost Holdings, Inc. v. Trustifi Corp.*, No. 10-cv-1416, 2012 WL 12952728, at *10 (C.D. Cal. May 11, 2012) ("Although the Ninth Circuit has not strictly delimited the type of extrinsic evidence required to demonstrate consumers have been misled or confused, acceptable types of proof may include consumer surveys or declarations from consumers." (citation omitted)); *Heighley v. J.C. Penney Life Ins. Co.*, 257 F. Supp. 2d 1241, 1260–61 (C.D. Cal. 2003) ("To prevail, a plaintiff must demonstrate by extrinsic evidence, such as consumer survey evidence, that the challenged statements tend to mislead consumers.  To state a cognizable claim, a plaintiff must demonstrate that a statistically significant part of the commercial audience holds the false belief allegedly communicated by the challenged advertisement." (citations and internal quotation marks omitted)); *Haskell v. Time, Inc.*, 965 F. Supp. 1398, 1407 (E.D. Cal. 1997) ("Furthermore, anecdotal evidence alone is insufficient to prove that the public is likely to be misled.  Thus, to prevail, plaintiff must demonstrate by extrinsic evidence, such as consumer survey evidence, that the challenged statements tend to mislead consumers.") (citations and internal quotation marks omitted); *In re Century 21-RE/MAX Real Estate Advert. Claims Litig.*, 882 F. Supp. 915, 922–23 (C.D. Cal. 1994) ("[I]f a plaintiff cannot show literal falsity and instead relies on a claim of an implied falsehood, the plaintiff must prove, by extrinsic evidence, the challenged advertisements tend to mislead or confuse consumers.") (citations and internal quotation marks omitted).  They did not:  Plaintiffs put on no survey, no consumer-perception expert, nor any other extrinsic evidence to demonstrate the supposed implied meanings on which they base their claims.  The

-11-

best the Plaintiffs could do was introduce some marketing documents, but none support their average-consumer theory, nor their "support means more" theory.

Extrinsic evidence is particularly important where, as here, Plaintiffs advance an implied meaning that is contrary to common sense. After all, the inquiry is what a "*reasonable consumer*" would understand. *Ebner*, 838 F.3d at 965 (emphasis added). The reasonable consumer standard "requires more than a mere possibility that [the] label[s] might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner"—it requires a "*probability* that a *significant portion* of the general consuming public . . . acting *reasonably* in the circumstances, could be misled." *Id.* (emphases added) (citations and internal quotation marks omitted). Here, Plaintiffs' primary argument is that most reasonable consumers would read the Challenged Statements and understand them as claims that heart health, immunity, or physical energy benefits will accrue to the average consumer, regardless of what else they do— taking no account of diet, or lifestyle, or overall health. Common sense dictates that consumers understand multivitamin supplements are just that—supplements. Consumers therefore understand that they are intended to "supplement" one's diet, and if a person gets everything they require from food, no such supplementation is necessary. If Plaintiffs want to challenge that common sense, they needed to come forward with evidence.

But even if Plaintiffs had shown an implied claim, they failed to show that claim is false. The Plaintiffs' own evidence clearly shows that One A Day multivitamins benefit not only those consumers who are biochemically deficient, but many others as well. *See, e.g.*, Feb. 20th Tr. at 474:20–24 (Dr. Blonz agreeing that people with biochemical deficiencies "benefit from taking a vitamin supplement, like a multivitamin"); 489:25 –491:21 (Dr. Blonz agreeing that many groups of people without biochemical deficiencies "benefit from multivitamins"). And the Plaintiffs' own evidence also shows that "the majority" of consumers fall short of essential nutrients. *See, e.g.*, Feb. 20th Tr. at 470:1–5 (Dr. Blonz agreeing that "under-consumption of the

-12-

essential nutrients, Vitamin D, calcium and potassium, as well as fiber, are public-health concerns for the majority of the U.S. population.").[6]

### B.   Plaintiffs Failed to Prove Causation or Reliance

#### 1.   The Class Representatives did not prove reliance

The Court's Trial Plan appropriately requires the Class Representatives to prove they relied on the Challenged Statements in deciding to purchase One A Day multivitamins.  *See* Trial Plan, ECF No. 198 at 2.  Plaintiffs, however, failed to prove reliance.

All three Class Representatives purchased One A Day multivitamins for reasons unrelated to the Challenged Statements.  Ms. Cosgrove purchased One A Day multivitamins at the direction of her physician, and for "general health"—not in reliance on any Challenged Statement.  Feb. 20th Tr. at 546:11–18, 548:15–25.  She agreed during her in-court testimony that at her deposition she could not remember whether "the claims on the bottle made an impact on [her] purchasing decision."  *Id.* at 559:22–560:20, 561:6–563:25.  Ms. Lopez purchased One A Day multivitamins because of a prior history of anemia, and her physician's recommendation that she supplement her diet with vitamins B12 and C, folic acid, and iron.  Lopez Dep. (2/16/19) at 17:11–18:10; *see also id.* at 37:5–21 (Ms. Lopez agrees she bought One A Day multivitamins "for many reasons," including general health, bone health, memory, skin, eye health, and to prevent a recurrence of anemia), 17:14–18:10 (Ms. Lopez's doctor recommended that she get supplemental vitamin B12, vitamin C, folic acid, and iron to address anemia).  And Ms. Farar took multivitamins to fill in gaps in her diet.  *See, e.g.*, Feb. 21at Tr. at 628:6–11.

---

[6] *See also, e.g.*, Feb. 20th Tr. at 467:13–17 (Dr. Blonz agreeing that 88% of Americans fall short of the Estimated Average Requirement ("EAR") for Vitamin E), 467:19–22 (Dr. Blonz agreeing that 37% of Americans fall short of the EAR for Vitamin C), 467:23–25 (Dr. Blonz agreeing that 40% of Americans fall short of the EAR for Vitamin A), 468:1–3 (Dr. Blonz agreeing that 40% of Americans fall short of the EAR for calcium); 469:3–17 (Dr. Blonz agreeing that Vitamins A, D, C, and E, folate, calcium, and magnesium are all considered "shortfall" nutrients by the Dietary Guidelines Advisory Committee based on the EARs).

-13-

2. **Plaintiffs failed to prove reliance by absent class members**[7]

Absent class members also need to prove reliance in order to establish causation. *See* Feb. 15th Tr. at 10:2–4 (reliance is "part of" causation), 136:12–13 ("reliance is a necessary part of causation"). Plaintiffs were thus required to put on evidence that class members relied on the three Challenged Statements. They did not. Without such evidence, Plaintiffs have failed to prove causation.

Plaintiffs seek to rely on a presumption of reliance stemming from the fact that the Challenged Statements are material. But regardless of whether a representation is deemed material, Plaintiffs may not establish reliance via a presumption "where the record will not permit it." *Tucker v. Pac. Bell Mobile Servs.*, 208 Cal. App. 4th 201, 228 (Cal. Ct. App. 2012).[8] Plaintiffs' evidence at trial belies any such presumption, because they did not even prove the three Class Representatives relied. *See supra* at ___. And the evidence at trial showed there are many reasons why someone would have bought other than the challenged claims. *See, e.g.*, Feb. 20th Tr. at 546:11–18 ("general health"); Lopez Dep. (2/16/19) at 17:11–18:10 (doctor's recommendation); *id.* at 37:5–21 (bone health, memory, skin, eye health, and to prevent a

---

[7] It is not clear whether Defendants' arguments as to reliance on the part of absent class members should be raised now or at the conclusion of Phase II, given that the Trial Plan does not contemplate it being litigated in either phase. Because the Court has labeled Phase I as the "liability" phase, Defendants include these arguments here out of an abundance of caution.

[8] *See also, e.g.*, *Weisberg v. Takeda Pharma. U.S.A., Inc.*, No. 18-cv-784, 2018 WL 4043171, at *8–9 (C.D. Cal. Aug. 21, 2018); *In re Myford Touch Consumer Litig.*, No. 13-cv-3072-EMC, 2016 WL 7734558, at *22 (N.D. Cal. Sept. 14, 2016), *on reconsideration in part*, No. 13-cv-03072-EMC, 2016 WL 6873453 (N.D. Cal. Nov. 22, 2016); *Mezzadri v. Med. Depot, Inc.*, No-14-cv-2330-, 2016 WL 5107163, at *6–7 (S.D. Cal. May 12, 2016); *Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 453–54 (S.D. Cal. 2014); *Gutierrez v. Wells Fargo & Co.*, No. 07-cv-5923-WHA, 2009 WL 1247040, at *8 (N.D. Cal. May 5, 2009); *Small v. Lorillard Tobacco Co.*, 720 N.E. 2d 892, 896 (N.Y. 1999) (record evidence that there was "widely available information" regarding the dangers of smoking "foreclosed any presumption of reliance" on the alleged misrepresentations); *Morrissey v. Nextel Partners, Inc.*, 72 A.D.3d 209, 217 (N.Y. Sup. Ct. App. Div. 2010) ("[A] variety of factors influenced [the plaintiffs'] decision to purchase defendant's services, including defendant's 'walkie-talkie' feature, word-of- mouth recommendations and convenience of store location, such that reliance will not be presumed."); *Kaser v. Swann*, 141 F.R.D. 337, 341 (M.D. Fla. 1991); *In re Dial Complete Mktg. & Sales Practices Litig.*, 312 F.R.D. 36, 63 (D.N.H. 2015) (relying on *Kaser* to reject a presumption under Florida's Misleading Advertising Statute); *Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 696 n.17 (S.D. Fla. 2014) (rejecting attempt to incorporate securities fraud-on-the-market presumption of reliance in the context of a FDUTPA claim).

recurrence of anemia).; Feb. 21st Tr. at 633:22–634:3 (doctor's recommendation) [9]  As such, Plaintiffs cannot show they relied and cannot prove causation, a required element of each of their claims.

### C.  Plaintiffs Failed to Prove the Additional Elements Required Under Florida's Misleading Advertising Law, Fla. Stat. § 817.41(1)

To prevail on their Misleading Advertising claim under Florida law, Plaintiffs were required to prove two additional elements: that Defendants knew or should have known the Challenged Statements were false, and that Defendants intended, by their inclusion of the Challenged Statements on the labels of One A Day multivitamins, to induce members of the public to purchase One A Day multivitamins.  *See, e.g.*, *Joseph v. Liberty Nat. Bank*, 873 So. 2d 384, 388 (Fla. 5th DCA 2004).  Plaintiffs cannot prevail on this claim.  Plaintiffs did not produce any evidence—either in a company document or in company witness testimony—that even suggested that the Defendants understood the Challenged Statements to be false and intended to deceive consumers into purchasing One A Day multivitamins.  To the contrary, all of the evidence at trial showed that Defendants understood the Challenged Statements to be truthful. The sole witness who testified regarding Defendants' state of mind was Dr. Faghihnia.  She testified that it is her job to make sure that "any statements that [Defendants] make on packaging" "are medically sound and based on science."  Feb 19th Tr. at 235:19–21. [10]  And that

---

[9] Defendants also submitted evidence prior to trial refuting any notion of universal reliance.  *See, e.g.*, Expert Decl. of Dr. Ran Kivetz, ECF No. 136-4 ¶¶ 65–72 (market and academic research show that consumers purchase One A Day and other multivitamins "for a variety of reasons," including many "unrelated to the advertising and packaging claims challenged in this case," such as "brand equity and recognition; the recommendations of health care providers, family and friends; a desire to maintain a healthy lifestyle; wanting to look and feel better; attempting to close nutritional gaps; form factor (*i.e.*, pill vs. gummy); price; perceived value for the money, and sales promotions; packaging and quantity of pills; ingredients, minerals, and vitamins; and potential future pregnancy").

[10] *See also, e.g.*, Feb. 19th Tr. at 232:1–7 (Dr. Faghihnia testified that Defendants make the Challenged Statements "in terms of what the key nutrients is and the role that they play in supporting heart health and in supporting immune health"), 235:22–236:1 (Dr. Faghihnia: "So what we see on the pack in terms of any claims that we make for energy, we say—we have these particular B vitamins which help convert food to fuel. That is the fundamental function of these B vitamins in playing the role of energy metabolism."), 245:24–246:6 (Dr. Faghihnia: "So we say on the front of the pack that it's a multivitamin, multimineral supplement. And by and large what we've seen is that consumers understand if they are not getting all the nutrients that they need from food, a multivitamin is intended to supplement the diet. And if there—if they are not

-15-

1  she would not approve any claims or statements that are not. *See, e.g.*, *id.* at 250:1–9 (Dr.

2  Faghihnia would "never approve anything that says this is going to boost your energy" because it

3  is not medically sound); 267:24–268:8 (if statements are *not* accurate or medically sound, Dr.

4  Faghihnia will only approve after modifications to ensure a statements is "scientifically valid.").

5  Plaintiffs' Misleading Advertising claim, therefore, fails.

### D.    Plaintiffs Failed to Prove Injury[11]

7          Injury is a required element of all of Plaintiffs' claims.  *See, e.g.*, *In re Steroid Hormone*

8  *Prod. Cases*, 104 Cal. Rptr. 3d 329, 337 (Cal. Ct. App. 2010) (CLRA requires plaintiffs to show

9  that "both the named plaintiff and unnamed class members…suffered some damage"); *Johnson*

10  *v. Nissan N. Am., Inc.*, No. 17-cv-517-WHO, 2018 WL 905850, at *7 n.3 (N.D. Cal. Feb. 15,

11  2018) ("actual damages" is one element of a FDUTPA claim); *Joseph v. Liberty Nat. Bank*, 873

12  So. 2d 384, 388 (Fla. 5th DCA 2004) (Florida Misleading Advertising claims require that "the

13  plaintiff suffered injury in justifiable reliance on the representation"); *Stutman v. Chem. Bank*,

14  731 N.E.2d 608, 611 (NY 2000) (claims under are New York's General Business Law sections

15  349 and 350 require "that the plaintiff suffered injury as a result of the deceptive act").  It is also

16  independently required by Article III of the United States Constitution.  *Lujan v. Defs. of*

17  *Wildlife*, 504 U.S. 555, 560 (1992).  Because, as discussed below, Plaintiffs did not prove that

18  class members were injured, their claims must fail, and Defendants are entitled to judgment as a

19  matter of law.  In addition, as discussed in Section III.A., *infra* at 23–24, this failure means that

20  Plaintiffs lack standing.

---

getting all of the energy that they need, all of the B vitamins they need from their food, then they can take this multivitamin supplement. And the function of these B vitamins is to play a role in energy metabolism fundamentally and convert the food that you eat, the energy in the foods into the fuel that your body needs."), 267:20–23 (Dr. Faghihnia only approves statements that are "scientifically valid").

[11] It is not clear whether Defendants' arguments as to injury should be raised now or at the conclusion of Phase II, given that the Trial Plan does not contemplate injury being litigated in either phase.  Because the Court has labeled Phase I as the "liability" phase and injury is generally considered an element of liability, Defendants include these arguments here out of an abundance of caution.

1. **Plaintiffs offered no proof of the injury required by the relevant statutes**

Under the state laws at issue, a plaintiff is considered injured, and thus potentially entitled to recover damages, if she received a product that is worth less than what she paid for it. *See, e.g., In re POM Wonderful LLC*, No. 10-mdl-2199, 2014 WL 1225184, at *3 (C.D. Cal. Mar. 25, 2014) (injury under California consumer protection statutes is measured by "[t]he difference between what the plaintiff paid and the value of what the plaintiff received") (quoting *In re Vioxx Class Cases*, 103 Cal. Rptr. 3d 83, 96 (Cal. Ct. App. 2009)); *Small v. Lorillard Tobacco Co.*, 720 N.E.2d 892, 898 (N.Y. 1999) (cognizable injury under New York consumer protection statutes requires showing that "cost of [the product] was affected by the alleged misrepresentation"); *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006) (measure of damages under FDUTPA is "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered").

In other words, a plaintiff must show that she received less than the fair market value of the product. *See, e.g., Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 532 (N.D. Cal. 2012); *Rollins*, 951 So.2d at 869. Fair market value is an objective measure of the "price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's-length transaction," or in other words, "the point at which supply and demand intersect." *Saavedra v. Eli Lilly & Co.*, No. 12-cv-9366, 2014 WL 7338930, at *4 (C.D. Cal. Dec. 18, 2014); *see also In re NJOY, Inc.*, 120 F. Supp. 3d 1050, 1119 (C.D. Cal. 2015) (fair market value is a product's worth assessed in terms of the "combination of market demand and market supply").[12] For a plaintiff to prove she received less than the objective fair market value, she must, of course, put on evidence of the objective fair market value in the first place.

Not only did Plaintiffs fail to put on any evidence whatsoever of the objective fair market value of One A Day multivitamins (because they have no such evidence), they did not even

---

[12] Fair market value is *not* a consumer's subjective valuation of a product or service. *Saavedra*, 2014 WL 7338930, at *4.

attempt to show that class members received less than the objective fair market value. Indeed, Plaintiffs disclaimed the need to prove fair market value because they are not proceeding on a "price premium" theory. *See* Pls.' Opp. to Mot. for Summ. J., ECF No. 141 at 1 n.1, 22–23; *see also* Order on Class Cert. & Mot. for Summ. J., ECF No. 164 at 27 (acknowledging as much). Plaintiffs therefore failed to prove an injury; as such, Defendants are entitled to judgment as a matter of law on all of Plaintiffs' claims.

### 2.      Plaintiffs' alternative theory of injury is not legally viable

Plaintiffs instead claim they were injured to the extent of the full purchase price of One A Day multivitamins because they would not have purchased One A Day multivitamins absent the Challenged Statements. *See* Pls.' Opp'n to Defs.' Mot. for Summ. J., ECF No. 140-3 at 22–23 ("Plaintiffs would not have purchased the Products had they known the truth."); Pls.' Trial Plan Br., ECF No. 191 at 12 ("[T]his Court held that Plaintiffs may seek a full refund *based on evidence they would not have purchased Defendants' products* (and would not have spent any money) had they known the products did not provide the health benefits Defendants advertised.") (emphasis added) (citing Order on Class Cert. & Summ. J., ECF No. 164 at 16–18). But without any evidence that Plaintiffs actually received a product that is objectively worth less than what they paid for it, Plaintiffs' theory is legally insufficient to establish injury.

The plaintiffs in *Small v. Lorillard Tobacco Co.*, tried the same tactic: they disclaimed any health-related injuries and instead argued their injury was purchasing something they otherwise would not have. 720 N.E.2d at 898. But as New York's highest court explained, that theory "sets forth deception as both act and injury" and therefore "contains no manifestation of either pecuniary or 'actual' harm." *Id.* Applying *Small*, an appellate court in New York concluded that would-not-have-purchased injuries fail "[w]ithout further allegations that, for example, the price of the product was inflated as a result of defendant's deception or that use of the product adversely affected plaintiff's health." *Baron v. Pfizer, Inc.*, 840 N.Y.S.2d 445, 448 (N.Y. App. Div. 2007); *see also, e.g.*, *Ghee v. Apple-Metro, Inc.*, No. 17-cv-5723, 2018 WL 575326, at *4 (S.D.N.Y. Jan. 26, 2018) (New York consumer protection laws "cover[] only the amount that the consumer *overpaid*") (emphasis in original); The law is the same in California

-18-

and Florida. *See, e.g.*, *In re POM Wonderful LLC*, 2014 WL 1225184, at *3 (full refund damages model invalid under California law "because it fail[ed] to account for any value consumers received"); *Rollins*, 951 So. 2d at 869 (full refund "may" be available under Florida law only "when the product is rendered valueless as a result of the defect"); *H & J Paving of Fla., Inc. v. Nextel, Inc.*, 849 So. 2d 1099, 1101 (Fla. 3d DCA 2003) (same). For Plaintiffs to succeed on their alternative full-refund theory of injury, they would have to show the fair market value of One A Day is zero. They have not.

In fact, Plaintiffs *acknowledged* that the fair market value of One A Day multivitamins is not zero, because they concede it has value for some consumers. *See* Joint Pretrial Statement, ECF No. 259 at 11 (Plaintiffs' "theory is not that the products are absolutely worthless; instead it is they do not provide value to the average American because the average American does not suffer from a biochemical deficiency"); Pffs' Mot. *in Limine* No. 4, ECF No. 256 at  4–5 (seeking to prevent Defendants from arguing that Plaintiffs' theory is that One A Day multivitamins are "'worthless' or provide no value to anyone"); *supra*, p. 4 & n.2. In fact, Dr. Blonz testified that multivitamins provide value to some people. *See, e.g.*, Feb. 20th Tr. at 474:20–25 (Dr. Blonz agreeing that people with biochemical deficiencies "benefit from taking a vitamin supplement, like a multivitamin"); 489:25 –491:21 (Dr. Blonz agreeing that many groups of people without biochemical deficiencies "benefit from multivitamins").

Plaintiffs' concession on that score distinguishes this case from *Mullins v. Premier Nutrition Corp.*, in which the plaintiff alleged a product was "nothing more than worthless snake oil that does not and cannot provide any joint health benefits to anyone." No. 13-cv-01271-RS, 2016 WL 1535057, at *1 (N.D. Cal. Apr. 15, 2016); *see also id.* at *6 (for a full refund, plaintiffs were required to show "(1) that consumers buy Joint Juice only because of its claimed health benefits; and (2) Joint Juice does not, in fact, provide those benefits *to anyone*") (emphasis in original).

Not only that, Plaintiffs have not challenged the additional benefits One A Day provides in addition to those in the Challenged Statements. As the Court emphasized in allowing Plaintiffs to proceed with their full-restitution theory, in *Mullins*, "it was the [challenged] claims

-19-

1    *alone* that persuaded consumers to purchase" the product at issue.  Order on Class Cert. &

2    Summ. J., ECF No. 164 at 17 (emphasis added).  By contrast, here, as the Court recognized, One

3    A Day's other benefits, "such as skin or bone health, have gone unchallenged" by Plaintiffs in

4    this case.  Order on Class Cert. & Summ. J., ECF No. 164 at 18.  Because Plaintiffs do not

5    challenge those benefits, they cannot possibly show that the fair market value of One A Day

6    multivitamins is zero.  This fact also defeats their claims as to the entire class.

7    ### III.    THE CLASS REPRESENTATIVES LACK STANDING

8         Plaintiffs have a continuing burden to demonstrate standing "in the same way as any

9    other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of

10   evidence required at the successive stages of the litigation."  *Lujan v. Defs. of Wildlife*, 504 U.S.

11   555, 561 (1992).  "The 'irreducible constitutional minimum of standing' consists of three

12   elements:  [T]he plaintiff must have (1) suffered an injury in fact; (2) that was caused by the

13   defendant's challenged conduct; and (3) that would be redressed by the remedy the plaintiff

14   seeks."  *Desert Water Agency v. U.S. Dep't of the Interior*, 849 F.3d 1250, 1253 (9th Cir. 2017)

15   (quoting *Defs. of Wildlife*, 504 U.S. at 560–61).  "Standing must be shown with respect to each

16   form of relief sought, whether it be injunctive relief, damages or civil penalties."  *Bates v. United*

17   *Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).

18        For the reasons explained below, Plaintiffs have not suffered injury in fact, cannot pursue

19   claims for One A Day multivitamin varieties they did not purchase, and do not face a threat of

20   future harm redressable by injunctive relief.  Because they consequently lack Article III standing,

21   this Court lacks subject matter jurisdiction over them, and Defendants are entitled to judgment as

22   a matter of law on all of Plaintiffs' claims.

23        ### A.    The Class Representatives Have Not Suffered Injury In Fact

24        To demonstrate injury in fact in a deceptive advertising case, a plaintiff must show that

25   she paid more for a product than she otherwise would have (*i.e.*, paid a "price premium"), or that

26   she would not have purchased the product at all absent the deceptive claims.  *See Nguyen v.*

27   *Medora Holdings*, No. 14-cv-618-PSG, 2015 WL 4932836, at *5 n.38 (N.D. Cal. Aug. 18, 2015)

28

1  (collecting cases); *Kane v. Chobani, Inc.*, 973 F. Supp. 2d 1120, 1128–29 (N.D. Cal. 2014),

2  *vacated on other grounds*, 645 F. App'x 593, 594 (9th Cir. 2016).

3        As this Court has already recognized, "[P]laintiffs' claims do not rest upon a price

4  premium theory."  Order on Mot. for Summ. J. & Class Cert., ECF No. 164 at 27.  And Plaintiffs

5  offered no evidence to support such a theory.  *See* Section II.D.1, *supra*, p. 18–20.  Accordingly,

6  to demonstrate standing, Plaintiffs *must* prove that they would not have purchased One A Day

7  multivitamins without the Challenged Statements.  They have not.

8        Construing the evidence at summary judgment in the light most favorable to Plaintiffs,

9  this Court credited the *possibility* that the Challenged Statements made an impact on Plaintiffs'

10  purchasing decisions.  *See* Order on Mot. for Summ. J. & Class Cert., ECF No. 164 at 28 (noting,

11  for example, testimony "from Ms. Cosgrove that the claims on her bottle of multivitamins

12  *possibly* made an impact on her purchasing decision" (emphasis added)).

13        As discussed above, each Class Representative testified that she purchased One A Day

14  multivitamins for reasons other than the Challenged Statements.  *See supra*, p. 11–12.

15        And no Class Representative has proven that she did not receive the benefit she sought

16  from One A Day multivitamins.  One A Day multivitamins have all of the nutrients that Ms.

17  Lopez's doctor recommended she get more of.  Lopez Dep. (2/16/19) at 22:19–23:8.  Neither

18  Ms. Cosgrove nor Ms. Farar has shown that she was *not* otherwise vitamin-deficient and,

19  therefore, did not receive a benefit from One A Day multivitamins.  *See* Feb. 20th Tr. at 548:15–

20  25 (Ms. Cosgrove did not take multivitamins "for any specific symptoms," but rather for

21  "general health"); Feb. 21st Tr. at 637:24–638:2 (Ms. Farar does not "specifically" know "how

22  much of any vitamin" she gets from her daily diet).  In other words, One A Day multivitamins

23  fulfilled the purposes for which the Class Representatives purchased them.

24        Because Plaintiffs have not proven that they would not have purchased One A Day

25  multivitamins but for the Challenged Statements, they have not suffered an injury in fact and do

26  not have standing to bring their claims.

27

28

### B.      Not All Class Members Suffered Injury In Fact

Nor can Plaintiffs demonstrate injury in fact on the part of class members who received a benefit from the vitamins or micronutrients in One A Day multivitamins.  Plaintiffs claim they were injured because the Challenged Statements promise benefits that One A Day multivitamins do not deliver to the average American.  *See supra*, p. 5 & n.3.  But even Plaintiffs concede that One A Day multivitamins *do* provide immunity, energy, and heart benefits to biochemically deficient consumers.  *See supra*, p. 4 & n.2.   And the evidence has shown that many more consumers of One A Day multivitamins received a benefit from them.  *See supra*, p.  .  The class, in other words, necessarily includes many members who have not suffered any injury at all because the Challenged Statements were not false or deceptive with respect to them.  Given this, there is no class-wide standing, and the Court lacks subject matter jurisdiction over those class members' claims.

Even in the context of a class action, Article III's case or controversy requirement limits standing to parties who suffer an actual injury.  *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 613 (1997) ("Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act, which instructs that rules of procedure 'shall not abridge, enlarge or modify any substantive right.") (quoting 28 U.S.C. § 2072(b)); *see also Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006) ("[N]o class may be certified that contains members lacking Article III standing.")[13]; *In re Deepwater Horizon*, 732 F.3d 326, 341–42 (5th Cir. 2013) (similar);  *Bruns v. Mayhew*, No. 12-cv-131, 2013 WL 12233685, at *7

---

[13] In *Mazza v. American Honda Motor Co., Inc.*, the Ninth Circuit recognized that "[n]o class may be certified that contains members lacking Article III standing," and decertified an "overbroad" class containing consumers who likely "were never exposed to the allegedly misleading advertisements."  666 F.3d 581, 594–96 (9th Cir. 2012).  But the court rejected the argument that decertification was required on Article III standing grounds.  *See id.*  Instead, the court determined that the presumption of reliance applied by the district court was inappropriate where many class members likely were never exposed to the advertising at issue.  *Id.* at 596.  Without that presumption, class certification was inappropriate "because common questions of fact d[id] not predominate."  *Id.* at 596.  Defendants here agree with *Mazza*'s holding that a presumption of reliance may not be applied to a class like this one, and maintain that Plaintiffs' class should be decertified.  But Defendants respectfully submit that the *Mazza* class also was inappropriately certified because it included members who lacked Article III standing, and reiterate that argument here for purposes of preservation.

(D. Me. Mar. 25, 2013) ("[T]he inclusion [in a class] of individuals who have not and will not sustain an injury presents an Article III standing issue."); 7AA Charles Alan Wright, *et al.*, Fed. Prac. & Proc. § 1785.1 (3d Ed. 2005) ("[T]o avoid a dismissal based on a lack of standing, the court must be able to find that both the class and the representatives have suffered some injury requiring court intervention.").

Because a portion of the class necessarily has suffered no injury in fact, this Court lacks subject matter jurisdiction over the class's claims.

### C.   The Class Representatives Lack Standing as To Multivitamins They Did Not Purchase

In false advertising claims like Plaintiffs', a plaintiff has standing "only if [she] experienced injury stemming from the purchase of *that product*." *Granfield v. NVIDIA Corp.*, No. 11-cv-5403-JW, 2012 WL 2847575, at *6 (N.D. Cal. July 11, 2012) (emphasis added). "[W]hen a plaintiff asserts claims based both on products that she purchased and products that she did not purchase, claims relating to products not purchased must be dismissed for lack of standing." *Id*. Because the Class Representatives each purchased a single variety of One A Day multivitamins—One A Day Women's Formula—they lack standing to pursue claims based on the 19 other supplements listed in their complaint. *See, e.g.*, *Larsen v. Trader Joe's Co.*, No. 11-cv-5188-SI, 2012 WL 5458396, at *4–5 (N.D. Cal. June 14, 2012) (dismissing claims related to product the named plaintiff in a putative class action did not purchase); *Mlejnecky v. Olympus Imaging Am. Inc.*, No. 10-cv-2630, 2011 WL 1497096, at *4 (E.D. Cal. Apr. 19, 2011) (same); *Carrea v. Dreyer's Grand Ice Cream, Inc.*, No. 10-cv-1044-JSW 2011 WL 159380, at *3 (N.D. Cal. Jan. 10, 2011) (same), *aff'd*, 475 Fed. App'x 113 (9th Cir. 2012); *Johns v. Bayer Corp.*, No. 09-cv-1935, 2010 WL 476688, at *4–5 (S.D. Cal. Feb. 9, 2010) (same).

It is not enough that other varieties of One A Day contain the same or similar ingredients, nor that their labels all contain at least one Challenged Statement.  In *Johns*, for example, the court dismissed claims based on a multivitamin the plaintiff did not purchase, despite the fact that the ingredients at issue were in other products.  2010 WL 476688, at *5; *see also Mlejnecky*, 2011 WL 1497096, at *4 (dismissing claims based on products plaintiff did not purchase, even

-23-

1    though they "ha[d] the same underlying defects" and "Defendant used the same advertisement"

2    for them all). Similarly, in *Larsen*, plaintiffs challenged the sale of eleven products marketed as

3    "All Natural" and "100% Natural." 2012 WL 5458396, at *1. Although the challenged

4    statements were identical with respect to all eleven products, the court dismissed the plaintiffs'

5    claims for products they did not actually buy. *Id.* at *5.

6          Although some courts have permitted plaintiffs, in limited circumstances, to challenge

7    the label of a product they did not purchase "so long as the products and alleged

8    misrepresentations are substantially similar," that reasoning is not applicable here. *Miller v.*

9    *Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012). First, as courts have

10   recognized, allowing such claims to proceed is at odds with "the recent standard [for standing]

11   delineated by the California Supreme Court in *Kwikset*," *Mlejnecky*, 2011 WL 1497096, at *4,

12   under which standing is confined to "those *actually injured* by a defendant's business practices,"

13   *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 885–88 (Cal. 2011) (emphasis added). Second,

14   Plaintiffs introduced no evidence regarding the ingredient list or formulations of *any* other One A

15   Day multivitamins on which they base their claims. In any event, "[h]aving a few common

16   ingredients is simply not enough to show the Products are the same or even 'nearly identical.'"

17   *Dysthe v. Basic Research LLC,* No. 09-cv-8013, 2011 WL 5868307, at *5 (C.D. Cal. June 13,

18   2011) (finding two dietary supplements distinct for standing purposes where one had nineteen

19   ingredients and the other had only ten, and each included different amounts of the ingredients

20   they shared); *see also Tria v. Innovation Ventures, LLC*, No. 11-cv-7135, 2013 WL 12324181, at

21   *3 (C.D. Cal. Feb. 25, 2013) ("Chaser® and Chaser Plus® have unquestionable distinctions in

22   the types of statements that have been used to market or advertise those products. At a

23   minimum, therefore, Plaintiff does not have standing to pursue claims related to Chaser®."

24   (citation omitted)).

25         Because Plaintiffs cannot demonstrate that they suffered an injury-in-fact with respect to

26   OAD products they did not purchase, they lack standing to litigate this case on the basis of those

27   claims, and, at a minimum, judgment should be entered against them for want of subject matter

28   jurisdiction for all purchases except those of One A Day Women's. *See In re Palmdale Hills*

1  *Property, LLC*, 654 F.3d 868, 873 (9th Cir. 2011) ("Article III standing is a necessary component
2  of subject matter jurisdiction.").

### D.   Plaintiffs Lack Standing for Injunctive Relief

4  Finally, because Plaintiffs have introduced no evidence that they would purchase One A
5  Day multivitamins in the future, they lack standing to pursue injunctive relief.  "Once a plaintiff
6  has been wronged, he is entitled to injunctive relief only if he can show that he faces a real or
7  immediate threat that he will again be wronged in a similar way."  *Munns v. Kerry*, 782 F.3d
8  402, 411 (9th Cir. 2015) (internal citation omitted).  "The 'threatened [future] injury must
9  be *certainly impending* to constitute injury in fact' and 'allegations of *possible* future injury are
10  not sufficient.'"  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (quoting
11  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphases in *Clapper*).  Although past
12  wrongs may bear on whether plaintiffs face a real and immediate threat of repeated injury, "past
13  wrongs do not in themselves amount to a real and immediate threat of injury necessary to make
14  out a case or controversy."  *Bates*, 511 F.3d at 985 (quoting *City of Los Angeles v. Lyons*, 461
15  U.S. 95, 103 (1983)).  "Where standing is premised entirely on the threat of repeated injury, a
16  plaintiff must show 'a sufficient likelihood that he will again be wronged in a similar way.'"
17  *Davidson*, 889 F.3d at 967 (quoting *Lyons*, 461 U.S. at 111).

18  In a false advertising case, a plaintiff does not face an imminent or actual threat of future
19  harm if she does not "inten[d] or desire to purchase [the product] in the future."  *Peacock v. 21st*
20  *Amendment Brewery Cafe, LLC*, No. 17-cv-1918-JST, 2018 WL 452153, at *9 (N.D. Cal. Jan.
21  17, 2018); *see also, e.g.*, *Jones v. ConAgra Foods, Inc.*, No. 12-cv-1633-CRB, 2014 WL
22  2702726, at *12–13 (N.D. Cal. June 13, 2014) (no standing where plaintiff did not intend to buy
23  product in the future).  The Class Representatives thus lack standing because they have not
24  shown "a sufficient likelihood" that they will purchase One A Day multivitamins in the future.
25  *Davidson*, 889 F.3d at 967.  Indeed, the record forecloses any such inference:  Each Class
26  Representative purchased a single bottle of One A Day Women's, within a couple of months of
27  signing onto this case, did not finish that one bottle, and has not purchased One A Day
28  multivitamins since.  *See* Lopez Dep. (2/16/19) at 6:23–7:2, 10:23–11:4, 32:25–33:2 (Ms. Lopez

-25-

has purchased only one bottle of One A Day multivitamins, in March 2014, which she took for a "couple of months" and did not finish); Feb. 20th Tr. at 530:3–7, 567:21–24, 570:1–9 (Ms. Cosgrove has purchased only one bottle of One A Day multivitamins, in April 2014, which she "stopped taking shortly after [she] decided to sue Bayer"); Feb. 21st Tr. at 602:15–19, 640:9–13 (Ms. Farar purchased one bottle of One A Day Women's multivitamins in summer 2014 but "didn't finish the bottle").  Although Ms. Farar continued to purchase and take multivitamins after filing this lawsuit, she only purchased "raw" and "whole food" products, Feb. 21st Tr. at 618:21–25, which One A Day multivitamins are not.  And Ms. Farar testified that, more recently, she stopped taking multivitamins altogether.  *Id.* at 613:12–16.  Ms. Lopez, for her part, testified that she "just do[es]n't believe in multivitamins anymore."  Lopez Dep. (4/9/2016) at 73:18–19; *see also* Lopez Dep. (2/16/19) at 39:23–40:2 (Ms. Lopez has not taken any multivitamins since she stopped taking One A Day).  And Ms. Cosgrove testified that based on what she has learned "over the last several years," including from "being in [the courtroom] with Dr. Blonz," she "do[es]n't feel that a multivitamin will benefit [her] at any level."  Feb. 20th Tr. at 541:12–18.

Plaintiffs therefore do not face a "real or immediate risk of being harmed again in the same manner and so lack Article III standing to seek injunctive relief."  *Victor*, 708 Fed. App'x at 334.

## IV.      CONSTITUTIONAL DEFENSES

### A.      Class-Wide Adjudication Violates Defendants' Constitutional Rights and the Rules Enabling Act

The Court should enter judgment as a matter of law because the use of aggregate procedures to resolve the individual issues inherent in Plaintiffs' claims violated Defendants' constitutional rights and the Rules Enabling Act.  Whether a plaintiff relied on the Challenged Statements, for example, is an individual question that requires a fact-specific inquiry into her reasons for purchase—including a review of documentary evidence, direct testimony, and most importantly, cross examination.  So too the question whether an individual class member received a benefit from One A Day multivitamins.  By allowing Plaintiffs to presume class-wide reliance, to calculate an aggregated class-wide benefit using a statistical formula, and to base the

availability of damages on such aggregate proof, the Court's Trial Plan has unconstitutionally lowered Plaintiffs' burden of individual proof, denied Defendants their due-process right to present a full defense on the issues, and violated the Rules Enabling Act.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 366–67 (2011).

The Rules Enabling Act forbids any rule of procedure—including, as relevant here, Rule 23, governing class actions—from "abridg[ing], enlarg[ing] or modify[ing] any substantive right."  28 U.S.C. § 2072(b); *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1131 (9th Cir. 2017) ("A class action . . . leaves the parties' legal rights and duties intact and the rules of decision unchanged.") (quoting *Shady Grove Orthopedic Assocs. P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010)); *see also Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1176 (11th Cir. 2010) ("The Rules Enabling Act, 28 U.S.C. § 2072—and due process—prevents the use of class actions from abridging the substantive rights of any party.").  Similarly, "due process requires" that Defendants have the "opportunity to present every available defense" to each plaintiff's claim.  *Lindsey v. Normet*, 405 U.S. 56, 66 (1972) (quoting *Am. Sur. Co. v. Baldwin*, 287 U.S. 156, 168 (1932)).

Defendants in class actions retain their right to "individualized determinations of each" class member's entitlement to recovery.  *Dukes*, 564 U.S. at 366.  Therefore, when members of a class seek individual relief, "a district court must usually conduct additional proceedings to determine the scope of individual relief."  *Id.* (citation omitted).  However convenient the alternatives, it is well established that trial courts may not circumvent that process in favor of an aggregated or "Trial by Formula" approach, like the one employed here.  *See id.* at 367 (rejecting "Trial by Formula"); *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1046 (2016) (allowing representative evidence in class action only "where representative evidence is relevant in proving a plaintiff's individual claim"); *see also McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 223, 231–32 (2d Cir. 2008) (district court erred in allowing reliance to be adjudicated through statistical estimates as to the class), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 629 (2008).

1    The Ninth Circuit has recognized "concerns . . . about the impermissible circumvention

2    of individual proof requirements" in class actions.  *See Six (6) Mexican Workers v. Arizona*

3    *Citrus Growers*, 904 F.2d 1301, 1306 (9th Cir. 1990) (permitting use of aggregated damages

4    where plaintiff class sought "statutory not actual damages" and district court thus was "*not*

5    obligated to require individual proof of injury from each class member" (emphasis added)); *In re*

6    *Hotel Telephone Charges*, 500 F.2d 86, 89–90 (9th Cir. 1974) (rejecting fluid recovery proposal

7    because the "enlargement or modification of substantive statutory rights by procedural devices is

8    clearly prohibited by the Enabling Act").  Accordingly, courts in this district have rejected efforts

9    by plaintiffs to "circumvent individual proof requirements" through the use of an "aggregate

10   class-wide method of pro[of]."  *See, e.g.*, *Gutierrez v. Wells Fargo & Co.*, No. 07-cv-5923-HA,

11   2009 WL 1247040, at *4 (N.D. Cal. May 5, 2009).   The Court's Trial Plan and Plaintiffs' case

12   run afoul of these constitutional principles.

13          Even if Plaintiffs could rely on aggregate proof to make out their *prima facie* case, the

14   Court's Trial Plan still was improper because it denied Defendants their due-process right "to

15   raise individual defenses against each class member."  *Newton v. Merrill Lynch, Pierce, Fenner*

16   *& Smith, Inc.,* 259 F.3d 154, 192 (3d Cir. 2001); *see also, e.g.*, *W. Elec. Co. v. Stern,* 544 F.2d

17   1196, 1199 (3d Cir. 1976) ("[T]o deny [defendants] the right to present a full defense on the

18   issues would violate due process.");  *Campbell v. Best Buy Stores, L.P.*, No. 12-cv-7794, 2014

19   WL 12778925, at *10 (C.D. Cal. Aug. 15, 2014) ("The class bears the burden of demonstrating"

20   that a proposed trial plan "preserves [defendant's] due process right to raise individualized

21   defenses.");  *Dalton v. Lee Publications, Inc.*, No. 08-cv-1072, 2013 WL 2181219, at *8 (S.D.

22   Cal. May 20, 2013) ("Defendant's right to offer a defense magnifies the potential for

23   individualized inquiries at the liability phase of the trial.").  For this independent reason, the

24   Court's Trial Plan is unconstitutional.

25          Relatedly, the Court's use of aggregate procedures to resolve individual issues violated

26   Defendants' Seventh Amendment right to a jury trial.  *See Cimino v. Raymark Indus., Inc.,* 151

27   F.3d 297, 312 (5th Cir. 1998) (finding trial plan invalid under Seventh Amendment because it

28   "fail[ed] to properly try and determine individual causation, and in the extrapolation cases also

-28-

1  fail[ed] to properly try and determine individual damages, as to any plaintiffs other than the . . .

2  class representatives").  "[T]he applicability of the Seventh Amendment is not altered simply

3  because the case is [a] Rule 23(b)(3) class action."  *Id.*

4         At bottom, individual issues are individual—they depend on the circumstances of the

5  individual plaintiff.  Plaintiffs' approach would eviscerate both the distinction between

6  individual and common issues and, accordingly, Rule 23's predominance requirement: A party

7  seeking class certification could propose to use "generalized" statistical evidence to resolve just

8  about any individual issue in the aggregate.  Plaintiffs do not—and cannot—cite any authority

9  permitting a jury to rely on aggregated statistics to decide individual issues for an entire class,

10  divorced from the facts on which resolution of those issues necessarily turns.  For this reason, the

11  Court's use of statistics to resolve individual issues also violates Rule 23's predominance

12  requirement.  *See Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1255 (2d Cir. 2002) ("[A]

13  common course of conduct is not enough to show predominance, because a common course of

14  conduct is not sufficient to establish liability of the defendant to any particular plaintiff.");

15  *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998) (an issue is individual when a

16  "named plaintiff who proved his own claim would not necessarily have proved anybody else's

17  claim").

### B.    Plaintiffs' Claims for Monetary Relief Are Barred by the First Amendment

19         The Court also should enter a judgment as a matter of law against Plaintiffs' claims for

20  monetary relief because those claims are barred by the First Amendment.  Plaintiffs' claims

21  constitute state action for purposes of the First Amendment.  *See, e.g.*, *NAACP v. Claiborne*

22  *Hardware Co.*, 458 U.S. 886, 916 n.51 (1982); *Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767,

23  777 (1986); *Doe v. 2TheMart.com Inc.*, 140 F. Supp. 2d 1088, 1091–92 (W.D. Wash. 2001).

24  Accordingly, the imposition of civil monetary damages on the basis of speech is a form of

25  speech restriction subject to First Amendment scrutiny.  *See, e.g.*, *N.Y. Times Co. v. Sullivan*, 376

26  U.S. 254, 265 (1964); *Fla. Star. v. B.J.F.*, 491 U.S. 524, 541 (1989).

The First Amendment protects communications with consumers such as advertising and marketing.  *See, e.g.*, *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 571 (2001).  The Supreme Court has adopted a four-part analysis for analyzing commercial speech:

> For commercial speech to come within [the First Amendment], it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 566 (1980).  Plaintiffs bear the burden of demonstrating that the speech restrictions they seek to enforce pass Constitutional muster.  *See Edenfield v. Fane*, 507 U.S. 761, 770 (1993).  They have not done so.

First, commercial speech is protected even if it is "*potentially* misleading" so long as it is not "*inherently* misleading."  *See, e.g.*, *Borgner v. Brooks*, 284 F.3d 1204, 1210 (11th Cir. 2002) (emphases added); *Parker v. Ky. Bd. of Dentistry*, 818 F.2d 504, 509 (6th Cir. 1987); *Bioganic Safety Brands, Inc. v. Ament*, 174 F. Supp. 2d 1168, 1180 (D. Colo. 2001).  To be "inherently misleading," the challenged speech must be "misleading in all circumstances"—"[i]f there are circumstances in which the speech is not misleading, it is entitled to the protection of the First Amendment."  *Bioganic Safety Brands, Inc.*, 174 F. Supp. 2d at 1181; *see also, e.g., Edenfeld*, 507 U.S. at 768–69.  Put another way, commercial speech that states "a fact, albeit one with multiple predicates, from which a consumer may or may not draw an [untrue] inference" is not "inherently misleading."  *Peel v. Att'y Reg. & Disciplinary Comm'n of Ill.*, 496 U.S. 91, 101 (1990).

The Challenged Statements meet this standard because they concerned "lawful conduct" (the sale of multivitamins)[14] and were not "misleading in all circumstances"—Plaintiffs' expert

---

[14] *See, e.g., Ocheesee Creamery LLC v. Putnam*, 851 F.3d 1228, 1237 (11th Cir. 2017) (in a case challenging a regulation restricting the labeling of skim milk, the relevant "activity" was the sale of skim milk—not the allegedly deceptive labeling of the milk); *Am. Acad. Of Implant Dentistry v. Parker*, 860 F.3d 300, 307 (5th Cir. 2017).

in fact *agrees* that the micronutrients in One A Day multivitamins do support heart health, immunity, and physical energy.  *See supra*, p. 4 & n.2.  Even under Plaintiffs' theory, whether the Challenged Statements are misleading depends on how they were interpreted by consumers and the personal characteristics of each individual consumer.  Because they are at most "potentially misleading," the Challenged Statements are entitled to First Amendment protection. *See Parker*, 860 F.3d at 307 ("Although different consumers may understand [the speech at issue] in different ways, that only shows the term has the potential to mislead.").

Plaintiffs therefore bore the burden of proving that imposing liability based on Defendants' lawful labeling of One A Day multivitamins during the class period survives "heightened scrutiny"—which they can do only if the restriction on speech they seek to impose is narrowly drawn to advance a substantial government interest.  *See Sorrell*, 131 S. Ct. at 2664 ("The First Amendment requires heightened scrutiny whenever the government creates a regulation of speech because of disagreement with the message it conveys.") (citation and quotation omitted).  Assuming the government has a substantial interest in preventing deceptive advertising (the second *Central Hudson* prong), Plaintiffs were, at a minimum, required to show that this lawsuit "directly advances" that interest and is "not more extensive than is necessary to serve" it (this third and fourth *Central Hudson* prongs).  *Cent. Hudson*, 447 U.S. at 566.

Because Plaintiffs' claims would have barred conduct permitted by federal law, they are not narrowly drawn to support an important government interest.  To the contrary, there are other, less restrictive ways through which Plaintiffs could have accomplished their objectives, such as by requiring Defendants to make additional disclaimers in its advertising.  Courts, including the Supreme Court, have "repeatedly point[ed] to disclaimers as constitutionally preferable to outright suppression." *Pearson v. Shalala*, 164 F.3d 650, 657 (D.C. Cir. 1999) (quoting *Bates v. State Bar of Ariz.*, 433 U.S. 350, 374–75 (1977) (internal citations omitted)). The Challenged Statements on One A Day labels could be adjusted (*e.g.*, by adding the word "normal" as Plaintiffs' expert initially proposed, *see* Blonz Dep. Tr. at 171:4–9, or by providing an express caveat that there are no benefits to taking a multivitamin if all essential vitamins are obtained by diet).  At a minimum, where Plaintiffs have sought injunctive relief to prevent

-31-

further dissemination of the Challenged Statements, the further imposition of monetary damages *and punitive damages* is plainly more extensive than necessary.  *See Rubin v. Coors Brewing Co.*, 514 U.S. 476, 490–91 (1995).

The Ninth Circuit's decision in *Western States Medical Center v. Shalala* is instructive.  *See* 238 F.3d 1090 (9th Cir. 2001), *aff'd sub nom. Thompson v. W. States Med. Ctr.*, 535 U.S. 357 (2002).  There, several pharmacies sued the Department of Health and Human Services challenging the constitutionality of a federal statute prohibiting pharmacists from promoting or advertising compounded drugs, *i.e.*, drugs mixed to suit a particular patient's needs.  *Id.* at 1092.  The Ninth Circuit held that the statute failed *Central Hudson*'s fourth prong because "clear alternatives exist that can advance the government's asserted interest" in protecting public health and maintaining the integrity of the drug approval process "in a manner far less intrusive to the pharmacists' free speech rights."  *Id.* at 1095.  The Ninth Circuit endorsed the district court's proposed alternatives, including "either disclaimers on compounded drugs explaining that they had not been subject to FDA approval or a full-blown safety review like that imposed on manufactured drugs as alternatives that would be far less intrusive to free speech."  *Id.* at 1096.

Because Plaintiffs have offered no evidence that their claims (and the specific relief sought) would advance any governmental interest, let alone that they are narrowly drawn to meet that purpose, the Court should enter judgment as a matter of law against Plaintiffs' claims for monetary relief because they are barred by the First Amendment.

## CONCLUSION

For the foregoing reasons, Defendants request that the Court enter judgment as a matter of law on all of Plaintiffs' claims.

Dated:  February 22, 2019

Respectfully submitted,


By:   */s/ Sean Eskovitz*

**WILKINSON WALSH + ESKOVITZ LLP**
Sean Eskovitz (SBN 241877)
*seskovitz@wilkinsonwalsh.com*

-32-

1

11601 Wilshire Blvd., Suite 600
Los Angeles, CA 90025
Telephone: (424) 316-4000
Facsimile: (202) 847-4005

2

3

4

**WILKINSON WALSH + ESKOVITZ LLP**
Alexandra M. Walsh (*pro hac vice*)
*awalsh@wilkinsonwalsh.com*
Brian L. Stekloff (*pro hac vice*)
*bstekloff@wilkinsonwalsh.com*
James M. Rosenthal (*pro hac vice*)
*jrosenthal@wilkinsonwalsh.com*
Kieran Gostin (*pro hac vice*)
*kgostin@wilkinsonwalsh.com*
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005

5

6

7

8

9

10

11

12

13

*Counsel for Defendants Bayer AG, Bayer
Corporation, and Bayer HealthCare LLC*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-33-